DANIEL G. BOGDEN
United States Attorney
LISA C. CARTIER GIROUX
Assistant United States Attorney
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, Nevada 89101
PHONE: (702) 388-6179
FAX:  (702) 388-6418

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAN ROUVEN FUECHTENER,<br><br>(AKA LARS SCHMIDT)<br><br>Defendant. | 2:16-mj-00179-PAL<br>(2:16-cr-00100-GMN-CWH)<br><br><u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISTRICT COURT TO REVIEW AND AMEND THE DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(B)</u><br>(Doc. 8) |

COMES NOW the United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and Lisa C. Cartier Giroux, Assistant United States Attorney, and responds in OPPOSITION to the *Defendant's Motion To The District Court To Review And Amend The Detention Order Pursuant To 18 U.S.C. § 3145(b)* (Doc. 8) filed on March 21, 2016 and *Defendant's Supplement to Motion* (Doc. 10) filed on March 24, 2016, by Defendant JAN ROUVEN FUECHTENER, by and through his attorney, JESS R. MARCHESE, ESQ.  For the reasons set out in the written Order of Detention issued by Magistrate Leen on March 18, 2016 (Doc. 7), and for the reasons stated below, Defendant Fuechtener should remain detained until the trial date.

…

…

1

## I. PROCEDURAL HISTORY

On March 14, 2016 a complaint was filed against Defendant Fuechtener alleging a violation of 18 U.S.C. § 2252A(a)(2), *Receipt of Child Pornography* under case number 2:16-mj-0179-PAL. Defendant Fuechtener was arraigned and a detention hearing was held on March 15, 2016 in front of Magistrate Leen. Pretrial services recommended that the defendant be detained as a danger to the community and a flight risk. The Government also argued for detention for those same reasons. Under 18 U.S.C. § 3142(e)(3)(E), there is presumption for detention. The defendant requested that the hearing be continued until the following day, and the Magistrate required Government counsel to provide additional evidence to Defense Counsel to support the proffer made in open court, specifically the relevant Skype chats referred to in the Government's detention argument. Magistrate Leen heard further argument from counsel on March 16, 2016. Magistrate Leen detained the defendant as a danger to the community. (Doc. 7). Specifically the Court concluded that he posed a serious risk to the safety of another person or the community:

> The defendant is ordered detained as a danger to the community as that term is defined by The Bail Reform Act for the following reasons: The defendant is charged with an offense in this case for which the law authorizes detention. The amount of pornography that was found on the defendant's computers, as well as in and around his home, is substantial. The weight of the evidence in this case is substantial. The graphic images depicting child pornography in this case involve very young children. Additionally, the government's proffer indicates that the defendant has been involved in Skype conversations with another adult male about arranging to have the other adult male have sex with someone he represented was his daughter while the defendant and the adult male engaged in conduct. The weight of the evidence is further supported by statements made by the defendant's husband to the investigators in this case, which represented that the defendant watches internet pornography "all of the time, 24/7," that the defendant was the only person who had access to the computer in the poolhouse, that the defendant was the only person who knows the passwords for the computers on which the pornography was found, and that he relies on the defendant to set up all the computers and routers throughout the house, outside, and in the poolhouse. (Doc. 7).

On March 21, 2016, the defendant filed a *Motion To The District Court To Review And Amend The Detention Order Pursuant To 18 U.S.C. § 3145(b)* (Doc. 8), and a supplement to that

2

motion which has as an Exhibit an affidavit by the spouse of the defendant, Frank Alfter, claiming that he will assert "the spousal privilege" purportedly to avoid testifying at trial to statements that he made to FBI Special Agent Mari Panovich. (Doc. 10).

Subsequently on March 30, 2016, Defendant Fuechtener was indicted by a federal grand jury. The indictment alleged violations of 18 U.S.C. §§ 2252A(a)(5)(B), Possession of Child Pornography; 2252A(a)(2) and (b), Receipt of Child Pornography; 2252A(a)(2) and (b), Distribution of Child Pornography; and 2251(d)(1)(A) Advertising Child Pornography. Defendant Fuechtener was arraigned on the indictment on April 6, 2016.

## II.  RELEVANT FACTS

On August 3, 2015, a Task Force Officer (TFO) from the FBI Buffalo Field Office Child Exploitation Task Force (CETF), operating in an undercover capacity, was accepted into the network of an individual utilizing the user name "Lars45" within a publicly available peer-to-peer (P2P) file sharing program. On August 4, 2015, through a chat message within the P2P file sharing program, Lars45 initiated contact with the TFO and provided the password to his locked shared folders on the file-sharing program. On September 14, 2015, the TFO signed on to the P2P file sharing program and observed that Lars45 was logged into the network. Using the password previously supplied by Lars45, the TFO was able to access and browse Lars45's shared directories and observed file titles indicative of child pornography.

The TFO successfully downloaded numerous files of child pornography from the password protected folders Lars45 was sharing. The files of child pornography were from one IP address[1]. In this case, the IP address that provided the password to the child pornography files was determined to originate from 7080 Donald Nelson Avenue, Las Vegas, Nevada. Of the files shared, below are descriptions of three of the files that the undercover received:

---

[1] An IP address refers to a unique number assigned by an Internet service provider to their customer.

3

1       a.    Title: ends in "blindbondage"

2     Description: A video, 3 minutes and 26 seconds in length, of a prepubescent male child, approximately 7 to 8 years old performing oral sex on an adult male's erect penis. The child is kneeling in front of the standing adult. The male child is wearing a black blindfold which covers his nose, eyes and forehead. At the end of the video, the adult male appears to ejaculate in the child's mouth.

5       b.    Title: ends in "(2013) toddler 2012 man fuck little boy in ass (brilliant).flv"

6     Description: A video, 1 minute 49 seconds in length, of a prepubescent male child, approximately 3 to 4 years of age, lying on a bed while an adult's hand forces an adult male's erect penis into the child's anus. The child can be heard whimpering in the video.

      c.    Title: end in "8yo anal fuck POV – Sound – New 2014.rmvb"

Description: A video, 47 seconds in length, of an adult male's erect penis engaging in anal sex with a child, unknown age or sex. The child can be heard yelling and crying in pain throughout the video. At the end of the video, the adult male ejaculates on the child's buttocks.

On January 21, 2016, FBI Special Agent Mari Panovich executed a Federal search warrant at 7080 Donald Nelson Ave. in Las Vegas, NV. The search warrant, signed by U.S. Magistrate Judge Nancy J. Koppe, was issued after a probable cause determination regarding an ongoing distribution and possession of child pornography investigation. Upon execution of the aforementioned search warrant, law enforcement made contact with the defendant at the subject residence. It was determined that the residence at 7080 Donald Nelson Avenue, Las Vegas, Nevada is owned by Defendant and Frank Dietmar Alfter, Defendant's husband. Evidence seized from 7080 Donald Nelson Avenue, Las Vegas, Nevada included, but was not limited to, an Apple iMac All in One computer containing a 1TB hard drive located in the casita/pool house, and a My Passport Ultra external hard drive, located on the ground in the back patio area. When law enforcement entered the casita/pool house, a child pornography video was "on pause" on a laptop found on the bed in the

1  casita/pool house[2].

2  During a forensic examination of the Apple iMac All in One computer, approximately 251
3  videos depicting child pornography and six images depicting child pornography were identified.
4  Further investigation of the images and videos depicting child pornography revealed many of the
5  files were saved under the file path Users/Rouven.  Several of the specific P2P file sharing program
6  chat logs between Lars45 and another user were located on the Apple iMac All in One computer,
7  under the [ROOT]/Users/Rouven user path.  During a forensic examination of the My Passport Ultra
8  external hard drive, approximately 3,235 videos depicting child pornography and 105 images
9  depicting child pornography were identified.  Further investigation to determine the location of the
10 images and videos depicting child pornography revealed many of the files were saved under the
11 specific P2P program name/lars45.  Furthermore, two folders were discovered named as the specific
12 P2P file sharing program and at least one folder was named "lars45".   Additionally in the master
13 bedroom closet on top of an island inside of box, a thumb drive was located.  That thumb drive
14 contained images and videos depicting child pornography, including some of the same images and
15 videos provided to the undercover by Lars45.

16  Subsequent forensic examination of the Apple iMac All in One computer revealed Skype
17 chats between the defendant, using user name "larsusa22" and unknown individual using a user
18 name of "olwerolwer" in which "olwerolwer" offers to have sex with his daughter in exchange for
19 access to a "Lars45" folder.  There are numerous attempts to schedule this exchange.  The Skype
20 account of "larsusa22" was created with the email address of larsschmidt22@hotmail.com.  The
21 defendant admitted post-Miranda to FBI Special Agent Mari Panovich that
22 larsschmidt22@hotmail.com was in fact his email address.

23  On January 31, 2016, Special Agent Panovich interviewed Frank Dietmar Alfter.  Alfter was

---

[2] The defendant's spouse was not present at the home at the time of the search warrant.   According to Alfter and confirmed by the FBI, he was on a cruise.

read and signed a written waiver of Miranda rights. During the interview, post-Miranda, Alfter stated that he, himself, did not download child pornography. Alfter was upset because the defendant is on the internet looking at porn all of the time, "24/7". Alfter stated that the defendant is the only person who has access to the computers in the pool house, as far as Alfter knows, and is the only one who knows the passwords to those computers. Alfter relies upon the defendant to set up all of the computers and the routers throughout the house, outside and in the pool house.

### III.  ARGUMENT

The district court's review of a magistrate judge's detention order is performed under a *de novo* standard of review. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir.1990). "The district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id*. 1193. Instead, "[i]t should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*.

Under 18 U.S.C. § 3142(b), the Court shall release a defendant on a personal recognizance or appearance bond, unless the Court "determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." The Court may impose conditions that it deems necessary to guard against a defendant's flight or danger to the community. See 18 U.S.C. § 3142(c). In deciding whether conditions could reasonably assure the defendant's appearance and the safety of the community, the Court evaluates four factors: "(1) the nature and circumstances of the offense charged ...; (2) the weight of the evidence against the person; (3) the history and characteristics of the person ...; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). To prevent a defendant's release, the Government must prove that a defendant is a danger to the community by clear and convincing evidence, or it must prove

that a defendant is a flight risk by a clear preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir.1985).

The charge(s) that defendant faced in the complaint and now the indictment create a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(E). While the rebuttable presumption of detention shifts the burden of production to the defendant, the burden of persuasion remains with the Government. *United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir. 1990); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). Furthermore, the presumption in favor of detention in § 3142(e) is further supported by the recent indictment in this case. The grand jury indictment is sufficient to establish probable cause that he has committed three of the enumerated offenses in § 3142(e)(3)(E) involving a minor victim. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir.1991); *also see United States v. Vargas*, 804 F.2d 157, 163 (1st Cir.1986) (holding that an indictment is sufficient to establish probable cause for purposes of inciting the rebuttable presumption found at 18 U.S.C. § 3142(e)); *United States v. Hurtado*, 779 F.2d 1467 (11th Cir.1985), reh'g denied, 788 F.2d 1570 (11th Cir.1986) (holding that rebuttable presumption of flight arises from grand jury indictment); *United States v. Contreras*, 776 F.2d 51, 52 (2d Cir.1985) (neither the language nor the legislative history of the Bail Reform Act clearly indicates that Congress intended to require an evidentiary hearing on the issue of probable cause for purposes of section 3142(e) in lieu of relying on the indictment).

**(a) Nature and circumstances of the offense charged**

Without making a determination of guilt or innocence, the Court can consider the serious nature of the charges and the potential sentence in a case as a factor in determining the risk of flight. "Consideration of the nature of the offenses charged involves consideration of the penalties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir.1990). In this case, Defendant Fuechtener, if convicted of counts two or three of the indictment, faces up to a twenty year sentence with a

mandatory minimum sentence of five years. If convicted of count four, he faces up to a thirty year sentence with a mandatory minimum sentence of fifteen years. Defendant is not a US citizen and has a country, Germany, to which he could flee.   These factors weigh in favor of detention.

**(b) Weight of evidence**

Although the weight of the evidence against a defendant is the least important factor in the Court's analysis, *United States v. Motamedi*, 767 F.2d 1403, 1403 (9th Cir.1985), this factor also favors detention here. The significant amount of child pornography, including the Lars45 folder on the defendant's devices which the undercover accessed remotely, the fact that a child pornography video was "on pause" on one of the computers at the time the search warrant was executed, as well as the Skype chats requesting a sexual performance by "olwerolwer" and his daughter support the charges in this case.  These factors weigh in favor of detention.

**(c) History and characteristics of defendant**

Defendant has no known criminal history. This factor weighs in favor of release.

**(d) Nature and seriousness of danger to the community**

The defendant is a danger to the community. According to the facts of the instant offense, the defendant possessed, received and distributed graphic images of very young children, including the rape and abuse of infants.  The Skype chats further support the argument that he poses a potential danger of committing an offense against a child or willingness to conspire to commit an offense against a child.  The amount of child pornography located on the digital devices additionally demonstrates a continuous course of criminal conduct. These factors weigh in favor of detention.

(**e) A court can consider the statements made by Frank Alfter in spite of a possible future assertion of the marital privilege at trial; additionally even without Alfter's statements, the weight of the evidence favors detention under §3142(g)(2).**

Defendant claims that based on Alfter's affidavit in which Alfter states that he plans on asserting the "marital privilege," it is unfair that the Court consider his statements in weighing the

8

release factors set forth in § 3142(g), in particular to assess "the weight of the evidence" against Defendant for purposes of release pursuant to § 3142(g)(2)[3]. Generally speaking, the federal rules of evidence do not apply at detention hearings; the rules on privilege, however, do apply "to all stages of a case or proceeding." Fed.R.Evid. 1101(d)(3)[4]. A statement by Special Agent Mary Panovich as to what Alfter stated to her regarding the defendant's watching pornography 24-7 and sole possession of the passwords is hearsay. The rules of evidence do not apply as to hearsay at a detention hearing. Fed.R.Evid. 1101(d)(3).   The privilege rule that he seeks to assert – i.e., that he will not testify – does not negate that the hearsay statement exists, and the Court can therefore consider it.

Even if the privilege did apply, the Court should evaluate such evidence pursuant to the "cost benefit analysis" set forth in *United States v. Leon,* 468 U.S. 897, 907 (1984) which is used in weighing evidence that has been suppressed due to a constitutional violation and would not be admissible at trial.  In *Leon*, the Supreme Court concluded that the exclusionary rule did not apply automatically to exclude for all purposes evidence seized in violation of the Fourth Amendment. *Id*. To determine whether to admit such evidence for purposes other than trial, a court must weigh "the costs and benefits of preventing the use ... of inherently trustworthy tangible evidence." *Id.*  The Ninth Circuit has not considered the admissibility of such evidence for purposes of a release hearing. The Court, however, has applied the cost-benefit analysis to sentencing proceedings and to revocation hearings. *See, e.g., United States v. McIver*, 186 F.3d 1119 (9th Cir.1999), cert. denied, 528 U.S. 1177 (2000) (sentencing), overruled on other grounds by *United States v. Isaacs*, 565

---

[3] Although Defendant now provides the Court with an affidavit, Government counsel's recollection is that the argument was made to the Magistrate that Alfter, who was present in the court on both dates of the detention hearing, would assert the privilege not to testify.  As the Magistrate heard the same argument made by counsel, it can be concluded that she considered the assertion in determining "the weight of the evidence" against the defendant.

[4] It should be noted, however, that while a party may assert the "marital privilege," the privilege is not absolute.  FRE 501.  The scope of the marital privilege has never been construed, even at common law, as absolute.  A court ultimately must determine whether the privilege applies, and more importantly whether or not there is an exception to the privilege in a given case.

1  Fed.Appx. 637 (9th Cir. 2014); *United States v. Kim*, 25 F.3d 1426 (9th Cir.1994) (sentencing); *United States v. Hebert*, 201 F.3d 1103 (9th Cir. 1999) (revocation).

A court should have as much information as possible to evaluate properly whether a defendant poses any risk of danger to the community if released. Thus, even though this Court may potentially not permit such testimonial evidence for purposes of trial, that evidence provides reliable information concerning community safety because it relates to crimes committed against children. Consideration of evidence that may not be admissible at trial is warranted under a cost-benefit analysis, particularly when applying the statutory release factors that bear on community safety.

Additionally, even excluding the statements made by Alfter, there is more than sufficient evidence to conclude considering all of the factors under § 3142(g) that the defendant should be detained as a risk to the safety to the community.

## IV. CONCLUSION

The Government asserts that there is ample support for the Magistrate's finding that the Defendant is a danger to the community[5]. The Government has met its burden by a clear preponderance of the evidence that defendant's risk of flight requires detention, and has shown by clear and convincing evidence that there are no conditions of release that would reasonably assure

…

…

…

---

[5] The Government argued at the detention hearing that the defendant was also a flight risk. The Government continues to assert that he is a risk of flight in addition to posing a danger to the community.

the safety of the community even without the presumption of detention. As a result, the Government respectfully requests that the Court detain the defendant.

DATED this 7th day of April, 2016.

                    Respectfully submitted,

                    DANIEL G. BOGDEN
                    United States Attorney

                    //s//
                    LISA C. CARTIER GIROUX
                    Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I, Lisa C. Cartier Giroux, certify that the following individual was served with a copy of the *GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISTRICT COURT TO REVIEW AND AMEND THE DETENTION ORDER PURSUANT TO 18 U.S.C. § 3145(B) (Doc. 8)* on this date by the below identified method of service:

*Electronic Case Filing*

Jess R. Marchese, Esq.
Counsel for Defendant
601 Las Vegas Blvd. South
Las Vegas, NV 89101

DATED:      April 7, 2016

                    //s//
                    LISA C. CARTIER GIROUX
                    Assistant United States Attorney