DANIEL G. BOGDEN
United States Attorney
CRISTINA D. SILVA
Nevada Bar #13760
ELHAM ROOHANI
Nevada Bar #12080
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
cristina.silva@usdoj.gov
elham.roohani@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00100-GMN-CWH |
| Plaintiff, | |
| vs. | **GOVERNMENT'S MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT WITNESS** |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

COMES NOW the United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and CRISTINA D. SILVA and ELHAM ROOHANI, Assistant United States Attorneys, and files this motion to exclude the testimony of defense witness, Larry Smith. Defendant JAN ROUVEN FUECHTENER, by and through his attorneys JESS MARCHESE and MICHAEL SANFT, provided notice of one expert witness on May 24, 2016. For the reasons set forth herein, defendant's witness should be precluded from testifying as an expert witness.

1

# STATEMENT OF RELEVANT FACTS

## A. PROCEDURAL FACTS

On March 30, 2016, a federal Grand Jury sitting in Las Vegas, Nevada, issued an indictment against the defendant, Jan Rouven Fuechtener, charging him with one count of Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); one count of Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b); one count of Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b); and one count of Advertising of Child Pornography, in violation of Title 18, United States Code, Section 2251(d)(1)(A). The indictment also contains forfeiture allegations pertaining to the child pornography allegations.

## B. SUBSTANTIVE FACTS

In August 2015, a Task Force Officer (TFO) from the FBI Buffalo Field Office Child Exploitation Task Force (CETF), operating in an undercover capacity, was accepted into the network of an individual utilizing the user name "Lars45" on the GigaTribe peer-to-peer (P2P) file-sharing network. The network was known for exchanging child pornography. On August 4, 2015, through a chat message within the GigaTribe P2P file sharing program and within the child pornography interest network, Lars45 initiated contact with the TFO and provided the password to his locked shared folders on GigaTribe. The TFO was able to browse Lars45's shared directories and observed thumbnail previews of many images/videos of child pornography, as well as file titles indicative of child pornography.

On September 14, 2015, the TFO signed on to GigaTribe and observed that Lars45 was again logged into the network. Using the password previously supplied by Lars45, the TFO successfully downloaded numerous files of child pornography from the password protected folders Lars45 was sharing. The files of child pornography were from one IP address. In this case, the IP address that provided the password to the child pornography files was determined to originate from 7080 Donald Nelson Avenue, Las Vegas, Nevada ("the Residence"). Subpoenas sent to GigaTribe revealed that the account had an email address of larsschmidt22@hotmail.com.

On January 21, 2016, FBI Special Agent Mari Panovich executed a Federal search warrant at the Residence. Upon execution of the aforementioned search warrant, law enforcement made contact with Fuechtener at the subject residence, which is owned by Fuechtener and Frank Dietmar Alfter, the Defendant's husband.

Also during execution of the warrant, agents seized 38 devices, and numerous alarm clock cameras located throughout the Residence. Trained experts conducted forensic examination of the devices found throughout the Residence, and discovered that devices found in virtually every area of the house revealed child pornography videos and images.

The defendant admitted post-*Miranda* to Special Agent Panovich that larsschmidt22@hotmail.com was his email address, and that he downloads from GigaTribe with the user name "Lars45." U.S. Magistrate Judge George W. Foley issued a search warrant for the larsschmidt22@hotmail.com. The returned documentation from Hotmail shows several email communications between Fuechtener (using the

name Lars) sent from larsschmidt22@hotmail.com to craigslist.com users. The emails include picture attachments and text identifying "Lars" as Fuechtener, an email chain where the defendant signs within the same chain as "Lars," and "JAN." A confirmation email for a credit card transaction conducted by "Jan Fuechtener" buying something from www.sketchysex.com with user name "larsusa22" was also in the larsschmidt22@hotmail.com email. Finally, the search warrant also returned an email sent in April 2015 from GigaTribe to the larsschmidt22@hotmail.com, for username "lars45," informing Fuechtener that his "Ultimate" subscription would expire due to the bank declining payment.

Fuechtener was later indicted by the Federal Grand Jury on the above mentioned charges. At his arraignment, he pled not guilty. ECF No. 16. On May 24, 2016, Fuechtener provided a two-page expert notice giving notice of his intention to call Larry Smith as an alleged expert witness regarding "online file sharing programs such as Gigatribe as well as cloud based file sharing programs such as Google Drive or Dropbox," as well as "how computer files are stored and time stamped including but not limited to the differences in military time, UTC time, and regular time." ECF No. 38, 2. The notice states that Mr. Smith "has been unable to conduct a full forensic examination at this juncture," but that "defense will supplement this notice as more information becomes available." To date, the Government has not received any supplement or an expert report from the defense.

//

//

4

**ARGUMENT**

The Court should exclude Mr. Smith's testimony for three separate and distinct reasons. First, the defense has only provided a short summary containing vague descriptions as to what Mr. Smith will allegedly testify to at trial, and the defense has failed to provide the Government and Court with Mr. Smith's expert report. Thus, the Court is left unable to perform its gate-keeping function, and the Government is unfairly deprived of its right to challenge Mr. Smith's premises, methodology, and conclusions. Second, notwithstanding Mr. Smith's purported qualifications as provided in the defense's notice and Mr. Smith's CV, Mr. Smith is not qualified to testify about online file sharing programs, and forensic examinations about how computer files are stored and time stamped. Finally, because the differences in "military time, UTC time, and regular time" are definite mathematical calculations, able to be conducted by jurors with common knowledge, and the calculation is judicially noticeable, it does not require expert opinion.

**1. Mr. Smith should not be allowed to testify because the defense has failed to provide Mr. Smith's expert report, failed to comply with Federal Rule of Evidence 702, and failed to comply with Rule 16.**

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger that admission of the evidence would confuse the issues or mislead the jury. Fed. R. Evid. 403.

As a threshold prerequisite to admissibility, the expert's proposed testimony must

5

help the jury "understand the evidence" or "determine a fact in issue." Fed. R. Evid. 702(a). If the expert's testimony does not illuminate any issue in the case, then the testimony is not admissible and the Court need not consider the reliability of that testimony. *Id.* at 702(b-d); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (explaining that Rule 702(a) "goes primarily to relevance," and "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

Rule 702 of the Federal Rules of Evidence establishes that expert testimony should be admitted where (1) the expert's specialized knowledge is helpful to the trier of fact, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case. Rule 702 was amended to include these standards after the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Under *Daubert*, the trial court must make sure that expert testimony is not only relevant but reliable. This is the court's "gatekeeping function," and the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Importantly, *Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011), citing *Daubert,* 509 U.S. at 589–90. To ensure that expert testimony is both reliable and relevant, the Court should engage

in a three-part inquiry, considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Id.*

In short, these basic requirements are qualification, reliability, and helpfulness. *Id.*

In order to be reliable, proposed expert testimony must be supported by "appropriate validation-*i.e.,* 'good grounds.'" *Id.* at 1261, *quoting Daubert*, 509 U.S. at 590. The trial judge has the task of ensuring that an expert's testimony rests on a reliable foundation. *Id.*[1] The proponent of expert testimony always bears the burden of showing that his expert meets those three requirements. *Id.*

Rule 16(b)(1)(C) sets forth that the Defendant must, at the government's request, give to the government a written summary of any testimony that the Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, and that the summary must describe the witness's "opinions, the bases and reasons for those opinions, and the witness's qualifications."

The district court serves a gatekeeper function in evaluating scientific testimony. *Daubert*, 509 U.S. at 579. When a district court is faced with a proffer of scientific testimony, it must make a preliminary determination under Federal Rule of Evidence 702

---

[1] The following factors may be considered when determining reliability of expert testimony, although the inquiry is meant to be flexible and is not limited to these issues: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).

7

whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 592-93. A key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. *Id.* at 593. The objective of this gatekeeping requirement is to ensure the reliability and *relevancy* of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire*, 526 U.S. at 152. This gatekeeping requirement applies not only to scientific testimony but to all expert testimony covered by Federal Rule of Evidence 702. *Id.* at 147-49.

Federal Rule of Evidence 702 requires a valid connection to the pertinent inquiry as a precondition to admissibility. *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592). And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question...the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline. *Id.* (citations omitted). [W]here foundational facts demonstrating relevancy or qualification are not sufficiently established, exclusion of proffered expert testimony is justified. *LuMetta v. United States Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987).

Here, the defendant's notice of expert testimony provided a cursory summary of Mr. Smith's anticipated testimony, but to date, the Government has not been provided a copy of Mr. Smith's report. Without an expert report, the Court is left unable to perform its gatekeeping function in evaluating scientific testimony, and the defense has failed to meet

its burden to show that the testimony is relevant, reliable, helpful, and otherwise admissible.[2]  Moreover, the notice of expert testimony fails to comply with Rule 16(b)(1)(C). The notice merely states what the defendant anticipates Smith's testimony to be, but fails to provide "expert disclosure required under Rule 16(b)(1)(C), Federal Rules of Criminal Procedure" as required under Rule 16 and demanded in the Government's Disclosure Statement filed May 9, 2016. ECF No. 25. The notice fails to provide a written summary that testimony describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). Accordingly, this Honorable Court should exclude Mr. Smith's testimony.

**2. Mr. Smith should not be allowed to testify as an expert in the area of online file sharing programs because he is not qualified.**

Notably absent from Mr. Smith's CV is any indication that he has been trained or even has familiarity with Peer-to-Peer (P2P) programs, or P2P investigations, let alone "online file sharing programs such as Gigatribe as well as cloud based file sharing programs such as Google Drive or Dropbox," as set forth in the defense's notice. ECF No. 38, 2. Indeed, Mr. Smith's CV shows that his alleged training is limited to three areas: (1) data recovery specialist, (2) physical abuse and sexual abuse detail, and (3) computer forensics unit. *Id.* at Ex. 1, 1. As a data recovery specialist, Mr. Smith used "special tools, techniques, and software programs to make forensically sound copies of suspect hard drives and related media and analyze[d] those copies for evidence of a crime or that no

---

[2] Furthermore, without Mr. Smith's report, the Government has been prevented from securing any rebuttal witnesses that it may need. Thus, for this additional reason that the defense's non-disclosure of Mr. Smith's report has prejudiced the Government, Mr. Smith should not be allowed to testify as an expert witness.

9

proof that a crime had occurred." *Id.* As a part of the physical and sexual abuse detail, he investigated "physically abused child and the elderly," and helped with the "apprehension of sex offenders when their target was children and their tool was the Internet and/or a computer." *Id.* Finally, as a part of the computer forensics unit, Mr. Smith investigated "any crime where a computer, PDA, or cell phone was used to facilitate that crime." *Id.*

At best, only Mr. Smith's work on the sexual abuse detail may be remotely relevant to online file sharing programs, but even then, that detail ended in 2000, over 15 years ago. Most file-sharing programs were not in existence 15 years ago, and GigaTribe, the only P2P program at issue in this case, came into existence in 2005, and was launched in the United States in 2008. *See* Don Reisinger, *Web 2.0 file-sharing service is bringing free peer-to-peer private file sharing to the U.S.*, (Nov. 17, 2008), http://www.cnet.com/news/gigatribe-brings-private-p2p-sharing-to-u-s/. Any expertise Mr. Smith might have possessed in 2000 is woefully outdated and irrelevant. Accordingly, Mr. Smith is unqualified and should not be allowed to testify about "online file sharing programs such as Gigatribe as well as cloud based file sharing programs such as Google Drive or Dropbox."

### 3. Mr. Smith should not be allowed to testify as an expert in the area of forensic testing because he is not qualified.

Very recently, in *United States v. Anousone Savanh*, No. 2:14-cr-290-KJD-PAL, the Honorable Judge Kent Dawson found that Mr. Smith was not qualified as an expert in computer forensics and excluded his expert testimony. In a pre-trial motion, Judge Dawson held that Mr. Smith could testify as a lay witness about "his own examination of

10

the computer at issue, particularly to what pornography he did or did not find on it." *Savanh*, No. 2:14-cr-290-KJD-PAL, ECF No. 135, 3. Judge Dawson left open whether the defense could offer Mr. Smith's expert testimony based on foundation laid at trial. *See id.* However, at trial, Judge Dawson found that sufficient foundation had not been laid and Mr. Smith was not qualified to opine on computer forensics. *See Savanh*, No. 2:14-cr-290-KJD-PAL (Trial Testimony, Voir Dire of Larry Smith).

First, conspicuously absent from Mr. Smith's CV is any criteria that suggests that he is an expert able to opine about "how computer files are stored and time stamped." ECF No. 38, 2. But, in any event, another judge in this district as recently as last month found that Mr. Smith was not qualified to opine on computer forensics and only allowed Mr. Smith to testify as a lay witness. The latest update on Mr. Smith's CV is from February, 2016, over 5 months ago. As Mr. Smith has not achieved any additional qualifications in the last month, as reflected in his CV, Judge Dawson's prior finding should hold true in this case as well.

**4. Mr. Smith should not be allowed to testify as an expert about the differences in "military time, UTC time, and regular time" because the calculations are a sum definite, able to be conducted by the average juror and the calculation is judicially noticeable, ergo not requiring expert opinion.**

Under the first prong of Rule 702 of the Federal Rules of Evidence, the expert must have "specialized knowledge." But, if knowledge is within the common understanding of jurors, or judicially noticeable by not being subject to reasonable dispute, then it does not require an expert to set it forth. Indeed, Rule 201 permits a court to take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(a). A judicially

11

noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a). In a criminal case, however, the trial court must instruct the "jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Fed. R. Evid. 201(g).

Nothing in Mr. Smith's CV suggests any specialized knowledge that allows him to explain the differences in military time, UTC time, and regular time. This is likely because subtracting 7 from a number does not require any specialized knowledge, but rather only elementary arithmetic. A simple Google search reveals consistently that Universal Time Coordinated (UTC) is 7 hours ahead of Pacific Daylight Time (PDT). Thus, PDT = UTC – 7 hours. Any juror can convert the time using basic mathematics without an expert. Because said knowledge does not require expert knowledge, the United States respectfully requests that the Court take judicial notice of the fact that UTC is 7 hours ahead of Pacific Daylight Time, and exclude Mr. Smith's testimony on this point.

## II. CONCLUSION

Based on the foregoing, the Government respectfully requests this Court exclude the testimony of Larry Smith.

Respectfully submitted this 12th day of July, 2016.

DANIEL G. BOGDEN
United States Attorney

/s/

CRISTINA D. SILVA<br>
ELHAM ROOHANI<br>
Assistant United States Attorneys

### CERTIFICATE OF ELECTRONIC SERVICE

This is to certify that the undersigned has served counsel for Defendant Jan Rouven Fuechtener with the foregoing by means of electronic filing.

Jess Marchese, Esq.
Michael Sanft, Esq.
Counsel for Defendant

July 12, 2016

/s/ Cristina D. Silva
_____
CRISTINA D. SILVA
Assistant United States Attorney