DANIEL G. BOGDEN
United States Attorney
CRISTINA D. SILVA
Nevada Bar #13760
ELHAM ROOHANI
Nevada Bar #12080
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6338
cristina.silva@usdoj.gov
elham.roohani@usdoj.gov

Attorneys for Plaintiff
United States of America

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JAN ROUVEN FUECHTENER,<br><br>    Defendant. | 2:16-cr-00100-GMN-PAL<br><br>RESPONSE TO DEFENDANT'S MOTION FOR SCENE VIEWING (ECF No. 78) |

The United States of America, through the undersigned, respectfully responds to the Defendant's Motion for Scene Viewing. ECF No. 78. For the reasons set forth below, the Government respectfully requests that this Honorable Court deny the motion.

…

…

…

1

# STATEMENT OF RELEVANT FACTS

## A. PROCEDURAL FACTS

On March 30, 2016, a federal Grand Jury sitting in Las Vegas, Nevada, issued an indictment against the defendant, Jan Rouven Fuechtener, charging him with one count of Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B); one count of Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b); one count of Receipt of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2) and (b); and one count of Advertising of Child Pornography, in violation of Title 18, United States Code, Section 2251(d)(1)(A). The indictment also contains forfeiture allegations pertaining to the child pornography allegations.

## B. SUBSTANTIVE FACTS

In August 2015, a Task Force Officer (TFO) from the FBI Buffalo Field Office Child Exploitation Task Force (CETF), operating in an undercover capacity, was accepted into the network of an individual utilizing the user name "Lars45" on the GigaTribe peer-to-peer (P2P) file-sharing network.

GigaTribe is a publicly available peer-to-peer (P2P) file sharing program that allows one person to share his or her computer files with another person over the internet. The shared files can contain video, audio, or image files. Unlike other programs like Dropbox, GigaTribe does not host the files, but rather the files remain on the user's own computer. Thus, each computer in the network stores its own files and runs its own applications. One benefit of the software is that it allows users to invite other people, i.e. "friends" in their "tribe," to view and download from specific password protected

folders. GigaTribe has become a favored method for sharing illegal materials such as child pornography because it limits who can download from the user by requiring actual contact between users to obtain the password for each folder. This actual contact can be happen within the GigaTribe chat function or on other platforms, such as Skype or Grindr. GigaTribe is also preferred because it allows likeminded friends to obtain passwords to the folders, and view files before deciding to download the files.

The Lars 45 tribe that the TFO joined had been previously identified as being associated with exchanging child pornography. On August 4, 2015, through a chat message within the GigaTribe P2P file sharing program and within the child pornography interest network, Lars45 initiated contact with the TFO and provided the password to his locked shared folders on GigaTribe. The TFO was able to browse Lars45's shared directories and observed thumbnail previews of many images/videos of child pornography, as well as file titles indicative of child pornography.

On September 14, 2015, the TFO signed on to GigaTribe and observed that Lars45 was again logged into the network. Using the password previously supplied by Lars45, the TFO successfully downloaded numerous files of child pornography from the password protected folders Lars45 was sharing. The files of child pornography were from one IP address. In this case, the IP address that provided the password to the child pornography files was determined to originate from ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ("the Residence"). Subpoenas sent to GigaTribe revealed that the account had an email address of larsschmidt22@hotmail.com.

---

[1] Redacted pursuant to Court Order. ECF No. 83.

On January 21, 2016, FBI Special Agent Mari Panovich executed a Federal search warrant at the Residence. U.S. Magistrate Judge Nancy J. Koppe issued the search warrant after a probable cause determination regarding an ongoing distribution and possession of child pornography investigation. *See In re Property Known as* ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓, *City of Las Vegas, County of Clark, State of Nevada*, No. 2:16-mj-37-NJK. Upon execution of the aforementioned search warrant, law enforcement made contact with Fuechtener at the subject residence, which is owned by Fuechtener and Frank Dietmar Alfter, the Defendant's husband.

The agents seized 38 devices, and two alarm clock cameras located throughout the Residence. Trained experts conducted forensic examination of the devices found throughout the Residence, and discovered that devices found in virtually every area of the house revealed child pornography videos and images.

Fuechtener was later indicted by the Federal Grand Jury on the above mentioned charges. At his arraignment, he pled not guilty. ECF No. 16.

## **ARGUMENT**

At issue in this Motion is whether this Honorable Court "should exercise its discretion and allow an in person viewing of the defendant's home where the electronic devices were located. . ." ECF No. 78. This Court's decision on the matter "may not be disturbed in the absence of a clear showing of abuse of sound judicial discretion." *Hametner v. Villena*, 361 F.2d 445, 445 (9th Cir. 1966).

This Court should deny the motion for three reasons: (1) the Defendant has failed to make a threshold showing of relevance for admissibility; (2) the evidence would be cumulative, confusing, or misleading to the fact-finder; and (3) the factors do not weigh

in favor of of granting the motion.

...

### 1. There is no relevant basis to view the defendant's home.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

To prove the charged crime of possession of child pornography, the Government must show that the defendant knowingly possessed child pornography that had traveled in interstate commerce. 18 U.S.C. § 2252A(a)(5)(B). To prove the charged crimes of receipt and distribution of child pornography, the Government must show that the defendant knowingly received and distributed child pornography that had traveled in interstate commerce. 18 U.S.C. § 2252A(a)(2) and (b). To prove the charged crimes of advertising of child pornography, the Government must show that the defendant knowingly made or published, or caused to be made or published, a notice and advertisement offering to exchange, display, distribute and reproduce child pornography that had traveled in interstate commerce. 18 U.S.C. § 2251(d)(1)(A).

As the defense is well aware from the voluminous discovery provided by the Government, the facts of this focus *entirely* on internet and computer files. The Defendant asserts that "[t]he trier of fact will be aided greatly if given the ability to see the defendant's home." ECF No. 78. What the defense fails to meaningfully address is *how* the finder of fact would be aided in seeing "the sheer enormity of the residence or spatial reference of the vantage points in the home" for a case that involves only internet downloading and advertising of child pornography. *Id.*

The defense has failed to identify any revelant basis upon which the Court could grant its motion, and cannot identify any relevant basis because the size of the house is not probative of any fact of consequence. Fed. R. Evid. 401, 402. How big a house the Defendant lived in is immaterial to the issue of whether the Defendant, via the internet, did knowingly possess, receive, distribute, and advertise child pornography. 18 U.S.C. § 2252A(a)(5)(B); 18 U.S.C. § 2252A(a)(2) and (b); 18 U.S.C. § 2251(d)(1)(A).

**2. Even if the size of the house is relevant, a viewing is unnecessary.**

Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger that admission of the evidence would be cumulative, confuse the issues, or mislead the fact-finder. Fed. R. Evid. 403.

Assuming *arguendo* that the size of the house is relevant to something in this case, the Defendant offers no explanation why a to-scale diagram of the house is insufficient to allow the fact-finder to "understand the layout and vantage points of the residence." ECF No. 78. Indeed, the Government intends to introduce a diagram of the home, which effectively and efficiently gives the fact-finder an understanding of the layout of the home and spatial reference of the vantage points in the home, and which will indicate where each device that contained child pornography was found within the home. Once the Government introduces the diagram in its case-in-chief, the Defendant's request becomes cumulative and impertinent.

In any event, requiring the fact-finder to view the size of a home, confuses the very limited issues in this case that involve an "online" or "computer-based" crime scene. The Supreme Court has noted that "[t]he mere bringing of a jury to a particular place, whether a building or a room or a wall with a bullet hole, is in effect a statement that

this is the place which was the scene of the offense. . ." *Snyder v. Massachusetts*, 291 U.S. 97, 110 (1934) (abrogated on other grounds by *Malloy v. Hogan*, 378 U.S. 1 (1964)).

Forcing the fact-finder to view a home suggests that "this is the place which was the scene of the offense. . ." *Id.* But, in this case, the "crime scene" is a computer, or online, in cyberspace. At a minimum, viewing the Defendant's home in this case would confuse the issues or mislead the jury into thinking that where the Defendant lives, the size of his home, how his home is architecturally designed, or what type of furnishings he keeps are relevant to this case. They are not, and granting the motion will only encourage a distracting field-trip sideshow. The motion should be denied.

**3. Even assuming that the evidence is relevant, and otherwise admissible, the factors do not weigh in favor of granting the motion.**

No binding authority has set forth a comprehensive set of factors for the Court's consideration, but the factors set forth by the Defendant do reflect a compilation of factors used by courts across the country. In considering those five factors, the Court may exercise its wide-latitude and deny the motion.

a. Cumulative Evidence

Relying on Federal Rule of Evidence 403, the Fifth Circuit considered whether evidence that would be cumulative or prejudicial should be admitted. *See Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 958 (5th Cir. 1979), *as amended*. In *Johnson*, a mother brought a next-of-kin civil lawsuit for damages when her son died as a result of injuries from a cotton compress. *Id.* at 952. One of her appellate challenges focused on the district court's denial of her motion to admit video of the accident or to allow the jury to view the cotton press in operation. *Id.* at 958. The Fifth Circuit upheld

7

1  the denial as both cumulative (as to the videos) and prejudicial (as to the site viewing).
2  *Id.* The Court reasoned that while the "film might have been more graphic," the evidence
3  was cumulative because the operation had already been fully described. *Id.* The Court
4  further held that because guards had been installed since the accident, the site viewing
5  would have been prejudicial. *Id.*

6  As discussed above, the Government intends to introduce a diagram of the home
7  in its case-in-chief, which will make the Defendant's request cumulative. While the site
8  viewing might be more "graphic," it will undoubtedly be cumulative. Moreover, it is
9  entirely unknown what state the home is in, or what the Defendant's husband removed
10  from the residence during the pendency of this case. Accordingly, this Court may also
11  determine that the viewing would be prejudicial if the site has been modified in any way.
12  Thus, this Court may determine that this factor weighs against granting the motion.

13        b.  <u>Unwarranted Delay and Inconvenience</u>

14  The Ninth Circuit has also considered site viewing in the context of delay and
15  inconvenience, in light of other evidence presented. *See Hametner*, 361 F.2d at 445–46.
16  *Hametner* was a civil case involving a collision between a motorcycle and a truck. *See*
17  *id.* at 445. After the district court denied his motion to allow the jurors view the accident
18  scene, Hametner appealed. *Id.* The Ninth Circuit upheld the district judge's decision on
19  the basis that the introduced evidence "included photographs and a surveyor's diagram
20  of the scene," and thus, viewing the scene "with its attendant delay and inconvenience,
21  was unnecessary and unwarranted." *Id.* at 446. While not explicitly stated, the Ninth
22  Circuit's reasoning also reflected consideration of cumulative evidence. *Id.*

23
24

*Hametner* is especially instructive considering that the Government's case-in-chief will include photographs and a diagram of the scene. Once this evidence is introduced, the conclusion of *Hametner* logically flows --- viewing the scene "with its attendant delay and inconvenience, [is] unnecessary and unwarranted." *Id.* This factor, too, weighs against granting the motion.

          c. <u>Prejudicial Comments or Conditions</u>

The Seventh Circuit has had occasion to consider site viewing in the context of a § 2254 habeas petition. *See Lopez v. Thurmer*, 573 F.3d 484, 494 (7th Cir. 2009). In *Lopez*, the Seventh Circuit held that it was not "contrary to," and an unreasonable application of "clearly established federal law," when the district court allowed a site viewing with heightened security measures in effect. *Id.*

*Lopez* offers little in way of guidance based upon the unique strictures of habeas review under the the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Indeed, the Seventh Circuit considered whether any clearly established Supreme Court authority specifically held that the presence of security of a jury's site viewing violated the Defendant's constitutional rights. *Id.* The Court recognized the "restrictions imposed [ ] by the federal habeas statute." *Id.* at 493. As those restrictions are not present here, this factor is inapplicable.

However, to the extent that the Court does consider this factor, it too weighs in favor of denial. The Defendant suggests that there "would not be any outside influences at the location during the viewing and only court staff and the parties would be present." ECF No. 78. What the Defendant fails to consider is that (1) the Defendant is in custody and would need to be brought to the site courtesy of the United States Marshals Service,

restrained to ensure the safety of the Court, the Marshals, the jurors, Government counsel, and defendant's attorneys; and (2) the jurors once impaneled, or the Judge, would need to be transported to the site courtesy of either the Federal Protective Service, the Courthouse Security Officers, or the United States Marshals Service.[2] Notwithstanding the utmost professionalism shown by Federal Protective Service, the Courthouse Security Officers, and the United States Marshals Service, there is zero guarantee that there would not be prejudicial comments during the transport, and or the restraint conditions of the Defendant would not amount to a prejudicial condition. Thus, this factor weighs against granting the motion.

### d. Change in Appearance

The First and Sixth Circuits have looked to whether the premises are in the same condition since the events in question. *See Dugas v. Coplan*, 506 F.3d 1, 12 (1st Cir. 2007)[3]; *Nw. Nat. Cas. Co. v. Glob. Moving & Storage Co.*, 533 F.2d 320, 323 (6th Cir. 1976). In both cases, the site was relevant and necessary to the theory of the case. *Id.* In both cases, the standard of review was clear error, or prejudicial error. *Id.* Notably, in *Northwestern National*, the opposing side knew about the changes to the site, but still did not appear or object to the site view. *Nw. Nat. Cas. Co.*, 533 F.2d at 323.

Unlike in *Dugas* and *Northwestern National*, the Defendant's house is not relevant or necessary to any theory of the case. The size of the house, no matter how palatial it might be, has no bearing on whether the defendant downloaded and

---

[2] There is the additional burden that a court reporter would need to be present, as well.
[3] *Dugas* is a criminal habeas case not subject to the AEDPA parameters of review.

10

1  advertised child pornography from a computer connected to the internet. Importantly,
2  unlike *Northwestern National*, the Government has not had an opportunity to inspect
3  the house since the execution of the search warrant and has no confidence in the fact
4  that the Defendant's husband, who abruptly left the United States on the eve of the
5  Defendant's first trial setting date, has not altered the house.[4] This factor also weighs
6  against granting the motion.

### e. Tampering with the Site

The First Circuit, in the context of a civil personal injury case, has also considered whether a juror's experimentation during a site view, by "scuffing the stairway with the sole of a shoe" to test the negligent maintenance claim, resulted in prejudice. *See Clemente v. Carnicon-Puerto Rico Mgmt. Assocs., L.C.*, 52 F.3d 383, 387 (1st Cir. 1995) *abrogated by United States v. Gray*, 199 F.3d 547 (1st Cir. 1999). Notably in *Gray*, the First Circuit reversed course and explicitly undermined its holding in *Clemente* by holding that a site view constitutes evidence subject to all the Rules of Evidence, whereas in *Clemente* the site view was not evidence but was only used "as an aid to help the trier of fact understand the evidence." *Gray*, 199 F.3d at 549.

The Defendant's reliance on *Clemente* in light of its definitive abrogation by *Gray*, and the explicit undermining of its reasoning, proves fatal to his argument. But, even assuming that *Clemente* has some continuing validity, the Defendant fails to explain how viewing the size of the home will aid the trier of fact to determine whether or not

---

[4] This is in addition to the fact that the Defendant's husband gave a demonstrably false explanation to local media about why he was abruptly leaving.

the Defendant used a computer connected to the internet to download and advertise child pornography. Without this threshold showing, he does not even reach the factor in articulated in *Clemente*. Thus, this factor is irrelevant, or weighs in favor of denying the motion.

## **CONCLUSION**

Because the Defendant has failed to make a threshold showing of relevance for admissibility, because the evidence would be cumulative, confusing, or misleading to the fact-finder, and because the factors weigh against the Defendant's position, the Government respectfully requests that this Honorable Court deny the motion.

DATED this 29th day of September, 2016.

DANIEL G. BOGDEN
United States Attorney

//s//

CRISTINA D. SILVA
ELHAM ROOHANI
Assistant United States Attorneys