DANIEL G. BOGDEN
United States Attorney
DANIEL SCHIESS
Nevada Bar #5483
CRISTINA SILVA
Nevada Bar #13760
ELHAM ROOHANI
Nevada Bar #12080
LISA CARTIER-GIROUX
Nevada Bar #14040
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
elham.roohani@usdoj.gov
lisa.cartier-giroux@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00100-GMN-CWH |
| Plaintiff, | |
| vs. | **GOVERNMENT'S MOTION TO DISQUALIFY PRO HAC VICE AND DEFENSE COUNSEL** |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

COMES NOW the United States of America, by and through DANIEL G. BOGDEN, United States Attorney, and the undersigned, files this motion to disqualify Amber Craig as *pro hac vice* counsel based on a known conflict of interest, and to disqualify present defense counsel based on an imputed conflict.

…

…

1

## DISCUSSION

Pursuant to Nevada Rules of Professional Conduct ("Nevada Rule") 1.11 and 1.7, as well as 18 U.S.C. § 207, the Government moves to disqualify Amber Craig from representing the Defendant in the above-captioned case because Ms. Craig has a conflict of interest. Additionally, under Nevada Rule 1.11(b), the Government respectfully requests that this Court also determine that because Ms. Craig was not timely screened, all members of the defense team have an imputed conflict of interest.

### 1. The Government has a duty to bring this conflict to the Court's attention.

A prosecutor's duties of competence and diligence include acting to protect the integrity of criminal proceedings and the rights of criminal defendants. *See, e.g., United States v. Santini*, 85 F.3d 9, 13 (2d Cir. 1996) ("Convictions are placed in jeopardy and scarce judicial resources are wasted when possible conflicts are not addressed as early as possible. We therefore reiterate our admonition to the government in earlier cases to bring potential conflicts to the attention of trial judges.") (citing cases); *United States v. Tatum*, 943 F.2d 370, 379-80 (4th Cir. 1991) ("[W]hen a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel.") (*citing United States v. Agurs*, 427 U.S. 97, 110-11 (1976) (concluding that "although the government attorney must prosecute with 'earnestness and vigor,' he must also be faithful to his client's overriding interest that 'justice shall be done'") (citation omitted)); *Colyer v. Smith*, 50 F. Supp. 2d 966, 973 n.5 (C.D. Cal. 1999) (noting that criminal cases "present constitutional and prudential issues different than those found in civil cases" and "the unique ethical and legal obligations of prosecutors,"

which "includes 'the duty to protect the interests of all people, including, of course, the legitimate rights of those accused of crime in federal courts'"). The Supreme Court has concluded: "Nor may a defendant insist on the counsel of an attorney who has a previous relationship with the opposing party, even when the opposing party is the Government." *See Wheat v. United States*, 486 U.S. 153, 159 (1988) (noting that the Defendant may not waive this type of conflict).

To satisfy its duties of competence and diligence to the United States under Nevada Rules 1.1 and 1.3, the government brings this matter to the Court's attention via this Motion.

**2. Under Nevada Rule 1.11(a), Ms. Craig should be disqualified from representing the Defendant because she participated personally and substantially in the above-captioned matter when she was an Assistant United States Attorney.**

Nevada Rule 1.11(a), which, in relevant part, prohibits a lawyer who has formerly served as a public officer or employee of the government from "represent[ing] a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation." Nev. R. Prof'l Conduct 1.11(a)(2). As used in Nevada Rule 1.11, the term "matter" includes:

> (1) Any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties, and
> (2) Any other matter covered by the conflict of interest rules of the appropriate government agency.

Nev. R. Prof'l Conduct 1.11(e). Although the Nevada Rules do not contain any commentary,

3

Comment [10] to Rule 1.11 of the American Bar Association's Model Rules of Professional Conduct, on which the Nevada Rules are based, explains that "a 'matter' may continue in another form. In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." *See also* ABA Comm. on Ethics & Prof'l Resp. Formal Op. 342 (Nov. 24, 1975) (hereinafter "ABA Formal Op. 342") (cited with approval in interpreting the predecessor to Nevada Rule 1.11 by the Standing Committee on Ethics and Professional Responsibility of the Nevada State Bar in State Bar of Nev. Standing Comm. on Ethics & Prof'l Responsibility, Op. No. 6 (Dec. 16, 1976)) ("The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter."); ABA Comm. on Ethics & Prof'l Resp. Formal Op. 97-409, n.6 (Aug. 2, 1997) (hereinafter "ABA Formal Op. 97-409") ("In determining whether two matters should be regarded as the 'same' matter for purposes of disqualification under Rule 1.11 or its predecessor Code provision DR 9-10 l (B), courts have sometimes framed their inquiry in terms of whether the two matters are 'related' or 'substantially related.' . . . In order to qualify as the 'same matter' under Rule 1.11, both the old and new representations must involve 'a discrete and isolatable transaction or set of transactions between identifiable parties.'")

Although the phrase "personally and substantially" might suggest that a lawyer's participation in a prior matter must be extensive to justify disqualification, case law and ethics opinions suggest otherwise. As explained in ABA Formal Op. 342: "[S]ubstantial responsibility" envisages a much closer and more direct relationship than

4

that of a mere perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree, in the investigative *or deliberative processes* regarding the transactions or facts in question . . . . Yet it is not necessary that the public employee or official shall have personally and in a substantial manner investigated or passed upon the particular matter, for it is sufficient that he had such a heavy responsibility for the matter in question that it is unlikely he did not become personally and substantially involved in the investigative or deliberative processes regarding the matter. With a responsibility so strong and compelling that he probably became involved in the investigative or decisional process, a lawyer upon leaving the government service *should not* represent another in regard to that matter. To do so would be akin to switching sides, *might jeopardize confidential government information*, and gives the appearance of professional impropriety in that accepting subsequent employment regarding that same matter creates a suspicion that the lawyer conducted his government work in a way to facilitate his own future employment in that matter. *See also United States v. Smith*, 995 F.2d 662, 675-76 (7th Cir. 1993) (finding that a former AUSA's involvement was personal and substantial under Illinois Rule 1.11(a) where the former AUSA supervised another AUSA in charge of a related investigation and attended high-level meetings regarding the related offense and the instant case).

Here, as set forth in the *ex parte* sealed declarations attached to this motion, Ms. Craig personally and substantially participated in the investigative and deliberative process related to this exact case. Should she be allowed to represent the Defendant, she will be representing him in the same "matter," which gives rise to the conflict. The United States

5

does not, and will not, provide consent as it relates to this conflict.

**3. <u>Under Nevada Rule 1.11(c), Ms. Craig should be prohibited from representing the Defendant because she knows confidential government information acquired when she was an Assistant United States Attorney, and the Defendant's interests are adverse to the United States.</u>**

Nevada Rule 1.11 (c), which prohibits "a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee [from] represent[ing] a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person," "[e]xcept as law may otherwise expressly permit." The Rule defines "confidential government information" as "information that has been obtained under governmental authority and which, at the time [the] Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public.'" Nev. R. Prof'l Conduct 1.11(c). Although the Rule permits a firm with which a lawyer is associated to undertake or continue the representation of a client if a disqualified lawyer "is timely screened from any participation in the matter and is apportioned no part of the fee therefrom," it contains no provision by which the former government employer, the current client, or the person about whom the lawyer has confidential government information may consent to the lawyer's representation of the client. *See id.*

As set forth in the *ex parte* sealed declarations attached to this motion, Ms. Craig learned confidential government information for which the Government had legal privilege not to disclose trial strategy, which is not otherwise available to the public.  Additionally,

6

the Defendant's interests are adverse to the United States in this matter, and information gleaned from her time as an AUSA could be used to the material disadvantage of the United States.

**4. Under Nevada Rule 1.7(a)(2), Ms. Craig should be prohibited from representing the Defendant because there is significant risk that the representation will be materially limited by her responsibilities to her former client, the United States.**

Nevada Rule 1.7 generally prohibits a lawyer from representing a client where there is a significant risk that the representation . . . will be materially limited by the lawyer's responsibilities to . . . a former client . . ." Nev. R. Prof'l Conduct l .7(a)(2). Here, Ms. Craig;s representation of the defendant will most likely be materially limited by her duty of confidentiality to her former client, the United States, who does not and will not consent to the disclosure or use of its confidential client information. And because that duty would prohibit her from disclosing information that could be useful to the defendant either in challenging and/or defending against the charges her representation is materially limited and a conflict arises. *See* ABA Formal Op. 97-409 ("If a lawyer has information relating to the prior representation of her government client that would necessarily be used or revealed in a new client's cause, but which her former client will not allow her to use or reveal, her obligations to her former client under Rule l.9(c) would almost certainly be deemed to 'materially limit' her representation of the new client under Rule 1.7(b). Not only could her inability to use or reveal her former government client's confidences compromise her competence and zeal in the new representation, but she would be subject to a disqualification motion by her former government client based on her knowledge of its

confidences.").

A lawyer's duty of confidentiality to a former client is governed by Nevada Rule l.9(c), which states:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) Use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) Reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Nevada Rule 1.8(b) prohibits a lawyer from "us[ing] information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules." Nevada Rule 1.6(a) prohibits a lawyer from "reveal[ing] information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraphs (b) and (d)."

As explained by the Standing Committee on Ethics and Professional Responsibility of the Nevada State Bar, "[t]he information protected by the lawyer's ethical confidentiality duty under Rule 1.6 is much broader than privileged information protected by the attorney-client privilege . . ." State Bar of Nev. Standing Comm. on Ethics & Prof'l Resp., Formal Op. No. 41 (June 24, 2009). The Rule applies:

> 1. Even if the client has not requested that the information be held in confidence or does not consider it confidential. Thus, it operates automatically;
> 2. Even though the information is not protected by the attorney-client privilege;
> 3. Even if the information is not embarrassing or detrimental to the client;

8

> [and]
> 4. Whatever the source of the information; i.e., whether the lawyer acquired the information in a confidential communication from the client or from a third person or accidentally.

*Id.* None of the exceptions to Nevada Rule l.6(b) or (d) would permit or require opposing counsel to disclose or use the United States' confidential client information in connection with the defendant's case. Therefore, Ms. Craig's representation of the defendant will be materially limited by her duty of confidentiality to the United States, thereby giving rise to a conflict of interest under Nevada Rule 1.7(a)(2).

### 5. **The only exception to the conflict rule does not apply to Ms. Craig.**

A lawyer may represent a client, notwithstanding a conflict of interest under Nevada Rule l.7(a), if:

> (1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) The representation is not prohibited by law;
> (3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) Each affected client gives informed consent, confirmed in writing.

Nev. R. Prof'l Conduct l.7(b). Even assuming that the Defendant would be willing to consent to Ms. Craig's representation, notwithstanding the fact that she could not use or disclose information related to her representation of the United States that may benefit him, Ms. Craig cannot satisfy the first requirement of Nevada Rule 1.7(b), however, as explained by the ABA Committee on Ethics and Professional Responsibility:

> Where the Rule 1.7(b) conflict arises from the lawyer's duty of confidentiality to a former client under Rule l.9(c), the Committee believes it unlikely that the lawyer could

9

form the "reasonable belief" of no adverse affect [sic] since, in addition to the constraints on zealous representation implied by her obligation to keep her former government client's confidences, she would also be vulnerable to a disqualification motion by the government. Thus, while some clients might wish to retain the lawyer even after being fully informed of the high risk of her being subjected to a disqualification motion, no reasonable lawyer could conclude that the very existence of this risk-much less the eventuality of disqualification-would not adversely affect the representation. Accordingly, the lawyer could not undertake the new representation unless the former government client consented to waive the confidentiality barrier posed by Rule l .9(c). ABA Comm. on Ethics & Prof'l Resp., Formal Op. 97-409 (Aug. 2, 1997).

Not only does the Government not waive the conflict, but Ms. Craig's representation of the Defendant is also prohibited by federal criminal law. *See* 18 U.S.C. § 207. Section 207(a)(1) is a permanent bar that prohibits former Federal employees from appearing before any department, agency, or court, as agent or attorney for a third party, in connection with a particular matter involving specific parties, in which the United States is a party or has a direct and substantial interest, if the employee participated "personally and substantially" while serving in his Government position.

"Personally" is defined as participating directly, either individually or in combination with others or through direct and active supervision of the participation of any person he supervises. 5 C.F.R. § 2641.201(i)(2). "Substantial" participation "means that the employee's involvement must be *of significance to the matter*, or form a basis for a reasonable appearance of such significance." 5 C.F.R. § 2641.201(i)(3) (emphasis added). Participation

may be substantial even though it is not determinative of the outcome of a particular matter. However, it requires more than official responsibility, knowledge, perfunctory involvement, or involvement on an administrative or peripheral issue. A finding of substantiality should be based not only on the effort devoted to a matter, but also on the importance of the effort. While a series of peripheral involvements may be insubstantial, the single act of approving or participating in a critical step may be substantial. Provided that an employee participates in the substantive merits of a matter, his participation may be substantial even though his role in the matter, or the aspect of the matter in which he is participating, may be minor in relation to the matter as a whole. 5 C.F.R. § 2641.201(i)(3).

The term "participation" includes action through "decision, approval, disapproval, recommendation, *rendering of advice*, investigation, or other such action." 18 U.S.C. § 207(i)(2) (emphasis added). Also, the assessment of whether the "same particular matter" is involved during the attorney's employment with the Department of Justice and post-employment includes considering, inter alia, whether the matter involves the "same basic facts, the same or related parties, related issues, the same confidential information and the amount of time that has elapsed." 5 C.F.R. § 2641.201(h)(5). Finally, the prohibition lasts for "life" of the particular matter in question. 5 C.F.R. § 2641.201(c).

As discussed above, under the same framework of Nevada Rule 1.11, Ms. Craig's involvement in this case constitutes personal and substantial involvement, and thus there is a lifetime ban on her representation of the Defendant in this matter.

6. **The Government respectfully requests that this Court conduct an inquiry in what information Ms. Craig has communicated to the defense team through her association with this case.**

11

Upon learning of Ms. Craig's association with the defense team as related to this case through the *pro hac vice* application filed on Monday, October 10, 2016, the Government alerted defense counsel to the conflict prior to calendar call on October 11, 2016. Defense counsel indicated that Ms. Craig informed the defense team that she had not worked on this case and would not be conflicted. However, as demonstrated through the *ex parte* sealed declarations in this case, that is not the case. Ms. Craig is conflicted off this case both under the Rules of Professional Conduct and a criminal statute. 18 U.S.C. § 207.

The Nevada Rule automatically imputes the conflict and lays the burden on the defense to show that Ms. Craig was timely screened and give the Government written notice to enable the Government to ascertain compliance with the Rule. *See* Nev. R. Prof'l Resp. 1.11(b). But, based on comments made by defense counsel at calendar call, it is apparent that Ms. Craig was not timely screened and has discussed the case with defense counsel. Under the Nevada Rules, it is of no consequence whether Ms. Craig remembers the conversations, whether she intentionally or inadvertently revealed confidential information to the defense team, what the nature of the conversations was, or whether the defense team intends to use that information in preparing its defense. *See id.* In fact, it is entirely possible that Ms. Craig does not remember the conversations but has internalized the information as her own thoughts and revealed them to the defense team. Regardless, unless the defense can show that Ms. Craig was screened, her conflict is imputed to the whole defense team under Nevada Rule 1.11(b).

Based on defense counsel's representations that he has spoken with Ms. Craig about the case, and because defense counsel does not know what was discussed by the AUSA's and

12

Ms. Craig in confidence as set forth in the *ex parte* sealed declarations, the Government respectfully requests that this Court find that present defense counsel is conflicted as a matter of law.[1]

The Government respectfully requests that this Court disqualify Amber Craig as *pro hac vice* counsel based on an actual conflict of interest, and present defense counsel based on an imputed conflict of interest. The Government also respectfully requests that the Court keep the attached exhibits *ex parte* and under seal as it contains specific information related to trial strategy.

Respectfully submitted this 14th day of October, 2016.

                        DANIEL G. BOGDEN
                        United States Attorney

                        /s/

                        DANIEL SCHIESS
                        CRISTINA SILVA
                        ELHAM ROOHANI
                        LISA CARTIER-GIROUX
                        Assistant United States Attorneys

---

[1] Although not authorized by law, should the Court conduct an inquiry into the overlap of information given to Ms. Craig and the information Ms. Craig conveyed to the defense team, the Government requests an evidentiary hearing so that all parties may be sworn under penalty of perjury.