DANIEL G. BOGDEN
United States Attorney
DANIEL SCHIESS
Nevada Bar #5483
CRISTINA SILVA
Nevada Bar #13760
ELHAM ROOHANI
Nevada Bar #12080
LISA CARTIER-GIROUX
Nevada Bar #14040
Assistant United States Attorneys
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
daniel.schiess@usdoj.gov
cristina.silva@usdoj.gov
elham.roohani@usdoj.gov
lisa.cartier-giroux@usdoj.gov
Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00100-GMN-CWH |
| Plaintiff, | |
| vs. | **GOVERNMENT'S SUPPLEMENTAL BRIEFING TO MOTION TO DISQUALIFY PRO HAC VICE AND DEFENSE COUNSEL** |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

The United States, through the undersigned, submits this supplemental briefing as requested by the Court at the evidentiary hearing held on October 24, 2016. ECF No. 118. The Court expressed concerns at the evidentiary hearing that Ms. Craig was not an associate of either Mr. Marchese's or Mr. Durham's law firms[1] such that the

---

[1] The Government notes that the arguments in support of disqualification more strongly support disqualification of Mr. Marchese, who filed the *pro hac vice*

1

conflict could be imputed.  The Court asked the parties to brief two issues: (1) Nevada law interpreting NRPC 1.11, and (2) the process for a party's appeal of the Court's decision in this case.

I. **Nevada Law interpreting NRPC 1.11**

a. **NRPC 1.11**

NRPC 1.11 sweeps more broadly than merely disqualifying "associates" of a firm as used colloquially to describe associates and partners of a firm.  To be sure, the difference between the language of NRPC 1.10 and NRPC 1.11 indicates that NRPC 1.11 must sweep more broadly.  NRPC 1.10, which deals with the imputation of conflicts of interest generally, reads "[w]hile lawyers are associated *in a firm* . . ." their conflicts impute to all members of that firm.  NRPC 1.10(a).  But then, NRPC 1.10 instructs "[w]hen a lawyer becomes associated with a firm, no lawyer associated *in the firm* shall knowingly represent a person in a matter in which that lawyer is disqualified . . ." NRPC 1.10(e).  In contrast to NRPC 1.10, NRPC 1.11, which deals with imputation of conflicts of government attorneys, instructs that "no lawyer in a firm *with which that lawyer is associated* may knowingly undertake or continue representation in such a matter . . ." Whereas NRPC 1.10 speaks about attorneys "in a firm," NRPC 1.11 contains no such limitation.  NRPC 1.11 contemplates a broader application, i.e. that an attorney may be associated *with* the firm without being *in* the firm.

---

application, rather than Mr. Durham.  However, as the Government is unaware what information Ms. Craig may have communicated to Mr. Durham, the Government continues to seek disqualification of Mr. Durham, as well.

2

Additionally, consideration of the *pro hac vice* rules is also important in this case. The Nevada Supreme Court rule regarding *pro hac vice* applications uses the word "associates" and explains that a lawyer retained to represent a client must "associate[] an active member in good standing of the State Bar of Nevada as counsel of record in the action or proceeding," among other requirements. Nev. Sup. Ct. R. 42(2)(f). The Rule is replete with references that the *pro hac vice* applicant associates with his or her sponsor. Nev. Sup. Ct. R. 42(2)-(3).

Notably, NRPC 1.10, 1.11, and Nev. Sup. Ct. R. 42 all use the word "associate" as a verb, rather than a noun. Considering the legislature's use of the word as a verb, rather than a noun, the Court too should look at the actions of the attorney rather than their position or title in a law firm.

The logical breadth of NRPC 1.11 becomes apparent when considering the facts of this case, and Ms. Craig's *pro hac vice* application. Ms. Craig is not licensed to practice law in the State of Nevada, as noted in the *pro hac vice* application filed on her behalf by Mr. Marchese. The only way that she could practice law in Nevada would be to associate with a licensed attorney in the State of Nevada. Of course, that does not mean she becomes an associate of Mr. Marchese's firm, as used colloquially. Indeed, the entire purpose of the *pro hac vice* application is to avoid having to become an associate of a law firm for all purposes to practice on any single case. Ms. Craig and Mr. Marchese did in fact associate, and did so only for the purposes of this case. Without that association, there could be no *pro hac vice* application. The use of the word "associate" as a verb, rather than a noun, further supports the Government's

3

position that the word "associate" in NRPC 1.11 refers to the actions of the attorney in intending to associate his or herself with another attorney or law firm, rather than a position that attorney holds in a law firm, either as an associate, partner, paralegal, or secretary. Indeed, as discussed below when considering the Nevada case law, the word associate cannot refer to a title, otherwise it would exclude non-lawyer employees, who are undoubtedly encompassed within the rule.

To not apply the imputation rule to any *pro hac vice* applicants, such as Ms. Craig and her association with Mr. Marchese (and thereby his solo-practitioner firm) for the purpose of practicing on this case, would create an end run around any imputation of conflicts for *pro hac vice* applicants. This circumvention of the rule would be further exacerbated when the sponsor is the only attorney in a law firm. To be sure, if the Court interprets the rule to only apply to attorneys who are hired as associates of a firm as understood in the common vernacular, two things would regularly happen. First, former government attorneys would be free to disseminate confidential information to their *pro hac vice* sponsors and the Government would be left with no recourse to attempt to disqualify the sponsor for having received that confidential information. Second, the sponsor would have zero incentive to attempt to abide by the rule and screen the former government attorney rendering NRPC 1.11(b) to be mere surplussage and any protection that the rule provides to be wholly illusory. This interpretation, which would effectively insulate *pro hac vice* sponsors from threat of imputed disqualification in all instances, and could degrade public trust in the fairness of the criminal justice system.

The Government is cognizant of the Court's concern of disqualifying an entire law firm based on a *pro hac vice* application by one attorney in that firm.  However, the Court should also consider that both Mr. Marchese and Mr. Durham are solo practitioners; they are themselves, for all intents and purposes, *the* law firm because there is no other attorney being disqualified. The Court should also factor the unique circumstances that a *pro hac vice* application has in this case. For example, the entire purpose of Ms. Craig's application was to associate with a locally barred attorney for this single case.  Often, if not always, *pro hac vice* attorneys do not share office space, supplies, email addresses, or anything else but knowledge (including confidential knowledge) with local counsel.

### b. **Nevada Case Law regarding imputed disqualifications**

At the evidentiary hearing, the Court asked the parties to address two Nevada cases, *Ryan's Express v. Amador Stage Lines*, 279 P.3d 166 (2012), and *Brown v. Eighth Judicial Dist. Court*, 14 P.3d 1266 (2000).  The Government notes that *Ryan's Express* and a different Nevada case provide some guidance.  But, *Brown* is not instructive because its reasoning has been implicitly overruled, and otherwise undermined by the fact that the case that it applies has since been explicitly overruled.  No Nevada case is on all fours with this case, specifically because no Nevada case has considered the effect of a *pro hac vice* application on imputed conflicts.  Thus, this Court is left to predict what the Nevada Supreme Court would decide. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1126 (9th Cir. 2005).  As noted by the California court, there is a dearth of case law regarding conflict of interest questions as they affect

5

former government attorneys. *See In re Lee G.*, 1 Cal. App. 4th 17, 34, 1 Cal. Rptr. 2d 375, 385 (1991), *reh'g denied and opinion modified* (Dec. 9, 1991) (explaining that "rules developed in the private sector do not squarely fit the realities of public attorneys' practice.")

A court must disqualify an entire law firm when its shareholder is disqualified if the firm did not take adequate measures to screen the shareholder from the case. *See Ryan's Express*, 279 P.3d at 169. In *Ryan's Express*, the Nevada Supreme Court considered the screening provisions of NRPC 1.12, which allows screening of otherwise disqualified counsel to prevent imputed disqualification. *Id.* When a law firm partner acted as a settlement judge in a matter, the plaintiff argued that the partner's firm should be disqualified from representing the defendant on appeal based on an imputed conflict. *Id.* As the parties agreed that the partner was disqualified, the Nevada Supreme Court remanded the matter for the district court to consider what screening measures were implemented by the law firm and whether those measures were adequate. *Id.* at 172. However, the Nevada Supreme Court placed the burden of proof on the party "seeking to cure an imputed disqualification with screening to demonstrate that the use of screening is appropriate for the situation and that the disqualified attorney is timely and properly screened." *Id.* The Court imputed the conflict automatically, and left that imputation in place, unless and until the party seeking to cure the conflict could should adequate, timely, and proper screening. *Id.*

In 2000 in the case of *Brown*, the Nevada Supreme Court considered a double imputed conflict imputed by a non-lawyer employee under the then-recent decision of

6

*Ciaffone v. Eighth Judicial Dist. Court*, 945 P.2d 950 (1997). *Id.* Three years later, *Ciaffone* was overruled by *Leibowitz v. Eighth Judicial Dist. Court.* 78 P.3d 515 (2003). As stated by the Court in *Brown*, the issue in that case was whether "whether *Ciaffone*'s rationale supports the imputed disqualification of co-counsel Mehesan for an appearance of impropriety without evidence of a reasonable probability that there was a transfer of privileged, confidential information." *Brown*, 14 P.3d at 1269. In line with *Ciaffone*'s prohibition on screening non-lawyer employees, *Brown* required a showing that "the challenged attorney actually received privileged or confidential information." *Id.* at 1270. Indeed, *Brown* did not discuss or consider screening of non-lawyer employees. *See id.*

The holding in *Brown*, which was based entirely on the overruled reasoning of *Ciaffone*, holds little continuing weight. In *Leibowitz*, the Nevada Supreme Court overruled *Ciaffone* holding that "*Ciaffone* misapprehended the state of the law." *Leibowitz*, 78 P.3d at 521. In its place, the Nevada Supreme Court held "[w]hen a law firm hires a nonlawyer employee, the firm has an affirmative duty to determine whether the employee previously had access to adversarial client files. If the hiring law firm determines that the employee had such access, the hiring law firm has *an absolute duty* to screen the nonlawyer employee from the adversarial cases *irrespective of the nonlawyer employee's actual knowledge of privileged or confidential information.*" *Id.* (emphasis added). *Leibowitz*'s holding flies in the face of *Brown*, and implicitly overrules *Brown*. *Id. Leibowitz* goes further, however, and explains that even if a law firm screens a new employee, "disqualification will always be required" when the

7

employee "would be required to work on the other side of a matter that is the same as or substantially related to a matter on which [the employee] has previously worked." *Id.* at 522.

The Nevada Supreme Court further set forth factors to consider in determining whether screening has been effective: "(1) the substantiality of the relationship between the former and current matters, (2) the time elapsed between the matters, (3) the size of the firm, (4) the number of individuals presumed to have confidential information, (5) the nature of their involvement in the former matter, (6) the timing and features of any measures taken to reduce the danger of disclosure, and (7) whether the old firm and the new firm represent adverse parties in the same proceeding, rather than in different proceedings because inadvertent disclosure by the nonlawyer employee is more likely in the former situation." *Id.* (internal quotation marks omitted).

While there is no Nevada case that squarely addresses the issue before this Court, *Ryan's Express* and *Leibowitz* are helpful in that they explain that the focus must be on the screening procedures for both lawyers and non-lawyers. Regardless of whether Ms. Craig is considered a lawyer or non-lawyer employee associated with Mr. Marchese and/or Mr. Durham's law firms, there were no screening procedures in place, which requires imputed disqualification. And, even if there were screening procedures in place, disqualification is still required because Ms. Craig was attempting to work on the very matter that caused her to be disqualified in the first place. As in *Ryan's Express*, the burden is on Mr. Marchese and Mr. Durham to show that they had

appropriate screening measures, and that they timely and properly screened Ms. Craig, because she was associated with their firms for the purposes of this case. *Ryan's Express*, 279 P.3d at 172.

Considering the factors in *Leibowitz*, all the factors weigh in favor of disqualification. *Leibowitz*, 78 P.3d at 522. To be sure, (1) the former and current matters are identical; (2) there is no time elapsed because they are the same matter; (3) Mr. Marchese and Mr. Durham's firms are both small solo practitioner firms; (4) the number of people having this confidential information is limited to the current AUSA's of record, the case agent, and Ms. Craig; (5) Ms. Craig's involvement was direct, personal, and substantial; (6) the defense took no measures to reduce the danger of disclosure; and (7) the Government and defense represent adverse parties in the exact same proceeding. *Id.*

As Mr. Marchese and Mr. Durham associated with Ms. Craig specifically for the purpose of working on this case, and employed no screening measures, this Court should find that Ms. Craig's disqualification is imputed to them, as well.

## II. Appellate Procedure

Under Nevada and Federal law, "a writ of mandamus is properly used to challenge a district court's order disqualifying counsel." *Brown*, 14 P.3d at 1271; *Cole v. U.S. Dist. Court*, 366 F.3d 813, 816 (9th Cir. 2004). The Ninth Circuit considers five factors set forth in *Bauman v. United States Dist. Court*, in deciding on a case-by-case basis whether a writ of mandamus should be granted. 557 F.2d 650 (9th Cir. 1977). These factors are whether "(1) the party seeking the writ has no other means, such as a

direct appeal, of attaining the desired relief, (2) the petitioner will be damaged in a way not correctable on appeal, (3) the district court's order is clearly erroneous as a matter of law, (4) the order is an oft-repeated error, or manifests a persistent disregard of the federal rules, and (5) the order raises new and important problems, or issues of law of first impression." *Cole*, 366 F.3d at 817 (citing *Bauman*). Evidence of all the *Bauman* factors does not mandate issuance of the writ, nor does a showing of only one factor mandate denial. *Id.* Instead, issuance of the writ is within the discretion of the Court of Appeals. *Id.*

## CONCLUSION

The Government respectfully requests that this Court disqualify Mr. Marchese and Mr. Durham based on an imputed conflict of interest from Ms. Craig arising from the *pro hac vice* application made by Mr. Marchese associating present defense counsel with Ms. Craig for the purposes of this case.

Respectfully submitted this 28th day of October, 2016.

DANIEL G. BOGDEN
United States Attorney

/s/

ELHAM ROOHANI
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I, ELHAM ROOHANI, certify that the following individual was served with a copy of the GOVERNMENT'S SUPPLEMENTAL BRIEFING TO MOTION TO DISQUALIFY

PRO HAC VICE AND DEFENSE COUNSEL on this date by the below identified method of service:

Electronic Case Filing

Jess R. Marchese, Esq.
Counsel for Defendant
601 Las Vegas Blvd. South
Las Vegas, NV 89101

DATED:      October 28, 2016

                                                          /s/
                                    ELHAM ROOHANI
                                    Assistant United States Attorney