STEVEN W. MHYRE
Acting United States Attorney
ELHAM ROOHANI
Nevada Bar #12080
LISA CARTIER-GIROUX
Nevada Bar #14040
MARK E. WOOLF
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-6336
*elham.roohani@usdoj.gov*
*lisa.cartier-giroux@usdoj.gov*
*mark.woolf@usdoj.gov*
*Attorneys for the United States.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| JAN ROUVEN FUECHTENER, | ) |
| Defendant. | ) |

Case No. 2:16-cr-00100-GMN-CWH

**SUPPLEMENTAL AUTHORITY FOR PRESENTENCE RESTRAINT OF SALE PROCEEDS**

On May 24, 2017, the Court granted the Government's Emergency Motion for Restraining Order Under the All Writs Act (ECF No. 164), ordering the escrow/title company[1] handling the sale of Defendant Jan Rouven Fuechtener's former residence to deposit with the Clerk of Court $80,300 in anticipation of the restitution order at sentencing. *See* ECF No. 167; *see also* Order (ECF No. 169). Shortly after entry of the written order, the Government filed an Emergency Motion (ECF No. 170) requesting modification of the order to require all of the proceeds from the sale be deposited with the Clerk of Court, not just $80,300. The request was based, in large part, on the substantial likelihood that the remaining funds would be dissipated and/or moved to a country outside the Court's jurisdiction before the Government had an opportunity to object,

---

[1] The Government can confirm that the escrow/title company handling the sale is First American Title Insurance based on a phone call from General Counsel for the title company received at approximately 3:15 p.m. on Tuesday, May 30, 2017.

resulting in the precise scenario the Government seeks to avoid.

In its Emergency Motion (ECF No. 170), the Government reiterated that it is not seeking to prevent the sale of the subject property, but only to prevent distribution of the proceeds from the sale to Defendant and/or his insiders until the Court can impose criminal monetary penalties as part of Defendant's sentence, to include: (1) mandatory restitution pursuant to both 18 U.S.C. § 2259 and the plea agreement, (2) mandatory penalty assessments under 18 U.S.C. § 3014, and (3) the imposition of a fine pursuant to 18 U.S.C. § 3571. It remains the Government's position that the $80,300 is insufficient to prevent dissipation by Defendant and his insiders intended to frustrate the Court's ability to enter an order for criminal monetary penalties that includes mandatory restitution and significant fines as outlined herein.

Upon filing of the Government's Emergency Motion, the Court set the motion for hearing, which went forward on May 26, 2017. The Court did not rule on the motion, but it did confirm that its prior order (ECF No. 169) requiring deposit of $80,300 remained in full force and effect. The Court also requested supplemental briefing on the following questions:

1. The status of the sale of the subject property;

2. The ongoing effort of the Government to identify and locate victims;

3. The Government's intent to seek a fine in addition to restitution at sentencing;

4. The consequence/s if a motion to withdraw the plea agreement is filed; and

5. The authority for restraint of assets presentencing if the Court permits withdrawal of the plea agreement.

Pursuant to the Court's request, the Government provides the following supplemental briefing.

**1. The status of the sale of Defendant's former residence located at 7080 Donald Nelson Avenue**

The precise status of whether the sale of Defendant's former residence located at 7080 Donald Nelson Avenue, Las Vegas, Nevada 89131 ("subject property") remains pending or has closed is unclear[2]. It is clear, however, that the subject property (1) was for sale at the time of the

---

[2] The Defendant has an ability to give a more accurate description of the state of the trust and is required to disclose his finances to the United States, United States Probation and Parole, as well as to the Court pursuant to the terms of the Plea Agreement.

preparation of the Presentence Investigation Report ("PSR") for $1,904,205 (*see* PSR at ¶ 28); (2) was purchased in 2012 for $1.2 million in cash (*see* PSR at ¶ 102); and (3) Defendant and his spouse appointed an individual with power of attorney for sale of the subject property[3] (*see* PSR ¶ 82). A copy of the Deed and Declaration of Value, as contained in the public record, are attached. *See* Exhibit 1 attached hereto. The lack of a deed of trust, or other recorded financial encumbrance, further supports the fact that the subject property was purchased for cash. Notably, and contrary to what has been presented by Defendant during the hearings related to this matter, both Defendant and his spouse are identified as Trustees of the F.A.J.R. Magic Trust and a property interest, even if held in a trust, is subject to collection for satisfaction of restitution. *See* Gov't Mot. ECF No. 170 at 4:12 – 6:1.

As noted in its Emergency Motion (ECF No. 170), the Government received information from the Marshals Service on May 11, 2017 "that there was request for the Defendant to sign documents with a title company for the sale of the [subject property.]" *Id* at 2:23 – 3:2. The Government was orally advised, after the Court entered its order requiring deposit of $80,300 with the Clerk of Court, by an individual identified as the Vice President – Nevada Division Sales Manager for First American Title Insurance Company that proceeds from the sale had not been disbursed. *Id* at 3:13 – 3:17. Defendant's counsel confirmed as much at the hearing, wherein she indicated her concern that the Title Company had stated to her that it would not release any of the proceeds until such time as this matter is resolved. *See* ECF No. 172. Counsel for the Government also received a telephone call from General Counsel for First American Title Insurance Company indicating that it would, of its own volition, be placing a hold on disbursement of the funds until such time as this issue is resolved.[4]

Based upon the foregoing, it appears the sale is likely still in pending status, but it is the Government's position that whether the sale has closed or remains pending is immaterial to the

---

[3] Said individual according to Defendant's conversations with Mr. Frank Alfter in the jail calls, was willing to commit immigration fraud by marrying Mr. Alfter (if he divorced the Defendant while he was in jail awaiting trial) in order to allow Mr. Alfter to remain in the United States.

[4] Government counsel was further informed that an attorney (identified as Ivette Maningo) for Defendant's spouse, Frank Dietmar Alfter, had contacted the Title Company and threatened litigation if the entirety of the proceeds from the sale were not immediately released to Alfter by the close of business on May 30, 2017.

analysis or outcome due to the Court's existing order and the Escrow/Title company's representation that it will not disburse funds until this matter is resolved.

**2. The ongoing effort of the Government to identify and locate victims**

Based upon information contained in the PSR, the National Center for Missing and Exploited Children ("NCMEC") identified 92 victims from 88 different series[5]. *See* PSR at ¶ 122. NCMEC is the national repository for victim information in these types of cases. Normally, after forensic analysis is completed on devices, information regarding images of child pornography is sent to NCMEC to identify victims. Then, pursuant to the Crime Control Act of 1990, 42 U.S.C. § 10607, and the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771, NCMEC sends a "Victim Information Report" (VIR) to the federal criminal and prosecutorial agencies to enable victim notification. The VIR includes the child pornography series name identified, as well as the victim's full name, the child's guardian's name (which is often an attorney designee for the purposes of restitution), and notification contact information. The VIR also indicates, who if anyone, has requested contact. As a hypothetical example the VIR reads:

Series Name: purpleheartseries
Victim Name: Female Child Name        DOB: 11-1-2002
Guardian Name: Attorney Roe           Relationship to Victim: Attorney
Notify: Yes                           Method of Notification: email
Contact Information: attorneyroe@restitution.com
Victim Impact Statement on File: YES – on file with VISA

After the entry of a guilty verdict, the United States Attorney's Office, through its victim/witness coordination team, reaches out to those identified victims who have requested notifications. Those victims may then submit their claims for restitution to the United States Attorney's Office, which in turn produces the same to Court and defense counsel. This process continues up to the date of sentencing.

Not all victims are necessarily notified. For example, if NCMEC does not know the identity of a victim, or does not have contact information for the victim, that victim cannot be notified[6]. Identified victims may also initially ask not to be notified for a host of reasons, but may

---

[5] To date, of the 92 victims identified by NCMEC, only 14 have requested restitution in this case at this time.

[6] In this case, 19 of the 92 victims requested notification through NCMEC. As such, there are an additional 5 victims who have been notified and have not yet requested restitution.

change their mind before sentencing, resulting in their notification and request for restitution. Under either of these circumstances, however, it is entirely possible that additional victims may be identified before sentencing by identifying themselves as a victim.

That there remains additional time for victims to be identified, notified, and request restitution underscores the importance of ensuring the terms of the plea agreement are enforced. Defendant agreed "to pay restitution in the amount of $5,000 per victim, for any victim who may be identified through the Child Victim Identification Program (CVIP) and/or Child Recognition Identification System (CRIS) and who requests restitution prior to sentencing." *See* ECF No. 146 at 11:11-15.[7] The only limitation imposed by the plea agreement in regard to restitution, is that the victims must request restitution "prior to sentencing." There is no monetary cap on the amount of restitution that may be requested, i.e., every victim who requests restitution before sentencing is entitled to the benefit of the agreed amount.

The PSR specifically notes "that an aggregate total of 92 victims were positively identified in a total of 88 known 'series[,]'" and it would be inconsistent with the expressly agreed terms of the plea agreement to limit the amount that is placed on deposit with the Court from the sale of the subject property to only those victims that have requested restitution thus far. At minimum, $475,000 ((92 * $5,000) + $15,000 = $475,000) should be deposited to ensure that that the Court is not deprived of its jurisdiction to enter and enforce a restitution order pursuant to the terms of the plea agreement for victims making a claim before sentencing. It may well be that, ultimately, not all identified victims come forward and claim restitution, but in that instance the Court can simply direct the excess funds at the time of sentencing.

### 3. The Government's intent to seek fines in addition to restitution

The United States will be seeking the full amount of the fine at sentencing and will be asking for an updated PSR to accurately reflect the Defendant's current financial ability to pay in light of the change in his financial circumstances. At the change of plea, Judge Navarro specifically asked how many victims had been identified. The Government represented the

---

[7] Defendant also acknowledged that, if his offense conduct occurred after May 15, 2015, he could be subject to an additional $5,000 mandatory penalty assessment "pursuant to the Justice for Victims of Trafficking Act of 2015[.]" ECF No. 146 at 11:15-18. The United States will also be seeking that mandatory penalty assessment at sentencing.

number of victims as 85 (which was the number identified at the time although more have been identified since) and the $425,000 potential restitution the Defendant was facing. *See* David Ferrara, *Former Las Vegas Strip Illusionist Pleads Guilty in Child Porn Case*, Las Vegas Rev. J., Nov. 17, 2016, 5:38 p.m., available at https://www.reviewjournal.com/crime/courts/former-las-vegas-strip-illusionist-pleads-guilty-in-child-porn-case/. Knowing full well the financial implication of the plea agreement, the Defendant still knowingly and voluntarily chose to plead guilty.   At the time of the drafting of the PSR, the Probation Office anticipated a $425,000 restitution award and therefore recommended no fine.   However, from that time, significantly fewer victims than those identified have sought restitution. Therefore, the restitution amount at this time, though subject to change up between now and sentencing, is significantly less than the originally anticipated $425,000[8]. Thus, the United States will be seeking the full amount of the fine because the fine was clearly contemplated at the time of the change of plea, and based on the Defendant's current ability to pay should not be offset by the restitution award. A fine in this case is appropriate and warranted. The United States submits that at this time, the Defendant is able to pay the full amount of restitution to the victims and the statutory amount of the fine based on his available resources. If the Court does not set aside the funds to pay, at the time of sentencing, it is highly likely that those funds will no longer be available to the victims and the Court.

### 4. The consequence to the plea agreement if Defendant seeks to withdraw the plea agreement

It is the position of the United States that the Defendant will not be allowed by the District Court to withdraw his guilty plea in the event that such a motion is filed in the future because there is no legal or factual basis for the motion. Plea agreements are contractual in nature, and their plain language will generally be enforced if the agreement is clear and unambiguous on its face. *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005); *see also United States v. Fernandez*, 960 F.2d 771, 772 (9th Cir. 1991). The Defendant specifically agreed in his plea

---

[8] It should also be noted that the Defendant failed to truthfully represent to the Probation Office his interest in the trust and the pending sale of his home, which would dissolve the trust and make said proceeds available to him. Arguably, the Defendant is already in breach of the Plea Agreement which required truthfully disclosure of his finances. However, at this juncture, more importantly, his less than truthful statements to the Probation Office about his finances demonstrate the lengths that he will go to avoid paying restitution to his victims.

agreement that he would not seek to withdraw his guilty plea.  If the Defendant files a motion to withdraw in the future, it would be in spite of the clear and unambiguous language contained within the defendant's plea agreement.

The Government nonetheless addresses this question posed by the Court: If the Defendant is allowed to withdraw his guilty plea, there no longer would be a $5,000 restitution cap per victim.  However, in the absence of a showing that the proceeds from the sale of the property was tainted property, there would be no legal basis upon which the United States could seek restraint of the funds. The Court would be legally obligated to release any funds withheld at that time, and the Defendant could in effect make himself judgment proof prior to entry of a plea or trial. *See Luis v. United States*, 136 S.Ct. 1083 (2016).  However, with that being said, this makes a temporary restraint imminently more necessary to protect the victims considering the Defendant's past actions attempting to dissipate his assets. This Court should temporarily restrain all the assets of the Defendant (i.e. the entirety of the proceeds of the sale) until the District Judge can adjudicate the motion to withdraw the guilty plea (if filed) or sentencing, whichever occurs later. The purpose of the restraint is to maintain the status quo pending a full adjudication which the Court has authority to do post-plea.

Moreover, if Defendant files a motion to withdraw the plea that is granted (either because it is unopposed or the Court grants it after briefing), it is the Government's position that it would be able to use every factual admission made by Defendant in his plea and any attempt at denial of the admission could result in additional prosecution for perjury. Should Defendant file a motion to withdraw the plea that is denied, the Defendant may lose his two-points for acceptance of responsibility (as set forth in the plea agreement, ECF No. 146 at p. 8) and the Government would be free to ask for any custodial sentence up to the 60-year statutory maximum (20 years for each of three counts to run consecutively). Lastly, a motion to withdraw the plea, because it is a breach of the plea agreement (*see* ECF No. 146 at p. 3), could result in the Government seeking restitution for all victims regardless of whether they personally sought restitution. *C.f., United States v. Brandner*, 2016 WL 4644463 (D. Alaska) (finding Ninth Circuit general approach to restitution amenable to the court ordering that restitution due to non-participating or declining victims may

1   be ordered payable to the Crime Victims Fund under the Mandatory Victim Restitution Act).

2   **5.** **The authority of the Court to restrain assets if Defendant is permitted to withdraw**

3   **his plea agreement**

4        The Government is not aware of any authority that would permit the United States or the

5   Court to restrain Defendant's assets if he is ultimately permitted to withdraw his plea by the

6   District Court.[9] However, at this time, the Defendant is awaiting sentence, and the Court has

7   authority to restrain the assets to ensure full payment of restitution and fines.[10] Temporary

8   restraint of the entirety of the proceeds from the sale is necessary to protect the victims, enforce

9   the plea agreement, and ensure the Defendant and his insiders do not dissipate assets in a manner

10   that deprives the Court of its jurisdiction to enter and enforce a judgment that includes the

11   mandatory penalty assessment, mandatory restitution, and fines.

12        Dated this 30th day of May 2017.

13                        STEVEN W. MHYHRE

14                        Acting United States Attorney

15

16                        */s/  Lisa Cartier-Giroux*

17                        Lisa Cartier-Giroux

                            Elham Roohani

18                        Mark E. Woolf

19                        Assistant United States Attorneys

20

21

22

23

24

25

26

27   [9] If such a motion to withdraw the guilty plea is filed and granted by the District Court, pursuant to the United States Supreme Court's ruling in *Luis*, in order to seek pretrial restraint of the funds, the government must show that said funds were traceable to a criminal offense. *Id.* at 1092.

28   [10] Notably months after his guilty plea, now that the Defendant has the ability to pay all of the restitution and fines, suddenly the spectre of plea withdrawal is looming.

1

2  <u>**CERTIFICATE OF ELECTRONIC SERVICE**</u>

3

4  I, Mark E. Woolf, certify that a copy of the **SUPPLEMENTAL AUTHORITY FOR**

5  **PRESENTENCE RESTRAINT OF SALE PROCEEDS** was served electronically through the

6  Court's CM/ECF system on May 30, 2017.

7

8                                            */s/ Mark E. Woolf*
                                            MARK E. WOOLF
9                                            Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28