STEVEN W. MHYRE
Acting United States Attorney
ELHAM ROOHANI
Nevada Bar #12080
LISA CARTIER-GIROUX
Nevada Bar #14040
MARK E. WOOLF
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-6336
*elham.roohani@usdoj.gov*
*lisa.cartier-giroux@usdoj.gov*
*mark.woolf@usdoj.gov*
Attorneys for the United States.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| UNITED STATES OF AMERICA, | ) | Case No. 2:16-cr-00100-GMN-CWH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **GOVERNMENT'S OPENING BRIEF IN ADVANCE OF JULY 6, 2017 EVIDENTIARY HEARING REGARDING FUNDS ON DEPOSIT WITH COURT** |
| JAN ROUVEN FUECHTENER, | ) | |
| Defendant. | ) | |

The United States of America ("Government"), by and through its counsel of record, hereby files the following brief in advance of the July 6, 2017, evidentiary hearing.

## BACKGROUND

Defendant was arrested on March 14, 2016 by the FBI agents in Las Vegas, Nevada. Defendant's trial began on November 14, 2016, and continued for three days. *See* ECF Nos. 138, 140, and 141. On the fourth day of trial, however, Defendant entered a plea agreement (ECF No. 146), which the Court accepted after canvassing the Defendant. ECF No. 142. Based on the accepted plea agreement, the trial setting was vacated and the matter referred to the United States Probation Office to prepare a Presentence Investigation Report. *Id.*

The plea agreement contains several important provisions. Defendant acknowledged that the conduct to which he entered a plea gives rise to mandatory restitution. Defendant agreed that,

1

in assessing restitution, the Court could consider losses derived from the counts of conviction, dismissed counts, and any uncharged conduct in which the Defendant was involved. Defendant agreed to pay $5,000 per identified victim who requests restitution prior to sentencing. Defendant agreed to "release funds and property under his control" in order to pay any criminal monetary penalties, including restitution and fines, that may be imposed. Defendant also agreed that "[b]efore or after sentencing, upon request by the Court, the United States, or the Probation Office [he] will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay."

In advance of the original sentencing date of March 16, 2017[1], the United States Probation Office prepared and disclosed its Presentence Investigation Report ("PSR") in accord with Fed. R. Crim. P. 32. Consistent with Fed. R. Crim. P. 32(d)(2)(A)(ii), the PSR included information regarding Defendant's financial condition. For example, at the time of the preparation of the PSR Defendant's former residence was for sale for $1,904,205 (PSR at ¶ 28), and that Defendant and his spouse had appointed an individual with power of attorney over the sale of the property (PSR at ¶ 82). When asked by the probation officer about his financial condition and assets for purposes of preparation of the PSR, Defendant indicated that he did not know his net worth, shared his assets with his spouse, did not have access to any funds, and that all of his assets were held in a trust solely controlled by his spouse (PSR at ¶ 101).

Sometime between the parties' first and second stipulation to move sentencing, Defendant and his spouse entered into a purchase and sale agreement for their former residence. *See* Exhibit ("Deed of Sale") attached hereto.[2] The Deed of Sale for 7080 Donald Nelson Avenue ("subject property") was recorded in Clark County on or about May 25, 2017, and indicates a sale price of $1.4 million. The subject property was sold by Defendant and his spouse in their capacity as

---

[1] The sentencing hearing was subsequently moved by the Court to March 17, 2017, based on a conflict in the Court's schedule. ECF No. 155. Sentencing is currently scheduled to go forward on June 30, 2017.

[2] The Grant, Bargain and Sale Deed is dated April 14, 2017, and is acknowledged by Defendant and his spouse through notarized signatures as Trustees for the F.A.J.R. Magic Trust on May 16, 2017 and May 12, 2017 respectively.

Trustees of the F.A.J.R. Magic Trust.[3]

The Government was made aware of the sale of the subject property on May 11, 2017, when it was informed by the Marshals Service that there was a request for Defendant to sign documents with a title company. ECF No. 170 at 2:23 – 3:2. To prevent the frustration of sentencing and collection of criminal monetary penalties, including restitution, through dissipation of assets, the Government filed its initial motion under the All Writs Act, 28 U.S.C. § 1651, requesting that the Court require the proceeds from the sale of the subject property be deposited with the Court pending sentencing. ECF No. 164. The Court granted the Government's motion to the extent that it required deposit of $80,300, which corresponded with the number of victims who had requested restitution to that point as well as mandatory special assessments. ECF No. 169.

Immediately after the Court entered its written order, the Government filed an Emergency Motion requesting that the entirety of the sale proceeds from the subject property be deposited to prevent dissipation. ECF No. 170. The Government reiterated its position that it was not seeking to prevent the sale of the subject property, but only to preserve the sale proceeds to ensure the *entirety* of the criminal monetary penalties would be paid at sentencing. The Government cited authority noting that property interests held in trust, including a spendthrift trust, or assets characterized as community property are available for the satisfaction of court-imposed criminal monetary penalties, including restitution. Construing the Government's motion as one for reconsideration, the Court held a hearing and indicated that it would not issue any further orders requiring deposit beyond the $80,300, until such time as it received additional briefing from the parties on several specific questions. ECF No. 172.

In accordance with the Court's instruction, the Government filed a Supplemental Brief on May 30, 2017, addressing the questions posited by the Court. ECF No. 173. Both Defendant and his spouse filed responses through their respective counsel to the Government's supplement. *See*

---

[3] A copy of the recorded Deed of Sale for when Defendant and his spouse originally purchased the subject property was attached as an exhibit to the Government's Supplemental Brief (ECF No. 173), and indicates that the subject property was purchased by Defendant and his spouse as Trustees of the F.A.J.R. Magic Trust for $1.3 million on or about October 9, 2012.

3

ECF Nos. 175, 177. The Court reconvened for hearing in light of the supplemental briefing on June 1, 2017, wherein both Defendant and his spouse appeared through counsel. Immediately prior to the hearing, counsel for Interested Party Frank Alfter (Defendant's spouse) provided the Government and the Court with a copy of the operative F.A.J.R. Magic Trust, through which the subject property was both purchased and sold. Upon review of the parties' supplemental briefing and argument, the Court granted the Government's Emergency Motion (ECF No. 170) and ordered the deposit of $975,300 of the sale proceeds from the subject property be deposited with the Clerk of Court. ECF No. 178.[4]

Further, the Court issued a Report and Recommendation (ECF No. 180) finding the total deposit "necessary under the All Writs Act to prevent the frustration of collection of the anticipated fine, forfeiture, and restitution order and further the court's exercise of its jurisdiction over sentencing by ensuring sufficient assets are available to satisfy the pending fine, forfeiture, and restitution order." ECF No. 180 at 5:3-7. The Court emphasized the purpose of the order was to "maintain the status quo and to prevent the dissipation of assets . . . for the relatively short period of time" until sentencing. *Id* at 5:8-10. The Court reiterated that "there are various issues regarding the F.A.J.R. trust, community and separate property issues, Defendant's interest in the sale proceeds, and Mr. Alfter's interest in the sale proceeds that will require an evidentiary hearing to ascertain that the sale proceeds being deposited with the Clerk of Court are funds under Defendant's control that may be used to pay any fine, forfeiture, or restitution ordered at sentencing." *Id* at 5:10-15.

Consequently, in aid of the evidentiary hearing currently scheduled for July 6, 2017, the Court ordered the parties to submit briefing regarding the respective interests and rights of Defendant and his spouse, Mr. Alfter, in the funds on deposit. *Id*. This brief addresses the issues identified by the Court as understood by the Government.

---

[4] The Court subsequently ordered the Government to serve a copy of the Order (ECF No. 178) and Report and Recommendation (ECF No. 180) on First American Title Insurance Company and file proof of service. ECF No. 181. The Government filed its proof of service on June 6, 2017, indicating that First American Title Insurance Company had accepted service by email. ECF No. 184. First American filed a Certificate of Cash Deposit on June 5, 2017, for deposit of the $975,300. ECF No. 183.

# DISCUSSION

Defendant Jan Fuechtener ("Defendant") pled guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(5)(B), one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b), and one count of Distribution of Child Pornography in violation of 18 U.S.C § 2252A(a)(2) and (b). Each of these offenses is a mandatory restitution offense pursuant to 18 U.S.C. § 2259, which provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with [18 U.S.C. §] 3664 in the same manner as an order under [18 U.S.C. §] 3663A." Defendant agreed in his plea to restitution in the amount of $5,000 per identified victim who makes a claim prior to sentencing. The Government also intends to seek a fine, not to exceed $500,000, pursuant to the guidelines and 18 U.S.C. § 3571. Based on the nature of the offenses of conviction to which Defendant pled, he must also pay a mandatory penalty assessment of $5,100 per offense pursuant to 18 U.S.C. § 3013 and § 3014.

**1. The Defendant must provide full and complete financial information and bears the burden of demonstrating his financial resources and the needs of his financial dependents under 18 U.S.C. § 3664.**

Throughout the briefing and hearings on this matter, an issue has been raised about the production of documents or information to support the financial resources of the Defendant. The Court has broad authority to order defendants to disclose full and complete financial information when addressing restitution imposed under 18 U.S.C. § 2259, which specifically incorporates 18 U.S.C. § 3664 for purposes of issuing and enforcing mandatory restitution. *See* 18 U.S.C. § 2259(b)(3).

Section 3664 provides that "the court *shall* order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C § 3664(a) (emphasis added). To assist with preparation of the report, "[e]ach defendant *shall* prepare and file with the probation officer an affidavit *fully describing* the financial resources of the defending, including a complete listing of all assets owned *or controlled* by the defendant as

of the date on which the defendant was arrested . . . and such other information that the court requires relating to such other factors as the court deems appropriate." 18 U.S.C. § 3664(d)(3) (emphasis added). "After reviewing the report of the probation officer, the court may require additional documentation or hear testimony." 18 U.S.C. § 3664(d)(4). The Court's broad authority to require Defendant to disclose full and complete financial information is bolstered by the plea agreement, wherein Defendant expressly agreed to disclose financial information upon request by the Court, probation, or the Government.

The statutory (and bargained for) requirement that Defendant disclose full financial information at the request of the Court or probation officer (and Government through the plea agreement) is consistent with Defendant's burden at sentencing on the issue of restitution. Specifically, 18 U.S.C. § 3664(e) provides: "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." This burden applies even outside the context of a sentencing hearing. *See United States v. Taylor*, 2010 WL 2430911 (W.D. Wa.) (burden of demonstrating material economic change in defendant's request for adjustment to payment schedule under 18 U.S.C. § 3664(k) remains with defendant as under 18 U.S.C. § 3664(e)).

The Court should resist any attempt to shift the burden of production or demonstration of Defendant's financial resources onto the Government. As the Court has repeatedly stated, the purpose of ordering deposit of the sale proceeds from the subject property is to prevent the frustration of collection of criminal monetary penalties "and further the court's exercise of its jurisdiction *over sentencing* by ensuring assets are available to satisfy the pending restitution order." ECF No. 178 at 2:12-14 (emphasis added); *see also* ECF No. 180 at 5:3-6 ("In sum, the court finds that a total deposit of $975,300 . . . is necessary under the All Wrtis Act to prevent the frustration of collection of the anticipated fine, forfeiture, and restitution order and further the court's exercise of its jurisdiction over sentencing[.]"). Because the purpose of the All Writs Act order is to preserve the court's jurisdiction at sentencing, the burden associated with

demonstrating Defendant's financial resources should be as it would at sentencing.[5]

**2. In determining the extent of Defendant's financial resources or assets, the term "property" is given the broadest possible meaning under federal law.**

The Government may enforce an order of restitution "in the manner provided for in . . . subchapter B of chapter 229 of this title" or "by all other available and reasonable means." *See* 18 U.S.C. 3664(m). Further, that portion of the criminal code governing the implementation of a sentence to pay a fine also incorporates subchapter B of chapter 229. *See* 18 U.S.C. § 3574 ("The implementation of a sentence to pay a fine is governed by the provisions of subchapter B of chapter 229.").

Subchapter B of chapter 229 corresponds to 18 U.S.C. §§ 3611 – 3614, of which Section 3613 contains several relevant provisions to the Court's analysis. For example, any judgment imposing a fine or restitution "may be enforced against *all property or rights to property*" of the person owing on the judgment. *See* 18 U.S.C. § 3613(a). And a criminal judgment imposing a fine or restitution is "a lien in favor of the United States on all property and rights to property" as if the liability were for "a tax assess under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c); *see also United States v. Harris*, 854 F.3d 1053 (9th Cir. 2017). As held in *Harris*, the language of Section 3613 is "broad language 'so as to reach every interest in property that a taxpayer might have.'" *Harris*, 854 F.3d at 1055 (citation omitted).

Section 3613 incorporates the Federal Debt Collection Practices Act, 28 U.S.C. § 3001 *et seq.*, as a tool for enforced collection under federal law. *See United States v. Mays*, 430 F.3d 963 (9th Cir. 2005) ("Although the MVRA is a criminal statute, it expressly, albeit tortuously, provides that the FDCPA's civil enforcement remedies may be used to enforce orders of restitution under the MVRA."). The FDCPA includes the All Writs Act, a federal statute, as a tool for use in enforcing the collection of judgments. *See* 28 U.S.C. § 3202(a). The FDCPA defines "property" as "any present or future interest, whether legal or equitable, in real,

---

[5] Of course, mandatory restitution is imposed in the full amount of loss "without consideration of the economic circumstances of the defendant[,]" *see* 18 U.S.C. § 3664(f)(1)(A), but the financial resources and assets of Defendant are critical for the Court to understand when specifying the manner and schedule under which restitution is to be paid. *See* 18 U.S.C. § 3664(f)(1)(B)(2).

7

personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property *and property held in trust* (including spendthrift and pension trusts))[.]" 28 U.S.C. § 3002(12) (emphasis added)

*Harris* and the applicable statutes make plain that the definition of "property" for purposes of identifying property interests subject to collection for payment of a fine and/or restitution is sufficiently broad to reach a Defendant's interest in property held in trust. Indeed, even a spendthrift or other anti-alienation provision within a trust intended to prevent attachment by creditors does not preclude the attachment of a federal lien. *Harris*, 854 F.3d at 1057 ("the trusts' spendthrift clauses have no effect on our analysis because a spendthrift clause does not protect a trust's assets from the enforcement of a federal lien").[6]

**3. Defendant has a 100% vested and present interest in the sale proceeds from the subject property and full control over the entirety of the proceeds on deposit under the express terms of the F.A.J.R. Magic Trust.**

Having determined that a property interest held in trust is subject to attachment for purposes of collecting criminal monetary penalties, the question becomes whether Defendant's interest fits within the expansive definition of property. *Harris*, 854 F.3d at 1055. "In determining whether a property right falls within this definition, 'the important consideration is the breadth of the control [Defendant] could exercise over the property,' which we assess with reference to state law governing the right." *Id.*

The F.A.J.R. Magic Trust ("Trust") is a simple, revocable living trust intended to remove trust property and assets from probate upon the death of the grantors, nothing more.[7] Defendant and his spouse are the grantors, trustees, and beneficiaries of the Trust, with full *individual* control over Trust property. As the grantors, Defendant and his spouse created the Trust to hold property

---

[6] Not only does a spendthrift clause in an asset protection trust not preclude the Government from collecting restitution under federal law, the F.A.J.R. Magic Trust does not even satisfy the requirements for a spendthrift/asset protection trust under Nevada law. *See* NRS § 166.040.

[7] The Government understands that the Court has a copy of the Trust, so it is not included as an exhibit. If requested, however, the Government will provide a copy of the Trust.

"for the uses and purposes and on the terms and conditions" set forth in the Trust. *See* Trust at ¶ 1.2. Defendant and his spouse retain unfettered discretion to jointly revoke the Trust or demand that Trustees "return all of the [g]rantors' former property" to the grantors. *Id* at ¶ 9.1. Defendant and his spouse, as grantors, or any other person "may transfer, devise, bequeath, give, convey or donate any personal or real property into the Trust . . . as long as there are *no restrictions or conditions* as to the use of the property placed upon the Trustee." *Id* at ¶ 10.1.

The Trust was, of course, established by Defendant and his spouse for the benefit of two primary beneficiaries – Defendant and his spouse. I*d* at ¶ 4.1. As a "Primary Beneficiary," Defendant is entitled to "all benefits of this Trust until [his] death[]." *Id.* Those benefits include "the net income and principal from the Trust . . . as is necessary, in the sole discretion of the Trustee or Trustees, for the support, happiness and health needs of the Primary Beneficiaries." *Id* at ¶ 5.1. Thus, by the express terms of the Trust, any Trustee may make a distribution at his *sole* discretion to a Primary Beneficiary without the consent of any other Trustee. Thus, Defendant has unrestricted rights to Trust property and can exercise complete control over Trust property, including disbursing the entirety of net income and principal from Trust property for his support until he dies or the Trust is revoked.

Not only are Defendant and his spouse the grantors and beneficiaries of the Trust, but they are the Trustees empowered with the "unrestricted rights" set forth in the Trust "to act with Trust property in *any* manner deemed in the Trustees' *sole discretion* to be in the best interest of the Trust or Beneficiaries[.]" *Id* at ¶ 2.1 (emphasis added). Indeed, as a Trustee, Defendant enjoys "full and absolute discretion to act with Trust property . . . . [with] no requirement that any consent be obtained . . . prior to making a final decision as to any matter relating to the Trust." *Id* at ¶ 2.1C. He is further "authorized and empowered to manage, care for, improve, protect, control, deal with, *sell* and otherwise dispose of the trust estate or any part of it, in his . . . *absolute* discretion[.]" *Id* at ¶ 3.2 (emphasis added). Further, he retains the authority "[t]o make distributions to any . . . beneficiary hereunder in cash or in specific property", *Id* at ¶ 3.2Q, and "[w]hen distributions are required under this Trust, a Trustee is authorized to make distributions of the Trust estate in kind, or party in cash and partly in kind, or by arranging and transferring or

assigning an *undivided interest*. The Trustee's discretion and excise of this authority is *absolute and binding upon all beneficiaries* and all other interested parties." *Id* at ¶ 8.1 (emphasis added).

The sale proceeds from the subject property belong to the Trust, as is evidenced by the Deed of Sale, Trust, and the Certificate of Cash Deposit (ECF No. 183) (which indicates that the "Legal Owner of the cash tendered" is the Trust). It is clear from the express terms of the Trust, that Defendant retains complete control over Trust property and distribution thereof, resulting in a 100% vested and present interest in Trust property, including proceeds from the sale thereof. Defendant further enjoys unrestricted rights, as a Trustee, to act in his *sole and absolute discretion* to make distributions of Trust property to himself as beneficiary. Consequently, the Court must retain the proceeds on deposit until such time as Defendant is sentenced. At the time of sentencing, the Court can simply order application of the proceeds to satisfy all criminal monetary penalties, including restitution, with any remainder returned to the Trust per the terms of Certificate of Deposit.

**4.     Frank Alfter's interest in the Trust property should not be considered "joint control."**

The Government concedes that both Defendant and his spouse have 100% access to Trust property, including the proceeds from the sale of the subject property currently on deposit. But access does not equate to "joint control" in this instance, where each enjoys the same unfettered discretion to deal with Trust property without consent of the other. Nor does it prevent the Government from attaching to the entirety of Defendant's interest to prevent dissipation pending sentencing. Even if the Trust property were considered to be under their "joint control," that is simply a factor the Court may consider in setting a schedule for payment of restitution under 18 U.S.C. § 3664(f)(1)(B)(2)(A).

At this time, the most Frank Alfter *may* be entitled to are the same limited exceptions that Defendant would be entitled to under 18 U.S.C. § 3613(a), which provides that certain property is exempt from levy to satisfy a criminal judgment when the Government, as here, seeks enforcement under federal law. 18 U.S.C. § 3613(a)(1). When the Government elects to enforce under federal law, the exemptions identified in Section 3613(a)(1) are the only exemptions

available. *See e.g., Paul Revere Ins. Group v. United States*, 500 F.3d 957 (9th Cir. 2007). <u>None of the exemptions identified in Section 3613(a)(1)</u>, however, applies to the cash proceeds from the sale of the subject property.

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests that the $975,000 currently on deposit with the Court remain so until such time as Defendant is sentenced and criminal monetary penalties, including mandatory restitution, fines, and penalty assessments, are paid.

Dated this 16th day of June 2017.

          STEVEN W. MHYHRE
          Acting United States Attorney


          */s/ Mark E. Woolf*_____
          Lisa Cartier-Giroux
          Elham Roohani
          Mark E. Woolf
          Assistant United States Attorneys