STEVEN W. MHYRE
Acting United States Attorney
ELHAM ROOHANI
Nevada Bar #12080
LISA CARTIER-GIROUX
Nevada Bar #14040
MARK E. WOOLF
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Telephone: 702-388-6336
elham.roohani@usdoj.gov
lisa.cartier-giroux@usdoj.gov
mark.woolf@usdoj.gov
*Attorneys for the United States.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:16-cr-00100-GMN-CWH |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO INTERESTED PARTY FRANK ALFTER'S SUPPLEMENTAL BRIEF (ECF NO. 188)** |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

The United States of America ("Government"), by and through its counsel of record, submits this timely response to Interested Party Frank Alfter's ("Alfter") Supplement (ECF No. 188).

Mr. Alfter asks the Court to ignore the absolute control reserved by himself and his spouse, Defendant Jan Fuechtener ("Defendant"), over all property of the F.A.J.R. Magic Trust ("Trust") as both the grantors and trustees of the Trust by asserting that neither of them has "an enforceable right of distribution" from the Trust as beneficiaries. But to buy into this illusion, the Court would be forced to ignore that Defendant and Mr. Alfter have expressly reserved authority to revoke property from the Trust as the grantors and given themselves unfettered, unrestricted discretion to use, distribute, or otherwise act with Trust property for their own benefit as the trustees and

1

beneficiaries. Stated differently, the Court would be forced to ignore that Defendant and Mr. Alfter each have a vested interest in and maintain *individual* control over 100% of Trust property, including the sale proceeds on deposit.

The Government agrees that *United States v. Harris*, 854 F.3d 1053 (9th Cir. 2017) is instructive insofar as it establishes the term "property" for purposes of collection of criminal monetary penalties, including restitution, under federal law is deliberately broad "so as 'to reach every interest in property" that an individual owing restitution or a criminal fine might have. Further, the nature and extent of a property interest is assessed in reference to the "state law governing the right," *see Harris*, 857 F.3d at 1055 (citations omitted), but in determining the nature and extent of the interest, "the important consideration is the *breadth of control*" that the debtor "could exercise over the property[.]" *Id*. (citing *Drye v. United States*, 528U.S. 49, 61 (1999) (emphasis added)).

*Harris* does not, however, support Mr. Alfter's conclusion that property in this Trust is unavailable for satisfaction of criminal monetary penalties, including restitution. In *Harris*, the court was addressing an interest in an *irrevocable* trust established through conveyances by the defendant's parents as grantors of the trust. The only interest held by the defendant was that of a beneficiary, as he was neither the grantor with rights of revocation nor a trustee with unfettered control over distribution of trust property. That stands in stark contrast to the facts here, where Defendant and Mr. Alfter have established a *revocable* living trust in which they reserved authority to revoke property from the Trust in their capacity as grantors, while also granting to themselves unfettered, unrestricted discretion as trustees to deal with Trust property for their own benefit.

That the Trust is a self-settled revocable living trust is important. Under Nevada law, a trust is generally irrevocable "except to the extent that a right to amend or revoke the trust is expressly reserved by the settlor." *See* NRS 163.004(2). Here, the Trust expressly sets forth the grantors, Defendant and Mr. Alfter, intent to convey property "to the Trustees for the purposes of establishing a [r]evocable [l]iving [t]rust." *See* Trust at ¶ 1.2. As the grantors, Defendant and Mr. Alfter, expressly reserved the authority to demand the return of their property from the Trust as

follows: "This trust is absolutely revocable with the consent of both Grantors, and the Grantors may at their discretion make demands upon the Trustees to return all of the Grantors' former property that is now property of the estate to the Grantors." *Id* at ¶ 9.1.

Several courts have held, when a grantor retains an unlimited right to revoke a conveyance to a revocable living trust, the grantor retains ownership in the property. *See e.g., In re Nielsen*, 526 B.R. 351 (Bank. D. Hawaii 2015) (holding that self-settled revocable living trusts are not separate entities and that the trust property belongs to the settlor who may not shield assets held in self-settled trust from creditors); *see also Amonette v. IndyMac Bank,* 515 F.Supp.2d 1176, 1184-86 (D. Hawaii 2007) (holding that the settlor, trustee and beneficiary of a revocable living trust "effectively owned the property"); *Travelers Casualty and Surety Company of America v. K.O.O. Construction, Inc.*, 2017 WL 2473125 (N.D. Cal.) (property held in a revocable trust for the benefit of the settlor may be treated as property of the settlor for purposes of attachment); *United States v. Stolle*, 2000 WL 1202087 (C.D. Cal.) (for purposes of tax lien, couple who were settlors, trustees, and beneficiaries of a revocable living trust effectively owned the property); *In re Guardianship of Estate of Burrell*, 238 P.3d 823 (Nev. 2008) (once a trust is revoked, the property in the trust reverts back to the grantor), *citing Linthicum v. Rudi*, 122 Nev. 1452, 1455-56, 148 P.3d 746, 749 (2006) (recognizing that a beneficiary's interest is "subject to complete divestment" during the lifetime of the grantor of a revocable trust).

Further, Mr. Alfter's characterization of the beneficial right under the Trust as "discretionary" is far from reality. The Trust provides that the "net income and principal from the Trust *shall* be distributed to the Primary Beneficiaries[,]" Mr. Alfter and Defendant, "as is necessary, in the sole discretion of the Trustee or Trustees, for the support, happiness and health needs of the Primary Beneficiaries." *See* Trust at ¶ 5.1. This language certainly appears to fall within the purview of a "support interest" as defined NRS 163.4185(1)(b), but even if classified as a "discretionary interest," such classification does not prevent use of Trust property to satisfy a beneficiary's creditors. *See* NRS 163.419(4). Nor does it insulate the act of a trustee from review for acting "dishonestly, with bad faith or willful misconduct." NRS 163.419(1).

///

Indeed, it bears mentioning because it was omitted from Mr. Alter's filing that the very statute upon which he relies allows "a trustee of a discretionary interest [to] directly pay any expense on the beneficiary's behalf and [to] exhaust the income and principal of the trust for the benefit of such beneficiary." NRS 163.419(4). As the Trustee, the Defendant may direct payment of the criminal monetary penalties for his own benefit as the beneficiary, regardless of whether he has discretion as the beneficiary. If the Defendant refused to pay a valid criminal monetary penalty for his own benefit as the beneficiary, it would constitute self-dealing and bad faith causing the exception in NRS 163.419(1) to apply.

Ultimately, the Trust is a simple, revocable living trust intended to remove trust property and assets from probate upon the death of the grantors, nothing more.[1] Defendant and his spouse are the grantors, trustees, and beneficiaries of the Trust, with complete *individual* control over Trust property, including the ability to revoke property from the Trust as grantors and to disburse property to themselves at their own discretion as the trustees. It is incompatible with both the law and common sense to suggest that individuals who establish a revocable living trust under these terms retain anything other than 100% ownership and control of trust property. Or, that individuals who establish a revocable living trust under these terms can avoid distributing assets to circumvent payment of valid criminal monetary penalties under federal law. *See e.g. United States v. Watlington*, 263 Fed.Appx. 321 (4th Cir. 2008) (upholding decision to enter injunction under All Writs Act prior to entering a restitution order freezing assets, including those held in a trust because the defendant "effectively retained ownership of the trust estate" as the grantor and trustee of the revocable trust).

Accordingly, the sale proceeds, should remain on deposit until they can be disbursed at sentencing to satisfy all criminal monetary penalties, including restitution to victims of Defendant's criminal conduct, with any remainder returned to the Trust per the terms of

---

[1] As set forth in its initial brief, the Trust is not a spendthrift trust under Nevada law because it cannot satisfy the requirements set forth in NRS 166.040. Moreover, as made clear in both *Harris* and the FDCPA, the Government can take free and clear from spendthrift trust and spendthrift provisions when pursuing collection of criminal monetary penalties under federal law.

1  Certificate of Deposit.[2]

2  Dated this 23rd day of June 2017.

STEVEN W. MHYHRE
Acting United States Attorney


*/s/ Mark E. Woolf*_____
Lisa Cartier-Giroux
Elham Roohani
Mark E. Woolf
Assistant United States Attorneys

---

[2] The Government does not believe there is need for a further evidentiary hearing in this matter, as it does not appear there are any factual issues to resolve.