LAW OFFICES OF IVETTE AMELBURU MANINGO, ESQ.
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO. 7076
720 S. Seventh St., 3rd Floor
Las Vegas, Nevada 89101
(T): (702) 384-9800
(F): (702) 386-2737
EMAIL: iamaningo@iamlawnvlaw.com
*Attorney for Frank Alfter*

# DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | 2:16-cr-00100-GMN-CWH |
| v. ) | |
| JAN ROUVEN FUECHTENER, ) | |
| Defendant. ) | |

### RESPONSE TO GOVERNMENT'S OPENING BRIEF IN ADVANCE OF JULY 6, 2017 EVIDENTIARY HEARING REGARDING FUNDS ON DEPOSIT WITH COURT

COMES NOW, FRANK ALFTER, by and through undersigned counsel, Ivette Amelburu Maningo, of the Law Offices of Ivette Amelburu Maningo, appearing in a limited capacity in this case, and respectfully submits this Response to Government's Opening Brief in Advance of July 6, 2017 Evidentiary Hearing Regarding Funds on Deposit with Court.

DATED this 23rd day of June, 2017.

**Law Offices of Ivette Amelburu Maningo**

/s/ Ivette Maningo_____
IVETTE AMELBURU MANINGO, ESQ.
Nevada Bar No.: 7076
720 S. Seventh St., 3rd Floor
Las Vegas, Nevada 89101
(T): (702) 385-9595
(F): (702) 386-2737
*Attorney for Frank Alfter*

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## THE SALE PROCEEDS MUST BE TRANSFERRED BACK INTO THE TRUST

Under 18 U.S.C. §§ 3613(a), a restitution order under the MVRA may be enforced against all property or property rights of the person owning on the judgment. However, the 9th Circuit has specifically held that "[a]ny restitution order under [the MRVA] may be enforced **only as against property that is the defendant's own** according to the relevant state law".[1] Here, by the Government's own admission, the Sale Proceeds are Trust property that belong to the Trust.[2] The Trust is not a party to this action and has no judgment against it. Therefore, this Court's analysis ends with respect to the Sale Proceeds as they must be transferred back into the Trust.

## DEFENDANT DOES NOT AND CANNOT HAVE 100% UNILATERAL CONTROL OVER THE TRUST'S PROPERTY

The Government makes the bare assertion that "Defendant has a 100% vested and present interest" in the Trust's assets and "full individual control over Trust property."[3] Unfortunately, the Government ignores the very language of the document it relies upon. In support of its unavailing argument, the Government cites to numerous provisions of the Trust that are completely inapposite of such a conclusion.

According to the United States Supreme Court, the terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the [grantors] with respect to the trust as is not inadmissible.' "[4] Here, in reviewing the Trust's express language and grantors' intent, it is

---

[1] United States v. Dann, 652 F.3d 1160, 1179 (9th Cir. 2011); See, e.g., United States v. Berger, 574 F.3d 1202, 1205 (9th Cir.2009).
[2] See Government's Opening Brief at 8:5-7, 15-17, 10:3-5.
[3] See Government's Opening Brief at 8:12-14, 22-24.
[4] Firestone Tire & Rubber Co. v. Bruch, 109 489 U.S. 101, 112 (1989) (quoting Restatement (Second) of Trusts § 4, Comment d (1959)).

clear that the Defendant does not, and cannot have full and unilateral control of the Trust's property.

First, the Government cites to Section 9.1 of the Trust for the proposition that Defendant has full control over the Trust's property.[5] Yet, in reading the express language of Section 9.1, Defendant's ability to "demand that Trustees 'return all of the grantors' former property" specifically requires "**the consent of both Grantors**."[6] As such, pursuant to the express language of Section 9.1 in the Trust, as cited by the Government, Defendant has no ability to control Trust assets without Mr. Alfter's consent.

Next, the Government cites to Section 10.1 as an indication that Defendant has full individual control over the Trust's assets.[7] Specifically, the Government believes that Defendant's ability as a grantor to "transfer, devise, bequeath, give, convey or donate any personal or real property into the Trust . . . as long as there are no restrictions or conditions as to the use of the property placed upon the Trustee" somehow bestow Defendant with the power to a unilaterally act with the Trust's property.[8]

Ironically, the very language the Government relies upon, in fact, proves the exact opposite is true. Section 10.1 sets forth limitations and restrictions on property that goes **into** the Trust—not how it is managed **within** the trust, or transferred **outside** of the trust.[9] Notably, Section 10.1 is entirely void of any language or indication that Defendant may unilaterally manage or distribute the Trust's property.[10] Rather, Section 10.1 merely allows any person to transfer property into the Trust "as long as there are no restrictions or conditions as to the use of the property placed upon

---

[5] Id. at 9:2-3.
[6] See **Exhibit A** to Mr. Alfter's Opposition at Section 9.1
[7] See Gov. Opening Brief at 9:3-6.
[8] Id.
[9] See **Exhibit A** to Mr. Alfter's Opposition at Section 10.1.
[10] Id. at Section 10.1.

3

the Trustee" and "the property becomes fully subject to the terms and conditions of the Trust."[11] As such, under Section 10.1, it would be <u>impossible</u> for Defendant to have full unilateral control over Trust property because such a control would be a "restriction[] or condition[] as to the use of the property placed upon [Mr. Alfter]" as co-trustee.[12]

Moreover, the Government seemingly confuses Defendant and Mr. Alfter's joint ability to manage the Trust's assets and make distributions to its beneficiaries with Defendant having a 100% vested interest in the Trust's assets via unilateral control.[13]  Specifically, the Government contends the language "sole discretion" and "no requirement that any consent be obtained" contained in Sections 2.1 and 2.1(C) demonstrate Defendant's full and unilateral control over the Trust's property.[14]  However, such an interpretation is logically impossible as two people cannot have unilateral possession and control of the same thing.

Furthermore, the Government's conclusion is directly inconsistent with Defendant and Mr. Alfter's intent.  Section 2.1(A) describes the circumstances under which Defendant or Mr. Alfter can resign as a trustee.[15]  Further, Section 2.3 provides that upon the death or incapacity of Defendant or Mr. Alfter, the surviving trustee "shall have all authority to act as Trustee."[16] Therefore, the express language of the Trust demonstrates Defendant and Mr. Alfter's specifically contemplated in the event the Trust had only one trustee, that trustee would have unilateral power. However, as long as Defendant and Mr. Alfter are co-trustees, they must jointly agree on how to act with the Trust's property.

Indeed, the Government conveniently ignores Section 2.4 which specifically confirms their intent and states in relevant part:

---

[11] <u>Id</u>. at Section 10.1.
[12] <u>Id</u>. at Section 10.1.
[13] <u>See</u> Gov. Opening Brief at 9:23 – 10:2.
[14] <u>Id</u>. at 9:17-23.
[15] <u>See</u> **Exhibit A** to Mr. Alfter's Opposition at Section 2.1(A).

> If for any reason more than one Trustee is appointed, a majority vote of the trustees shall be binding upon the trust. **If there are only two trustees and a deadlock occurs, the next successor trustee shall cast the deciding vote**.[17]

The express language of Section 2.4 clearly demonstrates Defendant and Mr. Alfter's intent that decisions on how to act with the Trust's property would be made jointly amongst co-trustees. Otherwise, there would be no reason for a deadlock provision. Undoubtedly, such an intent aligns with common sense that both Defendant and Mr. Alfter cannot and would not have 100% control and possession over the Trust's property. Rather, the Trust's provisions, in light of all the circumstances, clearly demonstrate Defendant and Mr. Alfter's intent to jointly control the Trust's property with their joint decision being final and binding upon everyone else.

## DEFENDANT IS NOT ENTITLED TO TRUST DISTRIBUTIONS

Contrary to the Government's assertion, Defendant does not have "unrestricted rights to …disburse the entirety of net income and principal from Trust property for his support."[18] As detailed above, decisions regarding the Trust's assets, including distributions, require a joint decision by Defendant and Mr. Alfter as co-trustees. Further, as detailed in Mr. Alfter's Opposition, neither himself nor Defendant has an enforceable right to distributions under the Trust.[19] Moreover, Section 5.1 which sets forth the circumstances for distributions, echoes Defendant and Mr. Alfter's intent that decisions regarding Trust assets, including distributions, requires a joint decisions by both trustees:

> **5.1   Distribution of Assets During the Lifetime of the Primary Beneficiaries**.
> Until the deaths of the Primary Beneficiaries, the net income and principal from the Trust shall be distributed to the Primary Beneficiaries as is necessary, in the sole discretion of the Trustee or **Trustees**, for the support, happiness and health needs of the Primary Beneficiaries.[20]

---

[16] Id. at Section 2.3.
[17] Id. at Section 2.4.
[18] See Gov. Opening Brief at 9-13-16.
[19] See Mr. Alfter's Opposition
[20] See **Exhibit A** to Mr. Alfter's Opposition at Section 5.1 (emphasis added).

In the event there is only one trustee (as contemplated in Sections 2.1(A) and 2.3), Section 5.1 contemplates that the sole trustee would have sole discretion in distributions. However, Section 5.1 also demonstrates that should there be more than one trustee, the trustees would maintain sole discretion in their **joint decision** in authorizing distributions (as contemplated by Section 2.4).

Consequently, Defendant has no right or authority to unilaterally make distributions to himself. To that end, at best, the Government can make an application to attach distributions made to Defendant, when and if authorized by Mr. Alfter. However, until such an authorization is permitted, the Government cannot attach the Sale Proceeds and they must remain in the Trust.

## **CONCLUSION**

For the foregoing reasons, it is requested that the Government's request to restrain funds in the amount of $975,300 from the proceeds of the sale of the subject property be denied.

DATED this 23rd day of June, 2017

**Law Offices of Ivette Amelburu Maningo**

/s/ Ivette Maningo_____
IVETTE AMELBURU MANINGO, ESQ.
Nevada Bar No.: 7076
720 S. Seventh St., 3rd Floor
Las Vegas, Nevada 89101
(T): (702) 385-9595
(F): (702) 386-2737
*Attorney for Frank Alfter*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of June, 2017, I served a true and correct copy of the foregoing SUPPLEMENT, by submitting electronically for filing and/or service within the Court's CM/ECF system to the following:

Mark Woolf, Assistant United States Attorney
Mark.Wolf@usdoj.gov

Karen Connolly, Esq, Attorney for Defendant
advocate@kconnollylawyers.com; legalassistant@kconnollylawyers.com


                                              __/s/ Ivette Maningo _
                                              Ivette Amelburu Maningo, Esq.