KAREN A. CONNOLLY
**KAREN A. CONNOLLY, LTD.**
6600 W. Charleston Blvd., Ste. 124
Las Vegas, NV 89146
Telephone:     (702) 678-6700
Facsimile:      (702) 678-6767
E-Mail:          advocate@kconnollylawyers.com
*Attorney for Jan Rouven Fuechtener*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 2:16-CR-100-GMN-CWH |
| Plaintiff, | |
| vs. | RESPONSE TO GOVERNMENT'S MOTION FOR AN ORDER DEEMING ATTORNEY CLIENT PRIVILEGE WAIVED |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

Defendant herein, JAN ROUVEN FUECHTENER, by and through his attorney of record, KAREN A. CONNOLLY, of the law office of KAREN A. CONNOLLY, LTD., and in responding to the Government's motion for an order deeming privilege waived and responds that he agrees that given the fact that he has moved to withdraw his guilty plea, there should be a limited waiver of the attorney client privilege in regard to communications he had with the named attorneys in regard to the guilty plea only.

/ / /

/ / /

/ / /

attyclientpriv.wpd                                          1

In the motion the government states that Rouven alleges that the failure of his attorneys to provide accurate information about the consequences of his plea rendered it coercive.   For clarification, Rouven asserts that based upon the failure of his attorneys to properly advise him as to the consequences of his plea, it was not knowing and voluntarily entered . He also asserts that based upon the attenuating circumstances discussed in the motion to withdraw the plea, it was also coerced.

DATED this 12th day of July, 2017.

**KAREN A. CONNOLLY, LTD.**

*/s/ Karen A. Connolly*
KAREN A. CONNOLLY
6600 W. Charleston Blvd., Ste. 124
Las Vegas, NV 89146
Telephone:     (702) 678-6700
*Attorney for Jan Rouven Fuechtener*

/ / /

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

**KAREN A. CONNOLLY, LTD.**

Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

### MEMORANDUM OF LAW

On November 17, 2016, on what was to be the fourth day of his trial, Defendant Jan Rouven Fuechtener (hereinafter "Rouven") pled guilty to Possession of Child Pornography in violation of 18 US Sec 2252 (a)(5)(B); Receipt of Child Pornography in violation of 18 USC Sec. 2252(a)(2) and (b); and Distribution of Child Pornography in violation of 18 USC Sec 2252 (A)(2) and (b). Rouven now seeks to withdraw his plea.

The standard under Federal Rule of Criminal Procedure 11 for withdrawing a plea is extremely liberal, and instructs that, "A defendant may withdraw a plea of guilty or nolo contendere . . . after, the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B) In the Ninth Circuit, leave to withdraw a plea prior to the imposition of sentence "should be freely granted" wherever a "fair and just" reason is presented. *United States v. Navarro-Flores*, 628 F.2d at 1184 (citing *United States v. Webster*, 468 F.2d 769, 771 (9th Cir. 1972); *Kadwell v. United States*, 315 F.2d 667, 670-71 (9th Cir. 1963)). A defendant need only present a "plausible reason" for withdrawal prior to the imposition of sentence. *Navarro-Flores*, 628 F.2d at 1184 (citing *Kercheval v. United States*, 274 U.S. 220, 224 (1927); *United States v. Erlenborn*, 438 F.2d 165, 168 (9th Cir. 1973)). "Such a motion should be considered liberally in favor of the accused." *United States v. Artabane*, 868 F. Supp. 76, 77 (M.D. Pa. 1994) (citing *United States v. Young*, 424 F.2d 1276, 1279 (3rd Cir.1970)).

### BACKGROUND

In February, 2016, attorney Jess Marchese was hired to represent Rouven. On March 31, 2016, attorneys Ben Nadig and Michael Sanft were also retained.[1] Sanft was to be actively involved in the defense of Rouven together with Marchese. Ostensibly, Nadig was to assist with Rouven's defense preparation and be available for Rouven's husband Frank Alfter, if needed. On April, 2, 2016, Sanft made an appearance on the record, Nadig never did. Though in separate law firms, it was Rouven's understanding that the lawyers could all work amicably together. He was wrong.

---

[1]   Undersigned counsel has requested retainer agreements from all of the lawyers referenced herein (except for Amber Craig whose whereabouts are unknown.) To date, *none* have been provided.

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

In May, 2016, Nadig expressed concern with the way Marchese was handling the case and urged Rouven to permit him to take over as lead counsel in place and stead of Marchese.  In the ensuing weeks/months, Rouven became increasingly worried that Sanft and Nadig were not doing anything on his case.  This belief was fueled by Marchese.  He claimed that at a fundraiser they had both attended in July, 2016, Nadig had bragged that he had been paid $100,000 for doing nothing. Marchese suggested to Rouven that he remove the Sanft/Nadig team, replacing them with attorney Ben Durham.  On July 24, 2016, Ben Durham substituted in as counsel in place and stead of Sanft.

Following their discharge, Rouven and Frank requested a refund of the $200,000 which had been paid to Nadig and Sanft;  $100,00 for Nadig and $100,000 for Sanft.  Nadig refused to refund any of the money claiming he and Sanft had worked extensively and diligently on the case. When asked to turn the file over to Marchese, he refused.

In response to the request for a refund, on September 3, 2016, Nadig penned a scathing email to Alfter wherein he maligned lead counsel Marchese and tried to get back on the case.  See, Exhibit A, redacted email from Ben Nadig to Frank Alfter dated September 3, 2016.  Therein, Nadig stated that Rouven would be convicted at trial with his current defense team.  He claimed they were incompetent and essentially motivated by greed and notoriety.  Nadig stated that Marchese was a *"desperate individual"* who had already harmed Rouven's chances of prevailing; the government was prepared for their defense and Rouven would be convicted.  He claimed Marchese went out of his way to discredit Nadig and Sanft because *"the fee was a big deal to him"* and he was *"more interested in getting his friends paid*[2] *rather than raising and adequate defense."*  Marchese wanted his friends hired so that he could run the show and that is why Nadig and Sanft were taken off. Nadig made audacious claims about his own abilities claiming that he and Sanft had secured *"NOT GUILTY"* verdicts in similar cases in federal court.[3]  He claimed Rouven would be acquitted if represented by he and Sanft stating there were *"literally a number of defenses that [he] could raise that would lead to Jan being found not guilty."*

---

[2]      Rouven hired Ben Durham and Amber Craig at the recommendation of Marchese.

[3]      Marchese claims this was a lie.

On or about September 7, 2016, unsolicited and without consent of counsel of record,[4] Nadig met personally with Rouven at Henderson jail and reiterated everything he had stated in the email to Alfter.

On September 10, 2016, after receiving a frantic call from Rouven, Durham and Marchese met with Rouven.  According to Marchese, Rouven, was "*very emotional*" and he had to "*talk him off the ledge*."  Marchese has claimed that "*Mr. Nadig scared the client by making untrue representations*" about him and his chances of winning the case.  See, Exhibit B, a redacted communication authored by Jess Marchese dated November 30, 2016.

According to Marchese, in what he described as unethical conduct, Nadig lied to Rouven in an attempt to discredit him and get back on the case thereby leaving Rouven emotionally distraught. Marchese convinced Rouven that he and Durham were prepared and better able to handle the case than were Nadig and Sanft.

As Marchese pointed out, there was an obvious conflict with Nadig representing both Rouven and Alfter.[5]  As lead counsel, Marchese should not have permitted Nadig to assist with the defense

---

[4]     NRPC Rule 4.2.   Communication With Person Represented by Counsel.   In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

[5]     NRPC Rule 1.7.  Conflict of Interest: Current Clients.

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) The representation of one client will be directly adverse to another client; or
(2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) The representation is not prohibited by law;
(3) The representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

of Rouven given the obvious conflict.  Earlier, Nadig met with both defense experts who were subsequently precluded from testifying for unrelated reasons.

After Nadig and Sanft were relieved, given Nadig's accusations that Marchese and Durham were not equipped to handle the case by themselves, Rouven thought it best to bring one more lawyer onto the defense team.  Amber Craig was recommended by Marchese.  Craig is a former Assistant United Sates Attorney.  Marchese was provided with even more funds for Craig.  The day before calender call, on October 10, 2016, she filed petition for permission to practice though not admitted to the bar of the court.  The notice completed by Craig and Marchese was a mess and incomplete.  The court directed counsel to read the local rules and resubmit a proper request for admission to practice.  As soon as they filed the corrected document, on October14, 2017, the government moved to disqualify the entire defense team because Amber Craig had confidential information about the case which she had garnered as an AUSA.  It was now mere days before trial and Rouven was facing the disqualification of his entire defense team.  A hearing was held on October 24, 2016, the day trial was actually scheduled to commence.  Craig was ordered off the case in a scathing rebuke by the court.  Though Craig took Rouven's money, she apparently did nothing on the case and has not refunded the money provided for her services.

The government seeking to recuse his entire defense team on the eve of trial was emotionally devastating for Rouven.  The two experts he had paid and was told were needed by Marchese, had already been excluded.  Now the former Assistant United State's Attorney he had hired based upon Marchese's recommendation, had also been disqualified.  Now, he was facing the disqualification of the entire defense team; he was overwhelmed with worry.

Rouven had been placed in an untenable position: facing the rest of his life in prison on heinous charges for which he had always maintained his innocence, he was caught in a tug of war between feuding factions of lawyers, each accusing the other of being incompetent and motivated by greed.  Rouven had placed his trust in Marchese who had recommended Craig who was

before a tribunal; and
(4) Each affected client gives informed consent, confirmed in writing.

Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767
KAREN A. CONNOLLY, LTD.

disqualified by the court as his trial was about to commence causing him to question the wisdom of his trust in Marchese.  With his trust in Marchese eroded, in desperation, he reached back out to the attorney his trusted entertainment lawyer, Steve Pacitti, had recommended to him in the first place; Ben Nadig.  He convinced Rouven to put Sanft back on the case.

The above and foregoing information is essential to the understanding of Rouven's state of mind when, mid way through trial, as the defense was about to begin, Marchese turned to him and suggested he take a deal- something that had never been contemplated.

## **ARGUMENT**

Rouven should be permitted to withdraw his guilty plea because:  1) Rouven did not receive effective assistance of counsel and; 2) Given the totality of the circumstances, the guilty plea was coerced.

JAN ROUVEN FUECHTENER'S GUILTY PLEA WAS NOT KNOWING AND VOLUNTARY IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

Due process guarantees under the fifth amendment require that a defendant's guilty plea be voluntary and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709 1711, 23 L.Ed.2d 274 (1969). A plea of guilty is voluntary "only if it is 'entered by one fully aware of the direct consequences' of his plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463 1472, 25 L.Ed.2d 747 (1970)

Because a guilty plea is a waiver of the Fifth Amendment's protection against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers, *Boykin v. Alabama,* 395 U.S. 238, (1969); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170-71, 22 L.Ed.2d 418 (1969), it must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742,(1970).

On the third day of trial, November 16, 2016, as the State was about to rest and his defense was to commence, Marchese asked Rouven if he would consider a plea deal.  Rouven was taken by

KAREN A. CONNOLLY, LTD.

Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

surprise since nothing unexpected had occurred during trial to cause this abrupt change in strategy. It had always been his intent to proceed to trial. Rouven was nervous and considered that Nadig had been right all along; his defense team was not prepared to defend him and he would be convicted. Marchese approached the prosecution to find out if a plea was possible. The government responded that it would need overnight to contemplate the request and prepare a plea agreement. The defense team told Rouven that the government would drop the advertising charge which carried a mandatory minimum sentence of 15 years. They indicated his exposure would be substantially reduced and he could receive a sentence as low as 5 years whereas he would get life if convicted. Rouven equivocated so his trusted entertainment lawyer, Steve Pacitti, who is not a criminal defense lawyer and is unfamiliar with United States Sentencing Guidelines, was enlisted to encourage Rouven to accept a deal even though no guilty plea agreement had been proffered. He told Rouven he *could* be out in 5 years.

None of his lawyers met with Rouven that evening. He was alone in his cell terrified about what was transpiring. The next morning, November 17, 2016, Rouven arrived at the court house at approximately 9:00AM. He anxiously waited 3 hours before anyone met with him. None of his lawyers availed themselves of the opportunity to meet with their client to discuss his Guideline exposure. When Rouven did meet with his lawyers, it was behind a mesh screen, an hour before the trial was scheduled to resume. Durham spent approximately one half hour going over the guilty plea agreement with Rouven when the marshal indicated that they needed to go into the courtroom. In the courtroom, Durham continued to read the written plea agreement with Rouven. With the judge about to enter the court room, Rouven's lawyers encouraged him to sign the deal. In his mind, Rouven, had two choices: proceed to trial with lawyers who were not prepared to defend him; or, take a deal where he believed he was facing a minimum of 5 years and at most 15. He felt that he had no choice and signed the plea agreement.

It was not until that evening that Rouven became aware of his guideline exposure during a

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

discussion with a fellow inmate[6].  The inmate also made him aware of the meaning of consecutive versus concurrent counts[7].  For the first time, Rouven became aware of the severity of the Guideline sentencing range under the plea agreement; he was alarmed and devastated.  First thing in the morning he called Marchese and advised that he wanted to withdraw his ple*a*.  During a subsequent phone conversation, Marchese reiterated to Rouven that the judge *could* give him 5 years.

DEFENSE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO ADVISE ROUVEN OF HIS EXPOSURE UNDER THE UNITED STATES SENTENCING GUIDELINES

Ineffective assistance of counsel rendered Rouven's plea involuntary.  A defendant's claim that an attorney's advice in the plea context constituted ineffective assistance of counsel under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52, (1985).  The defendant must show that his counsel fell below an objective standard of reasonableness, and must show prejudice as well. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). As to prejudice, the inquiry is whether "there is a reasonable probability that, but for the counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In the guilty plea agreement (GPA) the parties stipulated that count 1 would run consecutive to concurrent sentences imposed on counts 2 and 3. (GPA, Page 10.)  Each count carried a statutory maximum of 20 years.  Counts 2 and 3 each carried mandatory minimum of 5 years.

At no time did any of the lawyers explain to Rouven his exposure under the United States Sentencing Guidelines.  Their focus had been solely on the fact that the 15 year count was being dismissed and Rouven could get 5 years,

---

[6]    The inmate's whose name will not be disclosed a this time, is willing and able to testify about his discussion with Rouven that night.

[7]    Although Rouven is fluent in English is not his first language.  He did not understand the difference between concurrent and consecutive counts.  It was a fellow inmate who explained to him the difference.  Rouven was never asked if he needed an interpreter.

KAREN A. CONNOLLY, LTD.

Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

The base offense level set forth in the plea agreement is level 40.  Rouven was not advised that the guideline range for that base offense level is 292-365 months which is **24.3 - 30 years**.  Fair and just reason to withdraw a plea may exist where a defendant is misinformed about the basic sentence range he is facing, <u>United States v. Toothman</u>, 137 F.3d 1393, 1399-1400 (9th Cir. 1998).

Taking into consideration specific offense characteristic which were never discussed with Rouven, as set forth in the Presentence Investigation Report (PSR), the base offense level is not 40, it is a considerably higher level 47.  Under the Guidelines an offense level of 43 and above is **LIFE!** USSG Sec. 5 A (Sentencing Table) Rouven was never told that the Guideline range under the plea was **LIFE**.  The concept of specific offense characteristics and their affect on the Base Offense Level and Guideline range, was not explained to Rouven.

The guilty plea agreement (GPA) states that the court can consider all relevant conduct. (GPA Page 8.)  The concept of relevant conduct was not explained to Rouven.  Potential applicable enhancements were not discussed.

Rouven submits it is ineffective assistance per se for counsel to advise a client to accept a "deal" with a guideline range of Life!  The guidelines themselves recognize the rarity of a guideline range above 43.

"In rare cases......, a total offense level more than 43 may result from the application of the guidelines.  A total offense level or more than 43 is to be treated as an offense level 43.  Chapter USSG Chapter 5, part A, (comment n.2.)

With two points off for acceptance of responsibility, USSG Sec 3E1.1(a) the adjusted base offense level is 45 with a requisite sentence under the Guidelines of **LIFE.**

Maximum terms of life are not even available under the charged statutes. The Guideline range is higher than the statutory maximums.  Under the Guidelines "[w]here the statutorily authorized sentence is less than the minimum of the applicable guideline range, the statutorily authorized sentence [is] the guideline sentence."  USSG Sec. 5G1.1(a), PSR, paragraph 107.  The maximum statutorily authorized penalties for each count is 20 years for count one; 20 years for count 2; and 20 years for count 3, for a Guideline range of 720 months or 60 years.

As stated by the United States Department of Parole and Probation in the PSR, paragraph

133:

> *"The defendant's current guidelines, if adopted*
>
> *by the court, recommend a sentence of life to 720 months; the rest of his life*."

This was the "deal" negotiated by Rouven's lawyers.

Rouven was not advised that there were grounds for the government to ask for even more time. He was not aware that there were grounds for the government to seek an upward departure based upon the number of images and length of recordings.  5K2.0 (a)(1)(B), PSR paragraph 128, and length of visual depiction, as discussed in paragraph 129 of the PSR.

The only way Rouven can avoid a life sentence under the terms of the "deal," is if the district court grants him a *generous,* significant downward variance.  The same thing the court could do if Rouven had continued with trial and was convicted.  Although the guidelines are advisory, district courts are directed to grant variances only when a case falls outside the heartland of cases.  Rita v. United States, 551 U.S 338 (2007)  When the district court decides that an outside-Guidelines sentence is warranted, the court must consider and explain "the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Gall v. United States, 552 U.S. 38 (2007) In order for Rouven to avoid a life sentence, the district court has to be convinced that his case falls outside the "heartland."  The fact that Rouven will never see freedom unless the court grants an enormous, discouraged, downward variance, was never even mentioned. The government will undoubtably argue against such a variance.  Significantly, the Guidelines generally forbid downward departures in child pornography cases.  See, USSG 5K2.0 The possibility of a 5 year sentence, which Rouven was led to believe was feasible, is a virtual impossibility.  In short, there was no benefit to Rouven in accepting the plea negotiations.

In context of requests to withdraw a plea, the case of alleged erroneous or inadequate legal advice, the defendant must demonstrate that proper advice "'could have at least plausibly motivated a reasonable person in [the defendant's] position not to have plead guilty had he known about [the erroneous advice] prior to pleading.'" *United States v. Mayweather*, 634 F.3d 498, 504 (9th Cir. 2010) (quoting *United States v. Garcia,* 401 F.3d 1008, 1011-12 (9th Cir. 2005) (first alteration in

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700   Facsimile: (702) 678-6767

original)).  If Rouven had known that under the terms of the "deal" he would avoid a life sentence if and only if the district court granted him a generous, discouraged variance, he would have never accepted the plea.  He was not aware that the court could grant a downward variance even if he continued with his trial and was convicted.

An attorney's failure to predict accurately a defendant's sentence will not constitute a "fair and just reason for requesting the withdrawal" unless the attorney "grossly mis-characterized" the possible sentence and the defendant demonstrates that this "plausibly could have motivated his decision to plead guilty." *United States v. Davis*, 428 F.3d 802, 808 (9th Cir. 2005); see also *United States v. Briggs*, 623 F.3d 724, 729 (9th Cir. 2010).  Counsel's grossly mis-characterized Rouven's exposure under the plea agreement. Where a defendant enters a plea of guilty upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " Hill v. Lockhart, 474 U.S. 52, 56, 106 (1985)

An attorney's performance is deficient if it is not "reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.  Failure to review the USSG with Rouven, was not reasonable or competent representation.

"A claim of ineffective assistance may be used to attack the voluntariness and hence the validity of a guilty plea." *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir.1990).  To establish a claim of ineffective assistance of counsel, the petitioner must show that counsel's advice was both defective and prejudicial. Id.  Rouven has met his burden.  Moreover, the plea agreement speaks for itself in that regard

To be valid, a guilty plea must be voluntary, knowing and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).  Rouven's plea was not knowing, intelligent and voluntary and thus amounted to a due process violation.  "Due process ... require[s] that a defendant's guilty plea be voluntary and intelligent." Id. at 235 (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)).

A plea of guilty is voluntary "only if it is 'entered by one fully aware of the direct

attyclientpriv.wpd                                                  12

consequences' of his plea." *Carter v. McCarthy* 806 F.2d at 1373 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463 1472, 25 L.Ed.2d 747 (1970) Rouven was not advised of all of the direct consequences of his plea.   Rouven's plea is constitutionally infirm.   Moreover, under the circumstances, his plea was coerced given the behavior and actions of the defense lawyers.

ROUVEN'S GUILTY PLEA WAS COERCED UNDER THE TOTALITY OF CIRCUMSTANCES

Because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney," counsel have a duty to supply criminal defendants with necessary and accurate information. The gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys.   *Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986)

The actions of his lawyers render Rouven's plea involuntary. A guilty plea can be rendered involuntary by the actions of defense counsel. *Iaea v. Sunn*. 800 F.2d 861, 867 (9th Cir.1986). Coercion is a basis for withdrawing a plea. *United Sates v. Caro*, 997 F.2d 657 (9th Cir, 1992)

To determine the voluntariness of a guilty plea, we examine the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 Under the totality of circumstances, the plea was involuntary. The concern is not solely with the subjective state of mind of the defendant, but also with the constitutional acceptability of the external forces inducing the guilty plea. *Id.* The nature and circumstances of the guilty plea render it coercive.   The shenanigans amongst the defense lawyers render the plea involuntary.   Moreover, the one lawyer Rovuen entrusted implicitly was Steve Pacitti, his entertainment lawyer. When Rouven expressed reluctance in considering a plea offer, Pacitti, who had no familiarity with the practice of federal criminal defense, was enlisted to counsel Rouven to accept the plea. Pacitti confirmed what had already been told to Rouven; that he could be out in as little as five years.   Pacitti did no independent research but merely parotted what defense counsel had told him.

It is axiomatic that to be voluntarily and understandingly made a plea of guilty must be solely

KAREN A. CONNOLLY, LTD.

Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

the product of the accused's informed free will. A guilty plea is not voluntary and must be stricken if that free will is overborne by the prosecutor or by the accused's lawyer. See *Mosher v. Lavallee,* 491 F.2d 1346 (2 Cir. 1974); *Wellnitz v. Page*, 420 F.2d 935, 936 (10 Cir. 1970)

The Ninth Circuit have historically applied different tests for a defendant seeking to withdraw a guilty plea based on a due process violation and a defendant seeking to withdraw a guilty plea based on ineffective assistance of counsel.  See *Torrey v. Estelle*, 842 F.2d 234, 235–37 (9th Cir.1988).  Rouven is seeking to withdraw his plea due to both ineffective assistance of counsel and based upon a due process violation.

Rouven's request should be considered liberally and in his favor.  *United States v. Artabane*, 868 F. Supp. 76, 77 (M.D. Pa. 1994) (citing *United States v. Young*, 424 F.2d 1276, 1279 (3rd Cir.1970)).  He has shown fair and just reason for requesting the withdrawal.  Given that leave to withdraw a plea prior to the imposition of sentence should be freely granted and that he has presented more than a "plausible reason" for withdrawal, prior to the imposition of sentence.  His request should be granted.  See, FRCP 11, *Navarro-Flores*, 628 F.2d at 1184 (citing *Kercheval v. United States*, 274 U.S. 220, 224 (1927); *United States v. Erlenborn*, 438 U.S. 165, 168 (9th Cir. 1973)).

## **CONCLUSION**

The totality of circumstances surrounding the entry of Jan Rouven's Fuechtener's guilty plea dictate that he should be permitted to withdraw the plea. An evidentiary hearing is warranted.

DATED this 12th day of July, 2017.

**KAREN A. CONNOLLY, LTD.**


*/s/ Karen A. Connolly*
KAREN A. CONNOLLY
6600 W. Charleston Blvd., Ste. 124
Las Vegas, NV 89146
Telephone:    (702) 678-6700

/ / /

/ / /

KAREN A. CONNOLLY, LTD.
Karen A. Connolly
6600 W. Charleston Blvd., Ste. 124, Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of KAREN A. CONNOLLY, LTD., and on the

12th day of July, 2017, I served a true and correct copy of the above and foregoing ***Response to***

***Government's Motion for an Order Deeming Attorney Client Privilege Waived*** via the CM/ECF

system upon the following:

Cristina D. Silva, United States Attorney
Daniel D. Hollingsworth, United States Attorney
Elham Roohani, United States Attorney
Lisa Cartier-Giroux, United States Attorney
Mark E. Woolf, United States Attorney

*/s/ Shaeley Pilayo*
an Employee of KAREN A. CONNOLLY, LTD.

Karen A. Connolly
KAREN A. CONNOLLY, LTD.
6600 W. Charleston Blvd., Ste. 124,Las Vegas, Nevada 89146
Telephone: (702) 678-6700  Facsimile: (702) 678-6767

attyclientpriv.wpd

15