1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA,            )
8                        Plaintiff,      )        Case No.  2:16-cr-00100-GMN-CWH
                                         )
9   vs.                                  )        **REPORT & RECOMMENDATION**
                                         )
10  JAN ROUVEN FUECHTENER,               )
                                         )
11                       Defendant.      )
    _____)

12

13          This matter is before the court on the issue of Defendant Jan Rouven Fuechtener and

14   interested party Frank Alfter's respective interests and rights in the $975,300 that the court ordered

15   First American Title to deposit with the Clerk of Court.  (R&R (ECF No. 180); Certificate of Cash

16   Deposit (ECF No. 183).)  The government and Mr. Alfter filed simultaneous briefs (ECF Nos. 187,

17   188) on this issue on June 16, 2017.  The government and Mr. Alfter filed simultaneous responses

18   (ECF Nos. 196, 197) on June 23, 2017.  Defendant did not file an opening brief or a response, and

19   it is therefore the court's understanding that he does not take a position on the specific issue of

20   Defendant and Mr. Alfter's respective interests and rights in the $975,300.[1]  After reviewing the

21   parties' briefs, the court vacated the evidentiary hearing that was set in this matter given that there

22   are no factual issues that need to be resolved.  (Order (ECF No. 199).)

23   **I.       BACKGROUND**

24          The parties are familiar with the facts of this case and the court will not repeat them here

25   except where necessary.  On May 18, 2017, the government filed an emergency motion requesting

26   _____

27          [1]  The court notes, however, that Defendant objected to the order restraining the funds, arguing
     the funds were withheld based on concessions Defendant made in the plea agreement that Defendant is
28   seeking to withdraw.  (Objection (ECF No. 185).)  At the hearings held regarding this matter, Defendant
     also presented arguments against restraining the funds.  (Mins. of Proceedings (ECF Nos. 167, 172,
     179.)

an order restraining distribution of the sale proceeds[2] of Defendant's former primary residence located at 7080 Donald Nelson Avenue, Las Vegas, Nevada 89131. (Mot. for Restraining Order Under All Writs Act (ECF No. 164).) The parties do not dispute that the property was owned by the F.A.J.R. Magic Trust dated October 4, 2012. (Deed of Sale (ECF No. 173-1) (purchase of the property by the trust); Deed of Sale (ECF No. 187-1) (sale of the property by the trust).) Nor do the parties dispute that Defendant and Mr. Alfter are the grantors, co-trustees, and primary beneficiaries of the trust. (The F.A.J.R. Magic Trust dated October 4, 2012 (ECF No. 188-1) at p.2, ¶ 4.1.)

The trust provides that its primary beneficiaries, i.e., Defendant and Mr. Alfter, are "entitled to all benefits of this Trust until their deaths." (*Id.* at ¶ 4.1.) The trust provides that the trustees, i.e., Defendant and Mr. Alfter, "shall have full and absolute discretion to act with the Trust property and to make or not make disbursements to beneficiaries." (*Id.* at ¶ 2.1(c).) The trustees are not required to obtain consent "from any person, entity, or court prior to making a final decision as to any matter relating to the Trust." (*Id.*) The trust further provides that:

> A Trustee is authorized and empowered to manage, care for, improve, protect, control, deal with, sell and otherwise dispose of the trust estate or any part of it, in his or her absolute discretion, in any and every way in which any responsible and prudent owner could manage, care for, improve, protect, control, deal with and otherwise dispose of the same.

(*Id.* at ¶ 3.2.) Regarding distribution of assets to its beneficiaries, the trust provides that "the net income and principal from the Trust shall be distributed to the Primary Beneficiaries as is necessary, in the sole discretion of the Trustee or Trustees, for the support, happiness and health needs of the Primary Beneficiaries." (*Id.* at ¶ 5.1.) For decisions made regarding the trust, "[i]f for any reason more than one Trustee is appointed, a majority vote of the Trustee shall be binding upon the Trust. If there are only two Trustees and a deadlock occurs, the next Successor Trustee shall cast the deciding vote." (*Id.* at ¶ 2.4.) The trust is a revocable trust. (*Id.* at ¶¶ 1.2, 9.1.) Thus, with the consent of both grantors, i.e., Defendant and Mr. Alfter, "the Grantors may at their discretion

---

[2]  The recorded declaration of value states that the sale price was $1,400,000. (Deed of Sale (ECF No. 187-1) at 8.) Mr. Alfter represents that the sale proceeds due to the trust at closing were $1,318,868.82. (Supp. Brief (ECF No. 188) at 2.)

make demands upon the Trustees to return all of the Grantor's former property that is now property of the estate to the Grantors." (*Id.* at ¶ 9.1.)

After holding multiple hearings and considering briefs on an expedited basis, the court concluded that an order restraining the disbursement of $975,300 from the escrow account to the trust was sufficient to prevent the frustration of collection of the anticipated restitution order and further the court's exercise of its jurisdiction over sentencing by ensuring assets are available to satisfy the pending restitution order.[3]  (Order (ECF No. 178) at 2-3.)  Thus, on June 1, 2017, the court ordered First American Title, the escrow/title company involved in the sale of the property, to deposit a total of $975,300 with the Clerk of Court.  (*Id.* at 3.)

The court emphasized that the purpose of restraining the funds was to temporarily maintain the status quo and to prevent the dissipation of assets that Defendant has agreed to pay by way of the plea agreement for the relatively short period of time from now until sentencing.[4]  (R&R (ECF No. 180) at 5.)  Further, the court requested additional briefing on Defendant and Mr. Alfter's respective interest in the proceeds from the sale of the property to ascertain that funds deposited with the Clerk of Court are funds under Defendant's control and may be used to pay any fine, forfeiture, or restitution ordered by the court at sentencing.[5]  (*Id.*)

The government argues that property interests held in trust are available for the satisfaction of court-imposed criminal monetary penalties, including restitution.  The government further argues that under the trust's terms, Defendant has a one hundred percent vested and present interest

---

[3]  Sentencing is currently set for August 18, 2017.  (Order (ECF No. 193).)

[4]  After the undersigned ordered the funds to be deposited with the court, Defendant moved to withdraw his plea.  (Mot. to Withdraw Plea (ECF No. 194).)  The government conceded in prior briefing and at the hearing held on June 1, 2017, that if Defendant is allowed to withdraw his plea, continued withholding of the $975,300 no longer would be appropriate.  (*See* Supp. Authority for Presentence Restraint of Sale Proceeds (ECF No. 173) at 7.)  Thus, if the United States district judge assigned to this case allows Defendant to withdraw his plea, the undersigned recommends that the $975,300 be released to the trust.

[5]  In his plea agreement, Defendant agreed, among other things, that he would "release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered by the Court."  (Plea Agreement (ECF No. 146) at 15.)

3

1   in the sale proceeds and full individual control over the entirety of the proceeds. According to the

2   government, under the trust's terms, Defendant in his sole discretion may make a distribution to a

3   primary beneficiary of the trust, i.e., Defendant, without the consent of any other trustee, i.e., Mr.

4   Alfter. The government contends that although Mr. Alfter has the same unfettered discretion as

5   Defendant to deal with the trust property without consent of the other, it does not prevent the

6   government from attaching the entirety of Defendant's interest to prevent dissipation of funds

7   pending sentencing. The government also argues that because the trust is revocable, the Defendant

8   and Mr. Alfter, in their capacity as the grantors, effectively retained ownership of the trust property.

9        Mr. Alfter argues the sale proceeds held by the trust do not qualify as property that is

10  subject to execution by the government. Specifically, Mr. Alfter argues that under Nevada Revised

11  Statutes §§ 163.419(1) and 163.4185, Defendant and Mr. Alfter, as beneficiaries, hold a

12  discretionary interest in the trust with no enforceable right to a distribution from the trust. Mr.

13  Alfter further argues that under the trust, decisions about the trust's assets, including distributions,

14  require a joint decision by Defendant and Mr. Alfter as co-trustees. Mr. Alfter therefore argues that

15  at best, the government may apply to attach trust distributions made to Defendant, if and when a

16  distribution is authorized by both trustees. Mr. Alfter further argues that Defendant cannot have

17  unilateral control over the trust because there are various provisions in the trust, including a

18  deadlock provision, that require decisions regarding the trust property to be made jointly by both of

19  them as co-trustees. Finally, Mr. Alfter argues that because the sale proceeds belong to the trust, a

20  restitution order may not be enforced against the trust because it is not a party to this action and

21  there is not a judgment against the trust.

22  **II.     ANALYSIS**

23       The government may enforce a federal restitution order or sentence to pay a fine under 18

24  U.S.C. §§ 3611-3614. *See* 18 U.S.C. § 3664(m) (enforcement of restitution order); § 3574

25  (implementation of sentence to pay a fine). Regarding collection, § 3613(a) provides that subject to

26  / / /

27  / / /

28  / / /

4

certain exceptions,[6] a criminal judgment imposing a fine or restitution "may be enforced against all property or rights to property of the person fined." 18 U.S.C. § 3613(a). Further, a criminal judgment imposing a fine or restitution "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c); *see also United States v. Harris*, 854 F.3d 1053, 1055 (9th Cir. 2017) (per curiam). Congress used "broad language" in the statutes governing tax liens "so as to reach every interest in property that a taxpayer might have." *Harris*, 854 F.3d at 1055 (quotation omitted).

One of the means available to the government to enforce a criminal judgment is the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001 et seq., which allows collection on the criminal judgment in a manner similar to a judgment in a civil case.[7] The FDCPA defines "property" as "any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)) . . . . 28 U.S.C. § 3002(12). "In determining whether a property right falls within this definition, 'the important consideration is the breadth of the control the taxpayer could exercise over the property, which we assess with reference to the state law governing the right." *Harris*, 854 F.3d at 1055 (quoting *Drye v. United States*, 528 U.S. 49, 61 (1999)). Thus, to determine whether Defendant's interest in the trust fits within the "expansive definition of property," under the FDCPA, the court must look to Nevada law. *See Harris*, 854 F.3d at 1055.

In Nevada, a trust generally is irrevocable "except to the extent that a right to amend or revoke the trust is expressly reserved by the settlor." Nev. Rev. Stat. § 163.004(2). A revocable

---

[6] Mr. Alfter does not argue that any of these exceptions apply. The court reviewed these exceptions and finds that based on the information provided by the parties, these exceptions are not applicable in this case.

[7] Additionally, the FDCPA incorporates the All Writs Act—the authority the court relied on in this case to restrain the funds pending sentencing—as a tool for enforcing the collection of judgments. *See* 28 U.S.C. § 3202(a).

5

1   trust provides its beneficiaries with "only a contingent interest, at most, while the settlor is still

2   alive." *Linthicum v. Rudi*, 148 P.3d 746, 749 (Nev. 2006). Thus, a beneficiary's interests in a

3   revocable living trust are "subject to complete divestment while the settlor [is] alive."[8] *Id.*

4       A beneficiary's distribution interests fall into three categories: a mandatory interest, a

5   support interest, and a discretionary interest. Nev. Rev. Stat. § 163.4185(1)(a)-(c). A mandatory

6   interest exists "if the trustee has no discretion to determine whether a distribution should be made,

7   when a distribution should be made or the amount of the distribution." *Id.* at § 163.4185(1)(a). A

8   support interest exists if it "contains a standard for distribution for the support of a person which

9   may be interpreted by the trustee or a court, as necessary." *Id.* at § 163.4185(1)(b). A discretionary

10  interest exists "if the trustee has discretion to determine whether a distribution should be made,

11  when a distribution should be made and the amount of the distribution." *Id.* at § 163.4185(1)(c).

12  "A beneficiary who has a discretionary interest in a trust does not have an enforceable right to a

13  distribution from the trust, and a court may review a trustee's exercise of discretion concerning a

14  discretionary interest only if the trustee acts dishonestly, with bad faith or willful misconduct." *Id.*

15  at § 163.419(1).

16      Here, the trust is revocable. Thus, in their capacities as beneficiaries, Defendant and Mr.

17  Alfter have a contingent interest that is subject to divestment while the trust's grantors, i.e.,

18  Defendant and Mr. Alfter, are alive. Although the parties dispute whether Defendant's contingent

19  beneficiary interest is a discretionary or support interest, the court finds that it need not reach this

20  question as it is Defendant's current powers as a grantor and a trustee that bear on whether

21  Defendant has control over the trust's property.

22      Certain provisions of the trust indicate that joint action by the trustees or grantors is

23  required. These provisions suggest that Defendant cannot act unilaterally in his capacity as a

24  _____

25      [8] Under Nevada Revised Statutes § 163.003(1), the settlor creates the trust by "manifest[ing] an

26  intention to create a trust." The court understands the trust's use of the term "grantor" to be equivalent
    to a settlor under § 163.003(1) given that the trust's grantors, Defendant and Mr. Alfter, are the parties

27  assigning, transferring, and convening property into the trust under paragraph 1.2 of the trust. *See
    Grantor*, Black's Law Dictionary (10th ed. 2014) (defining "grantor" as "[s]omeone who conveys

28  property to another.").

grantor or trustee as to all matters related to the trust.  For instance, the provision titled "Trustee Selection" refers to the trustees jointly, stating that as a general matter, "the Trustees shall have the unrestricted rights as defined in this Agreement to act with the Trust property in any manner deemed in the Trustees' sole discretion to be in the best interest of the Trust or Beneficiaries . . . ." (Trust (ECF No. 188-1) at ¶ 2.1.)  Another provision titled "Trustees' Absolute Discretion" is somewhat ambiguous as to whether Defendant may act unilaterally as a trustee, as it again refers to the trustees in the plural form, stating that "the Trustees shall have full and absolute discretion to act with the Trust property and to make or not make any distributions to beneficiaries," but then goes on to state that in exercising this discretion, "[t]here is no requirement that any consent be obtained from any person, entity or court prior to making a final decision as to any matter relating to the Trust."  (*Id.* at ¶ 2.1(C).)  Another provision titled "Majority Vote of Multiple Trustees" states that if there are only two trustees and a deadlock occurs, the next successor trustee casts the deciding vote.  (*Id.* at ¶ 2.4.)  But it does not specify which decisions implicate the deadlock procedure.  (*See id.*)  Joint action by the grantors also is required to revoke the trust and to return the grantors' former property from the trust to the grantors.  (*Id.* at ¶ 9.1.)

In contrast, other trust provisions explicitly allow a trustee to act individually.  Importantly, those provisions allowing the trustee to act individually are the provisions dealing with the trustee's powers to manage, dispose of, and make distributions of the trust property to the beneficiaries. Specifically, the provision titled "Trustee's Enumerated Powers" refers to the trustee in the singular form and states as follows:

> A Trustee is authorized and empowered to manage, care for, improve, protect, control, deal with, sell and otherwise dispose of the trust estate or any part of it, in his or her absolute discretion, in any and every way in which any prudent owner could manage, care for, improve, protect, control, deal with and otherwise dispose of the same.

(*Id.* at ¶ 3.2.)  The provision governing "Distribution of Assets During the Lifetime of the Primary Beneficiaries" refers to the trustees in the disjunctive form, stating "the net income and principal from the Trust shall be distributed to the Primary Beneficiaries as is necessary, in the sole discretion of the Trustee or Trustees, for the support, happiness, and health needs of the Primary Beneficiaries."  (*Id.* at ¶ 5.1.)  The same provision further provides "[t]he Trustee has full discretion

7

1    to withhold all income and principal if such is in the best interest of any of the Beneficiaries." (*Id.*)

2        Given that the trust explicitly allows the trustees to act individually concerning the

3    management and distribution of trust property, the court finds that in his current capacity as a

4    trustee, Defendant may distribute trust funds to the beneficiaries, i.e., to himself, regardless of the

5    character of the beneficial interest.  Thus, the trust funds are under his control in his current

6    capacity as a trustee and can be used "to pay any fine, forfeiture, or restitution ordered by the

7    Court" as stated in the plea agreement.  (Plea Agreement (ECF No. 146) at 15.)  Given the breadth

8    of Defendant's current control over the trust property under the trust's explicit terms, as well as the

9    FDCPA's expansive definition of property to include funds held in trust, the court finds that

10   Defendant's interest in the trust falls under the FDCPA's definition of "property" in 28 U.S.C.

11   § 3002(12).

12       Regarding Mr. Alfter's argument that the sale proceeds belong to the trust and that a

13   restitution order may not be enforced against the trust because it is not a party to this action, Mr.

14   Alter cites cases holding that a federal restitution order may be enforced only as against property

15   that is the defendant's own under state law.  *See United States v. Dann*, 652 F.3d 1160, 1179 (9th

16   Cir. 2011), *United States v. Berger*, 574 F.3d 1202, 1205 (9th Cir. 2009).  In *Dann*, the Ninth

17   Circuit held that under California law, child support arrearages owed to a criminal defendant

18   actually belong to the minor child, rather than to the parent who is the conduit for that support, and

19   therefore may not be assigned to a victim under a criminal restitution order.  652 F.3d at 1179-82.

20   This case is distinguishable from *Dann* because it is undisputed that Defendant is a grantor, trustee,

21   and beneficiary of the trust who may exercise control over the funds under the terms of the trust

22   and Nevada law—not merely a conduit for funds that belong to someone else.  In *Berger*, the Ninth

23   Circuit held that under California law, a criminal restitution judgment may be enforced against

24   community property funds, including the portion of community funds that potentially would be

25   awarded in a divorce to an innocent spouse who was not involved in the crime.  574 F.3d at 2105-

26   06.  Community property issues are outside the arguments raised by the parties in this case, thus,

27   the court does not express an opinion on whether there would be a similar result under Nevada's

28   community property laws.  Thus, it appears *Berger* is inapposite in this case.

8

The court therefore will recommend that the funds continue to be held pending sentencing to promote the court's jurisdiction over sentencing by ensuring sufficient assets are available to satisfy the pending fine and restitution order.

**III.    RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the court order the Clerk of Court to continue holding the $975,300 pending sentencing to satisfy any criminal monetary penalties, with any remainder returned to the trust.

IT IS FURTHER RECOMMENDED that if the court permits Defendant Jan Rouven Fuechtener to withdraw his plea, the court should order the Clerk of Court to release $975,300 to the F.A.J.R. Magic Trust dated October 4, 2012, as stated in the certificate of deposit (ECF No. 183).

**IV.    NOTICE**

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 24, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

9