LAW OFFICES OF IVETTE AMELBURU MANINGO, ESQ.
IVETTE AMELBURU MANINGO, ESQ.
NEVADA BAR NO. 7076
400 S. 4th Street, Suite 500
Las Vegas, Nevada 89101
(T): (702) 793-4046
(F): (844) 793-4046
EMAIL: iamaningo@iamlawnv.com
*Attorney for Frank Alfter*

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 2:16-cr-00100-GMN-CWH |
| ) | |
| v. ) | |
| ) | |
| JAN ROUVEN FUECHTENER, ) | |
| ) | |
| Defendant. ) | |

**OBJECTION TO MAGISTRATE JUDGE'S JULY 24, 2017 REPORT & RECOMMENDATION #207 RESTRAINING SALE PROCEEDS**

COMES NOW, FRANK ALFTER, by and through undersigned counsel, Ivette Amelburu Maningo, of the Law Offices of Ivette Amelburu Maningo, appearing in a limited capacity in this case, and respectfully submits this Objection to Magistrate Judge's July 24, 2017 Report & Recommendation #207 Restraining Sale Proceeds.

DATED this 4th day of August, 2017.

**Law Offices of Ivette Amelburu Maningo**

/s/ Ivette Amelburu Maningo
IVETTE AMELBURU MANINGO, ESQ.
Nevada Bar No.: 7076
400 S. 4th Street, Suite 500
Las Vegas, Nevada 89101
(T): (702) 793-4046
(F): (844) 793-4046

*Attorney for Frank Alfter*

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. **FACTS**

On November 17, 2016, the Defendant, Jan Rouven Fuechtener, plead guilty to several counts in this case. Fuechtener's motion to withdraw his plea was filed on June 22, 2017 and is currently pending before this Honorable Court.

Frank Alfter is currently married to the Defendant. Defendant and Frank Alfter resided in a home located at 7080 Donald Nelson Avenue in Las Vegas, Nevada 89131. Said residence was purchased several years before the marriage and titled in the name of the F.A.J.R. Magic Trust, in which Frank Alfter and Jan Rouven Fuechtener are designated as Grantors, Trustees and Beneficiaries of said trust. The Donald Nelson property was sold and closed on May 25, 2017. At closing, the proceeds of the sale due to the Trust was $1,318,868.82.

The Government filed an Emergency Motion For Restraining Order Under All Writs Act which was heard by the Magistrate Judge C.W. Hoffman, Jr. on May 24, 2017. The Government requested an order restraining distribution of the proceeds from the sale of the Donald Nelson property for payment of restitution in the Defendant's case. The Magistrate entered an order filed on May 25, 2017, restraining the distribution of $80,300 ($65,000 in restitution and $15,300 in special assessments) from the proceeds of the sale of the Donald Nelson property. In doing so, the Magistrate found that said amount was sufficient, as that was the amount that could be attached to identified victims. Therefore, the title company handling the matter, First American Title, was directed to deposit the $80,300 from the proceeds of the sale with the Clerk of the Court.

Thereafter, the Government filed an Emergency Motion requesting modification of the Order. At that time, the Government requested that the Magistrate issue a temporary order to the escrow company to deposit all of the proceeds with the Court Clerk until the District Court could rule on the Government's objection to the Magistrate Judge's Report and Recommendation. The

Magistrate heard further argument on this matter during a telephonic hearing on May 26, 2017, declined to issue the requested order restraining more than the $80,300 and confirmed the May 25, 2017 Order was to remain in full effect. The Magistrate further ordered supplemental briefing and a hearing was scheduled for June 1, 2017 before the Magistrate Judge. At that juncture, Mr. Frank Alfter, as an interested party in the proceedings, intervened and filed pleadings in support of his position. Mr. Alfter was also represented by the undersigned counsel at the June 1, 2017 hearing. At said hearing, the Magistrate issued a Report and Recommendation which modified its previous orders and directed First American Title to deposit further funds with the Clerk of Court pending Defendant's sentencing hearing. As such, the funds deposited with the clerk totaled $975,300. The Magistrate also ordered additional supplemental briefing and scheduled an evidentiary hearing for July 6, 2017 regarding Defendant and Mr. Alfter's respective interests and rights in the $975,300.

Thereafter, the parties filed their respective supplemental briefs and on June 28, 2017, the Magistrate issued an Order vacating the evidentiary hearing originally scheduled for July 6, 2017 and took the matter under submission. Finally, on July 24, 2017, the Magistrate issued a Report and Recommendation recommending that the Court Clerk continue holding the $975,300 pending Defendant Fuechtener's sentencing to satisfy any criminal monetary penalties, with any remainder returned to the trust. The Magistrate further recommended that if Defendant Fuechtener was permitted to withdraw his guilty plea, the $975,300 was to be released to the F.A.J.R. Magic Trust. This Objection follows.

## II. LEGAL STANDARD

Pursuant to the Local Rules of Practice for the United States District Court for the District of Nevada, any party wishing to object to a magistrate judge's findings and recommendations must file and serve specific written objections with supporting points and authorities within 14 days

after service of the findings and recommendations.[1]  Objections to a magistrate judge's report and recommendations are reviewed by the District Court de novo.[2]

## III. LEGAL ARGUMENT

### OBJECTION TO THE REPORT AND RECOMMENDATION REGARDING INTERPRETATION OF THE TRUST'S PROVISIONS

The Report and Recommendation ("R&R") has findings of law regarding Defendant's ability to act individually concerning the management and distribution of trust property by distributing trust funds to himself as a beneficiary.  These findings are unsupported by any facts or law.[3]  Specifically, the R&R states that because certain Trust provisions refer to Trustee in the singular form, any Trustee can ignore the clear and unambiguous language in paragraphs 2.4 and 5.1 which require the Trustees to agree before making decisions regarding distributions to beneficiaries.[4]  This is a clear error of law.

"The starting point for the interpretation of any contract is the plain language of the contract."[5]  Because contract interpretation is substantive in nature, and not procedural, the choice of law provisions prevail as it relates to applying federal or Nevada law concerning parol evidence.[6]  Here, Nevada law applies to the interpretation of the Trust as Section 12.1 of the Trust contains a choice of law provision designating Nevada law.[7]  "A basic rule of contract interpretation is that every word must be given effect if at all possible."[8]  Further, "A court should

---

[1] LR IB 3-2(a).
[2] Fed R. Civ. Proc. 72(b)(3).
[3] Report and Recommendation (ECF No. 207) at 8:5-7.
[4] Id. generally.
[5] Keife v. Metro. Life Ins. Co., 797 F. Supp. 2d 1072, 1075 (D. Nev. 2011) (citing McDaniel v. Sierra Health and Life Ins. Co., Inc., 118 Nev. 596, 53 P.3d 904 (2002)).
[6] See State v. ex rel List v. Courtesy Motors, 94 Nev. 103, 590 P.2d 163 (1979) (noting that the parol evidence rule is not just an evidentiary rule, but a substantive rule that applies in equity as well as at law.).
[7] Trust (ECF No. 188-1) at 12.1.
[8] Musser v. Bank of Am., 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (internal quotations omitted).

4

not interpret a contract **so as to make meaningless its provisions**."[9]

Here, the underlying issue at hand is whether Defendant has a <u>property right or interest in the Trust's property</u> subject to the restitution order.[10] Curiously however, the R&R states that Defendant's capacity as a Grantor bears on whether he has control over the property.[11] Yet, the R&R later concedes that Defendant has no unilateral control over the Trust's assets in his capacity as a Grantor without Mr. Alfter's consent.[12] Thus, Defendant's capacity as Grantor is irrelevant as Grantors have no unilateral rights to the Trust's assets.

Further, the R&R states that Defendant, "in his current capacity as a trustee, [] may distribute trust funds to the beneficiaries, i.e., to himself…" because "the trust explicitly allows the trustees to act individually concerning the management and distribution of trust property."[13] Again, Defendant's ability to manage the Trust's assets as Trustee is completely irrelevant as to whether Defendant has a <u>property right or interest in the Trust's property</u> that could be subject to the Government's restitution order.[14]

Pursuant to NRS 163.020(a), a trustee is "the person **holding property in trust** and includes trustees, a corporate as well as a natural person and a successor or substitute trustee."[15] As such, but for Defendant's dual capacity as Trustee and Beneficiary, the Trust does not grant Trustees an interest or property right in the Trust's property—only the power to hold and manage the Trust's assets on behalf of the Trust and its beneficiaries.[16] Therefore, the only relevant

---

[9] <u>Id</u>. (emphasis added) (internal quotations omitted); <u>Bielar v. Washoe Health Sys., Inc.</u>, 129 Nev. Adv. Op. 49, 306 P.3d 360, 364 (2013).
[10] <u>See</u> 18 U.S.C. §§ 3613(a) (stating a restitution order under the MVRA may be enforced against all property or property rights of the person owning on the judgment).
[11] Report and Recommendation (ECF No. 207) at 6:18-21.
[12] <u>Id</u>. at 7:13-15; Trust (ECF No. 188-1) at ¶ 9.1.
[13] Report and Recommendation (ECF No. 207) at 8:2-5.
[14] <u>See</u> 18 U.S.C. §§ 3613(a) (stating a restitution order under the MVRA may be enforced against all property or property rights of the person owning on the judgment).
[15] NRS 132.020(a) (emphasis added).
[16] <u>See</u> Trust (ECF No. 188-1) at Article 2, <u>generally</u>

consideration is whether the Trust permits the Trustees to unilaterally make distributions to the Trust's beneficiaries.

The R&R cites to paragraph 3.2 for the proposition that the use of Trustee in the singular form "explicitly allows the Trustees to act individually concerning the management and distribution of the trust property."[17] However, paragraph 3.2 is entirely devoid of any language expressly indicating that when multiple Trustees are appointed, each Trustee can act unilaterally from one another, especially in making distributions.[18] Further, notwithstanding any authority or powers bestowed upon the Trustees in relation to managing the Trust's assets, Trustees are still bound to the express language of paragraph 5.1 which requires any distributions to be made in mutual agreement and "at the sole discretion of the Trustee(s)."[19]

In giving every word effect, paragraph 2.4 of the Trust clearly states the Parties' intent that when there is more than one Trustee, decisions regarding distributions must be made jointly.[20] Paragraph 2.4 specifically states in relevant part:

> **If for any reason more than one Trustee is appointed, a majority vote of the trustees shall be binding upon the trust**. If there are only two trustees and a deadlock occurs, the next successor trustee shall cast the deciding vote.[21]

Indeed, an interpretation requiring mutual agreement between the Trustees in making distributions aligns with numerous provisions of the Trust that even the R&R concedes indicate that the Trustees cannot act unilaterally.[22] As such, pursuant to the express terms of the Trust, a Trustee cannot make a distribution without the other Trustee's consent and any other interpretation would render paragraph 2.4 of the Trust meaningless.

Moreover, adopting the interpretation under the R&R would result in a hard and

---

[17] Id. at 7:19-24, 8:2-5; Trust (ECF No. 188-1) at ¶ 3.2.
[18] Trust (ECF No. 188-1) at ¶ 3.2.
[19] Id. at ¶ 5.1.
[20] Id. at ¶ 2.4.
[21] Id.
[22] Id. at ¶ 2.1, 2.4, 5.1, and 9.1.

unreasonable interpretation of the Trust. When interpreting the provisions of a contract, Nevada has long held that, "[a]n interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract."[23] Here, the interpretation of the Trust under the R&R would allow any Trustee to take all of the money out of the Trust at any point in time without the consent or knowledge of the other. Such an interpretation results in a harsh and unreasonable Trust document.

Accordingly, the clear and unambiguous language of paragraphs 2.4 and 5.1 of the Trust requires the Trustees to agree through a majority vote before distributions can be made to the Trust's beneficiaries and any other interpretation would render provisions of the Trust meaningless and create an unreasonable document.

**ALTERNATIVELY, AN EVIDENTIARY HEARING IS REQUIRED TO RESOLVE THE FACTUAL ISSUES PRESENTED**

Alternatively, should the Court agree with the Magistrate's finding that the Trust is unclear as to whether the Trust permits the Trustees to unilaterally make distributions to beneficiaries, an evidentiary hearing is required. Mr. Alfter objects to the R&R relating to the finding that Defendant may act unilaterally as a trustee without a factual basis. Specifically, Mr. Alfter objects to the interpretation of an ambiguous contract without the opportunity of an evidentiary hearing or obtaining sworn declarations from the Parties to resolve the factual issues presented.

Under Nevada law, "[a] contract is ambiguous if it is reasonably susceptible to more than one interpretation."[24] Here, the R&R indicates certain provisions of the Trust were ambiguous and expressly stated the Trust was "somewhat ambiguous as to whether Defendant may act unilaterally as a trustee."[25] Therefore, any ambiguity in the interpretation of the Trust required an evidentiary hearing be held.[26] At the very least, supplemental briefing should have been allowed for Mr.

---

[23] See Shelton v. Shelton, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (citing Dickenson v. State, Dep't. of Wildlife, 110 Nev. 934, 937, 877 P.2d 1059, 1061 (1994)).
[24] Margrave v. Dermody Properties, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994).
[25] Report and Recommendation (ECF No. 207) at 7:5-6.
[26] See Threlkel v. Shenanigan's, Inc., 110 Nev. 1088, 1093, 881 P.2d 674, 677 (1994) (stating that "[a]mbiguity in the instrument requires an evidentiary determination that may or may not result in

Alfter to provide declarations from himself, Defendant, and the attorney who drafted the Trust to clarify the Parties' intent in regards to making distributions.[27]

The Nevada Supreme Court has held that Courts should "examine the circumstances surrounding the parties agreement, to determine the mutual intentions of the parties."[28] However, despite the finding of ambiguity in the R&R, the evidentiary hearing set in this matter was vacated because "there [were] no factual issues that need[ed] to be resolved."[29]

Consequently, Mr. Alfter objects to the R&R relating to Defendant's ability to act unilaterally as a trustee without holding an evidentiary hearing because the interpretation of an ambiguous contract required an evidentiary hearing or obtaining sworn declarations from the Parties to resolve the factual issues presented.

**THE CHARACTERIZATION OF THE SALE PROCEEDS WERE RAISED BY THE PARTIES**

Mr. Alfter also objects to the magistrate judge's finding that "[c]ommunity property issues are outside the arguments raised by the parties…" because the issue of whether the Sale Proceeds would be characterized as separate property or community property was raised in the underlying briefing on the Government's Motion to Stay regarding.[30]  Specifically, the Government initially raised the issue of the characterization of the Sale Proceeds in their Emergency Motion to Stay when they assumed the Sale Proceeds were community property.[31]  However, as the government

---

personal liability"); see also Shelton v. Shelton, 119 Nev. 492, 497, 78 P.3d 507, 510 (2003) (internal quotations omitted). (stating "The best approach for interpreting an ambiguous contract is to delve beyond its express terms and examine the circumstances surrounding the parties' agreement in order to determine the true mutual intentions of the parties.").
[27] Transwestern Leasing Corp. v. Corral Constr. Co., 98 Nev. 445, 652 P. 2d 1181,1182-1183, (1982) (stating "the Court may look to the circumstances surrounding the execution of the contracts and the subsequent acts or declarations of the parties to interpret unclear contract provisions.").
[28] Hilton Hotels v. Butch Lewis Prod., 107 Nev.226, 808 P.2d 919,922 (1991); Fox v. First Western Savings and Loan Ass'n, 86 Nev. 469, 470 P.2d 424(1970).
[29] See Order ECR No. 199; Id. at 1:20-22.
[30] Report and Recommendation (ECF No. 207) at 8:26-28.
[31] Government's Emergency Motion to Stay (ECF No. 170) at 5:7 – 6:1 and at fn. 2.

concedes, any property acquired before Defendant and Mr. Alfter were married would be their separate property.[32]

To that end, should the Court adopt the finding from the R&R that as a Trustee, Defendant can unillaterially make distributions to himself, an evidentiary hearing, or at the very least, additional briefing, is required to determine the extent of Defendant's separate and/or community property interests in the Sale Proceeds.

## **CONCLUSION**

For the foregoing reasons, Mr. Alfter objects to the Magistrate Judge's Report and Recommendation #207 restraining funds in the amount of $975,300 from the proceeds of the sale of the subject trust property.  As such, it is requested that said proceeds be released to the F.A.J.R. Magic Trust.  Alternatively, an evidentiary hearing is required to resolve the factual issues presented.

DATED this 4th day of August, 2017

**Law Offices of Ivette Amelburu Maningo**

/s/ Ivette Amelburu Maningo
IVETTE AMELBURU MANINGO, ESQ.
Nevada Bar No.: 7076
720 S. Seventh St., 3rd Floor
Las Vegas, Nevada 89101
(T): (702) 385-9595
(F): (702) 386-2737
*Attorney for Frank Alfter*

---

[32] Id; See NRS 123.130 (defining separate property as any property a spouse owns prior to marriage, and any property acquired by that spouse during marriage by gift, bequest, devise, descent, or as a personal injury award).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2017, I served a true and correct copy of the foregoing OBJECTION TO MAGISTRATE JUDGE'S JULY 24, 2017 REPORT & RECOMMENDATION #207 RESTRAINING SALE PROCEEDS, by submitting electronically for filing and/or service within the Court's CM/ECF system to the following:

Christina D. Silva, United States Attorney
christina.silva@usdoj.gov

Daniel D. Hollingsworth, United States Attorney
Daniel.Hollingsworth@usdoj.gov

Elham Roohani, United States Attorney
Elham.Roohani@usdoj.gov

Lisa Cartier-Giroux, United States Attorney
Lisa.Cartier-Giroux@usdoj.gov

Mark Woolf, Assistant United States Attorney
Mark.Wolf@usdoj.gov

Karen Connolly, Esq, Attorney for Defendant
advocate@kconnollylawyers.com; legalassistant@kconnollylawyers.com

_____
Assistant to Ivette Amelburu Maningo, Esq.