# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 2:16-cr-00100-GMN-CWH |
| vs. | **ORDER** |
| JAN ROUVEN FUECHTENER, | |
| Defendant. | |

Pending before the Court is Defendant Jan Rouven Fuechtener's ("Defendant's") Motion to Withdraw Plea, (ECF No. 194). The Government filed a Response, (ECF No. 216), and Defendant filed a Reply, (ECF No. 221). Additionally, the parties submitted Supplemental Briefs, (ECF Nos. 264, 265).[1] For the following reasons, Defendant's Motion is denied.

## I. BACKGROUND

On March 30, 2016, Defendant was charged in the criminal indictment with four counts: (1) possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B); (2) receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b); (3) distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (b); and (4) advertising child

---

[1] On May 31, 2018, the Government filed a Motion to Strike, (ECF No. 266), a portion of Defendant's Supplemental Brief, (ECF No. 265). Defendant filed a Response, (ECF No. 267), and the Government filed a Reply, (ECF No. 268). The Government seeks to strike "page 13, lines 5 to 21" because this portion of Defendant's Supplemental Brief asserts a new argument "in a manner that precludes the Government from filing a written response in opposition." (Mot. to Strike 1:18, 3:12–13, ECF No. 266). Pursuant to Local Rules, "the reply brief shall only address arguments made in response to the motion." D. Nev. LCR 12-1(a)(3); *see U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Further, the Court agrees with the Government that Defendant's new legal argument, that the Government breached the duty of good faith and fair dealing, was available to Defendant when the Motion to Withdraw Plea was filed. (*See id.* 2:19–21). Accordingly, the Government's Motion to Strike, (ECF No. 266), is **GRANTED**.

pornography in violation of 18 U.S.C. § 2251 (d)(1)(A). (Criminal Indictment, ECF No. 12). On September 28, 2016, Defendant filed a waiver of his right to a trial by jury. (Waiver, ECF No. 79). At Calendar Call, the Court canvassed Defendant as to this waiver of jury trial and assessed Defendant's proficiency in the English language. (Mins. of Proceedings, ECF No. 95). The Court ultimately determined Defendant to be fluent in English and accepted Defendant's waiver of jury trial. (*Id.*). The Court therefore set Defendant's case for a bench trial, which commenced on October 24, 2016. (*Id.*); (*see* Mins. of Proceedings, ECF No. 138).

On the third day of trial, Defendant's attorneys approached the Government about the possibility of a plea agreement. (Resp. 3:14–16, ECF No. 261). In light of this development, the Court continued the trial to the next day, November 17, 2016, at 12:00 p.m. (*See* Mins. of Proceedings, ECF No. 141). On November 17, 2016, Defendant pled guilty to Counts One, Two, and Three of the Criminal Indictment. (*See* Mins. of Proceedings, ECF No. 142); (*see also* Plea Agreement, ECF No. 146). As part of the terms of the Plea Agreement, the parties agreed that they would not seek to apply any other specific offense characteristics, enhancements, or reductions. (Plea Agreement 7:13–14, ECF No. 146). Additionally, the Plea Agreement provided that the parties would "jointly recommend that the Court run the sentences imposed on Count 2 and 3 run [sic] concurrently to each other," and that "the sentence for Count 1 shall run consecutive to the concurrent sentence imposed on Counts 2 and 3." (*Id.* 10:14–16). The Plea Agreement further allowed Defendant to "request a downward adjustment pursuant to 18 U.S.C. § 3553 or USSG §4A1.3(b)(1) from any sentence the Court may impose." (*Id.* 10:22–24).

On June 22, 2017, Defendant filed the instant Motion to Withdraw Plea. (ECF No. 194). On March 9, 2018, the Court began a five-day evidentiary hearing to determine the merits of Defendant's Motion. (*See* Mins. of Proceedings, ECF Nos. 248, 254, 255, 259, 260). During the hearing, the Court heard testimony from multiple witnesses, including: Jess Marchese ("Mr.

Marchese"), Michael Sanft ("Mr. Sanft"), Ben Nadig ("Mr. Nadig"), Ben Durham ("Mr. Durham"), Steven Pacitti ("Mr. Pacitti"), Defendant, Brett Humphries ("Humphries"), and Special Agent Mari Panovich. (*Id.*). In the interest of clarity, the Court will provide a brief summary of the relationships between these witnesses and Defendant.

Mr. Marchese represented Defendant at trial. (*See* Marchese Aff., Ex. A to Response, ECF No. 216-1). Mr. Sanft was retained to represent Defendant and work alongside Mr. Marchese. (*See* Sanft Aff., Ex. C to Response, ECF No. 216-3). On August 3, 2016, however, Mr. Sanft was substituted by Mr. Durham as co-counsel to Mr. Marchese. (*Id.*); (*see* Order Granting Mot. to Substitute Attorney, ECF No. 67); (*see also* Durham Aff., Ex. B to Response, ECF No. 216-2). Later, at Defendant's request, Mr. Sanft was rehired as one of Defendant's attorneys before trial to assist Mr. Durham and Mr. Marchese. (*See* Sanft Aff., Ex. C to Response, ECF No. 216-3). Mr. Nadig was retained to represent Defendant's husband, Frank Alfter. (Tr. Evidentiary Hr'g Day One 284:4–7, ECF No. 261). Mr. Nadig was not an attorney of record in this case. (*See* Resp. 11:12–12:5, ECF No. 216).

## II. <u>LEGAL STANDARD</u>

The decision whether to permit the withdrawal of a plea "is solely within the discretion of the district court." *United States v. Nostratis*, 321 F.3d 1206, 1208 (9th Cir. 2003). A defendant may withdraw a guilty plea after its acceptance but before sentencing if the defendant shows "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "Fair and just reasons for withdrawal include inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. McTiernan*, 546 F.3d 1160, 1167 (9th Cir. 2008) (internal citation omitted).

"Erroneous or inadequate legal advice may also constitute a fair and just reason for plea withdrawal, even without a showing of prejudice, when the motion to withdraw is made

presentence." *McTiernan*, 546 F.3d at 1167 (citing *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005)). Further, "a defendant does not have to prove that his plea is invalid in order to establish a fair and just reason for withdrawal before sentencing. The invalidity standard applies only after a defendant has been sentenced." *United States v. Davis*, 428 F.3d 802, 806 (9th Cir. 2005). The defendant has the burden of demonstrating the existence of at least one of these conditions. Fed. R. Crim. P. 11(d)(2)(B); *Davis*, 428 F.3d at 805.

### III. DISCUSSION

In the instant Motion, Defendant argues that he should be permitted to withdraw his guilty plea for two primary reasons: (1) Defendant did not receive effective assistance of counsel; and (2) Defendant's guilty plea was coerced. (Mot. to Withdraw Plea 6:7–9, ECF No. 194). The Court will address each argument in turn.

**A. Ineffective Assistance of Counsel**

*1. Conflicts of Interest*

The Court finds that there was no conflict of interest that arose from Mr. Nadig or Mr. Sanft's representation that rendered counsel's assistance ineffective. To show ineffective assistance of counsel "based on an attorney's conflict of interest, 'a defendant must show: (1) his attorney actively represented conflicting interests, and (2) an actual conflict of interest affected his attorney's performance.'" *United States v. Decker*, No. 3:13-cr-00053-HDM-WGC, 2017 WL 4856156, at *3 (D. Nev. Oct. 26, 2017) (quoting *Quintero v. United States*, 33 F.3d 1133, 1135 (9th Cir. 1994)).

Defendant argues that Mr. Nadig had a "conflict in advising [Defendant] since he represented Frank Alfter, an alternate suspect." (Def. Closing Brief 3:4–6, ECF No. 265). However, Mr. Nadig testified that he was originally working on a mutual defense with Mr. Marchese and Mr. Sanft for Defendant and his Husband, Frank Alfter. (Tr. Evidentiary Hr'g Day One 284:4–7, ECF No. 261). It was not until more discovery was produced that Mr. Nadig

realized "there was no way [Defendant's] defense could not involve Frank as an alternative suspect." (*Id.* 284:20–24). At that point, Mr. Nadig stopped communicating with Defendant. (*Id.* 284:25–285:3). Thus, testimony during the evidentiary hearing revealed that when an anticipated conflict of interest arose, Mr. Nadig disassociated himself from Defendant's defense team.

Additionally, Mr. Sanft, testified during the evidentiary hearing that his retainer to represent Defendant was paid by Frank Alfter, but there was no need for a waiver of a conflict of interest because Frank Alfter was never charged in this case. (Tr. Evidentiary Hr'g Day One 176:22–25, 227:14–19). Given the facts presented at the evidentiary hearing, the Court finds that the attorneys did not actively represent conflicting interests, and thus, there was no conflict that affected their performance. Accordingly, no conflict of interest existed that would constitute a fair and just reason to withdraw Defendant's plea.

### 2. Gross Mischaracterization

The Court further finds that there was no gross mischaracterization of Defendant's possible sentence. "It is well established that an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea." *United States v. Garcia*, 909 F.2d 1346, 1348–49 (9th Cir. 1990). However, a "defendant may demonstrate a fair and just reason for plea withdrawal by showing that his counsel's gross mischaracterization" of the possible sentence "plausibly *could* have motivated his decision to plead guilty. Nothing in Rule 11(d)(2)(B) requires a defendant to show more in order to satisfy the 'fair and just reason' standard." *United States v. Davis*, 428 F.3d 802, 808 (9th Cir. 2005); *see also United States v. Briggs*, 623 F.3d 724, 729 (9th Cir. 2010).

Here, Defendant argues that he received ineffective assistance of counsel because he did not understand the difference between concurrent and consecutive counts until a fellow inmate, Humphries, explained it to him, and because he was not advised by his attorneys of his

exposure under the United States Sentencing Guidelines. (Mot. to Withdraw 7:19–8:5, ECF No. 194). Defendant claims that he was "never told that the Guideline range under the plea was LIFE. The concept of specific offense characteristics and their affect [sic] on the Base Offense Level and Guideline range, was not explained to [Defendant]." (*Id*. 8:26–9:1). Defendant asserts that had he known that the "requisite guidelines imprisonment range is life," he would not have accepted the guilty plea. (Def. Closing Brief 13:24–26).

The Government argues that the Defendant "has simply changed his mind," and that Defendant's attorneys each informed Defendant of the "low and high-end ranges under the terms of the plea agreement. (Response 11:8, 9:17–18, ECF No. 216); (*see* Marchese Aff., Ex. A to Response, ECF No. 216-1); (*see also* Durham Aff., Ex. B to Response, ECF No. 216-2); (*see also* Sanft Aff., Ex. C to Response, ECF No. 216-3). The Government claims that "all the admissible sworn evidence before the Court shows that the only characterizations made to the Defendant [by his attorneys] were legally and factually correct," and "although it is abundantly apparent that there was no failure in the advice of counsel, any supposed failure in the advice of counsel was entirely negated by the thorough canvassing of the Court." (Response 19:10–11, 18:19–21). Further, "[b]y taking the 'deal,' [ ] Defendant avoided a sentencing guideline range of life because the Government agreed to not present any additional evidence to support any other specific offense characteristics or enhancements." (*Id.* 19:16–19).

The record reflects that Defendant agreed he had sufficient time to review the Plea Agreement. (Trans. 5:11–12, ECF No. 166). At Defendant's change of plea hearing, the Court asked Defendant twice if he was satisfied with the legal representation provided, to which he replied, "yes." (*Id.* 5:17–19, 20:14–17). Defendant agreed that he understood the terms of his Plea Agreement. (*Id.* 20:1–3). Further, the Court explained the sentencing minimums and maximums for each count. (*Id.* 23:12–24:21). Defendant responded that he understood the sentencing range. (*Id.*). At the change of plea hearing, the Court asked Defendant if he had

"sufficient time to talk to [his] attorneys about the guidelines and how they might apply to the facts in [his] particular case," and Defendant responded "yes." (*Id.* 25:20–22).

Therefore, the record confirms that Defendant was informed by the Court of the benefits and consequences of pleading guilty. In the instant Motion, Defendant contradicts these statements made under oath during his plea colloquy, and under these circumstances, the Court need not grant Defendant's request to withdraw. *See United States v. Castello*, 724 F.2d 814, 815 (9th Cir. 1984); *see also United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."). Nonetheless, in the interest of a complete record, the Court will address Defendant's argument that his plea was rendered involuntary through ineffective assistance of counsel.

Defendant claims he did not understand his exposure under the sentencing guidelines; however, this argument is unpersuasive because multiple attorneys testified to discussing the sentencing guidelines with Defendant in this case. Notably, Mr. Marchese testified that early on in the case he generally explained the guidelines to Defendant. (Tr. Evidentiary Hr'g Day One 125:9–14). Additionally, Mr. Marchese generally discussed the possible enhancements with Defendant, and made Defendant aware that his guideline exposure was a life sentence. (*Id.* 126:1–127:23). Mr. Sanft also testified that he spoke to Defendant about his exposure under the sentencing guidelines sometime between April and July of 2016. (*Id.* 219:1–223:16).

Mr. Durham testified that he went over the Plea Agreement with Defendant line by line. (Tr. Evidentiary Hr'g Day Two 66:18–67:7, ECF No. 257). Mr. Durham also testified that he showed Defendant the sentencing table and told Defendant that he was exposed to an Offense Level 40 with a Criminal History Category I, which corresponded with 292 to 365 months sentence under the terms of the Plea Agreement. (*Id.* 67:18–25, 68:1–4, 70:7–9); (*see* Plea Agreement 4:14–8:6). Further, Mr. Durham testified that Defendant acknowledged seeing the

sentencing table. (*Id.* 69:2–5). Indeed, Defendant's arguments for a fair and just reason to withdrawal are contradicted by Mr. Durham's testimony that he explained to Defendant: (1) how the facts in the Plea Agreement lined up with certain enhancements in the plea agreement; (2) what concurrent and consecutive sentences are and how they work; and (3) how relevant conduct would be considered by the Court. (*Id.* 62:6–9, 62:20–63:5, 71:1–3); (*see* Durham Aff., Ex. B to Response, ECF No. 216-2). Therefore, Defendant was fully aware of the direct consequences of his plea after speaking with his attorneys.

Defendant's claims that he was erroneously led to believe that the terms of the agreement were that he would receive a sentence of five to fifteen years. (Def. Closing Brief 2:2–3). The Court finds that Defense counsel's communications that Defendant could receive a sentence as low as five years is correct. (*See* Plea Agreement 9:18–21, ECF No. 146); (*see also* Resp. 20:4–6). It was not unreasonable for Mr. Marchese to predict that the Government would argue for a thirty-year sentence and that the defense team would ask for the minimum possible sentence of five years because of existing mitigating factors. (Tr. Evidentiary Hr'g Day One 73:25–76:17). The Court finds that Defendant's attorneys did not make "gross mischaracterizations" of the Plea Agreement or the possible sentence Defendant could have received. *See Davis*, 428 F.3d at 808.

The terms of the Plea Agreement stated that additional evidence would not be presented to support any other specific offense characteristics, enhancements, or reductions. (Plea Agreement 7:13–14). Further, Mr. Pacciti informed Defendant that sentencing is ultimately within the Court's discretion. (Tr. Evidentiary Hr'g Day Two 30:4–16). Therefore, the Court finds that the information communicated to Defendant was within the range of competence demanded of attorneys in criminal cases. *See also Strickland v. Washington*, 466 U.S. 668, 687–88 (1984) ("When a convicted defendant complains of the ineffectiveness of counsel's

assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.")

The Court finds that Defendant's attorneys did not provide Defendant with improper advice regarding his potential sentence. The Court and counsel's efforts show that Defendant's plea was knowing and voluntary, and that no gross mischaracterizations were made to Defendant before his plea. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (internal quotations and citation omitted)). Accordingly, Defendant's arguments regarding ineffective assistance of counsel rendering his plea involuntary or unknowing fail.

**B. Coercion**

The Court finds that Defendant was not coerced into entering the plea agreement. "A plea is 'involuntary' if it is the product of threats, improper promises, or other forms of wrongful coercion." *United States v. Hernandez*, 203 F.3d 614, 619 (9th Cir. 2000). Defendant claims that the actions of his lawyers rendered his plea involuntary because his will was "overborne" due to of the "infighting amongst his defense team." (Mot. to Withdraw 11:24); (Def. Closing Brief 15:23–24). Specifically, Defendant argues that he was coerced because he thought his attorneys were unprepared and thus "had not [sic] choice but to accept the guilty plea." (*Id.* 7:16–18).

The Government argues that "Defendant's unsworn allegations of minor disagreements in defense strategy between his retained attorney and an attorney representing his husband do not even remotely rise to the level of coercion required to withdraw a guilty plea." (Resp. 24:13–15). Additionally, the Government contends that "Defendant has not alleged a single actual threat made by a single person. Instead, he asserts irrelevant information about alleged personality disputes." (*Id.* 23:11–12). Further, the Government claims that "because there is

only one Defendant in this case" there is "no 'additional risk of coercion' due to a package plea deal." (*Id.* 23:18–19).

The Court agrees with the Government. Defendant's claim that he was coerced as a result of a disagreement between Mr. Marchese, Defendant's lawyer at the time, and Mr. Nadig, Defendant's husband's lawyer, is not persuasive. (Tr. Evidentiary Hr'g Day One 42:2–8). Mr. Nadig visited Defendant in September of 2016, almost two months before trial, and made representations about Mr. Marchese and their chances of winning his case. (*See id.* 44:9–12); (*see also* Ex. B to Mot. to Withdraw at 20, ECF No. 194). Mr. Marchese testified that Defendant was upset by the conversation Defendant had with Mr. Nadig. (Tr. Evidentiary Hr'g Day One 43:15–44:5). However, after Defendant's conversation with Mr. Nadig about his chances of succeeding at trial, Defendant did not attempt to retain new counsel. In fact, Mr. Marchese testified that Defendant did not express any concerns about what Mr. Nadig said to him when Defendant's trial started. (*Id.* 118:2–8). This leads the Court to conclude that Defendant was not as disturbed with his defense team's trial strategy as he claims. Therefore, the Court finds that Defendant's claim that the infighting amongst attorneys coerced his plea is attenuated and unconvincing. Further, Defendant does not provide any authority to support his claim that disagreements between attorneys rise to the level of coercion that would render a plea involuntary. Accordingly, Defendant's coercion argument fails. For the foregoing reasons, Defendant has not met his burden of providing a fair and just reason for withdrawal.

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Withdraw his Plea, (ECF No. 194), is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Motion to Strike, (ECF No. 266), is **GRANTED**.

**DATED** this  15  day of June, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court