DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Tel.: (702) 984-5563
Fax: (702) 598-1425
dzchesnoff@cslawoffice.net
rschonfeld@cslawoffice.net
Specially Appearing Attorneys for Defendant
*JAN ROUVEN FUECHTENER*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA
* * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAN ROUVEN FUECHTENER, ) <br> ) <br> Defendant. ) <br> ) | CASE NO: 2:16-cr-00100-GMN-CWH |

### DEFENDANT JAN ROUVEN FUECHTENER'S MOTION FOR RELEASE OF FUNDS FOR PURPOSES OF RETAINING SPECIALLY APPEARING COUNSEL

TO: THE UNITED STATES OF AMERICA;

TO: ALL INTERESTED PERSONS:

COMES NOW, Defendant, JAN ROUVEN FUECHTENER, by and through specially appearing counsel DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD, and hereby files his Motion for Release of Funds For Purposes of Retaining Specially Appearing Counsel.

1

The Motion is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, and any argument or evidence that is received by the Court. The Motion seeks an order regarding the following:

1. That at most, $580,200 should be restrained through sentencing, and $395,100 should be returned to Defendant. This is because the amount of alleged victims seeking restitution is only fourteen. In addition, because Defendant cannot be convicted of both possession and receipt, both the assessments and the fines would be reduced. The breakdown of potential monetary impositions at sentencing are:

- $70,000 potential restitution;
- $10,200 potential assessments; and
- $500,000 potential statutory fines;
- Potential total $580,200.

The court is currently holding $975,300. Accordingly, $395,100 should be released forthwith. Alternatively, Defendant requests the release of $250,000.00 being held by the clerk to be applied as fees to the law firm of Chesnoff & Schonfeld, and an additional $50,000.00 to be applied towards future costs for purposes of addressing the issues related to his request to withdraw his guilty plea, a trial if granted, a sentencing if denied, an appeal, and relief pursuant to Section 2255. Upon retention, undersigned counsel would substitute in as counsel for Defendant in place of Karen Connolly.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND

This Honorable Court is familiar with the lengthy procedural history in this case thus far, however, several points are important for consideration of this Motion. First, the Defendant's plea lists three charges: 1) Possession of Child Pornography, 2) Receipt of Child Pornography, and 3) Distribution of Child Pornography.

In the government's original motion for relief under the All Writs Act, the government acknowledged that it originally only asked defense counsel for $100,000.00 to be held for purposes of sentencing and for potential restitution. *See* ECF 164 p. 2. The government also acknowledged that the FDCPA did not apply because Defendant has not yet been sentenced.

As set forth in ECF 169, the court issued an order stating in part:

> Based on the record before it, including information in the Presentence Investigation Report ("PSR") and presented in the United States' motion and at hearing, the Court concludes that an order restraining the disbursement of $80,300 ($65,000 in restitution and $15,300 in special assessments) from the proceeds of the sale of the subject property is sufficient, based on the information currently known, to prevent the frustration of collection of the anticipated restitution order and further the Court's exercise of its jurisdiction over sentencing by ensuring assets are available to satisfy the pending restitution order. The amount is limited to $80,300 because that is the amount the PSR indicates can be attached to identified victims who have requested restitution...

ECF 169, p. 2, lines 21-28.

The government then subsequently sought to stay the order, and filed another motion asking the court to restrain $975,300 of Defendant's funds under the All Writs Act. The government originally asserted that Defendant could also be fined up to $250,000 on each of the three counts for an additional $750,000. *See* ECF 170, p. 6, n.2 ("The Defendant is liable for up to $250,00.00 in

fines per count under 18 U.S.C. § 3571(b). Under the three counts of the indictment that he pled guilty to, he would be liable for up to $750,000.00 in fines)).

The government also filed a supplement (ECF 173) stating:

> The PSR specifically notes "that an aggregate total of 92 victims were positively identified in a total of 88 known 'series[,]'" and it would be inconsistent with the expressly agreed terms of the plea agreement to limit the amount that is placed on deposit with the Court from the sale of the subject property to only those victims that have requested restitution thus far. At minimum, $475,000 ((92 * $5,000) + $15,000 = $475,000) should be deposited to ensure that the Court is not deprived of its jurisdiction to enter and enforce a restitution order pursuant to the terms of the plea agreement for victims making a claim before sentencing.

The supplement continues:

> At the time of the drafting of the PSR, the Probation Office anticipated a $425,000 restitution award and therefore recommended no fine. However, from that time, significantly fewer victims than those identified have sought restitution. ***Therefore, the restitution amount at this time, though subject to change up between now and sentencing, is significantly less than the originally anticipated $425,000.*** Thus, the United States will be seeking the full amount of the fine because the fine was clearly contemplated at the time of the change of plea, and based on the Defendant's current ability to pay should not be offset by the restitution award. A fine in this case is appropriate and warranted. The United States submits that at this time, the Defendant is able to pay the full amount of restitution to the victims and the statutory amount of the fine based on his available resources. If the Court does not set aside the funds to pay, at the time of sentencing, it is highly likely that those funds will no longer be available to the victims and the Court.

ECF 173, p. 6 (emphasis added) (footnote omitted).

However, it appears that subsequently, the government only sought $500,000 in maximum statutory fines, presumably because it realized that Defendant cannot be fined on all three counts. This is addressed further below.

The current order restraining $975,300 of Defendant's funds is based upon the following:

- $460,000 in restitution;
- $15,300 in assessments[1]; and
- $500,000 in statutory fines

See ECF 178 and 180.[2]

## II. ARGUMENT

### A. AT MOST, ONLY $580,200 SHOULD BE RESTRAINED PRIOR TO DEFENDANT'S SENTENCING.

Here, apparently only 14 identified victims have come forward seeking restitution which amounts to $70,000 i.e. 5,000 x 14 = $70,000. The maximum fine is $500,000. The assessment should be no more than $10,200. Accordingly, it is respectfully submitted that at most, $580,200 should be restrained through sentencing, and $395,100 should be returned to Defendant. As an alternative, as discussed below, at least $250,000 should be released for the benefit of Defendant retaining undersigned counsel with an additional $50,000 to be applied for costs.

---

[1] As discussed below, the Ninth Circuit Court of Appeals has held that the offense of possessing child pornography is a lesser included offense of receipt of child pornography. See, e.g., U.S. v. Davenport, 519 F.3d 940 (9th Cir. 2008). Accordingly, Defendant cannot be convicted and sentenced on both counts of possessing child pornography and receipt of child pornography as it would violate Double Jeopardy. As such, the assessments must be reduced, and Defendant cannot be fined up to $750,000 as originally argued by the government.

[2] Pending before this Honorable Court is Objection to Report and Recommendation (ECF 180) ECF 85, Frank Alfer's supplemental opposition ECF 188, Government's responses ECF 189 and 196. See also Order ECF 199.

5

It should be noted that there appears to be no published cases from the Ninth Circuit Court of Appeals which permit such a pre-sentencing restraint of funds under the All Writs Act. Also, it must be noted that the All Writs Act does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs "in aid of" its existing jurisdiction. *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999); *Sygenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002).

Additionally, a federal court may only issue an All Writs Act order "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977). Furthermore, with the exception of *United States v. Gates*, 777 F.Supp. 1294, 1296 n. 7 (E.D. Va. 1991), the non-binding cases cited by the Court and government in support of the pre-sentencing restraint, appear to largely only address potential restitution, and not potential fines and assessments. Accordingly, it is respectfully submitted that there is no binding authority which permits the restraint of funds as argued for by the government, and as ordered by the Court under the All Writs Act in this case.

Also, as stated below, the requested funds are not being sought so that they may be disposed of. Rather, they would be applied for purposes of Defendant seeking his counsel of choice, as guaranteed by the Sixth Amendment to the United States Constitution.

B.     **IN THE EVENT THE HONORABLE COURT BELIEVES THE PREVIOUSLY ORDERED $975,300 SHOULD BE RESTRAINED PRIOR TO SENTENCING, AT A MINIMUM, THE GOVERNMENT SHOULD NOT BE PERMITTED TO SEIZE AND RESTRAIN SUBSTITUTE ASSETS THAT WOULD HAVE BEEN OTHERWISE USED BY DEFENDANT FOR ATTORNEY'S FEES AND COSTS AND DEFENDANT'S FIFTH AND SIXTH AMENDMENT RIGHTS HAVE BEEN VIOLATED.**

It is well-settled that the government cannot seize and restrain substitute assets prior to a conviction. *See United States v. Ripinsky*, 20 F.3d 359, 363 (9th Cir. 1994); *United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008); *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007); *United States v. Floyd*, 992 F.2d 498, 501–02 (5th Cir. 1993); *In re Assets of Martin*, 1 F.3d 1351, 1358-59 (3d Cir. 1993); *United States v. Gotti*, 155 F.3d 144, 149–50 (2d Cir. 1998); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) (same); *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017). For example, in *Ripinsky* the Ninth Circuit Court of Appeals held that the criminal-forfeiture statutes applicable to defendants charged with money laundering do not authorize pretrial restraint of substitute assets; pretrial-restraint provision refers only to subsection defining forfeitable assets, not to subsection defining substitute assets. The court further held that the provision in the statute for liberal construction did not authorize the court to amend the statute by interpretation, and the legislative history supported the conclusion that Congress did not intend substitute assets to be subject to pretrial restraint.

Specifically, the *Ripinsky* court stated:

> A brief examination of the legislative history reinforces our conclusion based on the statutory language that Congress did not intend substitute assets to be subject to pretrial restraint. Specifically, a 1983 Senate Report discussing § 853(p), the substitute assets provision, states that it "provides that where property found to be subject to forfeiture is no longer available at the time of conviction, the court is authorized to order the defendant to forfeit substitute assets of equivalent value." 1983 Senate Report at 201, reprinted in 1984 U.S.C.C.A.N. at 3384 (emphasis added). Elsewhere, the 1983 Senate

Report states that the Bill includes "a provision authorizing the court to order the defendant to forfeit substitute assets when his property originally subject to forfeiture has been made unavailable at the time of conviction." *Id.* at 197–98, reprinted in 1984 U.S.C.C.A.N. at 3380–81 (emphasis added).

The government contends that only the government's interpretation of the statute serves to effectuate the remedial purpose that Congress sought to serve in its forfeiture provisions. It argues that only by permitting courts to restrain substitute assets when forfeitable assets already are unavailable prior to trial will the government be able to preserve pending trial the availability of property that can be forfeited upon conviction. The Fourth Circuit relied on this rationale to hold that RICO's forfeiture provisions permit the pretrial restraint of substitute assets. *See In re Billman*, 915 F.2d at 921 (quoting *United States v. Monsanto*, 491 U.S. 600, 613, 109 S.Ct. 2657, 2665, 105 L.Ed.2d 512 (1989) (stating that " '[p]ermitting a defendant to use assets for private purposes that ... will become the property of the United States if a conviction occurs cannot be sanctioned' ")). We disagree.

It is true that if substitute assets are not frozen prior to trial, they may be transferred or concealed by the time of conviction and thus be unreachable by the government. However, this does not mean that the congressional purpose of the forfeiture statutes necessarily will be frustrated if substitute assets cannot be frozen prior to trial.

*Ripinsky*, 20 F.3d at 363-364 (internal footnotes omitted).

This view was recently reaffirmed by the United States Supreme Court in *Luis v. United States*, 136 S. Ct. 1083 (2016) and *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In *Luis v. U.S.*, <u>the Supreme Court held that a criminal defendant has a Sixth Amendment right to use untainted assets to hire counsel of his choice, even though those assets may become subject to forfeiture in the event of his conviction</u>. In *Luis*, however, the Supreme Court all but rejected such an expansive reading of its earlier holdings. Specifically, the *Luis* plurality explained that, unlike tainted assets—the defendant's ownership of which is necessarily "imperfect"—untainted assets "belong to the defendant, pure and simple." *Luis*, 136 S. Ct. at 1090.

The plurality emphasized that the contention that "property—whether tainted or untainted—is subject to pretrial restraint, so long as the property might someday be subject to forfeiture ... asks too much of [the Court's] precedents." *Id.* at 1091. Highlighting Section 853 in particular, the plurality explained that "whether property is 'forfeitable' or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue." *Id.* As such, the distinction between tainted and untainted assets is "an important one, not a technicality. It is the difference between what is yours and what is mine." *Id.*

Moreover, recently, in *Honeycutt v. United States*, the Supreme Court, ruling on the question of joint and several liability, held that a defendant may only be held liable for the criminal proceeds that he personally obtained, and not for property obtained by co-conspirators or others with whom he acted in concert. The Court, however, also specifically stated:

> Permitting the Government to force other co-conspirators to turn over untainted substitute property would allow the Government to circumvent Congress' carefully constructed statutory scheme, which permits forfeiture of substitute property only when the requirements of §§ 853(p) and (a) are satisfied. There is no basis to read such an end run into the statute.

*Id.* at 1634.

Here, the government's pre-sentencing seizure is tantamount to securing substitute assets pretrial. This is in contravention of *Honeycutt* and cases across the country. For example, in *U.S. v. Queri*, 679 F.Supp.2d 295 (N.D.N.Y. 2010) in prosecution of defendant for mail fraud, wire fraud, securities fraud, and money laundering, the federal government was not authorized under federal or New York law to file a notice of lis pendens on potential substitute property, namely an apartment complex owned by company in which defendant was an 80 percent interest holder, prior

to defendant's conviction. The court recognized that the judgment of conviction sought by the government only affected the property related to the charged offenses and did not affect the title, possession, use, or enjoyment of any potential substitute property until after a conviction was entered against the defendant and the government satisfied the requirements for the forfeiture of substitute property. The government had not even alleged, let alone shown, that defendant's interest in the apartment complex was obtained through the sale or exchange of assets that were acquired through the commission of any of the charged offenses.

Likewise, in *U.S. v. Jewell*, 556 F.Supp.2d 962 (E.D.Ark .2008), the federal government's only interest in defendant's residence was the possibility that the residence might be needed to satisfy a potential in personam forfeiture order requiring defendant to forfeit proceeds obtained from conspiracy to commit mail fraud. The court held that the government's lis pendens notice against defendant's residence was improper under Arkansas law, even though government identified residence as substitute property in its indictment, where no judgment had been entered against defendant, and defendant had not failed to pay judgment.

In *U.S. v. Jarvis*, 499 F.3d 1196 (10th Cir. 2007), the court held that the Federal government's interest, under the Drug Abuse Prevention and Control statute, in substitute property owned by criminal defendant could not mature into an actual interest until after defendant's conviction and did not relate back to a pre-conviction date, and thus government's lis pendens notice against the subject property was improper under New Mexico law, as the government's criminal forfeiture action did not involve or affect the title to the defendant's properties, notwithstanding the government's identification of the specific substitute property at issue in its indictment.

As stated herein, it is clear that the government has seized and retrained Defendant's substitute assets prior to a conviction. Moreover, the government has already conceded that because the "Defendant has not yet been sentenced ... the FDCPA's post-judgment enforcement remedies are not available. *See* ECF 164, p. 4 lines 6-7. Rather, the government has used the All Writs Act to restrain said funds. Again, this is an unconstitutional seizure and is inhibiting Defendant's ability to obtain counsel of his choice in violation of the Fifth and Sixth Amendments.

As set forth below, not only is the entire seizure improper, but at a minimum, $250,000 (with an additional $50,000 for costs) should be released.[3]

**C.   DEFENDANT CANNOT BE CONVICTED ON BOTH COUNTS OF RECEIPT AND POSSESSION OF CHILD PORNOGRAPHY AS IT VIOLATES THE DOUBLE JEOPARDY CLAUSE.**

The protections afforded by the Double Jeopardy Clause include; (1) protection against a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Whalen v. United States*, 445 U.S. 684, 688 (1980) (It is well established that "the Fifth Amendment guarantee against double jeopardy protects not only against a second trial for the same offense, but also against multiple punishments for the same offense.").

The Ninth Circuit has held that "[t]he Double Jeopardy Clause protects a defendant against both successive punishments and successive prosecutions for the same criminal offense. *Smith v. Hedgpeth*, 706 F.3d 1099, 1102 (9th Cir. 2013). Furthermore, "[t]he double jeopardy clause precludes the government from dividing a single conspiracy into multiple charges and pursuing

---

[3] In the alternative, Defendant also incorporates by reference as though fully set forth herein, Mr. Alfer's arguments and objections to the restraint of said funds.

11

successive prosecutions against the defendant." *United States v. Guzman*, 852 F.2d 1117, 1119-20 (9th Cir.1988).

Here, Defendant apparently pled guilty to three charges: Possession of Child Pornography, Receipt of Child Pornography, and Distribution of Child Pornography.

The law is well-settled that Possession of Child Pornography is a lesser included offense of Receipt of Child Pornography. *See, e.g., U.S. v. Davenport*, 519 F.3d 940 (9th Cir. 2008).

In *Davenport*, the court stated:

> Having rejected the government's argument that possession of child pornography requires proof of an element that receipt does not, we conclude that, under the *Blockburger* test, the offense of possessing child pornography is a lesser included offense of the receipt of child pornography. Furthermore, given that Congress has not clearly indicated its intent to the contrary, the district court erred when it imposed a second and constitutionally impermissible conviction on Davenport for the same conduct, in violation of the Fifth Amendment's Double Jeopardy Clause. *See Hunter*, 459 U.S. at 366, 103 S. Ct. 673. The fact that the terms of the two sentences run concurrently does not alter our conclusion. *See Ball*, 470 U.S. at 864–65, 105 S.Ct. 1668 (discussing potential adverse collateral consequences of sentences violating double jeopardy, even if concurrent, and concluding that "[t]he second conviction, even if it results in no greater sentence, is an impermissible punishment.").

*Id.* at 947.

The government in this district have recognized this issue and have dismissed, on their own motion, possession of child pornography charges after a conviction for receipt. *See, e.g., U.S. v. Savanh*, Case No. 14-cr-00290-KJD-PAL.

Accordingly, the government's prior claim that a fine of $750,000 could be imposes is erroneous. At most, the fine could be $500,000, and therefore the restraint of funds in the excess amount is unwarranted.

## III. CONCLUSION

In light of the foregoing, Defendant requests that the Honorable Court issue an Order that:

1. At most, $580,200 should be restrained through sentencing, and $395,100 should be returned to Defendant.

The breakdown of potential monetary impositions at sentencing are:

- $70,000 potential restitution;
- $10,200 potential assessments; and
- $500,000 potential statutory fines.

2. In the alternative, at a minimum, Defendant requests the release of $250,000.00 being held by the clerk to be applied as fees to the law firm of Chesnoff & Schonfeld, and an additional $50,000.00 to be applied towards future costs for purposes of addressing the issues related to his request to withdraw his guilty plea, a trial if granted, a sentencing if denied, an appeal, and relief pursuant to Section 2255.

Upon retention, undersigned counsel would substitute in as counsel for Defendant in place of Karen Connolly.

Dated this 14th day of August, 2018

Respectfully Submitted:

/s/
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
Specially Appearing Attorneys for Defendant
JAN ROUVEN FUECHTENER

13