NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar #13644
ELHAM ROOHANI
Nevada Bar #12080
Assistant United States Attorney
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
elham.roohani@usdoj.gov

Attorney for the United States of America

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Jan Rouven Fuechtener,<br><br>Defendant. | Case No. 2:16-cr-100-GMN-CWH<br><br>**Government's Sentencing Memorandum** |

### I. Introduction

From 2007 to 2016, Jan Rouven Fuechtener knowingly possessed and received child sexual abuse material. Possession and receipt was just the start. He then chatted online with other pedophiles and knowingly distributed and advertised that material to them. He also hosted pedophile sex parties so that he and others could engage in sexual activity while watching children being raped and sodomized in the videos. Besides trading his collection with others, Fuechtener wanted more than videos; he repeatedly encouraging a father to sexually abuse his daughter so Fuechtener could watch via web cam. Fuechtener also sought guidance from others for his next conquest—how to drug and rape a young boy.

Page 1 of 23

His fervor to grow his collection and share his sexual deviance with others led him to share the password to his collection with an undercover agent, ultimately leading to his arrest. Once caught, Fuechtener made inculpatory statements, but blamed others for his child pornography collection. After seeing the trial evidence against him unfold, he pleaded guilty, but then reversed course and refused to accept responsibility—instead blaming his attorneys for his plea, his husband for sexual abuse, and his friend for downloading the child pornography, all in the face of overwhelming evidence of his guilt.

Because of the egregiousness of Fuechtener's conduct, and his inability to accept responsibility, the government requests a 365-month sentence (slightly above the low-end guideline range of 360 months), with a lifetime term of supervision to follow.

## II. Procedural Background

In March 2016, the grand jury indicted Fuechtener for possessing, receiving, distributing, and advertising child pornography. Fuechtener proceeded to trial, but as the government presented its final witness, Fuechtener sought a plea offer. The next day, Fuechtener pleaded guilty to the first three counts in the indictment.

In May 2017, Fuechtener sold his home and attempted to conceal his share of the proceeds by hiding them in Germany with his co-conspirator, Frank Alfter. But the government sought and the Court granted restraint of the funds to preserve them for restitution and any possible court-ordered fine.

In June 2017, Fuechtener moved to withdraw his guilty plea. Over the course of a five-day evidentiary hearing, Fuechtener maligned the professional skills of his trial counsel, perjured himself, and asked another inmate to testify falsely for him. The Court denied his motion. Undaunted, in August 2018, Fuechtener again moved to withdraw his guilty plea. The Court denied the motion, but without prejudice to newly retained counsel re-filing.

### III. Relevant Facts

In August 2015, as "Lars45" on GigaTribe, Fuechtener initiated contact with undercover FBI Task Force Officer Joe Ahmed (TFO Ahmed),[1] and provided TFO Ahmed with the password to Lars45's locked shared folders. TFO Ahmed was able to browse Lars45's folders and observed hundreds of file titles indicative of child sexual abuse material. In fact, almost *every* file title suggested that it was child pornography.

Over a month later, TFO Ahmed again observed Lars45 logged into the GigaTribe network. Using the password previously supplied by Fuechtener, TFO Ahmed downloaded numerous child pornography files from the protected folders, demonstrating that Fuechtener continued to actively advertise and distribute child pornography. Not only was this confirmed by the forensic evidence derived from Fuechtener's seized computers (*e.g.*, chats on multiple platforms), but also from information received from GigaTribe subpoenas (*e.g.*, friends with user names indicative of an interest in child sexual abuse material).

Because of how GigaTribe works, Fuechtener had to take multiple proactive steps to build and distribute his child sexual exploitation collection. First, he had to find like-minded individuals. Second, he had to become friends with them. Third, he had to chat with them to share his password. Fourth, he had to ask them for their passwords. Fifth, he had to download from them. Sixth, he had to leave files in his shared folders for them to download. Only 850 files were available for sharing showing that Fuechtener was curating his shared collection. *None of these steps was accidental or automated.* This active and multi-step process takes this case outside of the heartland of the typical peer-to-peer case.

Based on TFO Ahmed's downloads from Lars45, FBI Special Agent Mari Panovich

---

[1]     TFO Ahmed used an undercover account with a user name indicative of having an interest in child sexual exploitation material.

executed a federal search warrant at Fuechtener's home in Las Vegas, Nevada ("the

Residence"), which was owned by Fuechtener and his husband.[2] When SA Panovich made

contact with Fuechtener at the Residence, Alfter was out of the country. Post-*Miranda*,

Fuechtener admitted the Lars45 GigaTribe account and the larsschmidt22@hotmail.com

account belonged to him. Agents seized 38 devices located throughout the Residence.

Forensic examinations revealed that nine devices (found in virtually every area of the house)

contained child pornography, including the files downloaded by TFO Ahmed.

The videos found on Fuechtener's devices and distributed to TFO Ahmed were

nothing short of despicable. The videos include a 7-8 year old blindfolded boy performing

oral sex on an adult male's penis. Another shows a 3-4 year old whimpering toddler being

anally raped by an adult penis. Yet another video shows an adult male anally raping a child

who is crying out in pain throughout the video. These sadistic videos are representative of

the >9,000 child pornography videos found across nine devices. Most of the videos were

over five minutes in length. Some videos exceeded three hours.

Forensics also revealed that Fuechtener, using the Skype username larsusa22, offered

to distribute child pornography by sharing his GigaTribe child pornography folder in

exchange for watching the other user have sex with his minor daughter on the web cam.

Using Grindr profiles associated with his two email addresses, Fuechtener also engaged in

chats to coordinate watching "yng"/ "young"/ "young brothers"/ "young porn"/ "Perv

porn" on a laptop in a hotel room in Las Vegas, and to make plans to "drug a young." In

another Grindr chat, Fuechtener indicated that he is into "taboo stuff, yng, and family."

When asked more specifically "What ages do you like?" Fuechtener responded "13-16."

---

[2]     This is the same house Fuechtener sold and attempted to fraudulently move the proceeds from the Court's reach.

After admitting these facts and pleading guilty, Fuechtener attempted to blame others for the child pornography forensically attributable to only him. This includes separately blaming his husband (during the motion to withdraw his plea) and his friend "Joel" (in his interview with Dr. Mark Chambers). During trial, however, the government showed that nearly every seized device with child pornography contained files created and accessed when Alfter was confirmed as traveling outside of the United States. And, on a jail call, Fuechtener acquiesced to Alfter's statements that Fuechtener changed all the passwords on the computers and that Alfter did not know the passwords, thereby making it impossible for Alfter to access the child pornography on the password-protected devices. Indeed, during the execution of the search warrant, Fuechtener provided the password to Alfter's computer login (which agents had been unable to bypass), revealing a paused child pornography video on the screen.

## IV. Points and Authorities

**A.    Fuechtener has forfeited any credit for acceptance of responsibility by falsely denying involvement in the offense, frivolously contesting relevant conduct, providing conflicting statements regarding his involvement, and attempting to withdraw his guilty plea.**

District courts may grant a two-level downward adjustment to a defendant who "clearly demonstrates acceptance of responsibility for his offense," but it is *the defendant* who "bears the burden of showing that he has accepted responsibility for his actions." *United States v. Ramos-Medina*, 706 F.3d 932, 940 (9th Cir. 2013). A defendant who "falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1, app. n.1.

This Court accepted the factual basis of Fuechtener's plea, finding the relevant conduct to support the guilty plea to be true. However, a "defendant who enters a guilty

plea is not entitled to adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, app. n.3. Instead, he must clearly demonstrate acceptance. Fuechtener has not only failed to demonstrate acceptance, but has openly and actively disclaimed responsibility.

### 1. Statements to Dr. Mark Chambers

On March 7, 2017, the government received a Forensic Psychological Evaluation for Fuechtener prepared by Dr. Mark J. Chambers.[3] The report, previously provided to the Probation Office with its conclusion incorporated into the PSR, was based on Chambers' interview of Fuechtener. During the interview, Fuechtener denied the admissions he made before the Court during his sworn plea colloquy, contradicting the plea's factual basis.

| Statements in Plea Agreement | Statements to Dr. Mark Chambers |
|---|---|
| The videos in his possession were downloaded from the internet by him. ECF No. 146, at 5. | He acknowledged the videos on the media in his home, but explained it was likely downloaded by his friend, Joel,[4] who was involved in file sharing networks. |
| Post-*Miranda*, he admitted that the Lars45 GigaTribe account belonged to him. ECF No. 146, at 5-6. | He claimed he never personally used file sharing to download pornography, and the first child porn files appeared on his computer in March of 2015,[5] about the same time he began inviting outsiders such as his friend "J" into his home. |
| He offered to trade child pornography in exchange for watching another user have sex with his minor daughter on webcam. ECF No. 146, at 6. | He admitted to viewing Internet pornography on his personal computers, but insisted he was not interested in child pornography. |

[3]    The government provides this report to the Court under seal. Ex. A. Although the Chambers Evaluation is illustrative in demonstrating Fuechtener's lack of contrition and boldfaced lies, as Chambers has not been designated as a qualified expert in this case, because Chambers' conclusions are based upon Fuechtener's lies, and because even Fuechtener now disavows Chambers, the Court should decline to consider any conclusions drawn in the report. *See* U.S.S.G. § 6A1.3 (The Court should not consider anything at sentencing that lacks "sufficient indicia of reliability to support its probable accuracy."). If it would be helpful to the Court, the government stands ready to provide briefing regarding the inaccuracies of Chambers' conclusions contained in the report.
[4]    "Joel" appeared on Fuechtener's witness list, sharing Fuechtener's residence address. Fuechtener did not explain why he would allow the person allegedly responsible for his current situation to continue to reside in his home post-indictment.
[5]    Fuechtener's fabrication is belied further by the forensic evidence, which showed files downloaded as early as 2007 (device 1B37) and 2014 (device 1B7). Fuechtener's objections to the PSR in this regard ignore the testimony about the forensic evidence that was presented at trial.

| | |
|---|---|
| Using Grindr profiles associated with his two email addresses, he engaged in chats to coordinate watching child pornography and admitted being into child pornography. ECF No. 146, at 6. | He claimed he has no interest in having sexual contact with a child. He admitted that he had a "feeling" of it being wrong, that he had the child porn in his possession, and he recalled thinking to himself, "Why do you have that stuff if you're not into it?" |

Fuechtener's statements to Chambers directly conflict with his sworn admissions to the Court and are untethered from the overwhelming evidence. By stating these untruths and attempting to skew Chambers' opinion, even as he now attempts to back away from it, Fuechtener has forfeited his right to any acceptance of responsibility.

### 2. Motion to Withdraw Guilty Plea

Fuechtener filed a motion to withdraw his guilty plea. ECF No. 194. After a five-day evidentiary hearing, the Court denied Fuechtener's motion. ECF Nos. 248, 254, 255, 259, 260, 269. Under the plain terms of the plea agreement, by filing the motion, Fuechtener forfeited his right to "a two-level downward adjustment for acceptance of responsibility." *See* ECF No. 146, at 8. In the motion, Fuechtener asserted actual innocence, and later testified falsely that he did not commit the offenses to which he had pleaded guilty. The Court should find that Fuechtener is not entitled to credit for acceptance of responsibility.[6]

**B.    The Court should sentence Fuechtener to a 365-month term of imprisonment, followed by a lifetime period of supervised release.**

The Court must "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the

---

[6]    If the Court does not give Fuechtener credit for acceptance of responsibility and leaves the remaining portions of the Plea Agreement intact, the total offense level is 42, with a sentencing guideline range of 360 months to life (720 months) imprisonment.

defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)).

As contemplated by the plea agreement, the government requests that the Court sentence Fuechtener to 365 months of imprisonment. The government stands by the stipulated base offense level and specific offense characteristics set forth in the plea agreement (minus acceptance of responsibility as explained) and provides a basis for this recommended sentence below. This recommendation also considers other relevant conduct, the § 3553(a) factors, issues the Court should not factor, and the PSR's recommendation.

**1.     The Sentencing Guideline Range**

In the plea agreement, the parties agreed upon a base offense level of 22, along with a number of sentencing enhancements arising from the nature and extent of the material recovered from Fuechtener's devices. For the Court's convenience, and because of Fuechtener's specious contentions disavowing the factual basis for his plea at various times during the pendency of this case, the government summarizes the factual basis supporting the applicability of each enhancement below. After applying these enhancements, and subtracting the two points for acceptance of responsibility, the total offense level is 42. With a total offense level of 42 and a Criminal History Category I, the advisory guidelines recommend a sentence of 360 months to life. The government stands by this calculation, and for the reasons explained herein, recommends a 365-month term of imprisonment.

*Material Depicting Prepubescent Minors.* U.S.S.G. § 2G2.2(b)(2) provides for a 2-level sentencing enhancement "[i]f the material involved a prepubescent minor or a minor who had not attained the age of 12 years." Fuechtener admitted he received, possessed, and

distributed a video titled "XXXXXtoddler 2012 man fuck little boy in ass XXXXX," [7] depicting a 3- to 4-year-old boy being forcibly sodomized by an adult male. The child can be heard whimpering in the video. *See also* Trial Exhibits 1, 32, 33, 35, 36, 37, 38, 39, and 40.

*Knowing Distribution.* Under U.S.S.G. § 2G2.2(b)(3)(F), Fuechtener is subject to a 2-level sentencing enhancement if he "knowingly engaged in distribution, other than distribution described" in other subsections. Fuechtener engaged in knowing distribution in two ways: (1) through use of the GigaTribe chat platform; and (2) through Skype. In a GigaTribe chat, Fuechtener initiated contact with TFO Ahmed and provided the password to locked folders, which allowed TFO Ahmed to download child pornography.[8] Fuechtener used Skype to distribute child pornography in exchange for watching another user have sex with his minor daughter on web cam. *See also* Trial Exhibits 20A and 20B.

*Sadistic or Masochistic Conduct.* U.S.S.G. § 2G2.2(b)(4) provides for a 4-level sentencing enhancement if "the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) sexual abuse or exploitation of an infant or toddler." Fuechtener possessed, received, and distributed a video titled "XXXXXbondage," to TFO Ahmed. This video depicts a blindfolded 7- to 8-year-old boy performing oral sex on an adult male's erect penis. Another video, titled "8yo anal fuck XXXXX," shows an adult male anally raping a child. The child can be heard yelling and crying in pain throughout the video. The fact that the child is in actual pain, as well as the anal penetration of the child, supports this enhancement. *See United States v. Rearden*, 349 F.3d 608, 615 (9th Cir. 2003). *See also* Trial Exhibits 1, 32, 33, 35, 36, 37, 38, 39, and 40.

---

[7]      "XXXXX" in file names indicates redaction to help safeguard victims.
[8]      Through use of the GigaTribe, Fuechtener both knowingly engaged in distribution and advertised child pornography. *See United States v. Williams*, 659 F.3d 1223, 1224 (9th Cir. 2011); *United States v. Franklin*, 785 F.3d 1365, 1367 (10th Cir.), *cert. denied*, 136 S. Ct. 523 (2015).

*Pattern of Activity.* U.S.S.G. § 2G2.2(b)(5) provides for a 5-level sentencing enhancement if Fuechtener "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." Fuechtener engaged in a pattern of activity consisting of at least *three* separate instances of sexual exploitation of a minor.

*First*, using Skype, Fuechtener engaged in chats with another user wherein Fuechtener attempted to induce the other user to have sex with his minor daughter on web cam for Fuechtener to watch. The chats indicate that the "daughter" is a minor because the other user states he "can fuck her tomorrow," because "she is with her mother today." The Skype chats show that Fuechtener attempted to, conspired to, and aided and abetted any person to employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of transmitting a live visual depiction of that sexual conduct, a violation of 18 U.S.C. § 2251(a), (c)(1), (e), and NRS § 432B.110(3). *Second*, using Grindr, Fuechtener engaged in chats to coordinate a child pornography watch party, and to "drug a young."[9] These Grindr chats show that Fuechtener conspired to commit sexual abuse of a minor in violation of 18 U.S.C. § 2242(2)(B) and NRS §§ 432B.100, 201.230 (Lewdness with a child), 200.366 (Sexual assault), 200.368 (Statutory sexual seduction). *Third*, TFO Ahmed's trial testimony and Trial Exhibits 1, 2A, 2B, and 2C, show that Fuechtener advertised child pornography in violation of 18 U.S.C. § 2251(d).[10] *See*

---

[9]    The PSR shows that it was Fuechtener engaging in these chats. Fuechtener identified himself as "Jan," indicated his interest in "taboo" and "yng" porn, and asked "shall we drug a young?", all over the course of less than 4 days. PSR ¶ 36. After the search warrant was executed and his phone was confiscated, Fuechtener again identified himself as "Lars." *Id.*

[10]    Although the government has agreed to dismiss the advertising charges at the time of sentencing, the Court has received evidence of this relevant conduct and may consider it as relevant conduct, as is permissible under the Sentencing Guidelines and the Plea Agreement. ECF No. 146, at 8. ("The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.")

*Williams*, 659 F.3d at 1224; *Franklin*, 785 F.3d at 1367.

*Use of a Computer.* U.S.S.G. § 2G2.2(b)(6) provides for a 2-level sentencing enhancement if the defendant used "a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material." In this case, Fuechtener's use of *nine* devices, found in virtually every area of his house, to separately possess, receive, and distribute child pornography supports this enhancement. The Court could also consider Fuechtener's use of GigaTribe search terms and online chats to receive, advertise, and distribute child pornography.

*600+ images.* When considering the summary chart in evidence prepared by SA Panovich, the evidence shows > 9,000 child pornography videos found across Fuechtener's devices. Fuechtener argues that a few of the videos may have been duplicates, but on each device, the NetClean report automatically ran a check for duplicate images and only counted files with unique hash values/digital fingerprints, *i.e.*, unique files.

Even if there are duplicate images *across* devices, this does not alter the total number of images. A simple analogy demonstrates why. Assume Fuechtener went to the grocery store and collected two shopping carts – Cart A and Cart B. In Cart A, he placed a bottle of soda. In Cart B, he placed an identical bottle of soda. At check out, he insisted he only needed to pay for the bottle of soda in Cart A because the bottles were identical. Here, each device is a different "cart" and each alleged duplicate image is a bottle of soda. Just as the customer must pay for two bottles of soda, Fuechtener should be held accountable for all of the files on his different devices. More importantly, each device was found in a different part of the home, and thus the location and timing of the possession, receipt, and distribution of each device was distinct. Accordingly, each of the images must count separately.

To the extent Fuechtener argues images should not be counted because possession is a lesser-included offense of receipt, and the Court cannot convict him of both based on the same images, *see United States v. Davenport*, 519 F.3d 940, 944 (9th Cir. 2008), this argument ignores the rule in child pornography cases. The Ninth Circuit recently explicitly held that, "[i]n the context of child pornography, a defendant may be convicted both of receipt of one image and possession of another image, or for receipt of an image on a hard drive and possession of the same image on a compact disc, but not for receipt and possession *of the same image on the same device." United States v. Johnston*, 789 F.3d 934, 938 (9th Cir.), *cert. denied*, 136 S. Ct. 269 (2015) (emphasis added). Thus, applying *Johnston*'s reasoning, this Court can and should add the unique images across devices to tabulate a total of over 9,000 videos of child pornography possessed and received by Fuechtener on nine separate devices.[11] *See also, United States v. Ardolf*, 683 F.3d 894, 902 (8th Cir. 2012) (a plain reading of U.S.S.G. § 2G2.2 cmt. N. 4(B) requires counting duplicate images).

In any event, given the evidence presented at trial, the Court's calculation of number of images is academic at this point. If the Court considers only device 1B7, for example, it contains 3,322 unique child pornography files, including nine bestiality files and nine bondage files, *i.e.*, well over 600 images.[12] Several other devices also independently reach the 600 image threshold (*e.g.*, Device 1B16 had 811 unique child pornography files, Device 1B30 had 1,638 unique child pornography files, Device 1B37 had 554 unique child

---

[11]     There are no double jeopardy concerns in this case. Fuechtener admitted that "*nine* devices found in virtually every area of the house contained child pornography videos and images. . ." ECF No. 146, at 5 (emphasis added). He further admitted that "there were over 9,000 child pornography videos found *across devices*." *Id.* (emphasis added). Even if these files are the same (which they are not), this satisfies the multiple device requirement of *Johnston*.

[12]     Even this number under-represents the total for guidelines purposes because it does not take into account multiplying the videos by 75 to determine the number of images. Relatedly, if the Court considers only the 22 videos initially downloaded by TFO Ahmed, applying the 1 video = 75 images conversion, these videos also independently represent over 600 images. *See* Trial Ex. 1.

pornography files). Any of these devices taken alone meets the government's burden.

The Court should find that the government has met its burden to support all of the plea agreement's sentencing enhancements.

### 2.    Section 3553(a) Factors

When the Court considers the section 3553(a) factors, the Court should determine that the factors necessitate a 365-month sentence.

#### a.    *Nature and Circumstances of the Offense*

The development and alarming escalation of Fuechtener's seriously deviant tendencies dictate a 365-month sentence. The evidence elicited at trial shows a steady progression of behavior, beginning with merely receiving and possessing child pornography, graduating to advertising and distributing child pornography, developing into comfort to engage others to watch child pornography in groups, and ultimately coordinating hands-on offenses that apparently never culminated. Fuechtener's behavior rapidly escalated and became progressively more brazen until he was caught. Fuechtener actively sought like-minded individuals engaging in child exploitation behavior and transitioned from the anonymity associated with online file sharing to in-person contact with other offenders. Fuechtener also sought to learn how to commit hands-on offenses against children.

Typical defendants convicted of possession, receipt, or distribution of child pornography remain private and ashamed, viewing child pornography alone at home. Not so with Fuechtener. He admittedly invited others to his home to view child pornography. He offered to trade child pornography in exchange for watching a father sexually assault his minor daughter. This apparently never occurred, but not for Fuechtener's lack of trying.

Fuechtener's celebrity status as a magician and his associated wealth emboldened this unabashed behavior, making him think he was untouchable or that his money and fame

could save him. Even after getting caught, rather than accepting responsibility or showing any remorse, he changed his story at least five times and attempted to deprive victims of restitution for his own benefit. No matter how famous or rich he may think he is, his actions will have long-lasting, devastating, and debilitating effects on the children he victimized, as reflected in more than 1000 pages of victim impact statements and restitution requests.[13] The Court should not reward his tactics.

> b.   *History and Characteristics of the Defendant*

Fuechtener is a 41-year-old man who was working as the headlining magician at the Tropicana Hotel and Casino in Las Vegas. According to his website, he "has been awarded some of the most important international awards of the entertainment industry." *See* http://www.janrouven.com/janrouven-awards.en.html (last visited February 21, 2019).

Fuechtener's PSR interview reveals no mitigating information. Fuechtener grew up in an "upper-middle-class family where all of his basic needs were met," and where he "never experienced any physical or emotional abuse." PSR ¶ 75, 76. Fuechtener has never had "significant illnesses, injuries, or surgeries," or "any past or present mental health issues or counseling." PSR ¶ 83, 85. Nor is he a "victim of sexual abuse." PSR ¶ 76.

In addition to showing a lack of remorse by trying to withdraw his plea and claiming actual innocence at one point, several of Fuechtener's statements further weigh in favor of a longer term of imprisonment. In the face of overwhelming evidence of his sexual deviance and his guilty plea, he still "doesn't think he needs any form of treatment." PSR ¶ 86, 88.

Astonishingly, Fuechtener and his closest confidantes believe he has been sufficiently punished because he lost his stardom. For example, Fuechtener and his husband feel that Fuechtener has suffered enough because the loss of headliner status is "a sentence for

---

[13]    The government submits a video impact statement for the Court's review under seal. Ex. B.

[Fuechtener] in and of itself." PSR ¶ 81. Fuechtener's ability to put his own status and privilege over that of the children he watched being raped is astounding and should give this Court considerable pause. A lengthy sentence is necessary to protect the public from Fuechtener's lack of remorse for his victims and his deluded belief that he is the victim here.

c.   *Furthering Sentencing Goals*

Fuechtener needs a 365-month sentence to adequately further the goals of sentencing, reflecting the seriousness of the offense and the debilitating effects the offense has on the child victims, deterring Fuechtener from his criminal activities, promoting respect for the law, and protecting the public.

As noted by the PSR, the sheer number of videos, their length, and sadistic content are "unprecedented," and have "never been observed before" in this District. PSR ¶ 137. If Fuechtener showed an ounce of regret, remorse, or contrition for the pain and harm inflicted on the true victims of his crimes, a lower sentence might be appropriate. But, even now, Fuechtener shows concern only for himself: how he will rebuild his popularity and financial status; how he felt wronged by the American justice system; and how he could wriggle his way out of his guilty plea and waste considerable Court and government resources in attempting to do so. Then, in an effort to provide mitigation to the Court, Fuechtener attempted to skew Chambers' professional opinion by lying.

The lengths Fuechtener has gone to in an effort to benefit himself knows no bounds. He slandered four respected CJA-panel defense attorneys, all of whom testified credibly under combative and hostile cross-examination. Unlike other similarly-situated defendants who can recognize the harm they caused, Fuechtener's entirely self-centered vision and disconnected reality should give the Court concern.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

####        d.       *Kinds of Sentences Available*

Comparing Fuechtener's conduct with others somewhat similarly-situated further supports the government's requested sentence.[14] Like most other child pornography defendants, Fuechtener has no criminal history. But unlike other defendants who collect and view child pornography as a private deviance, Fuechtener is the exception because he gathered groups of like-minded pedophiles for child pornography viewing events.

Fuechtener's case is dissimilar from other child pornography cases in several other significant ways. First, in the typical child pornography case, defendants who plead guilty accept full responsibility close to the time of indictment, and well before any scheduled trial. In contrast, Fuechtener pushed for trial at the first trial setting, smiled and laughed throughout the entire presentation of the government's case-in-chief, and only decided to plead guilty after the Court saw nearly all of the evidence against him. Then, after the Court canvassed him extensively, after he knowingly and voluntarily pleaded guilty, and after the government agreed to dismiss a count it had already proven, Fuechtener decided to withdraw his guilty plea. At the evidentiary hearing on his motion, Fuechtener testified under oath inconsistently with his plea allocution, perjuring himself. He also enlisted the help of a fellow inmate, Bret Humphries, and caused Humphries to lie on his behalf.

Fuechtener wasted countless hours of the Court's time and asked the Court to credit his perjured testimony over his plea colloquy. The Court saw through his lies and denied his frivolous motion, but he still asks this Court to believe he has accepted responsibility. Even now, he minimizes the harm he caused noting that he would have only gotten a fine had this happened in Germany. PSR ¶ 139. Fuechtener has expressed no remorse whatsoever.

---

[14]      The government acknowledges that such a comparison is difficult in this case because Fuechtener's conduct stands in a league of its own.

Second, in the typical case, the defendant pleads to a single count of possession, receipt, or distribution. In contrast, because of the egregious nature of the criminal acts in this case, the government required Fuechtener to plead guilty to three-counts—possession, receipt, and distribution—and to agree to have the sentence on the possession count run consecutively to the sentence imposed on the receipt/distribution counts. This resolution validates the government's requested sentence because it places Fuechtener into a different class of multi-count defendants who receive substantially higher sentences.

For example, the Ninth Circuit has affirmed 120-month sentences for defendants convicted on a single count. *See United States v. Gillespie*, 463 F. App'x 692, 693 (9th Cir. 2011). For two-count convictions, the Ninth Circuit has affirmed sentences as high as 30 years. *See United States v. Maier*, 646 F.3d 1148 (9th Cir. 2011) (210 months); *United States v. Savanh*, 727 F. App'x 931, 933 (9th Cir. 2018); *United States v. Guerrieri*, 184 F. App'x 630, 631 (9th Cir. 2006) (262 months); *United States v. Hernandez*, 795 F.3d 1159, 1169 (9th Cir. 2015) (262 months); *United States v. Aguirre*, 448 F. App'x 670, 672 (9th Cir. 2011) (30-year sentence).[15] Given the Ninth Circuit's approval of a 30-year sentence on two counts of conviction, the government's request for a 365-month sentence (30.4 years) for this especially egregious three-count conviction is substantively reasonable.[16]

---

[15]    The PSR's recommendation does not adequately consider the sentences affirmed by the Ninth Circuit or others imposed in this district. For example, based on counts of conviction, James Scott Alva, *see United States v. Alva*, No. 2:14-cr-23, ECF No. 334, who received a 293-month sentence, is perhaps the most similarly situated. But counts of conviction is where the similarity ends because Alva was not subject to the +5 enhancement for pattern of sexually exploitative behavior. Alva also viewed his collection in private rather than hosting drug-fueled pedophile sex parties and seeking to drug a child. If Alva deserved 293 months, Fuechtener easily deserves 365 months. *See also*, *United States v. Pincombe*, No. 2:14-cr-178-JAD-GWF, ECF No. 221 (300 month-sentence; Pincombe was not subject to the +5 enhancement for pattern of sexually exploitative behavior).

[16]    The statutory maximum on each count is 20 years. If the Court follows the recommendation of the parties, the statutory sentencing range is five to 40 years.

### 3.   Facts the Court Should Not Consider

*Removability Status*. The guidelines do not provide for a downward departure based on potential removability as a result of a conviction or guilty plea. In fact, the Court may not consider national origin, and any departure on this basis is prohibited. *See* U.S.S.G. § 5K2.0(d); *see also Fruchtman v. Kenton*, 531 F.2d 946, 949 (9th Cir. 1976) (immigration consequences are collateral to a guilty plea when the removal "was not the sentence of the court which accepted the plea, but of another agency over which the trial judge has no control and for which he has no responsibility" (citation omitted)). Imposing a shorter sentence based on removability would also promote Fuechtener's stated goal to move to another country to start another magic show to "re-gain public confidence in his fan base," namely children, and "become a successful illusionist again." PSR ¶ 140. A shorter sentence that would allow him to travel freely to other countries whose children are not protected from sexual predators does not provide just punishment or protect the public. The Court should not grant any downward departure on this basis.[17]

### 4.   Response to the Probation Office's Recommendations

*Downward Variance*. The government strongly disagrees with the PSR's recommended sentence. The PSR calculates a guidelines range of life imprisonment, yet concludes that a downward variance to 282 months is warranted, without providing any supporting argument or rationale to justify this significant (438 month) variance.

---

[17]      The Court should reject any request for leniency based on removability for the additional reason that removal would benefit, not burden, Fuechtener. He has positive notoriety and wealth in Germany and would have access to a lavish lifestyle there, notwithstanding that the Court restrained the proceeds of his home sale. The government learned that Fuechtener had already sold a home with considerable value and transferred those proceeds to Alfter. Notably, it was only through serendipity that the government learned Fuechtener was attempting to transfer nearly $1 million dollars of proceeds from the sale of the Residence to Alfter in Germany. Through diligence and multiple motions, the government was able to ensure that those funds were deposited with the Court for restitution and fine purposes.

The downward variance recommendation notwithstanding, the PSR acknowledges the facts in this case support an *upward* variance. *See* PSR ¶ 129, 130. For example, the PSR notes that the number of images in this case is "epic," at upwards of 467,303 images, the length of many videos exceeds five minutes, and one video is nearly four hours long. PSR ¶ 130. At a bare minimum, the Court should impose a guideline sentence on these facts.

Further undermining the recommended downward variance, the PSR agrees there is a serious need to protect the public from Fuechtener, to "unwind the defendant's fame and fortune,"[18] block "his opportunities to purchase electronic devices at will," and limit "his ability to create situational opportunities to be in proximity of children."[19] PSR ¶ 135. Indeed, the PSR cautions that his financial position and ability to travel the world is not "in the best interest of *any child* he may come into contact with." PSR ¶ 145 (emphasis added).

*Treatment*. The PSR suggests that Fuechtener should maximize the amount of treatment while in custody because he is unlikely to serve any time on supervised release, but a sentencing court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." *Tapia v. United States*, 564 U.S. 319, 335 (2011); *see also* 18 U.S.C. § 3582(a). Instead, the Court may consider rehabilitation only in fashioning the terms and conditions of supervised release. *See, e.g.*, 18 U.S.C. § 3562(a). Setting aside whatever treatment opportunities may be available, to protect the public, the Court should impose a substantial custodial sentence,

---

[18]     Recently, the government became aware of a Netflix documentary "Magicians Life in the Impossible," featuring Fuechtener. *See* http://www.magiciansmovie.com/. The existence of this film and that it is likely Fuechtener will receive royalties further highlights that the PSR's recommended downward variance will not suffice to "unwind [Fuechtener's] fame and fortune."
[19]     Fuechtener reported to Chambers that he and his husband engaged in threesomes together and often with "patrons of his show." Ex. A, at 3. This is especially concerning when Fuechtener reported that his "ultimate goal" is to "re-gain public confidence in his fan base so he can sell show tickets to parents and their kids." PSR ¶ 139.

1    especially as Fuechtener has repeatedly downplayed the seriousness of this case. *See* PSR ¶

2    140 (He has a "cavalier ideology toward possible penalties for his criminal conduct," "does

3    not appear remorseful," and is "more concerned about his image and how he can minimize

4    the damage done to his reputation as a popular entertainer").

5         **5.  Restitution and Fine**

6         Unlike restitution, which is mandatory in this case, the Court decides in its

7    discretion whether to impose a fine. The Ninth Circuit has advised that, in cases

8    where the defendant has failed to show that he cannot pay a fine, the sentencing court

9    should consider "the Guidelines' recommendation, the § 3553(a) factors, and the 18

10    U.S.C. § 3572(a) factors to determine the appropriateness of the imposition of a fine

11    and its amount." *United States v. Orlando*, 553 F.3d 1235, 1239-40 (9th Cir. 2009)

12    (internal citations, quotations, and alterations omitted). In imposing a fine, the Court

13    must "explain its decision sufficiently to permit meaningful appellate review." *Id.*

14         Under guideline 5E1.2, the Court may impose a fine of up to $500,000, based on

15    Fuechtener's offense level. Considering the § 5E1.2 and 18 U.S.C. § 3572 factors, the Court

16    should impose a fine of $500,000.[20] *First*, this amount reflects the seriousness of the

17    offense—one of the largest child pornography cases in the District of Nevada, and an

18    offense that has a debilitating, lifetime effect on its victims. *Second*, Fuechtener has the

19    ability to pay the fine as demonstrated by the significant funds already on deposit with the

20    court. A maximum fine plus the restitution would only account for about half of the funds

21    on deposit. *Third*, the fine would place no significant burden on Fuechtener, who is a multi-

22    millionaire with no dependents. *Fourth*, Fuechtener has to pay mandatory restitution, but

23

24

---

[20]      Based on three counts of conviction, the *statutory* cap on the fine is $750,000.

that amount is relatively small based on the victims who have elected to seek restitution at this time ($70,000 + $15,000 = $85,000). *Fifth*, there are limited collateral consequences, save possible removal, for this conviction. *Sixth*, Fuechtener has never been fined for a similar offense. *Seventh*, there are costs associated with imprisonment. *Eighth*, given Fuechtener's attempts to hide his assets from the court to prevent them from being applied to restitution, a fine would be equitable to address his attempt to evade restitution.

Turning to Section 3572(a) factors, Fuechtener is a multi-millionaire who had a very successful show on the Las Vegas Strip. The Clerk of Court has on deposit slightly less than a million dollars for satisfaction of restitution and fines. After satisfying the proposed fine and full restitution, Fuechtener would still receive a large sum of money back. The burden imposed on Fuechtener or his husband (who may argue that he is financially dependent) would be minimal for the same reason. Although restitution will be ordered, it will not be for all victims because many have declined to participate. Subject to exceptions that do not appear applicable here, fines are deposited into the Crime Victims' Fund and disbursed for the benefit of crime victims, *see* 42 U.S.C. § 10601, meaning a fine in this case would fill the gap for victims of Fuechtener's crimes who are too scared, ashamed, or traumatized to come forward.[21] Lastly, ordering the proposed fine in no way impairs Fuechtener's ability to make restitution, as there are sufficient funds already available. Therefore, the government requests the Court order full restitution to be paid in full immediately from the funds deposited with the Court, as well as a fine of $500,000.

---

[21]    The restrained assets were from the sale of the Residence, where Fuechtener invited pedophiles to come for child pornography watch parties. It is equitable for the funds from the sale of the Residence, where these children were re-victimized, to be applied to rehabilitate them.

**6.      Supervised Release**

Although Fuechtener will likely be removed upon release, the government nonetheless requests a lifetime term of supervised release.[22] This is because, in the event that Fuechtener is not immediately removed, the egregiousness and escalation of Fuechtener's conduct warrants the maximum term of supervision. The facts of this case—including the escalation from receipt and possession of child pornography, to advertising and distribution, to pedophile sex parties and efforts to coordinate a hands-on offense—strongly suggest that Fuechtener's rehabilitation, success, and any likelihood to re-offend will be reduced if he remains accountable for his recovery and rehabilitation under supervision. Fuechtener's continued deflection of culpability and delusions of innocence notwithstanding his guilty plea further support a lengthy term of supervised release.

## V. Conclusion

The United States respectfully requests that this Court sentence the defendant to a 365-month custodial sentence followed by a term of lifetime supervision. Any downward departure or variance would negate the seriousness of this offense, expose the public to a sexual predator, and fail to deter future misconduct by Fuechtener. Based on the totality of circumstances, 365 months is sufficient but not greater than necessary to comply with the goals of sentencing.

DATED this 21st day of February, 2019

Respectfully submitted,

NICHOLAS A. TRUTANICH
United States Attorney
    //s//
ELHAM ROOHANI
Assistant United States Attorney

---

[22]       Guideline 5D1.1(c) does not apply here because supervised release is required by statute.

1

**CERTIFICATE OF ELECTRONIC SERVICE**

2       This is to certify that the undersigned has served counsel for Defendant with the

3  foregoing by means of electronic filing.

4

5  February 21, 2019

6                                    _____//s//_____

7                                    ELHAM ROOHANI
                                     Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24