```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2           BEFORE THE HONORABLE GLORIA M. NAVARRO, DISTRICT JUDGE
                              ---o0o---
 3

 4      UNITED STATES OF AMERICA,      :
                                       :
 5                    Plaintiff,       : No. 2:16-cr-100-GMN-CWH
                                       :
 6            -vs-                      : October 24, 2016
                                       :
 7      JAN ROUVEN FUECHTENER,         : Las Vegas, Nevada
                                       :
 8                    Defendant.       :
        _____:
 9

10

11                    TRANSCRIPT OF MOTION HEARING

12

13      APPEARANCES:

14      FOR THE PLAINTIFF:        LISA CARTIER-GIROUX and
                                  CRISTINA SILVA
15                                Assistant United States Attorneys
                                  Las Vegas, Nevada
16

17      FOR THE DEFENDANT:        JESS R. MARCHESE and
                                  BENJAMIN C. DURHAM
18                                Attorneys at Law
                                  Las Vegas, Nevada
19

20      ALSO PRESENT:             SPECIAL AGENT MARI PANOVICH
21

22

23      Transcribed by:           Margaret E. Griener, CCR #3, FCRR
                                  Official Reporter
24                                400 South Virginia Street
                                  Reno, Nevada 89501
25
```

2

1              LAS VEGAS, NEVADA, MONDAY, OCTOBER 24, 2016, 1:05 P.M.

2                              ---o0o---

3

4                    THE CLERK:  This is the time set for the hearing

5     on motion number 100 to disqualify counsel, and motion number

6     115 to seal or redact document number 113, in case

7     2:16-cr-100-GMN-CWH, United States of America versus Jan

8     Rouven Fuechtener.

9                    Counsel, please state your appearances for the

10    record.

11                   MS. CARTIER-GIROUX:  Lisa Cartier-Giroux for the

12    United States.  I have with me Assistant United States

13    Attorney Cristina Silva, and I also have with me Special Agent

14    Mari Panovich.

15                   Ms. Roohani was unable to appear today, and I

16    apologize to the Court on her behalf.

17                   THE COURT:  All right.  Good morning.  Thank you

18    for being here, or good afternoon rather.

19                   MR. MARCHESE:  Hello, your Honor.  Jess Marchese

20    on behalf of Mr. Fuechtener.  He's present and in custody.

21                   THE COURT:  All right.  Good afternoon.

22                   MR. MARCHESE:  And Mr. Durham on his behalf as

23    well.

24                   THE COURT:  All right.  So we've got a couple of

25    different motions.

1    First of all, I want to address number 98 which

2  is the motion to exclude alibi defense.  It was filed by the

3  government, and there seems to be a difference of opinion as

4  to the interpretation of the rule.

5    My understanding is that the rule does require

6  the defense to tender a notice of alibi but not until the

7  government first makes the request and in that request also

8  provides the information as to date, location, so forth.

9    It looks like an attempt to request the alibi

10  defense, a notice of the alibi defense, was made earlier but

11  was incomplete, did not include all of the information that

12  needed to be in the request.

13    However, there was a completed invalid request

14  made on October 11th, and so that triggers the deadline for

15  the defense, which is ten days plus, I believe, three days for

16  mailing.  So it looks like we're actually not -- no, it was

17  made on the 11th so -- October 11th was the e-mail date of the

18  request by the government that is valid.

19    So we actually have until -- what is it, Aaron,

20  the 23rd, 24th?

21    THE CLERK:  I believe we calculated October

22  24th.

23    THE COURT:  The 24th, so it looks like the

24  defense still has until the 24th to tender that alibi defense

25  if they want to.  So motion number 98 is denied.

1                    And as to motion number 99, which is the

2      government's motion to exclude the Dropbox evidence, I'm not

3      convinced that the -- that the information that is provided

4      within that -- well, actually, let's go back to -- well, no,

5      let's do it this way in this order.

6                    Okay.  So --

7                    THE CLERK:  Your Honor?

8                    THE COURT:  Yes.

9                    THE CLERK:  I don't mean to interrupt, but that

10     deadline is actually tomorrow, the 25th.

11                    THE COURT:  Tomorrow, the 25th.  All right.

12     Because the rule says 14 days plus three.  Is that what we're

13     looking at?  It's Rule 12.1.

14                    THE CLERK:  Correct.

15                    THE COURT:  Okay.  And, I'm sorry, I don't have

16     notes in front of me.  So, in any case, it's tomorrow because

17     the deadline still hasn't occurred.

18                    For the Dropbox evidence, I understand the

19     argument to be that there was not the most effective way of

20     going about things, that the defense did not secure the

21     information as they could have.

22                    However, I am not convinced that that would

23     necessarily automatically exclude it, which is what this

24     motion is requesting, so I'm denying the motion, however, that

25     doesn't mean that the evidence is submitted either.

1          The defense will still have to lay a proper

2     foundation as well as to authenticity and the reliability of

3     the document before the Court will consider it.

4          Then we have the conflict issue -- you know, I

5     don't have that -- I don't have the motion number for that

6     one, Aaron.

7          THE CLERK:  It's document number 100, your

8     Honor.

9          THE COURT:  Number 100 is the question as to

10    whether or not there's a conflict that would cause the Court

11    to disqualify Ms. Craig, and my understanding was that she is

12    not going to be filing a new verified petition, that's the

13    representation that's been made, so it's denied as moot on

14    that ground.

15         However, there is important information that's

16    raised in the affidavit as to the disqualification by

17    imputation, whether or not there's an imputed disqualification

18    of counsel that should occur, and so in looking at that I am

19    inclined to find that there is a disqualification issue that

20    needs to be further examined in a proceeding.

21         I do need to bring to your attention, though,

22    and I'm finding more and more of this case law, so I think

23    it's important that the way that the -- with the ruling --

24    first of all, there was an issue made as to whether or not --

25    I should go back and look at -- let me see if I can find my

1    note here.

2              I don't think I'm going to -- all right.  So

3    there's a particular part of the rule that applies to

4    government, and we're talking about the Nevada rules of -- of

5    conflict here.

6              Let me see if I -- okay, 1.11, that the defense

7    is saying that the government has a prerequisite and has to

8    establish that the rule applies, but that's not my reading of

9    the rule.

10             All that that rule is saying, the 1.9(c), that

11   it applies to the government.  So there's the exclusion rule,

12   there's the conflict rule, and then additionally there's the

13   government's rule which relates back to the conflict rule

14   saying that this rule, the conflict rule, also applies to the

15   government as far as someone who has been a former government

16   employee.

17             Let me see if I can find it here.

18             So it's rule 1.11, special conflicts of interest

19   for former and current government officers or employees.  So

20   subsection (n) says,

21             "Except as law may otherwise expressly

22        permit, a lawyer who has formerly served as a public

23        officer or employee of the government," and it goes

24        number one, "is subject to rule 1.9(c)."

25             There's no element, though, that the government

1   has to prove.  It's merely notifying the public, the person

2   who has formerly served as a public officer or employee of the

3   government that they are subject to rule 1.9(c), that the

4   government doesn't have to prove that, it already is a stated

5   fact.  And then the second part is showing a not otherwise

6   represented client and so forth.

7            So it does appear that there is a conflict, that

8   Ms. Craig is disqualified, and then further the question is

9   whether or not there should be an imputed disqualification of

10  both Mr. Marchese and Mr. Durham.  So I'll take these

11  separately.

12           First of all, the way that I read the rules,

13  that it's not an automatic disqualification because these

14  people are not in the same law firm so they're not associates

15  in the way that that word is used in the statute.

16           When it refers to associates, there's case law,

17  Nevada case law, that explains that this is of the same law

18  firm.  So if it was the Marchese Durham Craig law firm, then

19  obviously, yes, there would be more of an issue because

20  they're all in the same law firm, but that's not what the case

21  law says, it's separate as for each individual.

22           So as to whether or not there was any

23  information that would cause an actual imputed

24  disqualification as to Mr. Marchese, I'm going to permit him

25  to make a proffer in a sealed proceeding without the

1    government here, or anyone else, so that we can take that

2    information, and then likewise as to Mr. Durham.

3              I'm not even sure if Ms. Craig had any

4    communication with Mr. Durham, but there would be a question

5    of whether Mr. Marchese had any communication with Ms. Durham

6    [sic].

7              So the unfortunate part of this is that the

8    defense is not privy to the information that was given by the

9    government in the sealed affidavits, and the purpose of that

10   is clear, obviously, because that's the confidential

11   information, and that's the inner workings of the attorney

12   work product and evaluating the strengths and weaknesses of

13   the case, and trying to anticipate what the defense might be,

14   and if the defense is this, what evidence do we have, and if

15   the defense is something else, what evidence would we have.

16             And so it's not necessary for the government to

17   reveal that information to the defense, but I think that it's

18   sufficient what I've just said, that that's the gist of it, is

19   that Ms. Craig's office was right next to Ms. Roohani's office

20   when Ms. Roohani received the case, and that Ms. Roohani spoke

21   to Ms. Craig about the case numerous times, and, in fact,

22   asked Ms. Craig if she wanted to be cocounsel on the trial

23   because Ms. Giroux had been changed over, moved over to a

24   different department, a different division, I guess I should

25   say, a different category of cases, a different assignment of

1     cases, and therefore would not be able to help Ms. Roohani who

2     was brand-new to the office so obviously would need a second

3     counsel who has been in trial before.

4                    And so there was a lot of discussions not only

5     between Ms. Roohani and Ms. Craig, but also there was a

6     conversation between -- was it -- it was Kimberly Frayn?  Not

7     Kate Newman, I'm trying to think of -- Kimberly Frayn, right?

8                    And I have an affidavit from Kim Frayn that she

9     also had a conversation with Ms. Craig about the case, and

10    that Ms. Giroux also had a conversation, multiple

11    conversations, both with Ms. Roohani and without, to make sure

12    that Ms. Craig would want to cocounsel the case during trial

13    with Ms. Roohani.

14                    So if there was a lot of information that was

15    exchanged.  There wasn't even just, "We happened to be on the

16    same floor," and sometimes people talk about things, it was --

17    litigation strategies were definitely discussed.

18                    So it's a very serious situation, and I do need

19    to have a hearing, I believe, with both Mr. Marchese and

20    Mr. Durham to find out whether they can -- whether the

21    presumption should even apply, which I still am -- still

22    literally just a few moments ago found another case.  I don't

23    know if I have time to add it to this.

24                    But I keep finding more cases that are helpful

25    to understand what needs to be -- what factors need to be

considered and weighed in determining whether or not there's a

disqualification when the attorneys are not in the same law

firm.

There's one case, for example, that was the

secretary who had the disqualification, and, of course, the

attorneys that she works for were automatically imputed to

have a disqualification, but not necessarily cocounsel who was

from a different law firm, and so there's some -- there's some

information about that as well.

So that's what I'm planning to do.

As to Exhibit Number 113 which was supposed to

be an exhibit to the response from the defense, when I looked

at it I couldn't find the exhibit, and I thought that maybe it

was provided as a courtesy copy and it wasn't filed and I

couldn't find it.

And so my understanding is that now the defense

has filed it.  They did file it, not under seal.

The government opposed that and believes that it

is actually child pornography that's in the little thumb --

the thumb-sized photo of one of the -- I think it's three

pages that were filed, and so out of an abundance of caution I

ordered my courtroom deputy to just go ahead and temporarily

seal it until we could figure it out.

It is a very small picture.  It's a very blurry

picture.  I'm sure there are people who know how to blow that

1    up and see it better which is a concern.

2              Also, there's a description on there that does

3    imply that it might be child pornography, but my understanding

4    is that also the Dropbox -- is it the custodian of records

5    of -- is there someone else, I guess, that has looked at this?

6              MS. CARTIER-GIROUX:  At the time that I wrote

7    the motion I had asked Special Agent -- we don't have this

8    account.  We haven't looked at this account.  We've gotten a

9    return recently from Dropbox, but we haven't had a chance to

10   look at it.

11             However, we do have the cyber tip report which

12   was sent from Dropbox to mick mick (phonetic) regarding images

13   on this account, and Ms. Panovich looked at the cyber tip

14   images of the video which is the same name as the video that

15   we see on the Exhibit A, and she can confirm that what she

16   viewed, if it is the same image, maybe there's two with the

17   same file name, I don't know, it is child pornography in her

18   opinion.

19             THE COURT:  Okay.  Well, I'm going to continue

20   to keep it under seal until such time as I'm satisfied that

21   it's not child pornography, but definitely from today going

22   forward I'm going to go ahead and keep it sealed, and I

23   understand both parties have a copy so you should both still

24   be able to refer to it if you need to.

25             Did I cover everything, Aaron?

1          THE CLERK:  I believe so.

2          THE COURT:  So the motion to exclude alibi

3   defense is denied.  The motion to exclude the Dropbox evidence

4   is denied.

5          The motion number 100 as to the conflict of

6   Amber Craig, that is granted in part as to Ms. Craig, she is

7   disqualified.  Whether or not that should be imputed to

8   Mr. Marchese and Mr. Durham, that's under submission, and

9   we'll hear testimony in a sealed proceeding as to that.

10         And then the sealing of Exhibit -- I think that

11  was number 113 was a motion to seal, that's granted.

12         No, there was another one as to the business

13  records.  Is that what I'm thinking?  But the parties agreed

14  that --

15         MR. MARCHESE:  Your Honor, we didn't oppose it

16  so --

17         THE COURT:  All right.  So that one is granted

18  without opposition.

19         I think there was another order entered today.

20  Did that eventually get filed?

21         THE CLERK:  Yes.

22         THE COURT:  I've been in court all this morning

23  so I haven't checked everything to see if it's up-to-date.

24         MR. MARCHESE:  And just to go back a little bit,

25  your Honor, I don't know if this helps anyone about the

1    exhibit that was just filed today, out of an abundance of

2    caution I asked my expert, Larry Smith, who has testified in

3    these proceedings before and been certified as an expert to

4    testify about these things, I asked him personally what his

5    opinion on it was, he said it was not child pornography.

6              But, regardless, I'm not looking to argue about

7    something that's unnecessary at this point.  If we just want

8    to keep it under seal, that's fine.

9              THE COURT:  Okay.

10             MR. MARCHESE:  We have no problem with that.

11             THE COURT:  I appreciate that.

12             And the reason that I want to have this hearing

13   is because the defense did say in its response to the motion

14   to disqualify that there was a conversation that was had with

15   Ms. Craig, and the facts were discussed.

16             However, she seemed to be a total stranger and

17   didn't know anything about the facts, which is very different

18   than what representations that are made by the government by

19   not one, by not two, but three different affidavits sworn

20   under oath that I received from the government.

21             So I think that there's a need to make a better

22   record here for whatever it is that I'm going to be doing in

23   the end so that if I do disqualify you, you can appeal it.  I

24   can do a certificate of appealability.  I don't know that it

25   would necessarily be dispositive, so I'm not sure if the

1   circuit would take it up or not.

2              But, I mean, I want to give everybody a fair

3   chance to give me all the information that you think that I

4   should know before I make the decision.

5              So that's where I'm at now is Ms. Craig cannot

6   be on this case even if she were to file a new verified

7   petition.

8              And then whether or not Mr. Marchese can is

9   less -- it's likely that there's a problem there because the

10  conversations have already been had.

11             And I didn't see anything that indicated that

12  Mr. Durham had any contact with Ms. Craig, but, of course, if

13  Mr. Marchese has already talked to Mr. Durham, then we might

14  have an issue.

15             So that's, I think, my plan for right now is

16  just to ask everyone to -- if there's nothing else that you

17  need me to address, ask you all to either wait outside, or

18  we'll give you a call when we're done, and then we'll conduct

19  a hearing in camera so they can make their record of what they

20  knew, when they knew it, and what else they need to say rather

21  than make them write it out in affidavits.

22             MS. SILVA:  I apologize, do you prefer us to

23  wait outside or want us to --

24             THE COURT:  I don't know how long it's going to

25  take.

1           MS. SILVA:  Okay.

2           THE COURT:  He might just take the stand and say

3   she didn't say anything to me, and we're done, or there might

4   be a little bit more.

5           MS. SILVA:  We'll wait for a little while.

6           THE COURT:  All right.  Thank you.

7           MS. SILVA:  Thank you.

8                      (In camera proceedings began at 1:22
                        p.m. with the Court and defense counsel
9                       resent.)

10                     (Refer to separate sealed transcript of
                        proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

-16-

1          LAS VEGAS, NEVADA, MONDAY, OCTOBER 24, 2016, 1:50 P.M.

2                            ---o0o---

3

4               THE COURT:  All right.  So we're back on the

5     open record, and we're joined now by Ms. Cartier-Giroux as

6     well as Ms. Silva, and Agent Panovich is here as well, which,

7     I apologize, I didn't mention that you also submitted an

8     affidavit in support of the motion to disqualify.

9               And for some reason in my head I thought it was

10    a male agent, and so it just didn't click that you were the

11    person that had provided that affidavit, but that is your

12    fourth affidavit in support of that disqualification which the

13    Court found to be very persuasive.

14              So in our conversations I did provide to counsel

15    some of the case law that I've come across recently, so I

16    wanted to also take the opportunity to provide that to the

17    government as well.

18              I don't know that I need any supplemental

19    briefing, but I suppose if you would like to, it wouldn't --

20    it never hurts.

21              So here's one of the cases, is *Ryan's Express v*

22    *Amador Stagelines*, and it's at 128 Nevada Advisory Opinion 27

23    or Advanced Opinion 27.  The Pacific cite is 279 Pacific 3rd

24    166.  The pin cite is 172.  And that is a Nevada Supreme Court

25    case from 2012.

1            And then we have the case law I was telling you

2    about, the legal secretary, that's at *Brown versus Eighth*

3    *Judicial District Court*, and the Pacific 3rd cite is 14

4    Pacific 3rd 1266 at page 1267, the Nevada Supreme Court in the

5    year 2000.

6            And that was where the legal secretary wasn't

7    properly screened with appropriate waiver so that the

8    secretary's law firm was disqualified, but cocounsel was not a

9    member of the disqualified firm, and the Court found that

10   disqualification was not warranted absent proof of the

11   reasonable probability that counsel actually acquired

12   privileged confidential information.

13           So as opposed to imputed just by relationship,

14   there would actually have to be reasonable probability but

15   actual privileged information that was confidential was

16   acquired.

17           And so this does place the burden of proof on

18   the government, and, as I've said before, you have raised

19   significant facts that are very persuasive so I wanted, and to

20   give the defense an opportunity to rebut that as best we can.

21           So we did go through, and they explained to me,

22   each of them separately, how many times they have met with

23   Ms. Craig, including, you know, whether there was any meetings

24   in the actual offices, whether she was using their devices,

25   their computers, and things like that, that would then provide

1    me with a basis to find that they are the same law firm.

2              Because my understanding is that she just left

3    the U.S. Attorney's office so she didn't actually have a

4    proper law firm.  She was going to join a civil firm, but then

5    didn't, and so it was kind of up in the air, was visiting

6    parents and so forth.

7              So I wanted to make sure that I understood

8    whether or not they were working as one law firm or separate

9    law firms because that would make a difference, too, whether

10   it's an automatic or not imputation there.

11             And we also discussed whether there were group

12   e-mails or jail visits or visits to the scene or conversations

13   with investigators, and what information was provided and so

14   forth.

15             So I'm going to take this under submission now

16   that I have more facts than what I had before and compare it

17   to the factual scenarios of the cases that I've been able to

18   find.

19             Like I said, I don't know that I need some more,

20   but it never hurts to have supplemental briefing.  Do you want

21   the opportunity to -- because now I think calendar call has

22   been moved to November 7th with trial November 14th.  So the

23   rush -- it's still a rush, but it's not quite as rushed as we

24   thought it was before.  I'd rather make the right decision

25   than a quick one.

1          MS. SILVA:  We appreciate that, your Honor.

2          Our position would be we're more than happy to

3  do a bit more for the Court.  I can -- I think, perhaps partly

4  for the defense as well, that we don't know what each other's

5  side is so it makes it complicated to do a factual analysis

6  for the Court, but if you would like us to do a supplemental

7  brief, we're happy to do that.

8          THE COURT:  Okay.  Well, I'll leave it up to

9  you, Mr. Marchese and Mr. Durham, how much you want to share

10  with them or not because I'm not in a position to say what is

11  or is not privileged confidential information.  That's why I

12  wanted to put it under seal so you could speak freely, and I

13  would be able to hopefully make the right decision.

14          But whatever information you all want to share

15  with each other is certainly up to you to make it easier to

16  find the right case law that would apply here.

17          MR. MARCHESE:  And we would like the opportunity

18  just out of an abundance of caution.  I mean, we may not find

19  anything, or maybe we find the case that, you know, puts us in

20  the clear, who knows.

21          THE COURT:  Right.  And, of course, I would

22  still be -- the conflict question, federally we look to state

23  law.  So if there's a Nevada case on point, then that would be

24  the most persuasive.

25          It doesn't mean we can't go to other states.  It

1     wouldn't be necessarily as persuasive, but it may not hurt if

2     you want to look at other states that might have a larger

3     population or maybe have more of a history of caselaw that

4     could at least be educational and help put this in the proper

5     perspective.

6              But essentially it looks like they are separate

7     entities all three of them.  Ms. Craig never used any of

8     Mr. Marchese's or Mr. Durham's devices or office space or

9     staff, and, likewise, Mr. Marchese and Mr. Durham never used

10    each other's staff or offices or devices or anything.

11             So as far as I'm concerned, I'm looking at three

12    separate law firms individually assume their relationships.

13    But I do absolutely agree that Ms. Craig is disqualified so

14    don't waste any time with that.  There's no question there.

15             So do you want me to just give you a blind brief

16    deadline of Friday, the 28th, at noon?

17             MS. SILVA:  Yes, your Honor.

18             THE COURT:  And just take some time to look for

19    what other cases you could find that might be instructive to

20    the Court, and I appreciate it.

21             And it might also give you some time to explore

22    options, too.  So whatever decision I make, if you do want to

23    appeal that, do I have to issue a certificate of

24    appealability, do we need to look at whether or not that would

25    be dispositive that they would even take jurisdiction of it

1    anyway, would it be done on a writ.  So --

2                    MS. SILVA:  We'll put that in our briefing, your

3    Honor.

4                    THE COURT:  All right.  Anything else before we

5    recess?

6                    MR. MARCHESE:  No, your Honor.

7                    THE COURT:  All right.  Well, I appreciate that

8    this is a very difficult situation factually and legally, and

9    that all of you are acting as professionals and not impugning

10   each other, pointing fingers, or doing anything to bring any

11   disrespect to the bar.

12                   That's one of the important things, actually,

13   that I brought up is that not only is the government, you

14   know, the bodies that are sitting in those seats, but you

15   represent the public, and the public's need to be able to

16   trust and rely upon the verdict, whatever the verdict ends up

17   being, to know that it's not biased or unfair, what did I

18   say -- shenanigans, I couldn't think of a word, that there

19   isn't the cause of some kind of shenanigans but rather that

20   everyone had their fair chance to put on their case in the

21   manner that we expect these cases are to be tried.

22                   So I appreciate you all coming in, and any other

23   information that you want to submit, the Court welcomes that

24   as well.

25                   So it will be due by 12:00 on Friday,

1    November 28th.

2                    THE CLERK:  Your Honor, because you have

3    disqualified Amber Craig, will you be denying the verified

4    petition, document number 94?

5                    THE COURT:  I did already, but I gave her some

6    time to file a new one, but I think the indication is she's

7    not going to be filing a new one.

8                    THE CLERK:  Yeah, it's kind of stayed -- it's

9    kind of in limbo so --

10                   THE COURT:  Okay.  Let's deny that.

11                   THE CLERK:  Okay.

12                   THE COURT:  Yeah.  All right.  Anything else?

13                   MS. SILVA:  No, your Honor.  Thank you.

14                   THE COURT:  Okay.  Thank you.

15                                -o0o-

16

17          I certify that the foregoing is a correct
            transcript from the digital recording of proceedings
18          in the above-entitled matter.

19          /s/Margaret E. Griener          5/3/2019
             Margaret E. Griener, CCR #3, FCRR
20           Official Reporter

21

22

23

24

25