1          UNITED STATES DISTRICT COURT
                DISTRICT OF NEVADA
2     BEFORE THE HONORABLE GLORIA M. NAVARRO, DISTRICT JUDGE
                    ---o0o---
3

4    UNITED STATES OF AMERICA,      :
                                    :
5              Plaintiff,      :  No. 2:16-cr-100-GMN-CWH
                                    :
6         -vs-                 :  November 7, 2016
                                    :
7    JAN ROUVEN FUECHTENER,        :  Las Vegas, Nevada
                                    :
8              Defendant.      :
     _____:
9

10

11              TRANSCRIPT OF CALENDAR CALL

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:       LISA CARTIER-GIROUX and
                              ELHAM ROOHANI
15                            Assistant United States Attorneys
                              Las Vegas, Nevada
16

17   FOR THE DEFENDANT:       JESS MARCHESE and BENJAMIN DURHAM
                              Attorneys at Law
18                            Las Vegas, Nevada

19

20   ALSO PRESENT:            SPECIAL AGENT MARI PANOVICH

21

22   Transcribed by:          Margaret E. Griener, CCR #3, FCRR
                              Official Reporter
23                            400 South Virginia Street
                              Reno, Nevada 89501
24

25

1          LAS VEGAS, NEVADA, MONDAY, NOVEMBER 7, 2016, 10:02 A.M.

2                              ---o0o---

3

4                    THE CLERK:  This is the time set for calendar

5     call in case number 2:16-CR-100-GMN-CWH, United States of

6     America versus Jan Rouven Fuechtener.

7                    Counsel, please state your appearances for the

8     record.

9                    MS. ROOHANI:  Good morning, your Honor.  Elham

10    Roohani and Lisa Cartier-Giroux for the United States.  We're

11    joined at counsel table with Special Agent Mari Panovich.

12                    THE COURT:  Good morning, Special Agent

13    Panovich.  Good morning, Ms. Roohani and Ms. Carter-Giroux.

14                    Shall we put down that armrest so we can see you

15    all better?  It seems like -- unless you're planning to use it

16    and it's set up for use, otherwise I can't really see you very

17    well.

18                    Go ahead.  Defense counsel.

19                    MR. MARCHESE:  Good morning, your Honor.  Jess

20    Marchese and Benjamin Durham on behalf of Mr. Fuechtener.

21    He's present and in custody.

22                    THE COURT:  Good morning, Mr. Marchese.  Good

23    morning, Mr. Durham and Mr. Fuechtener.

24                    All right.  I'm still waiting for the computer

25    to start up, but I know that we're on calendar today both for

1    calendar call, and also there is a renewed motion to exclude

2    the alibi defense notice that has not yet been provided.

3              There was a response that was filed by the

4    defense that I wasn't quite sure how to interpret it.  It --

5    on the one hand it seems to argue that because the government

6    failed to request timely the notice within the timeline set

7    either in the statute or in the discovery scheduling order,

8    pretrial order, that it had either waived its right, or,

9    because they were allowed to have more time, that the defense

10   should be allowed to have more time.

11             But I wanted to get into more the details to

12   determine whether or not there's good cause.

13             First of all, I couldn't find where there was a

14   specific date that was provided by the defense for the

15   continuance.  I know you're asking for more time, but I don't

16   know if it's a day, two days, three months.  How much time is

17   it that you're requesting?

18             And I realize that there's 15 different dates

19   here that were provided by the government, so the notice for

20   alibi is not just a one-date, one-time defense, it's 15

21   different dates and times -- not 15 different dates, but

22   certainly 15 different incidences.

23             MR. MARCHESE:  Your Honor, we're just prepared

24   to submit it on the record of what we filed and what's in the

25   government's motion.

4

1              THE COURT:  I didn't understand that.  So when

2   do you want to file a notice of alibi?

3              MR. MARCHESE:  Well, at this point we wouldn't

4   be filing anything.

5              What had happened is we got a new batch of

6   discovery, so based on that we needed to go through a few

7   hundred pages, namely some bank records and documents.  So

8   based upon that, we didn't see anything that would necessitate

9   the need to file anything.

10             THE COURT:  All right.  So you do not intend to

11  file a notice of alibi.

12             MR. MARCHESE:  Not at this time, no.

13             THE COURT:  All right.  So it sounds like the

14  government's motion is moot then at this point.

15             MS. ROOHANI:  Well, your Honor, it's not moot

16  because if they are not intending to use the alibi, then we

17  would move to exclude it because our concern is, is that at

18  the time of trial they will try to raise an alibi defense.

19             MR. MARCHESE:  We were given some dates and

20  times approximately three weeks ago by the government.  Those

21  dates and times we do not intend to notice any alibi in which

22  we would be required to under the statute.

23             So at this time I don't think -- I don't know

24  what else to say other than we wouldn't be filing any notice

25  of alibi.

1          THE COURT:  So you're no longer seeking extra

2   time to file the notice of alibi.

3          MR. MARCHESE:  That is correct, your Honor.

4          THE COURT:  All right.  So then I can grant the

5   government's motion, is that your position, that you're not

6   opposing the government's motion?

7          MR. MARCHESE:  Well, the only thing we would

8   still say is that it was untimely by the government based upon

9   both the local rules and the federal statute.

10          THE COURT:  All right.  And that's true, and I

11   think that that's fair to say that it was untimely.  However,

12   it was eventually posted.

13          There's no request for it, for the Court to

14   acknowledge good cause for the late tender of the request for

15   an alibi, but because there is no alibi notice to be tendered,

16   and there's no extension being requested, then the motion will

17   be -- the government's motion will be granted without

18   opposition from the defense.

19          The last thing that we need to address, I think,

20   unless you've got something new, is the timeline for trial

21   starting on Monday.  We're scheduled to start at 8:30, and

22   we've got all day on Monday.

23          Tuesday we just need to end a little early at

24   11:30 because I've got some students coming in, but

25   otherwise -- oh, no.  Am I doing the attorney admission

1    ceremony on Tuesday as well?

2                All right.  So Tuesday, the 15th, we have an

3    attorney admission ceremony at 4:30 so we'll be stopping at

4    about 4:15.  It's just next-door so all I have to do is get

5    off the bench and go next-door.

6                So on Tuesday we'll plan to be here from

7    8:30 a.m. until 11:30 when the students get here, and then

8    we'll resume again at 1:00 until 4:15.

9                On Wednesday we need to start later because

10   we've got things in the morning.  So we can start -- we can --

11   maybe can we just do the afternoon on Wednesday from 1:00 to

12   5:00?

13               And then let me give you the whole week calendar

14   so you can tell me if that works for you.

15               Aaron, are you planning to move those

16   sentencings on Thursday morning?

17               THE CLERK:  It depends on how long the parties

18   anticipate they'll need for trial.  If it's going to be less

19   than, you know, about four days or so, I think we can keep

20   those on half day, just do a half day in the afternoon for

21   trial.

22               THE COURT:  Well, but the 1:30 is a motion -- is

23   the preliminary injunction motion with the city.

24               THE CLERK:  The 1:30 we would most likely move

25   to 11:00, your Honor.

1          THE COURT:  Okay.  So Thursday we might do just

2     the afternoon.  If you need more time, we can move everything

3     except for the preliminary injunction motion with the city,

4     but the sentencings could be moved.

5          And then Friday -- it looks like the only thing

6     I have Friday is there's the Veteran's Treatment Court

7     graduation ceremony at 9:30 until 11:00.  So we would have the

8     afternoon on Friday, the 18th.

9          Monday is actually not a calendar call day, is

10    that right, Aaron, the 21st?

11         THE CLERK:  That's correct, your Honor.

12         THE COURT:  So it looks like we actually have

13    all day Monday if we need to, and since we won't have a jury,

14    we don't to have worry about them over the weekend, and

15    Tuesday we have all day.

16         So how does that schedule work out for you,

17    Ms. Roohani?  Do you anticipate you'll be able to put on the

18    government's case with that timeline?

19         MS. ROOHANI:  Yes, your Honor.  We anticipate

20    being finished no later than Wednesday based on this timeline.

21         THE COURT:  Even with the half day on Wednesday?

22         MS. ROOHANI:  Including the half day on

23    Wednesday.

24         THE COURT:  Okay.

25         MS. ROOHANI:  At the very latest.

1          THE COURT:  All right.  And, Mr. Marchese, does

2    this timeline so far explained, does that seem to be enough

3    time for you all?

4          MR. MARCHESE:  Yes, it does, your Honor.

5          THE COURT:  Okay.

6          MR. MARCHESE:  I would anticipate our case in

7    chief taking approximately one day, and then obviously without

8    the jury and things outside the presence, I think that that

9    would certainly expedite things.

10          THE COURT:  Okay.  Now, since it is a bench

11    trial instead of a jury trial you don't need to provide

12    proposed jury instructions, of course, but some kind of a

13    bench memo, findings of fact, conclusions of law, something

14    like that to tell me ahead of time which elements you think

15    need to be proven or which defenses are available would be

16    helpful and would probably speed things up if you wanted to

17    file that.  I'm not going to require you to, but if you want

18    to, that might be helpful.

19          Let's see.  Also -- it also looks like we would

20    have some time on Wednesday, the 23rd, if it takes that much

21    longer.  That looks like that would be fine.

22          So anything else that you need me to address

23    before you can prepare and be ready to begin at 8:30 Monday?

24          MS. ROOHANI:  I have two small housekeeping

25    matters.  Will your Honor require opening statements from us?

1     Do you prefer them, not prefer them?  Seeing as how this is a

2     bench trial, would you prefer for us just to --

3                    THE COURT:  I don't require them.  It's an

4     option if you want to exercise it, it's available to you.  If

5     you don't want to exercise it, you don't have to.

6                    MS. ROOHANI:  Okay.  And then we have Dennis --

7     Sergeant Dennis Carry.  We intend to recall him.  Would your

8     Honor be okay with that, or would you prefer for us to put

9     Mr. Carry on all at once?

10                   THE COURT:  So you think you'll need him in

11    rebuttal, is that what you're saying?

12                   MS. ROOHANI:  No, no.  We are intending to call

13    him at the beginning to explain the GigaTribe platform and

14    then later on to just talk separately about chats that will be

15    introduced into evidence by other witnesses, therefore we're

16    going to need to split his testimony.  He would obviously be

17    on recall --

18                   THE COURT:  I don't have any preference.  That's

19    up to Mr. Marchese if he wants to object to permitting him to

20    just testify to everything all at once, or if he prefers to

21    wait and make sure that the foundation is laid before he gets

22    into his second area.

23                   MR. MARCHESE:  Your Honor, I think that's

24    probably something that the government and Mr. Durham and

25    myself need to discuss.

1              THE COURT:  Okay.  Anything else?

2              MS. ROOHANI:  Ms. Cartier-Giroux has two points,

3    your Honor.

4              THE COURT:  Yes.

5              MS. CARTIER-GIROUX:  Your Honor, I just wanted

6    to make sure that this is correct information.

7              We had -- there was some issues with regard to

8    reciprocal discovery.

9              I did file a motion to compel because we haven't

10   had any conversations about it, there's never been a point

11   where we were at -- you know, "I'm not going to give this to

12   you," or, "you're not entitled to it."

13             But I just want to make sure, clarify that I

14   understand, we went through defense's exhibit list, and it's

15   my understanding that all the exhibits, with the exception of

16   the aerial photo, the video, and the Dropbox, which would be

17   5027 and 5037, are in -- are our discovery.  They're actually

18   taken out of our discovery.

19             We don't have, however -- that's what the

20   defense has told me.  We don't have 5001 and 5002 which are

21   photographs, and I confirmed it with the agent, of the

22   defendant's spouse and another individual named Kevin.

23             We also still do not have 5027 which is a

24   Dropbox, I believe, photograph, as well as 5028 which is an

25   aerial photograph of the house, and 5037 which is also a

1      Dropbox photograph, I believe, or screenshot.

2                    Also, there was a video that we had discussed at

3      one point in time.  We had the video that was made by the real

4      estate agent, but we don't have the edited version of that

5      video, so we don't know what that looks like because I believe

6      they were going to take out some stuff from it including,

7      like, the editorial comments that are on it.

8                    So those are the items that are outstanding for

9      us with regard to reciprocal discovery.

10                    I was told that there is no reciprocal discovery

11     as to their witnesses which is fine.  The only issue that I

12     have is -- potentially have, and I'm just -- it may not be an

13     issue, but there's a person on their witness list named Joel

14     Rosal -- Rosales who gave a statement to the FBI that was, I

15     believe, actually -- yeah, in a 302.  The substance of the

16     statement has been turned over.

17                    If there's any indication that he is going to

18     testify inconsistently with that statement, then he would

19     potentially be entitled to an attorney because he could assert

20     the Fifth.

21                    So I just want to front that with the Court that

22     that may be an issue, we may need to have somebody on the

23     panel available in case that is.

24                    I don't know if he's -- I have no information

25     that he's going to testify inconsistently to his prior

 1    statement, but that may become an issue during the trial.

 2                    THE COURT:  All right.  Well, I appreciate that.

 3                    So what exhibit number is the real estate video?

 4                    MS. CARTIER-GIROUX:  It's not on the actual

 5    list, but we did have discussion that that may be offered.

 6                    THE COURT:  Okay.  So you have the full -- full

 7    version of the video but just not the edited version.

 8                    MS. CARTIER-GIROUX:  The one that they wish to

 9    admit now.

10                    THE COURT:  All right.  So, Mr. Marchese,

11    exhibit numbers 5001, 5002, 5027, 5028 and 5037, they're all

12    photos either of Dropbox or of individuals or aerials.  Are

13    they different than the ones that the government already

14    possesses?  Are they something new that the defense created?

15                    MR. MARCHESE:  The only one of those items that

16    is not in the government's possession is the aerial photo.  We

17    can get that over to them.  It's just simply something we

18    printed off Google maps so nothing spectacular.

19                    Everything else is in the government's

20    possession.  The video they have in its entirety.  I have

21    someone working on just cutting out the first portion, it's an

22    introduction by a real estate agent, not necessarily relevant

23    to the proceedings here.

24                    THE COURT:  Okay.  So you're going to provide to

25    them the edited version of the real estate video by when?

1              MR. MARCHESE:  Today.

2              THE COURT:  Okay.  So let's say 5:00 p.m. today?

3              MR. MARCHESE:  Yep.

4              THE COURT:  Okay.  Then what about the aerial,

5    number 5028?

6              MR. MARCHESE:  We can do the same, 5:00 p.m.

7    today.

8              THE COURT:  Okay.  And then the government

9    doesn't think it actually has 5001, 5002, 5007, and 5037, but

10   these are things that you obtained from the government?

11             MR. MARCHESE:  From their devices.

12             THE COURT:  From their --

13             MR. MARCHESE:  Well, the Dropbox information

14   they just subpoenaed.  Further, it's already on the devices.

15   Apparently they don't know that, but it's on their devices.

16             But the information regarding the picture, that

17   was taken off of their devices that they seized, so.

18             The only thing they're not in possession of that

19   they're discussing would be the video which was already given

20   to them, so technically they are in possession of it, and the

21   aerial photo.

22             MS. CARTIER-GIROUX:  I'm somewhat confused

23   because I have an e-mail from Mr. Marchese saying that I have

24   everything except 5027 and 5028, that he is going to send me

25   5027, and then we'll send you 5028.

1              So I'm confused about what I have and what I

2    don't have because those are Drop -- my assumption, and,

3    again, this is an assumption, is that they are Dropbox

4    screenshots that their investigator, or whoever, expert took

5    on a specific date at a specific time, that they are going to

6    offer, and they are relevant because of the specific date and

7    the specific time.

8              So I'm asking that I be provided with those.

9              MR. MARCHESE:  I will provide it even though

10   they're already in possession of it.  It's on their devices.

11             THE COURT:  All right.  So 5027, 5028, and the

12   edited version of the real estate video will be provided by

13   5:00 p.m. today.

14             And the other ones that are outstanding, and

15   it's 5001, 5002, are photographs of a person?  Is that what

16   that was?

17             MS. CARTIER-GIROUX:  A person named Frank, who I

18   believe is the spouse of the defendant, and another individual

19   named Kevin.

20             THE COURT:  All right.  And so, Mr. Marchese,

21   the photographs of Mr. Frank, Mr. Kevin, these are also things

22   that you retrieved from the government's discovery?

23             MR. MARCHESE:  I pulled it off of the -- I want

24   to say item 1B5, don't quote me on that, but it was off of the

25   discovery.  That's where I got it from.

1        THE COURT:  Okay.  And same with the Dropbox

2  5037 photo?

3        Now, what about the --

4        MR. MARCHESE:  I believe 5037 would be the one

5  in which the government took issue and said it was a very

6  small thumbnail with child pornography.

7        THE COURT:  Okay.  And so that's the one that's

8  under seal on the docket in this case?

9        MR. MARCHESE:  I believe so, yes, your Honor.

10       THE COURT:  All right.  And then as to potential

11  witness Joel Rosales, I'll go ahead and ask Aaron to contact

12  Sharon who is the administrator for the CJA attorneys and ask

13  to have a CJA attorney available on the day that he's going to

14  be called.  I don't imagine that you can anticipate at this

15  moment exactly what day and time he'll be called.

16       MR. MARCHESE:  Yeah.

17       THE COURT:  But if you'll please let the Court

18  know -- if you could let us know the day before, then we can

19  make sure to have an attorney here just to make sure that that

20  person is aware of what their rights and responsibilities are

21  so they don't inadvertently get themselves into trouble if

22  they didn't need to.

23       I want to make sure that their testimony is

24  intelligent and that they have an opportunity to talk to an

25  attorney.

1         All right.  So that will be the order.  So the

2   defense will let the Court know the day before they call Joel

3   Rosales so we can have a CJA attorney meet with that person.

4         Anything else, Mr. Marchese, you want me to

5   address?

6         MR. MARCHESE:  We had some issues into

7   reciprocal -- as to reciprocal discovery from the government,

8   specifically items 2B and C, are some screenshots of some

9   GigaTribe chats with the undercover agent from buffalo.  We

10  still don't have those in our possession.

11        THE COURT:  Ms. Roohani?

12        MS. ROOHANI:  Your Honor, the screenshots come

13  from a video that the undercover created of the session where

14  he downloaded the videos from the defendant's computer.  That

15  video also contains child pornography so we can't produce a

16  video.  It's been available to the defense from the very first

17  day of this case at the FBI headquarters.

18        Our intention is, because the video moves very

19  quickly, at the time of trial to create a screenshot for the

20  court to be able to view that specific chat.

21        That screenshot is, of course, pulled from the

22  video, and the video has always been available.

23        I've instructed Mr. Durham and Mr. Marchese that

24  that video has been available to them and that they're able to

25  go look at it.

1        At this point we don't have a screenshot.  Once

2    we have it, we can obviously produce it to them, but because

3    it's pulled from the video, and we intend to introduce that

4    video at the time of trial, it's -- it's just a screen grab

5    from the original video which has always been available.

6            THE COURT:  Okay.  So when can we provide to

7    them the screenshots that are represented in Exhibits 2B and

8    2C?

9            MS. ROOHANI:  If you give me a moment, your

10   Honor.

11               (Discussion held off the record.)

12           MS. ROOHANI:  Your Honor, Special Agent Panovich

13   will work on that today, and we can get it to them by close of

14   business tomorrow.

15           THE COURT:  Okay.  So 5:00 p.m. on Tuesday.

16   That will be the order, that by 5:00 p.m. on Tuesday the

17   government will provide to the defense the two screenshots

18   that are in Government Exhibits 2B and 2C.

19           MR. MARCHESE:  And will that include the

20   GigaTribe chats with the agent as well?

21           THE COURT:  I think that's what's represented on

22   the screenshot is the chat; is that right?

23           MS. ROOHANI:  Yes, there's a single screenshot

24   of a chat.  There's not multiple screenshots, it's one

25   screenshot that has a listing of numerous chats on it on one

1    screenshot.

2              Your Honor, I'd like to make clear that the

3    session, because it's a video, we're doing the screenshots to

4    assist the Court at the time of trial.  So would your Honor

5    like for us to produce just the chat?

6              Because there's numerous pages involved

7    because -- additional pages include the files that were

8    downloaded, the process of downloading the files, the IP

9    addresses, additional things like that so --

10             THE COURT:  Well, I think what the defense is

11   asking for is the actual two screenshots that you're going to

12   be asking to admit into evidence, 2B and 2C, and then, if they

13   want to go back and look at the video again to see that chat

14   in context, then you're saying that video has been available

15   to them all along, and whenever they want to look at that they

16   can.

17             MS. ROOHANI:  Yes.

18             MR. MARCHESE:  It's just very difficult --

19   there's 37 devices that were seized so it's almost like a

20   needle in a haystack when we send Mr. Smith down there to --

21             THE COURT:  I understand.  You want to see the

22   needle and then you want to be able to go back and look at the

23   haystack and see where that needle was in that haystack.

24   Absolutely, you have the right to have that.

25             And that is the order, the government will

 1   produce both screenshots 2B and 2C by 5:00 p.m. tomorrow

 2   Tuesday.  What is that?  November 8th.

 3                  All right.  Anything else?

 4                  MR. MARCHESE:  And then there are also some jail

 5   calls which the government intends to introduce at trial.  I

 6   believe we have all the jail calls, we just need dates on them

 7   because there's -- there was just another batch of discovery

 8   dropped off I think Friday, so it's getting somewhat

 9   voluminous in reference to the number of jail calls, so we

10   just need to know which ones they are.

11                  THE COURT:  And so have they been indicated on

12   the exhibit list already?

13                  MR. MARCHESE:  Just generally speaking jail call

14   is the way it's written out.

15                  THE COURT:  Okay.  Which exhibit numbers are

16   those?

17                  MR. MARCHESE:  25A through 25 -- 27A.

18                  THE COURT:  All right.  So, Ms. Roohani, 25A

19   through 27A, those are just audio recordings, or do we have

20   transcripts too?

21                  MS. ROOHANI:  Your Honor, we have 20 -- I'm

22   sorry, could you ask that question again?

23                  THE COURT:  Yes.  So 25A through 27A, are those

24   all audio files or are they audio files and transcripts?

25                  MS. ROOHANI:  Right.  So the calls, they have

1    been provided with all of the calls.  We have selected -- of

2    all of the calls we have only translated 12 of the voluminous

3    number of calls.

4                   We produced all those translations to the

5    defense.  Of those 12 translations we intend to use three of

6    the 12.

7                   So 25A is the recording, and then 25B would be

8    the translation of that recording.  Same for 26A would be the

9    actual recording.  We have to produce it because it has to be

10   translated, or we have to introduce it because it has to be

11   translated so --

12                  THE COURT:  When you say translated, you mean

13   from German?

14                  MS. ROOHANI:  From German into English.

15                  THE COURT:  Okay.  All right.  So --

16                  MS. ROOHANI:  There's only -- they've been

17   produced -- we have produced all of the defendant's jail

18   calls, which there are many, hundreds of jail calls in German.

19   Of those hundreds of calls only 12 of those have been

20   translated for the government so we are really only in

21   possession of 12 of the translated jail calls, and that's

22   written translations.  All those translations have been

23   produced.

24                  THE COURT:  The written have been produced but

25   not the audio or all the audio?

1              MS. ROOHANI:  All of the audio.  More audio than

2    written has been produced.

3              THE COURT:  All right.  Okay.  So then what the

4    defense is asking for is the English translation of the three

5    calls that are 25A, 26A and 27A; is that right?

6              MR. MARCHESE:  I just need the dates.

7              THE COURT:  You just want the dates.  So he just

8    wants what dates these calls are.

9              MR. MARCHESE:  Yeah.

10             MS. ROOHANI:  Your Honor, the problem with the

11   way that the translations are done is that it's not a date

12   because of the way that Henderson produces calls, so it's a

13   file number, and so if they would like the file number, it's

14   one file number, but I'm happy to produce that to them as

15   well.  I can do that by five o'clock tomorrow.

16             THE COURT:  Does the file number indicate the

17   date?  Is it like the Metro event numbers where you can kind

18   of extrapolate what the date is from it?

19             MS. ROOHANI:  The file number doesn't indicate

20   the date, but there's an index that's produced by Henderson

21   when they produce jail calls to the government, and that index

22   would indicate the date that that call is filed on.

23             THE COURT:  Okay.  And so does the defense have

24   that index so they can match the file, the file to the date?

25             MS. ROOHANI:  It was produced at the same time

```
 1    that the original jail calls, the audio of the jail calls was

 2    produced so they should absolutely have it.

 3                    THE COURT:  Okay.  So if you'll please produce

 4    the file -- what did you call it, the file number?

 5                    MS. ROOHANI:  It's a -- it's a --

 6                    THE COURT:  The identifier, the Henderson

 7    identifier.

 8                    MS. ROOHANI:  Identifier.

 9                    THE COURT:  For those three calls to the defense

10    so they can look it up on the index and verify that they've

11    got the right date and time.

12                    Could do you that by 5:00 p.m. Tuesday as well?

13                    MS. ROOHANI:  Oh, absolutely, yes.

14                    THE COURT:  Okay.  That will be the order as

15    well, that the identifying file number for the three calls

16    represented in proposed Exhibits 25A be -- I'm sorry, 25A

17    through 27A will be provided to the defense by Tuesday

18    November 8, 5:00 p.m.

19                    MR. MARCHESE:  And, I'm sorry, just one more

20    issue.

21                    THE COURT:  No, that's fine.  That's why we're

22    here.

23                    MR. MARCHESE:  There's a Bank of America credit

24    card statement which is Exhibit Number 24.  We just need to

25    know which month that is and the account that's for.
```

```
 1                   THE COURT:  All right.  Ms. Roohani, number 24
 2   from Bank of America.
 3                   MS. ROOHANI:  I can also indicate it's in their
 4   possession.  I can narrow it down for them and tell them which
 5   specific one our exhibit is.
 6                   Your Honor, if I can make one point, we've asked
 7   the defense on numerous occasions to identify for us specific
 8   things, and at this point we're agreeing to do that so we
 9   would ask that they also be required to do the same things
10   that we're doing.
11                   THE COURT:  Well, of course, that's what the
12   scope of discovery is.
13                   But let's go back to Exhibit 24.  I don't
14   understand, what are you asking for, for the Bank of America
15   record?
16                   MR. MARCHESE:  We have a rather large amount of
17   bank statements, we just want to know which one they're using.
18                   MS. ROOHANI:  I can do that by five o'clock
19   tomorrow as well, your Honor.
20                   THE COURT:  All right.  So you're saying that
21   the list doesn't identify which one or is it all of them?
22                   MR. MARCHESE:  It's just generic, it just says
23   Bank of America credit card statement, so we don't --
24                   THE COURT:  Okay.  So is the government going to
25   use all of them or is it a specific --
```

1            MS. ROOHANI:  There is a specific one, and I
2     will identify which one it is and send it to them.
3            THE COURT:  Okay.  And then what else is it from
4     the defense, Ms. Roohani, that you would like to have more
5     specificity about on their exhibit list?
6            MS. ROOHANI:  Your Honor, it's every one of
7     their exhibits doesn't indicate what device it came from, and,
8     as Mr. Marchese has indicated, there's 37 devices.
9            There are certain devices that the government is
10    focusing on which have the child pornography on, and other
11    devices that don't have child pornography obviously will not
12    be brought into the government's case in chief, but if they
13    are intending to being brought into the defense's case in
14    chief, they should also be identified.
15            Now, I don't need to know specifically what is
16    the file number, but I'd like to know what device it's from so
17    they can at least go back and determine whether that's
18    relevant in any particular way so we can at least formulate
19    what our objection is going to be to that.
20            In terms of -- so, for example, 5001 and 5002,
21    which we've already indicated, I'll talk about other ones,
22    5003 to 5016, they say photos.  We asked, "Are these the
23    search warrant photos that we provided?  If not, we need
24    copies."  Our response is, "It's in your discovery."
25            So asking us to also go through the haystack is

1    the same problem that they have, and so if we are being

2    cooperative and producing specific identifiers, then I feel

3    that the defense should also be required to do the same.

4              Same for 5017 to 5019, the diagrams, we asked

5    are these the diagrams of the house that we provided in

6    discovery, if not we need copies.

7              5020 to 5026, photos, are these the search

8    warrant photos that we provided, if not, we need copies.

9              5027 and 5028 we've already discussed.

10             Same for 5029 to 5032, photos, are these the

11   search warrant photos that we provided.

12             5033A and B, diagram, again, are these diagrams

13   that we provided in discovery.

14             The show schedule is fine, GigaTribe printouts,

15   5035A through H, are these the items we provided in discovery.

16   If so, from which device.  If not, we need copies.

17             For virtually every single one of their listed

18   exhibits we've asked the question, and we haven't gotten an

19   answer, and so we are relying on their representations that it

20   comes from our discovery, but we have no idea where from our

21   discovery it comes.

22             THE COURT:  All right.  And you're referring to

23   Document 92 on the docket, their exhibit list?

24             MS. ROOHANI:  Docket 92, correct.

25             And I asked for this information on -- well,

1    this is the third time, we asked for this information was on

2    October 31st.

3              We also asked about Skype chats 5038.  5039

4    they've provided to us.  5040 we asked about the Grindr chat.

5    We have not gotten a copy of that either, or at least no

6    indication of where it potentially came from.

7              MR. MARCHESE:  It all came from the discovery,

8    your Honor.

9              But I will make myself available.  If they would

10   like to come down to my office, I will get all the exhibits, I

11   will put them in my conference room, they are welcome to look

12   at them any time.  They can make an appointment, our office is

13   one block south of here, so that way there will be no

14   confusion whatsoever for that.

15             THE COURT:  Well, I'm looking at the

16   defendant's -- I'm sorry, the government's exhibit list which

17   is number -- what is that? -- 86 on the docket.  They identify

18   the devices, for example, 1B7, My Passport external HD, or

19   1B13, Apple MacBook, or 1B16, MacBook Pro.

20             So are these the terms that are used by the

21   individuals who seized -- is this maybe like on the search

22   warrant return?  Where are these numbers coming from, the

23   1B16, 1B13 --

24             MS. ROOHANI:  Your Honor, when the devices were

25   collected and then they were imaged, they were assigned a

1    number.  So those are the numbers that the government and the

2    defense also knows that those numbers are referred to.  They

3    come from the IDF reports and also the NetClean reports are

4    all associated with a number.  So 1B1 is the same device on

5    all of the reports.

6                    THE COURT:  Okay.  Could the defense then maybe

7    help out and -- because I looked at your exhibit list number

8    92, and it doesn't identify a device.  So could you identify

9    it just using that identifier, the 1B13, or 1B16, 1B21, narrow

10   it down a little bit?

11                   MR. MARCHESE:  No.  The greater majority, I

12   would say 95 percent of the photos that we intend upon using

13   at trial, with the exception of one photo which was already

14   given to them, were in the initial discovery match.

15                   So we just simply took the photos that they gave

16   us that I would assume would be for some representative of the

17   FBI or law enforcement, and we just printed them up.  That's

18   where the majority is from.  I think there's one or two

19   pictures from one of the devices.

20                   Offhand, I -- like I said, I think it was from

21   1B5, but I could be wrong.  I'd have to go back and check.  I

22   just simply printed it off, but it was definitely, positively

23   from their device.

24                   THE COURT:  All right.  So what you're telling

25   me, when the photographs were disclosed to you by the

 1     government, they didn't indicate in anyway which computer or

 2     which device those photos came from so you can't identify it

 3     back?

 4               MR. MARCHESE:  The majority of them are just

 5     from the search so they weren't from the devices.  So I think

 6     I took one photo or two photos off of the devices.

 7               So it's not really -- it's not really the

 8     situation here.  They have the great majority of the photos.

 9     But, like I said, just come to the office, I'll make time,

10     just give me a date and time, I'll lay it all out.

11               If they have any questions -- I mean, I feel

12     like we're being accused of hiding the ball here, and I'm

13     trying to be accommodating.

14               THE COURT:  Well, I haven't seen this so I can't

15     just, by looking at the exhibit, know how clear or how vague

16     the descriptions are.

17               So, for example, for exhibit number 5015 where

18     it says photo of MacBook Air, if there's only one MacBook Air

19     that was seized, then that's pretty clear what you're talking

20     about.  If there's 12 MacBook Airs seized, I could see why the

21     government would be wondering, well, which one is it referring

22     to.

23               But you're telling me that these photographs

24     come from the government, and the photograph didn't identify

25     which MacBook Air it was.  You can just tell from the

1    photograph it is a MacBook Air.

2             MR. MARCHESE:  Just simply taking a picture of

3    something --

4             THE COURT:  All right.  So you can't really

5    prove that -- you're not withholding any information, you

6    don't have the information to give, but you're willing to at

7    least show the government which photos it is so they can --

8             MR. MARCHESE:  Absolutely.

9             THE COURT:  -- see where in their stack of

10   photos it came from.

11            Okay.  So it sounds like this is unfortunately a

12   problem from the government's inadvertent making of not --

13   since the government didn't identify for the defense where the

14   photos came from, then the defense can't identify to the

15   government where those photos came from other than that they

16   were provided by the government.

17            MS. ROOHANI:  Your Honor, the search warrant

18   photos were produced in the initial batch of discovery.  There

19   are over 200 --

20            THE COURT:  Were they numbered?  I mean, this is

21   what the defense is saying, is they had no way of telling you

22   which photo it is.  If there's four different views of the

23   same MacBook Air, they can't tell you which one it is or which

24   MacBook Air it is.

25            MS. ROOHANI:  When the photos were originally

—30—

1    produced, they were produced on a disk.  Obviously when

2    they're produced on a disk, each file has a name, and so

3    they're not Bates stamped, but each file that they might be

4    potentially using has a number associated with it.

5              And I -- I'm not worried about the search

6    warrant photos, your Honor, because obviously we have the

7    search warrant photos, but we can't get any clear indication

8    of are these actually search warrant photos or are they photos

9    from a device, because there's no clarity in their exhibit

10   list.  It says photo, it doesn't say search warrant photo as

11   opposed to a device photo, and then if -- so if a device

12   photo, which device.

13             And so now I'm concerned because they have --

14   and also, your Honor, for the search warrant photos we

15   produced a photo log specifically indicating where the device

16   was found, where the photo was taken, who it was taken by.  So

17   in terms of that it would be easy.

18             Again, your Honor, I'm not worried about the

19   search warrant photos, we have all the search warrant photos,

20   we can look through them.

21             The bigger issue is when the defense has asked

22   us, we have Hot Mail, we have five Hot Mail e-mails listed on

23   there, they asked us can you please identify which Hot Mail

24   e-mails, so we responded and said this date, this time, this

25   sender, this is the e-mail.

1          And so we have been as forthcoming as we can

2  possibly be in identifying what things are on our exhibit

3  list, and we just can't get a clear answer.

4          And so if the answer is it's in your discovery,

5  go look in your discovery, that's manifestly unfair that we

6  have to go and look through the same amount of discovery that

7  they have and we have to identify that they don't have the

8  same responsibility to identify for us.

9          I'm not worried about the search warrant photos,

10  it's the other photos from the other devices that they've just

11  indicated that they intend to use.  Which device did it come

12  from.  There's 37 -- 38 devices that were collected.

13          THE COURT:  All right.  Well, they tell me

14  that -- the photographs, you can come look at them and --

15          MR. MARCHESE:  I mean, they asked for it, and

16  it's in the discovery.  There was never a follow-up.  I just

17  think this is mushrooming into something that is not meant to

18  be.

19          Any time, I've said it clearly, they can come by

20  my office, make an appointment, we are not intending to hide

21  the ball.  Any time they want, if they want to meet on the

22  weekend, if they want to meet on Friday, on Veteran's Day, I

23  will make myself available, either myself or Mr. Durham will

24  make the time, so that way they feel that there's no manifest

25  injustice or anything like that.

1          THE COURT:  All right.

2          MS. CARTIER-GIROUX:  Your Honor, just to

3    simplify, if there aren't very many photos that were moved

4    from devices, could we just be advised which device the photo

5    was taken off of?  That's all we're asking for at this point

6    in time.

7          If it's a search warrant photo, we're not

8    concerned about it, I can look at the photo log and I can

9    identify it while we're sitting here in trial.

10          If it's from 1B1, and it's a photo, and I can't

11   verify that that's on the device, then I'm going to need time

12   to look through that device again.  There are millions of

13   photos on these devices.  That's why we've limited what we're

14   going to offer.

15          So just saying it's in the discovery, I don't

16   know what device it came off of, makes it near impossible --

17   even if I go look at the photo, it doesn't tell me where it's

18   coming from.

19          So if there really is a limited number, and they

20   removed it from a specific device in order to enter it into

21   evidence, they would have to know what that device came

22   from -- what device that photo came from.

23          All I'm asking that is they identify the photos

24   from which device that are not search warrant photos, that's

25   all.

1              THE COURT:  All right.  So, Mr. Marchese, can

2    you do that by either 5:00 p.m. today or tomorrow?

3              MR. MARCHESE:  I will try.  I cannot guarantee

4    it.  I disagree with their representation of the law, that if

5    we can't say which device it came from, then it's not

6    admissible into evidence.

7              I mean, we can lay a foundation that it's a true

8    and accurate depiction of Frank and Kevin.  It's not that

9    difficult.  But I will do my best.  I'm just not a hundred

10   percent sure which devices it came off of.

11              Regardless I'll be happy to give them copies of

12   the photos.  I don't see the relevance of them bringing it off

13   of -- saying which device it was brought off of, but,

14   regardless, I'll do my best and see.

15              THE COURT:  All right.  Well, the Court agrees

16   that the foundation that needs to be laid for the exhibit

17   depends on what the exhibit is being used for.

18              If it's just being used to show what the two

19   individuals look like, then you wouldn't need to know when the

20   photo was taken or where it was found or anything like that.

21              If it's being offered for the purpose of showing

22   what is on the computer at a certain date and time, then

23   obviously we're going to need to have a foundation of what

24   date, what time this photo was taken.

25              So we'll go ahead and just ask you all to please

```
 1    cooperate as much as you can.  I know there's a very short
 2    amount of time left before trial, but, if you can get together
 3    and finalize the rest of these details.  If not, we'll have to
 4    take some breaks during trial and just kind of delay
 5    everything.
 6                  MR. DURHAM:  Your Honor, if I can also -- just
 7    to clarify.
 8                  THE COURT:  Yes, Mr. Durham.
 9                  MR. DURHAM:  Exhibit 2H, which is the disk of
10    the undercover video which was GigaTribe chat, that disk is
11    available for us to view; is that correct?
12                  MS. ROOHANI:  Absolutely.
13                  MR. DURHAM:  And is that disk on its own or is
14    that part of a larger batch of discovery?
15                  MS. ROOHANI:  It is.  It's not from a device at
16    all.  It is a separate CD, DVD, that has video from the
17    undercover and the screen of the undercover as he's conducting
18    the downloads.
19                  MR. DURHAM:  Okay.
20                  THE COURT:  So it's a screenshot of the
21    undercover's screen.
22                  MS. ROOHANI:  Yes.
23                  THE COURT:  As he's chatting with that other
24    person.
25                  MS. ROOHANI:  Yes.
```

 1              THE COURT:  Okay.  And that's the one that's

 2   described as GigaTribe chats with undercover TFO.

 3              MS. ROOHANI:  Yes, the CD video, yes, 2A I

 4   believe it is.

 5              MR. DURHAM:  Okay.  But the screenshots have not

 6   been created yet, but we can go look at the video.

 7              MS. ROOHANI:  Absolutely.

 8              THE COURT:  And that's the one that we were

 9   talking about earlier, 2B and 2C?

10              MS. ROOHANI:  Yes.

11              MR. DURHAM:  And the video is 2A.

12              MS. ROOHANI:  Yes.

13              THE COURT:  All right.  Okay.  All right.

14   Anything else?

15              MS. ROOHANI:  Not from the government, your

16   Honor.

17              THE COURT:  All right.  We'll see you at 8:30 in

18   the morning on Monday -- I lost my calendar -- Monday,

19   November 14th.

20                            -o0o-

21

22         I certify that the foregoing is a correct
           transcript from the digital recording of proceedings
23         in the above-entitled matter.

24         /s/Margaret E. Griener        5/3/2019
            Margaret E. Griener, CCR #3, FCRR
25          Official Reporter