```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
            BEFORE THE HONORABLE CARL W. HOFFMAN, MAGISTRATE JUDGE
                              ---o0o---


   UNITED STATES OF AMERICA,      :
                                  :
              Plaintiff,          : No. 2:16-cr-100-GMN-CWH
                                  :
         -vs-                     : June 1, 2017
                                  :
   JAN ROUVEN FUECHTENER,         : Las Vegas, Nevada
                                  :
              Defendant.          :
   _____:



                    TRANSCRIPT OF MOTION HEARING



   APPEARANCES:

   FOR THE PLAINTIFF:         LISA CARTIER-GIROUX, MARK WOOLF and
                              CRISTINA SILVA
                              Assistant United States Attorneys
                              Las Vegas, Nevada


   FOR THE DEFENDANT:         KAREN CONNOLLY
                              Attorney at Law
                              Las Vegas, Nevada



   FOR INTERESTED PARTY:      IVETTE MANINGO
                              Attorney at Law
                              Las Vegas, Nevada



   Transcribed by:            Margaret E. Griener, CCR #3, FCRR
                              Official Reporter
                              400 South Virginia Street
                              Reno, Nevada 89501
```

```
 1          LAS VEGAS, NEVADA, THURSDAY, JUNE 1, 2017, 10:45 A.M.
 2                            ---o0o---
 3
 4              THE CLERK:  This is the time set for United
 5   States of America versus Jan Rouven Fuechtener, case number
 6   2:16-cr-100-GMN-CWH.
 7              Counsel, please enter your appearances.
 8              MR. WOOLF:  Good morning, your Honor.  Mark
 9   Woolf, Lisa Cartier-Giroux, and Cristina Silva for the
10   government.
11              THE COURT:  Good morning, counsel.
12              MS. CONNOLLY:  Karen Connolly appearing on
13   behalf of Jan Rouven Fuechtener.
14              MS. MANINGO:  Good morning, your Honor.  Ivette
15   Maningo appearing on behalf of Frank Alfter.
16              THE COURT:  Good morning.
17              So we're here on the government's emergency
18   motion to really change the ask on the -- on the request to
19   hold funds from the escrow account at the title company, and
20   so I had asked for some additional information, and I received
21   a brief from the government that provided that additional
22   information.
23              I've also received a response from Ms. Connolly,
24   and also Ms. Maningo has weighed in on behalf of Frank Alfter
25   who is an interested party in this case.
```

1                I think that it's appropriate that he be in this
2   case, and I would analogize your entry into this case into
3   Rule 41(g) which would allow a person to challenge the seizure
4   of property of someone else.
5                That's not exactly what happened because we
6   didn't have a search warrant that caused it, but it looks the
7   same.  So I think you're appropriately in the case on the very
8   important question of who owns the property.
9                MS. MANINGO:  Thank you, your Honor, and thank
10  you for letting me appear on his behalf today.
11               THE COURT:  On very short notice I understand,
12  too.
13               MS. MANINGO:  It was.
14               THE COURT:  And I appreciated the document that
15  you provided because it goes to one of the important questions
16  in this case is who owns the money.
17               MS. MANINGO:  That's right.
18               THE COURT:  So we're going to get to that.
19               Let me tell you my initial reaction is that I'm
20  persuaded that unless the guilty plea were withdrawn, that the
21  government with its new information has established a basis to
22  hold restitution funds for all 92 victims of the pornography
23  that are set forth in the -- in their papers, and the
24  government's pleading in this matter is consistent with the
25  presentencing report which indicates that there are 92

1  victims.
2          I understand that all of those victims have not
3  been heard from, but I also know that they have the
4  opportunity to be heard from up until the time of sentencing
5  at least, and so I -- because of that I think that you have
6  established good cause to seize the number of 460,000 which is
7  5,000 times 92 victims.
8          I also see that under the JVTA for each count
9  there is a $5,000 fine, so that adds 15,000, so now we're at
10 four seventy-five.  There's a hundred dollars per count
11 assessment, that's another $300.
12         And then -- so that's the first part that's new.
13 I'm persuaded that's appropriate to make that judgment.
14         The second part is now the government has
15 signalled its intent to argue for fines where it did not argue
16 for fines before.
17         The PSR indicates that the defendant is -- was
18 unable to pay fines based on what they knew at the time, based
19 on what Probation discovered in their investigation, and so
20 there was no recommendation for fines.
21         New information arises now so that the -- there
22 is a possibility that money is available for fines, and so it
23 appears the government -- well, the government has said that
24 it is going to be seeking fines.
25         It's not clear to me whether the government

```
 1   intends to seek the $250,000 which is the statutory max on
 2   each fine, which would be three times seven fifty, or is the
 3   government going to go along with the guidelines in the PSR
 4   for a total of 500, so I -- and I'd like an answer on that.
 5              Are you going for 500, or are you going for
 6   seven fifty, and why wouldn't you follow the guidelines?
 7              MS. SILVA:  Your Honor, we are going to follow
 8   the recommendation of the guidelines of being 500,000.
 9              And so -- and so the Court is clear, we did
10   reach out to Probation in light of the new information
11   regarding the sale of the house and the farms, and they're
12   actually in the process revising the PSR.
13              So we will be recommending the fine of $500,000
14   unless somehow the PSR changes, and we don't see that
15   happening, in regards to the fine.
16              THE COURT:  At least for our purposes today the
17   government then has a good faith basis to ask that that
18   $500,000 be held -- held up.
19              MS. SILVA:  Yes, your Honor.
20              THE COURT:  So the math that I have, then, it
21   looks to me, then, that the total ask from the government is
22   now nine seventy-five three hundred.
23              I had already ordered 80,300.  So it looks to me
24   like an additional order of eight ninety-five would be
25   appropriate under the circumstances, using the same
```

1  justification as I entered the previous order but with the new
2  information that the government has been provided.  So that's
3  my intent now is to lean in that direction.
4              What remains is the question of who owns the
5  money, and is there that much money there, and I have received
6  new information from Ms. Maningo about maybe the total is not
7  as much as we thought it was, and there are some disputes as
8  to who owns what, is it separate property, is it community
9  property, it looks like a property one issue in law school,
10 and we're going to have to sort that out.
11             So in addition to entering an order for the
12 eight ninety-five, I think that I also need to set up a
13 hearing so that the parties can be heard on this question to
14 find out what's there, and I can do that at whatever speed you
15 want me to, but that would be my intent.
16             So that's my -- so that's my initial reaction to
17 this case.
18             Let me hear first from the government and see if
19 you have any changes.
20             MR. WOOLF:  Your Honor, certainly we're okay
21 with the indication of the revised amount that would be
22 required to be deposited in the sentencing.
23             I wanted to bring to the Court's attention, I
24 don't know whether the Court has identified this case, but a
25 recent case from the Ninth Circuit issued in March of this

1  year, *United States v Harris*, 854 F.3d 1053, which is not
2  exactly an apples-to-apples comparison, but it discusses the
3  availability of trust, trust proceeds, and trust property to
4  satisfy restitution.
5           And how it essentially comes out is, one,
6  anti-alienation clauses or spendthrift clauses do not affect
7  the federal government's ability to go after trust property
8  even if they might exist within the trust, and that's pursuant
9  to the federal law which governs the collection of
10 restitution.
11          When the Court is looking at what the beneficial
12 interest might be or what the particular individual's interest
13 might be, it looks to the trust documents to determine what
14 that is, what the property interest is.
15          The trust documents that we've been provided
16 today I think paint a very clear picture that the defendant
17 has access and a present property interest in the entirety of
18 the funds and proceeds from the sale.  He is identified as
19 both a grantor and trustee and a beneficiary.
20          It indicates that the property is owned outright
21 by the grantors.
22          It further indicates under Article 2 that the
23 trustee would be the defendant in this case, "The trustee
24 has" -- and I'm quoting,
25          "The Trustee shall have full and absolute

1     discretion to act with the trust property and to make
2     or not make disbursements to beneficiaries."
3            So he has full and absolute discretion now as a
4  trustee of the trust to make dis -- he has a property interest
5  in the proceeds.
6            It goes on to say,
7     "There is no requirement that any consent be
8     obtained from any person, entity, or court prior to
9     making a final decision as to any matter relating to
10    trust property."
11           The defendant has a full and present property
12 interest in the proceeds of the sale, and I think that case is
13 helpful for understanding that, and I think the trust
14 documents -- I'm appreciative to Ms. Maningo for providing
15 those, I think those provide a real context to the
16 government's position here in terms of the extent of the
17 property interest of the defendant.
18           And, you know, other than making that
19 representation, in terms of the timing of a hearing, the
20 government notes that sentencing is scheduled for 30 days,
21 it's 30 days out, so any hearing would have to be, you know,
22 in a shorter time frame obviously than 30 days so that the
23 Court could figure out what it wanted to do if it wanted to
24 make any adjustments to its order.
25           THE COURT:  You agree that it would be

1   improvident to have the sentencing without knowing the
2   ownership of the property.  So it seems to me that if we can't
3   get something on in 30 days, which is -- I don't know how much
4   discovery you need to know, to conduct, I mean, do you know
5   whether or not the trust is still valid, has it been revoked,
6   which it is revocable, has it been amended, those sorts of
7   things, you're going to have to sort out some questions.
8              MR. WOOLF:  I don't know the answer to those
9   questions.  I would assume that the answer to whether it's
10  been revoked is no.  I would assume that's the answer.  I'm
11  certain I can speak with Ms. Maningo, and we can come to some
12  sort of understanding on the facts regarding the trust as it
13  currently stands.
14             And, again, any effort -- and the government's
15  position would remain unchanged to the extent that there's
16  been any effort to revoke, disclaim, or otherwise dissipate an
17  interest in the trust since the time of the target and the
18  arrest, we would challenge as a fraudulent conveyance in an
19  effort to avoid payment of restitution, and I think that the
20  case law and the statutes allow us to do that, and I'm not
21  suggesting that would happen here.
22             So, on the other hand, if the funds are set
23  aside now and the sentencing occurs, there's certainly nothing
24  wrong with the sentencing going forward and having the clerk
25  of the court still hold the funds and not disburse the funds

1    until such time as the Court can hold the hearing on the
2    property, on the extent of the property interest in the funds,
3    and that may be a way to allow for additional time if
4    necessary.
5             But that I believe the sentencing could go
6    forward and the funds could stay with the clerk of the court
7    and be held until such time as the Court has the opportunity
8    to hear argument, briefing, and presentation on the extent of
9    the property interest.
10            THE COURT:  So I guess I'll leave in Judge
11   Navarro's hands the question of whether or not she wants to
12   continue sentencing while this matter -- the property
13   interests are resolved or not, and I would do that in the form
14   of an R and R anyway because I'm going to do an R and R that
15   gets this thing going.
16            MS. CONNOLLY:  And, Judge, just so everybody is
17   aware, this may change our timing, but it is my intention to
18   file a motion to withdraw, and I intend to get that filed
19   within the next two weeks.
20            So I'll have no problem continuing sentencing in
21   light of the fact that I have a motion to withdraw.  Of
22   course, Ms. Maningo's office is obviously going to want that
23   money released on behalf of her client.
24            So I don't know if that helps in scheduling, but
25   that's my intention.

1    THE COURT: I think it does. It just points out
2 that once the money is frozen, then we can breathe a little
3 bit and make sure that the right decision is made as far as
4 what Mr. Fuechtener owns and what he doesn't own.
5    MS. CONNOLLY: And I can represent as an officer
6 of the court based upon the information that I have that it's
7 very highly likely that we'll have an evidentiary hearing on
8 my motion to withdraw so --
9    THE COURT: Understand. Okay. I understand.
10   All right. Anything further from you,
11 Mr. Woolf?
12   MR. WOOLF: You know, other than -- you know, I
13 want to -- the answer to the question of the status of the
14 sale, Ms. Maningo did provide that as the government was not
15 aware that the sale had closed, but it looks like the sale has
16 closed and the funds, the proceeds that are currently due to
17 the trust, would be $1.318 million, almost $1.319 million, and
18 I assume that's after payment of excise taxes or whatever
19 other, you know, real estate fees that there might be.
20   And for the record, just for the sake of
21 clarity, the government wants to be clear that at no time has
22 it ever contacted First American Title Company and insisted
23 that they withhold any funds; at no time.
24   The government conveyed the Court's order.
25 Ms. Cartier-Giroux and I both had a conversation with general

1  counsel where we reiterated on numerous occasions that we were
2  not in the position to demand any sort of withholding other
3  than what was already ordered by the Court, and I just want
4  the record to be clear as to that fact.
5              Other than -- unless your Honor has questions
6  for me, I have nothing further.
7              THE COURT:  You have answered my questions,
8  thank you.
9              Ms. Maningo?
10             MS. MANINGO:  Your Honor, as Mr. Woolf just
11 indicated, the property actually has sold, and obviously in
12 ordinary course a check should have been written to the trust
13 for those proceeds immediately when that happened, and we were
14 under the impression -- Mr. Alfter was under the impression
15 that that was going to happen, and, of course, that's why I'm
16 here.
17             I made the representations of the motion with
18 regards to the government and American Title based on what
19 I've been told of the very frequent contact between the
20 government and the title company.  I don't know the details of
21 that, it's just a general statement.
22             The government has said that the defendant has a
23 full interest in this property via the trust.  All those
24 statements that Mr. Woolf made also apply to my client, your
25 Honor, as he is a grantor as well and a trustee.

1                    And so it's our position, and I would say very
2     clearly on the record, that that money should have been
3     already released to the trust because the trust owns that
4     property, it should have already been released, and it's our
5     position that it should be released.
6                    If your Honor is inclined not to do that and
7     retain the proceeds, I would, of course, request time to
8     research this issue at length which I only had approximately
9     24 hours to do that.
10                   But I would request that I have at least two
11    weeks to really set forth points and authorities as to why
12    Mr. Alfter should be entitled to the proceeds.  Again, he is
13    not charged in this case, there's no wrongdoing on his part.
14    He's an interest holder that basically has had to interject
15    himself and expend attorney's fees in an emergency fashion in
16    order to just get the money from his property.  And that's how
17    I stand before you today.
18                   So what I would request is that the money be
19    released immediately.  In the alternative, I would request an
20    opportunity to fully brief the matter.
21                   THE COURT:  How much time would you like to have
22    to prepare for an evidentiary hearing, and my same question to
23    the government.
24                   It seems to me -- I'm not so concerned about the
25    sentencing date because I think that can be pushed off,

1 frankly, and sounds like maybe it will have to be, I don't
2 know.
3 But if you set aside the requirement for the
4 sentencing which is on June 30th, how much time would you like
5 to prepare in order to have a meaningful evidentiary hearing
6 on this important question.
7 MS. MANINGO: My initial thought was two weeks
8 in order to prepare points and authorities. So I would say --
9 I would like some time after that to actually prepare for the
10 hearing, so I would say four weeks.
11 And it's correct, Ms. Connolly has pointed out
12 that they would need time for a response. So if I submit my
13 points and authorities, or I don't know if it's an option to
14 go -- both of us submit at the same time, but either way, if
15 I'm the one to submit the points and authorities first, they
16 would have an opportunity to reply, and I would like to do the
17 same based on their response.
18 So I guess we're getting out there quite a bit
19 now, but I would at least like to have two weeks in order to
20 do my initial points and authorities and then two weeks to
21 prepare for evidentiary hearing.
22 MR. WOOLF: Your Honor, we're okay with the
23 simultaneous submission. I don't think there's a -- we could
24 respond to those, and Ms. Maningo could respond to our
25 submission. That doesn't -- I mean, that's fine with the

1  government.

2           I would note, you know, the way the trust is set
3  up, it is tantamount, it may not be defined as it, but it is
4  absolutely tantamount to community property.

5           Both trustees, both grantors, have full access
6  to the property and to the proceeds, and I think the Ninth
7  Circuit law is very clear on the question of community
8  property.

9           I also think the Ninth Circuit law is now very
10 clear on the extent of beneficial -- of beneficial interest or
11 property interest that's held in a trust is available for the
12 government to satisfy criminal monetary penalties.

13          THE COURT:  Well, I'm not -- I'm not
14 disagreeing, I don't think, with you.

15          I mean, my intent is to hold -- and you'll need
16 to check my math here, but I think my intent is to hold
17 $895,000 in addition to the $80,300 that I previously ordered.
18 I think that that's the most that the government has
19 justified.

20          So whether or not the excess of that amount
21 belongs to -- who it belongs to doesn't matter because that
22 money is going to go in -- is not going to be withheld.

23          MR. WOOLF:  We agree, your Honor.

24          THE COURT:  Okay.  So --

25          MR. WOOLF:  975,300 is the math that I think you

1  had previously indicated.  The release of proceeds beyond that

2  amount, the government has no opposition to that.

3              THE COURT:  All right.

4              MS. MANINGO:  And I do want to address an issue

5  because your Honor has made this similar order, of course a

6  different number, previously, confirmed its order after that,

7  and still this was in dispute in the light -- I mean, in the

8  eyes of the title company, and they would not release the

9  money.

10             So I want to address the fact that the rest of

11 the money should absolutely be released at this point.

12             Again, this is the third order you've made, and

13 I don't want to go back and the title company to come to me

14 and say, "Well, it's still in dispute because you have more

15 briefing to do."

16             My position would be at this point I think it's

17 an equitable -- again, my client is an interest holder, and he

18 should -- at least the trust should receive the remainder of

19 the money at this point.

20             THE COURT:  Okay.  And I guess my response is

21 actually we had a similar discussion last week.  The order

22 that I'm going to issue is going to speak for itself.  It's

23 going to say a total of nine seventy-five, which is -- you

24 know, part of it has already been paid, that's what the order.

25             What the title company does with the money after

1 that I don't know. I don't know who else is owed, I don't
2 know any of the other information.
3 So if you're asking me to say to the title
4 company release everything else, I'm not going to do that.
5 What I'm doing is holding what's been justified by the
6 government.
7 MS. MANINGO: Right. And I -- when your Honor
8 says the order speaks for itself, I believe that,
9 unfortunately, that has not been the case.
10 MS. CARTIER-GIROUX: Judge, we're willing to
11 write an e-mail to the title company and cc everybody on it
12 saying that we are not going to seek any money further than
13 what the Court has already set aside. I don't know if that
14 will help, but we're willing to do that.
15 MS. MANINGO: I appreciate it.
16 THE COURT: That's entirely up to you. I'm not
17 issuing an order to that effect.
18 MS. MANINGO: And I appreciate that at this
19 time.
20 THE COURT: Okay. All right. It's possible you
21 all will reach a compromise and we won't have to have an
22 evidentiary hearing, too.
23 MS. CONNOLLY: Judge, I just wanted to make
24 clear, and you indicated in the event that he is successfully
25 able to withdraw his guilty plea, then your order would be

1   null and void, essentially, then the funds would no longer be
2   held.
3              THE COURT:  Well, we'd want to --
4              MS. CONNOLLY:  As you indicated before, he's
5   cloaked with presumption of innocence, and they can't seize
6   his funds when there's no guilty plea or judgment of
7   conviction.
8              THE COURT:  I'm not going to give you that
9   ruling right now because that's not before me, but I notice
10  the -- that the case citings were conspicuous by their absence
11  in supporting the idea that the Court has authority to hold
12  money if the plea is withdrawn.
13             MS. CARTIER-GIROUX:  Your Honor, we did cite the
14  *Luis* case which indicates that we cannot unless we can show
15  that it is proceeds from the crime.
16             THE COURT:  Okay.  So it's not traceable so --
17             MS. CARTIER-GIROUX:  Yeah.
18             THE COURT:  All right.  So let's -- we need to
19  set a date in two weeks for briefs, and we'll have
20  simultaneous briefs, and then we'll set an evidentiary hearing
21  after that.
22             THE CLERK:  And that date is Thursday,
23  June 15th.
24             THE COURT:  Let's set it another two weeks after
25  that.

1                    (Discussion held off the record.)

2              THE COURT:  Okay.  We'll come up with the dates
3    when we write the R and R, that way it will give us some time
4    and give you all some time, and then if the dates don't work
5    for you, of course, let us know and we'll work around that.
6              That's -- this way with the R and R, it may be
7    that Judge Navarro wants to take this out of my hands and
8    conduct her own evidentiary hearing so -- I don't know.  So
9    that could happen.
10             MS. CARTIER-GIROUX:  Again, thank you, your
11   Honor.
12             MS. MANINGO:  Thank you.
13             MR. WOOLF:  Thank you, your Honor.
14             MS. CONNOLLY:  And, Judge, just to let the Court
15   know, I will be out of the state the whole week of July 10th
16   so --
17             THE COURT:  Okay. All right.  Thank you.  But
18   you said you intend to move for withdrawal.
19             MS. CONNOLLY:  Yes, that is my intent at this
20   point in time.  Obviously that's subject to change, and I
21   anticipate -- assuming the government wants to get it on file,
22   in the next two weeks.
23             THE COURT:  And, you know, I'll have a hearing
24   on that question if you make that motion.
25             MS. CONNOLLY:  Thank you.

1              MR. WOOLF:  Procedurally, your Honor, just for

2     clarification, so the Court will issue an order today

3     indicating that nine seventy-five three hundred should be paid

4     over to the clerk of the court.

5              THE COURT:  Yes, and then issue the R and R

6     subsequent to that, yes.

7              MR. WOOLF:  Thank you, your Honor.

8              THE COURT:  Okay.  Thanks very much.

9                              -o0o-

10

11         I certify that the foregoing is a correct
           transcript from the record of proceedings
12         in the above-entitled matter.

13         /s/Margaret E. Griener          5/3/2019
            Margaret E. Griener, CCR #3, FCRR
14          Official Reporter