1          UNITED STATES DISTRICT COURT
                  DISTRICT OF NEVADA
2      BEFORE THE HONORABLE GLORIA M. NAVARRO, DISTRICT JUDGE
                      ---o0o---
3

4    UNITED STATES OF AMERICA,      :
                                    :
5                  Plaintiff,       :  No. 2:16-cr-100-GMN-CWH
                                    :
6           -vs-                    :  October 9, 2018
                                    :
7    JAN ROUVEN FUECHTENER,         :  Las Vegas, Nevada
                                    :
8                  Defendant.       :
     _____:
9

10

11               TRANSCRIPT OF MOTION HEARING

12

13   APPEARANCES:

14   FOR THE PLAINTIFF:       ELHAM ROOHANI
                              Assistant United States Attorney
15                            Las Vegas, Nevada

16

17   FOR THE DEFENDANT:       RICHARD SCHONFELD and
                              ROBERT DeMARCO
18                            Attorneys at Law
                              Las Vegas, Nevada
19

20

21

22

23   Transcribed by:          Margaret E. Griener, CCR #3, FCRR
                              Official Reporter
24                            400 South Virginia Street
                              Reno, Nevada 89501
25

1           LAS VEGAS, NEVADA, TUESDAY, OCTOBER 9, 2018, 2:51 P.M.

2                          ---o0o---

3

4                THE CLERK:  This is the time set for the motion

5     hearing regarding document number 296, the motion for

6     reconsideration of order number 295, in case

7     2:16-cr-100-GMN-CWH, United States of America versus Jan

8     Rouven Fuechtener.

9                Counsel, please make your appearances for the

10    record.

11               MS. ROOHANI:  Good afternoon, your Honor.  Eli

12    Roohani for the United States.

13               THE COURT:  Good afternoon, Ms. Roohani.

14               MR. SCHONFELD:  Good afternoon, your Honor.

15    Richard Schonfeld and Robert DeMarco specially appearing for

16    the defendant who is present in custody.

17               THE COURT:  Good afternoon.  So what is

18    specially appearing?

19               MR. SCHONFELD:  Your Honor, we filed the motion

20    for release of funds for the purpose of retaining our office

21    to represent the defendant as outlined in that motion, but

22    until we actually -- until he has the ability to retain us as

23    counsel, we were not and still are not in a position to make a

24    full general appearance on his behalf.

25               THE COURT:  And is Ms. Connolly present today?

1              MS. ROOHANI:  Your Honor, Ms. Connolly is not

2    present.  I spoke with her yesterday.  She had indicated to me

3    that she, one, was not able to appear today, she had a hearing

4    in family court at 2:15 p.m.

5              She also felt it would not be appropriate for

6    her to appear here in light of the proceedings that have

7    occurred thus far, as well as the fact that this is not her

8    motion, and she has no position on it, and doesn't feel like

9    she can have a position on it.

10             And so it's my understanding that she is not

11   intending to appear today.

12             THE COURT:  And, Mr. Fuechtener, do you want me

13   to waive the appearance of your attorney, Ms. Connolly, or do

14   you want me to continue this for a different date so that

15   Ms. Connolly can be here?  Because I was not aware that she

16   had a conflict.

17             THE DEFENDANT:  It would be okay for me to waive

18   her appearance.

19             THE COURT:  Okay.  All right.

20             Well, so the motion that's made by the law firm

21   of Chesnoff & Schonfeld refers to the Supreme Court case --

22   I'm starting at the bottom of my list of questions instead of

23   at the top -- *Luis v U.S.*, but the question in that case was

24   whether a pretrial restraint of funds was appropriate.

25             We didn't have that here.  Mr. Fuechtener had

1    access to his funds pretrial, and he hired various different

2    attorneys before and during trial.

3                And it was not until after he entered a plea of

4    guilty, and the Court accepted his plea of guilty, that as a

5    result of him agreeing in that plea of guilty to the amount

6    that was going to be forfeited, that the government moved for

7    that amount to be seized in order to preserve it so that it

8    wouldn't be spent or wasted, and the Court did grant that

9    motion.

10                So I'm not sure that the *Luis* case really

11   applies at all to this situation.  It seems to be just the

12   opposite.

13                But the defense also states that it looks like

14   at this point there's only 14 of the -- there was like 90

15   something potential victims that have actually come forward

16   with a formal restitution request.

17                You know, the sentencing statutes provide them

18   up to 60 days after sentencing to come forward,

19   and specifically in these kind of cases, unfortunately what

20   happens is a lot of these victims, they receive letter after

21   letter after letter after letter advising them under the laws

22   because they're required to be notified every time that their

23   images are found by law enforcement, and it takes quite awhile

24   for them to go through these.

25                Some of the victims who appear quite regularly

1   have retained attorneys who have staff that go through those

2   envelopes that they receive multiple a month, and some people

3   just don't.

4           So I don't know who these victims are

5   specifically, and whether they're the kind of person who would

6   only receive one envelope a year or if it's the kind of

7   victim -- I'm thinking of, like, the Vickie and Amys that

8   receive several, and it takes their staff months to go

9   through.

10          And yet this case has been around for quite some

11  time, since 2016, and has received some notoriety because of

12  Mr. Fuechtener's professional employment and celebrity status.

13          So the amount that the defense claims for -- is

14  likely for potential restitution at this point, if the number

15  remains at 14 victims, times 5,000, because that's what was

16  agreed to in the plea agreement, is the 70,000, the potential

17  assessments is 10,200, and then the statutory fines, potential

18  statutory fines, the maximum is 500,000.

19          MS. ROOHANI:  And, your Honor, I actually do

20  need to correct that.  The mandatory restitution under the

21  Justice for Victims of Trafficking Act is $15,000 because he

22  pled guilty to three counts.

23          I understand that there is a second motion to

24  withdraw the guilty plea on the basis that the counts are

25  duplicative.  Of course, it's the government's position that

1    they are not duplicative.

2            So it's our position that the amount under the

3    JVCA, Justice for Victims of Trafficking Act, is $15,000 plus

4    $300 of the special assessment.  The statutory fine range is

5    $750,000 for the three counts, but the guidelines range is

6    50,000 to $500,000.

7            And so because the government was not intending

8    to ask for the statutory maximum amount for the purposes of

9    the fine, that's why we limited it to 500,000 which would be

10   the potential high end of the guideline range.

11           So that is why the amount was five -- requested

12   was $500,000 and not $750,000, and a certain amount of money

13   was returned to Mr. Fuechtener as a result of that.

14           And I recognize that we have a difference of

15   opinion, let's say, with the defense regarding those amounts.

16   However, based upon the existence of the current plea

17   agreement without your Honor's ruling on the second motion to

18   withdraw the guilty plea, that is how it stands currently.

19           Your Honor, and I believe you are absolutely

20   correct.  There are 92 identified victims.  Your Honor is

21   correct that they are entitled to continue to seek restitution

22   up through sentencing and statutorily even after sentencing

23   for a certain period of time.

24           I can represent to your Honor from the time the

25   original PSR was written in this case back in early 2017, to

1    even the time that the second version of the PSR was written

2    to now, we have had new victims come forward at each turn.

3            So I would submit to your Honor that it would be

4    inappropriate to release funds that we have specifically set

5    aside for the victims recognizing that the defendant was

6    attempting to dissipate those funds to deprive them of what

7    he's already agreed to pay them, and so we would ask that at a

8    bare minimum that $460,000 be protected for the victims.

9            Your Honor, if you're inclined to hear argument,

10   Mr. Schonfeld and I spoke prior to the hearing.  We have sort

11   of an agreement on some things, but I don't know if you're

12   inclined to allow me to make a record or not.

13            THE COURT:  Sure.

14            MS. ROOHANI:  May I approach, your Honor, the

15   podium?

16            THE COURT:  Yes.

17            MS. ROOHANI:  Thank you.

18            Your Honor, in anticipation of this hearing I

19   spoke with Mr. Schonfeld and Mr. Chesnoff.  I explained to

20   them the United States' position about the five requests that

21   they had made.

22            So the five things that they had requested the

23   $300,000 for were, one, a new motion to withdraw the guilty

24   plea, two, trial, if they were successful in the motion to

25   withdraw the guilty plea, three, for the purposes of

1    sentencing, four, for the appeal, and, five, for a potential

2    2255.

3                I explained to Mr. Schonfeld and Mr. Chesnoff

4    that the case law did not support any funds being released

5    under the Sixth Amendment for the appeal on the 2255, and I

6    can explain that further, your Honor.

7                But also in terms of the trial, if they were

8    successful in a motion to withdraw the guilty plea, the United

9    States has already conceded early at the time before Judge

10   Hoffman that if we don't have a conviction, we don't have a

11   legal basis to retain these funds.

12               So I asked Mr. Schonfeld and Chesnoff to

13   essentially carve out the additional amounts for the trial

14   amount, the appeal amount, and the 2255 amount because it

15   would be our position that although *Luis*, I agree with you,

16   your Honor, is probably not applicable here, first of all,

17   it's a forfeiture case, second of all, it's a pretrial

18   restraint of untainted funds, and I'll go through that in just

19   a moment.

20               They graciously came back with a number, and

21   they told us $175,000, but they could not assure me that that

22   did not include an amount for appeal.

23               And so I did a little bit of research, your

24   Honor.  In *United States versus Marshall*, in 2017, the Fourth

25   Circuit specifically held or explained that the Supreme Court

1    has never held the defendants enjoy the right to counsel of

2    choice on appeal, and that's because defendants have no

3    federal constitutional right to an appeal, they only have a

4    statutory right to an appeal, therefore the defendant can't

5    invoke the Sixth Amendment to have funds set aside for the

6    purposes of appeal.

7                    As your Honor is also aware, defendant has no

8    right to counsel whatsoever for the purposes of a 2255, let

9    alone counsel of his choice, or appointed counsel.

10                   So at a bare minimum those two things must be

11   carved out.  There's no legal basis to release the funds for

12   that purpose, and, in fact, it would result in a manifest

13   injustice to the victims and also potentially the United

14   States and the court if we were going to be seeking money for

15   the purpose of a fine.

16                   And, your Honor, if you'll allow me to, I'm

17   going to use the ELMO just because I made a visual aid and now

18   I want to use it so --

19                   THE COURT:  Okay.

20                   MS. ROOHANI:  Your Honor, the original case that

21   dealt with this was *Kaplan versus Drysdale*, it was a Supreme

22   Court case in 1989.  The money was sought for services that

23   would be rendered through the time of sentencing.

24                   In that case, it dealt with tainted assets.  And

25   I note, your Honor, that all of these cases deal with

1    forfeiture, not restitution and fines.  So to some degree none

2    of these cases are instructive, but because the defendants

3    have cited this, this is sort of why I'm going down this train

4    of thought.

5              Those dealt with tainted assets, and the

6    defendant had already pled guilty pursuant to a plea

7    agreement.

8              In that case, the law firm actually sued the

9    United States seeking a release of the forfeited funds to be

10   able to pay themselves back for the services that they had

11   already rendered, and the Court had said no, there's no Sixth

12   Amendment right to -- because it was tainted funds, the rights

13   had already vested in the United States and it was

14   postconviction.

15             Then we get to 2016, which is *Luis*, this is the

16   case that the defendants have cited.  In that case, as your

17   Honor as noted, this was a pretrial restraint of untainted

18   funds.  In that case the Court held that there was, in fact, a

19   Sixth Amendment right, and therefore the Court held -- and

20   I'll quote the language for your Honor,

21             "The defendant has a right to use his

22                innocent property to pay a reasonable fee for

23                the assistance of counsel."

24             And then the Court explained the courts must

25   determine reasonable attorney's fees under the Equal Access to

1    Justice Act, which is 28 United States Code section

2    2412(d)(2)(A).

3                 Then, your Honor, interpreting both *Kaplan* and

4    *Luis*, we have both the Fourth and Fifth Circuit which probably

5    is the closest to what we have here.  In both of those cases

6    the defendants had wanted money for the purposes of their

7    appeal.  It was untainted funds much like it is here.  It was

8    postconviction after they had already pled guilty or had been

9    convicted, and both of those courts said that there was no

10   Sixth Amendment right.

11                Now, applying that guidance to Mr. Fuechtener's

12   case, your Honor, you note here that the motion to withdraw

13   the guilty plea, again, all of the assets are untainted, and

14   the government would concede that, because they are for the

15   basis of restitution and fines and not for the basis of

16   forfeiture.

17                As to his first request, although it is

18   postconviction and plea, it's not entirely clear based upon

19   this line of cases what the result would be, same as with for

20   the purposes of sentencing, and I'll come back to that in just

21   a moment, your Honor.

22                In terms of trial which is what I've already

23   indicated, is if the plea is withdrawn, then *Luis* would

24   hypothetically control because there would be a pretrial

25   restraint of untainted funds.

1              With regard to the appeal, *Marshall* and *Scully*

2     from the Fourth and Fifth Circuit would control saying that

3     there's no Sixth Amendment right, and therefore there's no

4     basis to release those funds, and then in terms of the 2255,

5     there's no right to counsel at all.

6              So we're sort of left in this question mark

7     phase regarding the first request for the motion to withdraw

8     and the second for the purposes of sentencing.

9              And, your Honor, as you're aware, the United

10    States tries to make things as clear as possible for the

11    purposes of appeal.  We certainly don't want this case to be

12    sent back on the basis of the denial of a Sixth Amendment

13    right to counsel.

14             Therefore, in speaking with Mr. Schonfeld and

15    Mr. Chesnoff, we would agree that at most $175,000 should be

16    released, but that has to be only for the purposes of a new

17    motion to withdraw the guilty plea, if any, and, second, for

18    the purposes of sentencing.

19             My additional concern, your Honor, is for the

20    purposes of appeal.  We would ask you make specific findings

21    under *Luis*, one, that these are untainted funds, two, that it

22    was postconviction, and, three, we would ask that you engage

23    in a reasonable analysis under the Equal Access to Justice

24    Act.

25             Now, my concern, your Honor, is a little bit of

```
 1    sticker shock when I hear that number of 300,000 and then
 2    175,000.  I'm concerned because under the EAJA it specifically
 3    states that attorney's fees shall not be awarded in excess of
 4    $125 per hour unless the Court specifically determines that an
 5    increase in the cost of living or a special factor such as a
 6    limited availability of qualified attorneys for the
 7    proceedings involved would justify a higher fee.
 8              So if your Honor would be inclined to do that,
 9    we would ask that you make specific findings and make the
10    appellate record clear in the event that the Ninth Circuit
11    decides to review this.
12              And, your Honor, I'm happy to answer any
13    questions that you may have either about Luis, about Kaplan or
14    about Marshall.
15              THE COURT:  So the $175,000 would be to cover
16    the motion that is claiming double jeopardy?
17              MS. ROOHANI:  I'm not sure what that motion
18    would be, your Honor, and you would have to inquire from
19    defense counsel about that.
20              THE COURT:  All right.  So potentially a new
21    motion.
22              MS. ROOHANI:  Absolutely, it would be a new
23    motion, your Honor.
24              THE COURT:  And then it would also be to cover
25    sentencing?
```

1            MS. ROOHANI:  And an appeal.  And that's my

2    concern is I strongly urge the Court to carve out any amount

3    for the purposes of appeal because we are attempting to

4    protect -- and typically, your Honor, I think this is --

5    what's important is the United States typically wouldn't take

6    a position, but I have some type of moral ethical obligation

7    to the victims of the defendant's crimes to preserve as much

8    money as humanly possible.

9            And there is entirely the possibility that we

10   have 92 currently identified victims, but we may identify more

11   victims of the 9,000 videos on the defendant's devices by the

12   time of sentencing, and so that is money that should also be

13   available to those victims because the defendant has already

14   agreed to pay them.

15           And so, your Honor, I would ask that you, at a

16   bare minimum, ask defense counsel whether it would just apply

17   to the motion to withdraw and sentencing, or also appeal, and,

18   if it would apply to appeal, to carve out the amount for

19   appeal because he has no Sixth Amendment right to that.

20           THE COURT:  And your display had a blank for

21   whether the funds should apply to sentencing pursuant to *Luis,*

22   but that's also not a pretrial --

23           MS. ROOHANI:  Agreed, your Honor, absolutely.

24           THE COURT:  Pursuant to section 3673 of

25   Title 18, the term "found guilty" includes acceptance by a

1    court of a plea of guilty as well as adjudication by a jury.

2              MS. ROOHANI:  And, your Honor, I agree with you

3    100 percent.  I just don't think that *Luis* is the right case.

4              The problem is, is that I don't know that we

5    have the right case in our arsenal right now to sort of deal

6    with this problem.

7              And so to the extent that the defense is relying

8    on *Luis,* we're trying to appeal-proof this, if you will, and

9    if you were inclined to apply *Luis*, at least *Kaplan* and really

10   its progeny and everything that's grown out of *Kaplan,* I think

11   that there's a question mark there, and in light of the

12   question mark, we would submit that if you were going to apply

13   *Luis,* that would be the correct analysis.

14             And to be clear, your Honor, I don't disagree

15   with you.  I think that you are correct.  I don't think *Luis*

16   is the right -- I don't think *Luis* helps the defendant at all,

17   in fact, it probably helps the government more than it helps

18   the defendant because it is a pretrial restraint in that case

19   whereas here it's a postconviction restraint.

20             THE COURT:  All right.

21             MS. ROOHANI:  And, your Honor, Mr. Smith just

22   brought me the math because I can't do it in my head.  It

23   seems $175,000 would amount to 1400 hours of legal work at

24   $125 an hour, which would -- to justify that we would have to

25   push out sentencing approximately six months, and, of course,

1    I'm not inclined to agree to that especially in light of the

2    procedural history of this case and the fact that the United

3    States Attorney's office has been dealing with this case since

4    January of 2016.

5                    THE COURT:  All right.

6                    MS. ROOHANI:  With your permission, I'll sit

7    down unless you have additional questions, your Honor, thank

8    you.

9                    THE COURT:  That's good.  Thank you.

10                   All right.  Mr. Schonfeld?

11                   MR. SCHONFELD:  Yes, your Honor.

12                   THE COURT:  I know you're not quite as

13   acquainted with this case as I am.  I have essentially heard

14   practically the entire trial because it was not until the very

15   last government witness testified, especially Agent Panovich

16   who is here, that the parties decided that it was appropriate

17   to have a plea for the Court's consideration.

18                   So since then we've had multiday evidentiary

19   hearings with multiple attorneys testifying about the

20   intricacies of representation.

21                   And I have said this looks like a little bit of

22   a desperate move on behalf of the defendant at this point, and

23   I'm not really persuaded by the double jeopardy argument, so I

24   don't know what other arguments you could raise in another

25   motion for new trial.

1            But I am going to provide some funds out of the

2    seized funds, but only a reasonable amount, because I'm also

3    not sure that more victims are not going to come forward.  I

4    think we will see more victims, but perhaps not to the extent

5    that it would necessitate the Court continuing to retain all

6    of the funds.

7            So do you have a breakdown for me about -- the

8    175,000 is represented to be for the motion, the sentencing

9    and the appeal.

10           MR. SCHONFELD:  Here's what it is, your Honor.

11   We were quite clear with the government and wanted to let them

12   know that it did include the appeal, and I'll explain why.

13           So what we told them the defendant would be

14   willing to do in order to satisfy this motion and satisfy his

15   right to counsel of choice for purposes of the potential

16   motion to withdraw the guilty plea and the sentencing is

17   $125,000 for attorney's fees and $50,000 for costs.

18           Obviously I won't go into privileged

19   communication, but there are a lot of costs that would be

20   involved with preparing for sentencing in the way that we

21   would want to prepare for a sentencing.

22           As to the fee, we advised the government that we

23   are not in a position to agree to become counsel of record for

24   the defendant only for purposes of a potential motion to

25   withdraw the guilty plea and sentencing, and the basis for

1    that is that once a sentencing concludes, we have an

2    obligation on behalf of the defendant, if he directs us to do

3    so, to file the notice of appeal within a very short time

4    frame.  So we would have to file that notice of appeal.

5              Once we file that notice of appeal, we are then

6    counsel of record both in the district court and in the United

7    States Court of Appeals for the Ninth Circuit.

8              If we haven't been retained for that purpose, we

9    would then have to file a motion to withdraw as counsel of

10   record in both courts, hope that it gets granted, but, in the

11   meantime, there are also deadlines that come up very quickly

12   once the notice of appeal was filed so that we would have to

13   do requests for transcripts, designate transcripts, and other

14   matters related to the appeal.

15             So we are just unwilling to take on that

16   responsibility without being retained for that purpose.

17             I understand the government's argument.  I have

18   just seen the case citations for the first time.  So assuming,

19   but not agreeing that they are correct, that defendant is not

20   entitled to counsel of choice on appeal, I would understand

21   where that is coming from if they're accurate, however, our

22   office would be unwilling to take on that responsibility if we

23   weren't retained for that purpose.

24             And so that's why we did break the fee down to

25   the periods where we felt that we could commit as counsel of

1    record.   Two out of the three commitments we would make the

2    government agrees that the defendant would be entitled to

3    counsel of choice, but they don't agree as to the appellate

4    issue, but that's where it breaks down.

5              That being said, the defendant could also retain

6    someone else if that was his choosing, and that's what the

7    Sixth Amendment says, he has a right to counsel of choice if

8    he has the funds to hire counsel of choice.

9              And that's the issue that we're here litigating

10   is whether or not he is going to have the funds to hire

11   counsel of choice, which is his right under the Sixth

12   Amendment if he has the funds.   There's no dispute that the

13   funds were untainted, the funds were held for a potential fine

14   and potential restitution.

15             It's my understanding of the 92 people that the

16   government has called known victims, that the vast majority of

17   them opt out of being notified, which I would speculate as to

18   the reasons, that they don't want to relive this type of thing

19   over and over.   So there's certain people that just don't want

20   to receive notice and just won't participate.

21             The government can correct me if I'm wrong, but

22   I believe that there are 19 of the 92 that actually opt to

23   receive notice.   There are 14 that I understand so far that

24   have made a claim out of that 19.   So the number is not going

25   to be near where the government believes it's going to be.

1              The government also alluded to the PSR report

2    having been prepared a long time ago.  Had that sentencing

3    gone forward the 60 days where additional victims could make a

4    claim for restitution is also long past.  So the likelihood of

5    there being any significant additional victims making claims

6    to restitution is very low.

7              So if we see that to the logical conclusion, at

8    the end of a sentencing, even if the Court were to impose a

9    fine of 500,000, the restitution as to the 14 people, wait the

10   60 days and a couple of more people make their claim for

11   restitution, the defendant is going to be getting a

12   significant amount of money returned to him, but he will have

13   been deprived of his right to counsel of choice at the very

14   important stages of the proceeding.

15             And that's the problem that we have with this,

16   your Honor.  We do believe that it is, as a result, both a

17   Fifth and Sixth Amendment violation.

18             I understand the Court's position that the *Luis*

19   case applies pretrial, but I would submit to the Court that I

20   don't believe it precludes -- or the analysis would be

21   different for the period of time between the entry of a plea

22   and prior to a sentencing.

23             He hasn't been convicted, but obviously it's not

24   pretrial because he's waived his right to a trial, it's the

25   period in between.  And I still believe that the case law

1    would be applicable because we're dealing with untainted

2    funds, and we're still dealing with the right to counsel for

3    the very important stage of proceedings for both the potential

4    motion to withdraw the guilty plea and a sentencing.

5              So I do believe that the analysis in the *Luis*

6    case is still applicable, and I just fear that it would be

7    error at this point when ultimately, at the end of the day,

8    money is going to be returned to the defendant in all

9    likelihood, for him not to be able to have his counsel of

10   choice, and then, when it's too late, to get a check sent back

11   to him from the district court clerk's office.

12             THE COURT:  So the government represented that

13   if it was 175,000 being sought just for attorney's fees, that

14   that would be the equivalent at a payment of $125 per hour of

15   1400 hours of work by counsel.  But you explained that it's

16   actually only $125,000 for attorney's fees.

17             MR. SCHONFELD:  Yes, your Honor.

18             THE COURT:  The other 50 is actually for costs.

19             MR. SCHONFELD:  Yes, your Honor.

20             THE COURT:  So that 125,000, at one twenty-five

21   per hour would be how much?

22             MS. ROOHANI:  One thousand hours.

23             MR. SCHONFELD:  Your Honor, I know the Court is

24   aware -- maybe not aware, but, your Honor, we do not do CJA

25   panel appointed work so we don't do cases for $125 an hour.

1    We do our share of pro bono cases, but this is not a case that

2    we're accepting on a pro bono basis.  So I think --

3                    THE COURT:  I'm not setting your fee, I just

4    need to hear reasonableness evaluation --

5                    MR. SCHONFELD:  Yes, your Honor.

6                    THE COURT:  -- to see whether this is --

7                    MR. SCHONFELD:  You know, I get in state court

8    they have --

9                    THE COURT:  -- or not just an attempt by

10   Mr. Fuechtener to sort of claw back some money that otherwise

11   would have been going to the victims under some kind of ruse

12   that he's going to be using it for an attorney --

13                   MR. SCHONFELD:  Well, I can --

14                   THE COURT:  -- but could not reasonably be doing

15   so.

16                   MR. SCHONFELD:  I can tell your Honor that if it

17   is me and Mr. Chesnoff, the $125,000 would be a flat fee

18   engagement that would be earned upon receipt, and we would do

19   the work that we are hired to do.

20                   We would not be giving it to Mr. Fuechtener to

21   spend as he pleases.  The 50,000 would be maintained in our

22   trust account, would be used for direct costs associated with

23   those proceedings.

24                   That being said, if the Court were to order that

25   the money is released to us, Mr. Fuechtener could then say

1    that he wants to hire someone else, and obviously, you know,

2    we would respect that, but then we wouldn't have control as

3    to, you know, how the funds -- presumably we would transfer

4    the funds to whomever he hires trust account, and whatever the

5    court order that exists as a result of this hearing would go

6    to that lawyer as well.

7                 So if it is, you know, specific that it is only

8    to be applied to, you know, A, B, and C, then that lawyer

9    would have to comply with that order.

10                But if it is our firm, the one twenty-five would

11   be earned upon receipt, and we would go to work to set out to

12   do the things that we've described here, and so it would not

13   be returned to Mr. Fuechtener.

14                The only caveat is what I just stated, that if

15   he hired someone else, we would send it to their trust

16   account.

17                THE COURT:  All right.  So if we're looking at

18   1,000 hours at one twenty-five per hour, previously the

19   government said that it would have been six months worth of

20   time if it was 1400, but now we know it's 1,000 hours so --

21                MS. ROOHANI:  I'm going to attempt to do the

22   math, your Honor, if you give me just a moment.

23                THE COURT:  All right.  But that would include

24   appeal you're saying.

25                MR. SCHONFELD:  Yes, your Honor, it would.

1           THE COURT:  All right.  So it doesn't mean that

2  you would be asking for a continuance of whatever time that --

3           MR. SCHONFELD:  I would not be asking for a

4  five- or six-month continuance.  I would obviously request a

5  continuance so that we could adequately prepare and be

6  effective counsel, but it would not be a five- or six-month

7  continuance that we would be seeking.

8           MS. ROOHANI:  Your Honor, at a thousand hours,

9  assuming that they worked 40 hours a week on this case alone,

10  that would be 25 weeks worth of work.  That's assuming eight

11  hours a day.  Mr. Smith's math assumed 175 days of legal work

12  at eight hours day.

13           THE COURT:  All right.  So Mr. Fuechtener, are

14  you able to follow everything that we're discussing here?

15           It sounds like Mr. Schonfeld and the

16  government's attorney, Ms. Roohani, have been trying to figure

17  out a way to assist you without jeopardizing the funds that

18  are available for the victims.

19           And the smallest amount of money that I've heard

20  so far is that $125,000 is needed for Mr. Schonfeld to

21  represent you, or some other attorney to represent you, with

22  $50,000 set aside for costs, for a total of $175,000.

23           THE DEFENDANT:  Yes, I understand that.

24           THE COURT:  And do you understand that if I

25  release that amount, the $175,000, I do not put any strings on

1    that, you can use it to hire an attorney for 10,000, and pay

2    the costs of a hundred and whatever else, but once I carve out

3    this amount, you don't have to spend any of it if you don't

4    want to, but I think that you need to be aware that you're not

5    required to hire Mr. Schonfeld.  You have that option, or you

6    can hire someone else, or stay with Ms. Connolly or --

7                    THE DEFENDANT:  Yes, I know that.  That's what

8    Judge Hoffman explained to me in one of the past hearings.

9                    MS. ROOHANI:  Your Honor, I have one more

10   concern that I need to put on the record.

11                   THE COURT:  Yes, Ms. Roohani.

12                   MS. ROOHANI:  Is that Mr. Chesnoff and Schonfeld

13   will be the eighth and ninth attorneys on this case.

14                   THE COURT:  Yeah, we're going to run out of

15   criminal defense attorneys in town.

16                   MS. ROOHANI:  He's running out of them, and

17   you're a hundred percent correct, your Honor.

18                   My concern is this, your Honor, is that if you

19   give this money to him no strings attached, he's going to come

20   back to you in two months after he's dissipated this $175,000

21   and say he needs another $175,000 based on the Sixth

22   Amendment.  So I would ask that if you're going to release

23   this money --

24                   THE COURT:  But that wouldn't be reasonable.

25   That's what we're looking at here is what is a reasonable

1    amount of money that he would need to hire counsel.

2                    MS. ROOHANI:  And I would ask one of two things,

3    your Honor, is if you determine that the total amount that's

4    reasonable for any attorney is $175,000, then let that be the

5    total that he gets to spend regardless of whether he wants to

6    hire this law firm or ten other attorneys or whatever it might

7    be, because then that inters his Sixth Amendment right to

8    counsel, and then the Circuit won't have an issue with it.

9                    Alternatively, if it's the amount that --

10   whatever the reasonableness amount is, then that work should

11   have to be transferred over to the next set of attorneys

12   ultimately if it comes down to that.

13                   My concern is, is he's going to come back here

14   in two months and ask for more money, and then two months

15   after that and ask for more money, and then the victims are

16   going to be left with zero dollars at the end of it.

17                   And I don't think he has a right to the release

18   of money just because he wants the money released.  I think it

19   has to be tethered to that Sixth Amendment right, and I would

20   ask that the order be limited to his ability to pay for the

21   motion to withdraw for the purposes of sentencing and only for

22   attorney's fees and then costs.

23                   THE COURT:  Mr. Schonfeld, what is your position

24   on that?

25                   MR. SCHONFELD:  Well, your Honor, my position is

1    that Mr. Chesnoff and I are unwilling to do the case unless we

2    are being retained for the appeal, and I've stated the reasons

3    for that.

4              I'm just not going to be committed to the

5    District Court and the Court of Appeals and the defendant to

6    pursue an appeal which would be my legal and ethical

7    obligation if I'm not retained to do that.

8              So if that's going to be the order, then

9    Mr. Fuechtener can set out to hire other counsel of choice

10   with the funds that the Court releases, but we would be

11   unwilling to have it limited to being retained for a potential

12   motion to withdraw guilty plea and sentencing only.

13             THE COURT:  All right.  Ms. Roohani, I forgot to

14   ask you, and I had written down here, that the defense has

15   said that there's only 19 of the 93 victims who have requested

16   notification, or is it the opposite, that they have requested

17   not to be notified?

18             MS. ROOHANI:  Your Honor, it's not an issue of

19   the request not to be notified, is they might not be seeking

20   restitution at this time.

21             As you know, they have to update their medical

22   records as time goes on.  Some of them may have opted out, but

23   they could change their mind between now and the time of

24   sentencing.

25             It's sort of one of these situations where I

1    know 92 have been identified, that means we know who they are,

2    we know that we have contact information for them, we know

3    that they're real human beings.

4            At some point in the past they've sought

5    restitution so we have some type of contact information, and

6    it's our office's practice to send out notification to all of

7    those individuals unless they affirmatively opt out, and I

8    don't have a number for you on that, your Honor.

9            I can tell you that as it's set forth in the PSR

10   this is an unprecedented number of victims, and I know that

11   they continue to trickle in.

12           So I understand that this case has been pending

13   for some time, but it's been continued because Mr. Fuechtener

14   wants to continue to litigate little things along the way, and

15   as he does that, more victims continue to show up.

16           And so I'm not comfortable with limiting that in

17   some way, as you can understand, because in the end, if he

18   continues to litigate this until 2022 or whatever, there might

19   be 92 victims who show up at that point, and that's a risk

20   that he takes by continuing to push out sentencing.

21           And I'll just make clear, your Honor, because

22   perhaps he doesn't understand this, is if they don't get the

23   money from this plea agreement, they have indicated to me that

24   they will come after him civilly.

25           So I don't think that this is a situation where

1    limiting this in some way is going to enure his benefit, and

2    it's potentially going to harm him more long term.

3                  THE COURT:  Well, I think it bears repeating

4    that in the plea agreement the $5,000 per victim is actually

5    very favorable to the defendant because, in fact, this is

6    mandatory restitution that the Court does not have the

7    discretion to deny, it has to impose restitution.

8                  And what the statutes, the sentencing statutes

9    provide for is that the Court provide restitution in the

10   amount that is -- let me see if I can find this here -- well,

11   Ms. Roohani, do you have -- I just saw this this weekend when

12   I was looking at it again, but it's for all of the losses.

13                 MS. ROOHANI:  Correct, your Honor, all losses,

14   physical, mental, emotional, psychological, that can be

15   attributed to the defendant, and, as your Honor knows from

16   looking at these in past cases there's --

17                 THE COURT:  Hundreds of thousands of dollars.

18                 MS. ROOHANI:  Per victim, yes, your Honor.

19                 THE COURT:  Per victim that is requested, much

20   more than what you're looking at here.

21                 So sometimes it's one of those

22   be-careful-what-you-ask-for situations because this number is

23   actually quite small compared to what we've had in other

24   cases, and what could be seen if this agreement is undone.

25                 But -- all right.  So I do agree that the *Luis*

1    case does not apply to this particular situation inasmuch as

2    it is not a pretrial case whereas *Luis* was a pretrial case.

3                    These, are as much as my understanding, and I

4    even looked at that because I wasn't really sure if these were

5    tainted or untainted because there were upwards of, what, 8,

6    9, 11 electrical devices at that home.

7                    MS. ROOHANI:  There was 9 with child

8    pornography, 43 total devices, your Honor.

9                    THE COURT:  And there were also the zip drives

10   and -- in closets and such, and there was not just child

11   pornography, but also -- what is it, those listening devices

12   that you plug into the electronics in order to live chat and

13   view and -- almost seemed to me like perhaps it would be easy

14   for the government, if they wanted to, make an argument that

15   this property was tainted because there was so much child

16   pornography being seen and requested and -- in this home.

17                   There was explanations of parties, multiple

18   parties going on.  Again, I think that it's another situation,

19   you need to be careful what you're asking for because I think

20   that the government was being more than reasonable in agreeing

21   that it's untainted and only asking for $5,000 per victim.

22                   As to the postconviction relief, the 2255 we

23   know, because I write this all the time in the orders that the

24   Court provides, there is no right to counsel in the 2255s.

25                   And in the direct appeals, we do provide counsel

```
 1    when someone is indigent and cannot afford counsel, but we
 2    certainly do not provide them with counsel of their choice,
 3    they don't get to pick and choose.  We appoint their counsel
 4    for them.
 5              The amount that's being requested for motion and
 6    sentencing would not be reasonable, quite frankly, but if you
 7    include the appeal, I think that the $125,000 for attorney
 8    costs, plus $50,000 for other costs, for example, forensic
 9    examinations of devices or private investigators to interview
10    people, things of that nature, that amount does seem
11    reasonable to me.
12              And, again, one twenty-five per hour is
13    obviously not what most private practitioners in the criminal
14    defense field charge.  Usually it is a flat fee of a certain
15    amount, and there's not even hours really that are kept except
16    for any -- internally for any dispute reasons.  But a case
17    with this much discovery, that would be certainly reasonable
18    at this point.
19              So I'm going to go ahead and release,
20    Mr. Fuechtener, the $125,000 for counsel and $50,000 for
21    costs, and they are to be used only for counsel and costs.  So
22    if you change your mind and you decide, as you have in the
23    past, that this attorney, whether it's attorney number eight
24    or nine or ten, or whatever, you decide now all of a sudden
25    you don't want this one and you want another one, then you
```

1   can't come back and ask for more money.  That's it.

2                   We're not going to claw away at all of this

3   money bit by bit, 125,000 at a time, every month coming in

4   here asking for a new attorney.

5                   Now, that being said, if you decide you don't

6   want Schonfeld, you want Connolly instead, or you want to go

7   back to Marchese, or you want someone else that I don't even

8   know yet, you can use it for a different attorney, but you

9   can't use it for anything else than an attorney, the one

10  twenty-five, and same with the fifty, can only be used for

11  costs for purposes of reviewing what needs to be reviewed and

12  researching and drafting and arguing the motion and

13  sentencing.

14                  MR. SCHONFELD:  Your Honor, just so that part of

15  the motion is clear, there may be some experts for purposes of

16  sentencing as well.

17                  THE COURT:  That's reasonable to expect as well,

18  and that's included in the $50,000.

19                  MS. ROOHANI:  Your Honor, does that amount also

20  include appeal?  Because I think that that is a defining --

21  it's a question I'm sure that Mr. Schonfeld is going to want

22  the answer to.

23                  THE COURT:  Yes, it does include the appeal.

24  It's a flat fee, and so if that's what they're charging for

25  the appeal, and that includes the appeal.

1          I don't think that there is a right to counsel

2   of choice for the appeal, however, I am willing to provide the

3   full amount that's requested at 125,000 for counsel and 50,000

4   for costs, and that is to include appeal.

5          Like I said, otherwise I don't think that motion

6   and sentencing -- 125,000 would not be reasonable for just the

7   motion and sentencing, so that's why I am releasing that

8   125,000 for counsel and fifty for costs because I agree that

9   it would be a reasonable amount when you include appeal.

10          But I'm not certainly saying that in every case

11  I'm going to be releasing funds for appeal because I really

12  don't believe that there is a right to counsel of choice on a

13  direct appeal.  His is a package, I guess I should say, maybe

14  sort of a unique situation with private counsel, but not

15  uncommon in this district for private counsel to be retained

16  at a flat fee naming services as a point as opposed to an

17  hourly fee for amount of time.

18          So that being said, our current sentencing date,

19  Aaron, is 23 --

20          MS. ROOHANI:  It's in November, your Honor.

21          THE COURT:  14th.  There is one stating

22  November 14th.  Can we keep that date, or are you going to --

23  you don't have to tell me right now.

24          Are we going to be filing a stipulation to

25  continue the date, and, if so, then, do you want me to rule on

1    the pending motion, or are you going to withdraw the motion?

2    And you can think about this.  I don't want to put you on --

3    I'm just trying for my purposes because we have a couple of

4    trials coming up, and I'm trying to figure out --

5                    MR. SCHONFELD:  Your Honor, I do not believe

6    that whether it's my office representing Mr. Fuechtener or

7    another attorney, that they would be prepared for sentencing

8    on November 14th.

9                    I also understand that it is Mr. Fuechtener's

10   request that that date be continued so that he can secure his

11   counsel of choice who can, you know, assess whether or not to

12   file a motion to withdraw, supplement the motion to withdraw,

13   address the issues that may need to be addressed, and then

14   also potentially go forward with the sentencing.

15                   So I think what I would propose, your Honor, is

16   either leave that date as it is for now and have like a

17   two-week status check for substitution of counsel.

18   Mr. Fuechtener can by then make a decision whether it's going

19   to be my office that's going to be representing him going

20   forward or someone else representing him going forward.

21                   I'm not sure what the Court wants to do as far

22   as release of the funds, whether it would be maintained in my

23   trust account until that election is made, or whether the

24   Court just wants to maintain it still with the clerk's office

25   until that election is made, and then it can go to whichever

1    attorney is taking on the representation.

2              But that would be my request, that we have a

3    two-week window where the defendant can confirm who his

4    counsel will be, and then at that point figure out scheduling

5    for the sentencing.

6              THE COURT:  All right.  So motion 296, which is

7    a motion for reconsideration regarding order 295, is, I guess,

8    granted in part and denied in part because I am granting a

9    release of some funds, although not all the funds, and I think

10   that the order that was being requested to be reconsidered

11   also addressed issues that we're not reconsidering.

12             So I'll just say that it's granted in part,

13   denied in part, and the part that is granted is that $125,000

14   for counsel fees and $50,000 for costs are to be released.

15             We'll go ahead and set a two-week status check

16   and ask first to Mr. Fuechtener, along with whatever counsel

17   he decides to use, to file something on the docket, some kind

18   of notice to explain who it is that he wants the funds to be

19   deposited with, so some kind of notice of appearance by

20   counsel or notice of retention by counsel.

21             I don't need to know the details of the

22   retention, but so long as there's something that's signed by

23   Mr. Fuechtener that directs the moneys can go to some

24   attorney's trust fund, whether it's this attorney or a

25   different attorney.

1            So while I'm agreeing to release the funds,

2    they're not going to be released today, they're not going to

3    be released until there's some notice on the record of who is

4    being elected as counsel.

5            If you file that today, then I'll release the

6    money today.  If you file it tomorrow, I'll release it

7    tomorrow, but you have two weeks at the very least.  If you

8    need more time, ask for more time, and we'll give you more

9    time, but I don't want to lose track of this.

10            So you decide who you want.  If you want

11    Mr. Schonfeld, then a notice is filed that you sign saying I

12    am electing to retain Mr. Schonfeld, I'm asking the Court go

13    ahead and deposit the money in Mr. Schonfeld's account.

14            If you decide to go with somebody else, same

15    thing, I am electing to retain somebody else, tell me who it

16    is, and that you want the funds to be deposited in the account

17    of that person, and then the funds will be released to that

18    person.

19            MS. ROOHANI:  And, your Honor, I'm attempting to

20    figure this out because I'm actually out of the district in

21    two weeks, and I have been having difficulties sometimes

22    finding people to come and cover the hearings.

23            So I spoke with Mr. Schonfeld, and he believes

24    that this might be reasonable, is to have whoever that

25    Mr. Fuechtener elects to represent him file a fee agreement or

1    something like that under seal with your Honor, and then

2    you'll know for sure who's going to be representing him.

3                 If it's Mr. Schonfeld, he can file that, and

4    then the money can be released to him.  If it's somebody else,

5    then the money can be released to that law firm's trust

6    account directly, and then we could potentially just vacate

7    the hearing, because it would be clear to your Honor who

8    ultimately would be representing him, and then we might not

9    need to waste time coming back here again if your Honor is

10   inclined to do that.

11                THE COURT:  Right.  But what if he doesn't --

12   what if things get complicated as we know tend to happen in

13   this case more often than not?

14                MS. ROOHANI:  And, your Honor, and if that's the

15   case, then I would just ask for three weeks because I'm

16   actually not -- I would prefer to be here myself for these

17   hearings, and unfortunately I'm out of the district on the

18   23rd, and so I would ask that we set it for the week of the

19   29th at any point.

20                THE COURT:  All right.  How about Tuesday, the

21   30th?

22                MS. ROOHANI:  I'm available all day, thank you,

23   your Honor.

24                THE COURT:  Aaron is that --

25                THE CLERK:  That will be the second day of trial

 1    your Honor.

 2                 THE COURT:  Okay.  I was going to say that

 3    doesn't look good so -- okay.  Shall we go back?  You won't be

 4    on the 26th -- well, the 26th is actually Nevada Day so some

 5    people are not going to be here because their kids will be out

 6    of school.

 7                 MS. ROOHANI:  And, your Honor, I'm actually out

 8    of the district from the 21st of August -- August -- October,

 9    your Honor, until the 27th, so that whole week I'm out.

10                 And, your Honor, if it's easier for that to

11    work, I will make arrangements for somebody to be here.  It's

12    just my preference that I be here myself.

13                 THE COURT:  Well, Aaron, let's go ahead and --

14    what time would a bathroom break be for the trial, like,

15    10:30?

16                 THE CLERK:  Your Honor, I was actually going to

17    recommend perhaps Thursday morning, September 1st --

18    September -- November 1st at 9:00 a.m., and then that way we

19    can have just a slightly later start time with trial.

20                 THE COURT:  Don't we have -- at 11:00 a.m. we

21    have something, too?

22                 THE CLERK:  Those two I'm going to end up

23    pushing to another date.

24                 THE COURT:  Oh, okay.  All right.  Then let's do

25    that.  Okay.  How about Thursday, November 1st, at what time,

1   Aaron?

2                   THE CLERK:  9:00 a.m., your Honor.

3                   THE COURT:  Okay.  So is everyone available

4   Thursday, November 1st, at 9:00 a.m.?

5                   MR. SCHONFELD:  Yes, your Honor.

6                   MS. ROOHANI:  Yes, your Honor.

7                   THE COURT:  We'll go ahead and plan to have a

8   status check on that date which can be vacated if the

9   appropriate documentation is filed prior to that date.

10                  Mr. Schonfeld, do you have any objection to

11  filing an fee agreement under seal?  I wasn't going to ask for

12  one, but --

13                  MR. SCHONFELD:  Your Honor, I spoke to my

14  client, and he doesn't have an opposition to that.

15                  THE COURT:  Okay.  So we'll go ahead and have a

16  notice that is visible that is not sealed that has him

17  electing who it is that he is retaining.

18                  If he wants more than one person, obviously,

19  they're just going to have to split the money more ways, and

20  that he agrees that the money should be deposited in the

21  account, the trust account for those folks and then everything

22  else can be sealed.

23                  MR. SCHONFELD:  Thank you, your Honor.

24                  THE COURT:  Anything else, Ms. Roohani?

25                  MS. ROOHANI:  No, your Honor, thank you.

1              And I will work together with whoever ultimately

2    ends up getting on this case and trying to set a sentencing

3    date that's reasonable.

4              THE COURT:  All right.  Thank you.

5              And so that means also that whoever it is that

6    ends up on this case, whether it's the same folks or different

7    folks, someone is going to need to file a stip to continue the

8    sentencing date which is currently for November 14th, if, in

9    fact, no one can be ready by the 14th.

10              And then the motion -- let me see what I was

11   looking at.  The other motion that is still pending is -- do

12   you have it, Aaron?  I had it and --

13              THE CLERK:  Yes, your Honor, number 282 is the

14   motion to withdraw plea, and number 283 is the motion to

15   strike the motion to withdraw plea.

16              THE COURT:  All right.  So motion 282 and 283

17   are still currently scheduled to be heard on November 14th.

18   So if you want to supplement it or withdraw it, you need to

19   figure out what you're going to have to do.

20              MR. SCHONFELD:  Or presumably we could include

21   that in the stipulation to continue the sentencing.

22              THE COURT:  That would be wise if you could do

23   that.

24              MS. ROOHANI:  Will do, your Honor.

25              THE COURT:  All right.

—41—

1          MR. SCHONFELD:  Thank you, your Honor.

2          MS. ROOHANI:  Thank you, your Honor, for setting

3    is this for hearing.  We appreciate it.

4          THE COURT:  All right, thank you, counsel.

5                          -oOo-

6

7          I certify that the foregoing is a correct
           transcript from the record of proceedings
8          in the above-entitled matter.

9          /s/Margaret E. Griener          5/3/2019
            Margaret E. Griener, CCR #3, FCRR
10          Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25