2:16-cr-00100-GMN-CWH

1 UNITED STATES DISTRICT COURT

2 DISTRICT OF NEVADA

3

4 UNITED STATES OF AMERICA,      )
                                 )
5              Plaintiff,        ) Case No. 2:16-cr-00100-GMN-CWH
                                 )
6        vs.                     ) Las Vegas, Nevada
                                 ) March 15, 2016
7 JAN ROUVEN FUECHTENER,         )
                                 )
8              Defendant.        ) INITIAL APPEARANCE
  _____ )

9

10

11

12

13           TRANSCRIPT OF PROCEEDINGS

14       THE HONORABLE PEGGY A. LEEN,
         UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19 APPEARANCES:        See Next Page

20 DIGITALLY RECORDED: Liberty Court Recorder
                      3:26:25 p.m.
21

22 TRANSCRIBED BY:    PATRICIA L. GANCI
                     (702) 385-0670
23

24 Proceedings recorded by electronic sound recording, transcript
   produced by mechanical stenography and computer.
25

2:16-cr-00100-GMN-CWH

1  APPEARANCES:

2  For the Plaintiff:
        **LISA CARTIER-GIROUX, AUSA**
3       UNITED STATES ATTORNEY'S OFFICE
        501 Las Vegas Boulevard South, Suite 1100
4       Las Vegas, Nevada 89101
        (702) 388-6336
5
   For the Defendant:
        **JESS R. MARCHESE, ESQ.**
6       LAW OFFICE OF JESS R. MARCHESE
7       601 South Las Vegas Boulevard
        Las Vegas, Nevada 89101
8       (702) 385-5377

9  ALSO PRESENT:

10        Samira Barlow, Pretrial Services Officer

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      LAS VEGAS, NEVADA; TUESDAY, MARCH 15, 2016; 3:26:25 P.M.
2                               --oOo--
3                          P R O C E E D I N G S
4           THE COURT:  Do we have Mr. Marchese here?  We do not.
5           COURTROOM ADMINISTRATOR:  Not as such, Your Honor, not
6   yet.
7           THE COURT:  All right, sir.  The last matter on
8   calendar is United States versus Jan Rouven Fuechtener?
9           THE DEFENDANT:  Jan Rouven Fuechtener.
10          THE COURT:  All right.  We received notification that
11  you have retained private counsel.  He's currently in State
12  Court.  So I'm going to recess to allow him to appear.  I'll
13  re-adjourn once your lawyer gets here.
14          COURTROOM ADMINISTRATOR:  All right.
15             (Recess taken at 3:27 p.m.)
16             (Resumed at 3:57 p.m.)
17          COURTROOM ADMINISTRATOR:  All rise.
18          THE COURT:  Please be seated.
19          COURTROOM ADMINISTRATOR:  Your Honor, we are now
20  resuming our initial appearances calendar, and we are now
21  calling the matter of United States of America versus Jan Rouven
22  Fuechtener.  The Case Number is 2:16-mj-0179-PAL.
23          Counsel, please state your names for the record.
24          MS. CARTIER-GIROUX:  Lisa Cartier-Giroux for the United
25  States.

1         MR. MARCHESE:  And Jess Marchese, Your Honor, on behalf
2  of Mr. Rouven.  Thank you for trailing the matter.  I did let
3  your assistant know it and the United States Attorney.
4         THE COURT:  Is there any reason why the complaint
5  should not be unsealed now that an appearance has been made?
6         MS. CARTIER-GIROUX:  No, Your Honor.
7         THE COURT:  So ordered.
8         Sir, you are here because you have been charged in a
9  criminal complaint with Receipt of Child Pornography.  Did you
10 receive a copy of the complaint in your case before court?
11        THE DEFENDANT:  Yes.
12        THE COURT:  Did you read it, sir?
13        THE DEFENDANT:  Yes.
14        THE COURT:  You understand what it is that you've been
15 accused of?
16        THE DEFENDANT:  Yes.
17        THE COURT:  You have the right to remain silent.  You
18 don't need to make any statement about these -- this charge to
19 me or to anyone else.  If you waive or give up your right to
20 remain silent and you do say anything, anything that you say can
21 be used against you in court in the future.  Do you understand
22 these rights?
23        THE DEFENDANT:  Yes.
24        THE COURT:  You have the right to be represented by a
25 lawyer throughout your case.  If you can afford to hire a

1  lawyer, you may retain a lawyer of your own choosing. Have you
2  retained Mr. Marchese to represent you in this matter?
3          THE DEFENDANT: Yes.
4          THE COURT: And, Mr. Marchese, do you acknowledge that
5  having made an appearance in this case you are retained for all
6  purposes and will be responsible for the defense of this case
7  unless and until you receive permission to withdraw?
8          MR. MARCHESE: I do, Your Honor.
9          THE COURT: I'm going to give you a date for a
10 preliminary hearing, sir. A preliminary hearing is a probable
11 cause hearing in front of a judge to determine if there is
12 enough evidence to continue to hold you on this charge.
13 However, I will tell you that what happens almost all of the
14 time is that the Government takes your case and presents it to a
15 federal grand jury. If a federal grand jury indicts you, that
16 is a determination of probable cause and you don't get a second
17 probable cause hearing in front of a judge. However, I set a
18 deadline for that to happen so it occurs on time like it's
19 supposed to.
20         Do you understand what I've explained?
21         THE DEFENDANT: Hmm. Not 100 percent.
22         THE COURT: All right. You have a right to a
23 determination of probable cause. The Fifth Amendment to the
24 United States Constitution allows -- gives you the
25 constitutional right to have your case presented to a federal

1  grand jury.

2             THE DEFENDANT:  Uh-hmm.  Okay.

3             THE COURT:  I'm going to set a date for a preliminary

4  hearing in front of a judge, but because you have a Fifth

5  Amendment right to a grand jury indictment, what happens almost

6  all of the time is before the hearing before the judge the

7  Government takes your case in front of a federal grand jury and

8  they ask for an indictment.  If the grand jury indicts you, you

9  don't get a separate probable cause hearing or preliminary

10 hearing.

11            THE DEFENDANT:  What's an indictment?

12            THE COURT:  Yes, sir.  That's the way this works.  You

13 get arrested on a criminal complaint.  A law enforcement officer

14 has sworn out the complaint in front of me.

15            THE DEFENDANT:  Uh-hmm.

16            THE COURT:  I'm going to set this for a preliminary

17 hearing before me.  At which the Government would be required to

18 come forward with evidence to support the allegations that are

19 contained in this complaint.  However, what happens almost all

20 of the time is before you get to the preliminary hearing the

21 Government takes your case in front of a federal grand jury and

22 they ask for a federal indictment.

23            THE DEFENDANT:  The word "indictment"?

24            THE COURT:  An indictment is a federal charge.

25            THE DEFENDANT:  Okay.

1  THE COURT: A grand jury is a group of people that
2  are --
3  THE DEFENDANT: I know that term.
4  THE COURT: -- sworn in, not like a jury that sits in a
5  jury box here, but they -- their job is to consider cases that
6  are brought before them by the Federal Government to determine
7  whether or not to charge.
8  THE DEFENDANT: Uh-hmm.
9  THE COURT: That's --
10 THE DEFENDANT: Okay.
11 THE COURT: -- a grand jury. And a grand jury makes
12 the decision whether to indict or not to indict.
13 THE DEFENDANT: Okay.
14 THE COURT: An indictment is a felony charge.
15 THE DEFENDANT: Uh-hmm.
16 THE COURT: Do you understand what I've explained now?
17 THE DEFENDANT: Yes.
18 THE COURT: Okay. Pending further proceedings in this
19 matter, what is the Government's position regarding release or
20 detention?
21 MS. CARTIER-GIROUX: The Government is seeking
22 detention.
23 THE COURT: Support your motion, please.
24 MS. CARTIER-GIROUX: Your Honor, as the court's aware,
25 this is a presumption case under 18, 3142(e)(2) -- sub (e).

1  It's the Government's position that this defendant is both a
2  flight risk and poses a danger to the community.  Flight risk by
3  the preponderance of the evidence in that he is not a U.S.
4  citizen.  In fact, he's here on a visa.
5           If he is convicted of these charges, he would not --
6  his visa application will not go through.  He has an alternate
7  place to reside.  In fact, he's a citizen of Germany.  And based
8  on the -- this case as it's charged in the complaint has a
9  mandatory minimum sentence of five years in prison.
10          Facing these charges, the Government believes that he
11 is a risk of fleeing the country and returning to Germany.  I do
12 believe he does have a passport, but more important for the
13 Government is the danger to the community that he poses.  If the
14 court did have the opportunity I believe to read the complaint,
15 I think it was Your Honor that it was in front of initially.  I
16 think it was.
17          There were over 5,000 files of child pornography.
18 We've only looked at seven of the devices.  There are 24 other
19 devices that we still have to look at.  The images that were
20 contained and video files that were contained therein showed
21 bestiality, bondage.  There was a lot of infant abuse.  In fact,
22 there is a 20-minute video where there are infants who are being
23 sexually abused and raped by adult males.
24          The court should also be aware that we have Skype chats
25 with -- who we believe by the defendant in which the defendant

1  is making arrangements with another individual to watch that
2  other individual have sex with his daughter.  And there is
3  time-setting, "Are you going to be available at 11," and the
4  like.
5           There is something in the pretrial services report that
6  I want to clarify.  It's Section 4.  The Government has
7  information and I don't yet have the report from the Tropicana,
8  but my understanding is there a report and there's some video
9  footage.  There was a point in time back in December of 2014
10 where a 16-year-old went missing on the property at the
11 Tropicana.  The party -- and this is the mother of the
12 16-year-old male has filed a complaint.  I don't know -- that's
13 not accurate.  I don't know if she did or she didn't.  I do know
14 that she reported the child missing to security services.  They
15 did find the child ultimately in the defendant's dressing room.
16          Based on the amount of pornography, the type of
17 pornography, and particularly the Skype chats in which the
18 defendant is talking about having another individual have sex
19 with a minor, the Government is seeking detention.  The
20 Government does not believe that the third party offered in
21 the -- offered by the defendant in the pretrial services report
22 is an appropriate third-party custodian because this case is
23 still under investigation.  This individual also lives with the
24 defendant.  At this point in time he has not been charged, but I
25 don't know what will happen down the road with regard to the

1  other devices and what types of information we will find on
2  them.  They both reside together.  They've been residing
3  together for a significant period of time.
4         It's hard for the Government based on the amount of
5  pornography that we located just on these six devices, and they
6  were in shared areas, to believe that this other individual had
7  no idea that these types -- this type of conduct --
8         THE COURT:  Well, the complaint doesn't say that.  The
9  complaint says --
10        MS. CARTIER-GIROUX:  I understand.
11        THE COURT:  -- that his husband was interviewed and
12 told the officers that he was disturbed by the fact that this
13 defendant was watching porn nonstop.
14        MS. CARTIER-GIROUX:  I understand that.  And I
15 understand that, Your Honor.  That's not uncommon for -- I mean,
16 the defendant denied possessing the pornography as well in his
17 statement.
18        So the fact --
19        THE COURT:  Well, I'm not going to speculate that
20 someone is in the home is also engaged in criminal activity when
21 you have no reason to make that assertion.
22        MS. CARTIER-GIROUX:  I'm not saying -- all I'm saying
23 is that I don't know what -- I don't know what we're going to
24 find on the other devices.  That's basically what I'm saying
25 with regard to him.

1        THE COURT:  And I can't make a decision based on your
2   lack of knowledge.
3        MS. CARTIER-GIROUX:  I understand that.  That's not the
4   basis of my request for the detention.  My request for the
5   detention is based on a flight risk and a danger to the
6   community.
7        The court should be aware that this defendant does
8   have -- in his job has consistent contact with children.  I have
9   images from his Instagram page where he goes to different
10  schools interacting with children.  He also works I believe a
11  show where there are children that are brought up onto the stage
12  to help him perform the acts.
13       We are concerned about any kind of interaction that he
14  would have with them.  For those reasons we're asking that he be
15  detained.
16       THE COURT:  Mr. Marchese, do you need additional time
17  to prepare and discuss this matter with your client?
18       THE DEFENDANT:  I can go right now.
19       MR. MARCHESE:  Court's indulgence, please.
20       THE COURT:  Certainly.
21       (Defense counsel conferring with defendant.)
22       MR. MARCHESE:  Thank you, Your Honor.  No, we are
23  prepared to proceed today with the --
24       THE COURT:  Are you sure about that?  Because you
25  obviously were in another court and this is information that you

1  probably didn't know before you got here.  The complaint itself

2  was quite graphic and long, and I don't want you to be at a

3  disadvantage by not having an adequate time to prepare for this

4  hearing or discuss the matter with your client.  So if you need

5  more time, by all means I'll give you more time, but you know

6  the standard changes.  If I decide to detain, the standard for

7  reopening detention is much more strict than the initial

8  decision.

9         MR. MARCHESE:  I understand.  I did visit him in the

10  lockup earlier today.  Now, I did not have a copy of the

11  complaint at that juncture.  I was trying to get one, but

12  whatever.  Didn't happen.

13         Let me speak with my client briefly.

14         THE COURT:  I just don't want you to be rushed and then

15  lament the decision.

16         (Defense counsel conferring with defendant.)

17         MR. MARCHESE:  Your Honor, he'd like to proceed today.

18         THE COURT:  Very well.

19         Have you had an opportunity to review the pretrial

20  services report with your client?

21         MR. MARCHESE:  We have.

22         THE COURT:  Is there anything in the report itself that

23  is factually inaccurate that you wish to note for the record?

24         MR. MARCHESE:  Yes, he would like to specifically point

25  to the alleged incident with the 16-year-old in the dressing

1  room.  He has indicated to me that that individual had missed --
2  there was an autograph session.  He indicated to me that the
3  16-year-old went in there on his own, trying to get an autograph
4  from my client.  In no way, shape, or form was he invited back
5  there.  Technically, the young man would have been trespassing.
6              THE COURT:  With that exception, is there anything in
7  the report that is inaccurate that you wish to note for the
8  record?
9              (Defendant conferring with defense counsel.)
10             MR. MARCHESE:  Other than that, the pretrial services
11 report is materially correct.
12             THE COURT:  All right.  Then let me hear from you on
13 the merits.
14             MR. MARCHESE:  Your Honor, obviously we're going to be
15 asking for release with some certain conditions.  First off, the
16 search warrant in this particular case was approximately six
17 weeks ago.  Mr. Rouven contacted me immediately.  He's been in
18 contact not with the United States Attorney -- I was in contact
19 with the United States Attorney, but he was in contact with the
20 agent even as recent as two weeks ago.  That was only in
21 reference to some passwords with some computers that he was
22 having some issues with.
23             Should he or would he have wanted to leave the
24 jurisdiction and flee to his home country of Germany, he would
25 have done so many weeks ago.  However, he has a very successful

1  magic show here in town.  He is -- it's not only just a job to
2  him necessarily; it is his life.  This man talks about it as his
3  passion.  If he was to lose that and if he is detained, he will
4  in fact lose it.
5            I don't know if this was necessarily timing by the
6  agent on -- in this case, but we do appreciate the fact that
7  they did pick him up after last night's show.  Tonight they are
8  dark.  And if there was any reason behind that, we do appreciate
9  that fact, but we would ask that he be released so he can get
10 back to that show because not only is it very important to him;
11 it's also very important to many other people that work under
12 him either directly or are somehow related as, say, a ticket
13 taker or something like that.  I'm talking about many people who
14 have a lot at stake here and will lose their jobs.
15           But with that being said, I want to talk about the
16 actual home itself.  As Your Honor can see from the pretrial
17 services report, it's valued at a rather large amount.  It's a
18 very large home.  And when this search warrant was in fact
19 conducted, his -- his husband was not there.  However, there was
20 a houseguest.  My client is a very social individual.  He had a
21 lot of people at this home.  There were many houseguests who
22 would stay overnight, sometimes just for one night, sometimes
23 several nights.
24           Unfortunately and to a fault my client is very naive as
25 his husband pointed out in the pretrial services report.  He

1 doesn't always have the best judgment when it comes to trying to
2 help out people and allowing them to stay in the casita and
3 whatnot. And it is our belief that one of these individuals in
4 the backyard was the one who actually downloaded this explicit
5 material. My client had nothing to do with it whatsoever.
6 There are many people coming and going in this particular
7 property.
8         (Defendant conferring with defense counsel.)
9         MR. MARCHESE: There were many computers within this
10 home. It's kind of hard for me to read from the complaint. The
11 U.S. Attorney's at a little bit more of an advantage to knowing
12 the actual knowledge of what particular items were found on what
13 particular computer, but it seemed as if from reading the
14 complaint there was something in the backyard where it was found
15 which would be --
16         (Defendant conferring with defense attorney.)
17         MR. MARCHESE: Okay. I'm getting there.
18         THE COURT: Sir, let your lawyer argue for you, and
19 then if you have something that you want to add, I'll let you
20 talk with him. Okay? You're paying him to talk for you.
21         MR. MARCHESE: And when I'm done, I will ask you if
22 there's anything else you'd like me to address to the court.
23 Okay?
24         Picking up where I left off, Your Honor, this hard
25 drive was found on the ground outside where it was known that

1 people had in fact resided in the casita.

2 What we would ask for is release with some conditions.
3 First off, he is more than ready, willing, and able to surrender
4 his passport to pretrial services. I spoke with him earlier
5 about that. He has no issue whatsoever with that. In addition,
6 if the court had wanted to go ahead with some sort of restricted
7 computer access, I've also talked to him about that possible
8 issue and he understands that and will have no problems with
9 that as well.

10 I understand that sometimes I've seen in cases like
11 this before -- every case of course is different and every judge
12 is different and all of the facts are different, but I've spoken
13 to him also about the possibility of GPS monitoring or something
14 along those lines.

15 THE COURT: Given the charge, sir, if I do release him,
16 there are mandatory conditions of pretrial release under the
17 Adam Walsh Protection Act.

18 MR. MARCHESE: And we're well aware of that. Oh. And
19 as to they had brought up going to schools, he's indicated to me
20 that was a one-time deal. It was last week. Someone that works
21 at the show had actually invited him to go to the school and
22 perform magic acts. Obviously that would not be --

23 (Defendant conferring with defense attorney.)

24 MR. MARCHESE: Okay.

25 Obviously he would not be doing that as a term of

1  pretrial release.  There are no minor children in the home.
2  There are no minor children that he would have access to.  I
3  know that the United States Attorney brought up some issues with
4  the show.  However, obviously they can somehow work around that
5  with the show and just not have the children on stage or just
6  have only adults on stage.  But staying away from direct contact
7  with minors would obviously be something that we would be
8  amenable to, and I'm sure the court would want and as well as
9  the United States Attorney's Office.
10            With that, give me one brief moment.  I would like to
11 see if my client would like me to address anything else with the
12 court.  Oh, I would also bring up that the -- my client's
13 husband is present.  They are legally married.  There was some
14 things in the complaint which obviously would be protected under
15 privilege, but with that, give me a brief moment, Your Honor.
16            (Defense counsel conferring with defendant.)
17            MR. MARCHESE:  The only thing my client would like me
18 to add is that he is not into child pornography.  This was not
19 him.  With that, we will submit it to the discretion of the
20 court, Your Honor.
21            THE COURT:  Mr. Marchese, what I am most concerned
22 about are representations that the Government made that are not
23 contained in the complaint in this case with respect to evidence
24 that the Government has that your client was engaged with Skype
25 chats with another individual, the subject of which was to make

1 arrangements for him to watch this individual have sex with his
2 minor daughter. And you have not had an opportunity to review
3 that information. So I am going to require the Government to
4 turn over whatever factual information you have to them and
5 enter a temporary order of detention and continue this
6 evidentiary or this detention hearing until tomorrow at
7 3 o'clock.
8         MR. MARCHESE: Understood.
9         THE COURT: The ...
10         This is a presumption case, and the nature of the child
11 pornography that's described in the criminal complaint is
12 especially disturbing as long -- as well as the Government's
13 proffer in this case that a great detail of the pornography that
14 they have been forensically examining consists of infant sexual
15 abuse. We're not talking about teenagers or pre -- even
16 prepubescent children.
17         I think you need an opportunity to at least examine
18 whatever the Government's evidence is. I note for the record
19 that the complaint that was sworn out in front of me says that
20 your client's husband was interviewed on January 31st, 2016, and
21 told the investigator that he was upset because of your
22 client's -- was on the internet looking at porn all the time
23 24/7; that he was the only person who had access to the
24 computers in the pool house and was the only one who knows the
25 passwords to those computers; and that your client's husband

1   relies upon him to set up the routers throughout the house,

2   outside, and in the pool house, which belies your client's

3   representations through you that he doesn't view pornography and

4   other people have access to those computers.

5           So I'm going to allow you an opportunity to explore

6   that before I make the decision and require the Government to

7   provide the information that it has that supports its statements

8   with respect to the Skype chat allegations.  A temporary order

9   of detention is entered, and I'll see you back tomorrow at

10  3 o'clock.

11          MR. MARCHESE:  And I apologize.  I might have misspoke,

12  but I meant does not view child pornography.  And if I misspoke

13  and I misled the court, I apologize.

14          MS. CARTIER-GIROUX:  Your Honor, do you want me to just

15  provide Mr. Marchese with this or the court?

16          THE COURT:  Correct.

17          MS. CARTIER-GIROUX:  Just -- okay.  Thank you.

18          THE COURT:  I want him an opportunity to -- have an

19  opportunity to respond to it because you made these statements

20  for the first time here in open court.  And before I make a

21  detention decision, I want to make sure that he has an

22  opportunity to reflect those.

23          MR. MARCHESE:  Thank you.

24          THE COURT:  We're adjourned.

25          (Whereupon the proceedings concluded at 4:20:21 p.m.)

2:16-cr-00100-GMN-CWH

--oOo--

I, Patricia L. Ganci, court-approved transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

   /s/ PATRICIA L. GANCI     MAY 5, 2019
     Patricia L. Ganci           Date