1           UNITED STATES DISTRICT COURT

2               DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,    )
                                )
5           Plaintiff,          ) Case No. 2:16-cr-00100-GMN-CWH
                                )
6       vs.                     ) Las Vegas, Nevada
                                ) March 16, 2016
7  JAN ROUVEN FUECHTENER,       )
                                )
8           Defendant.          ) DETENTION HEARING
   _____)

9

10

11

12

13             TRANSCRIPT OF PROCEEDINGS

14          THE HONORABLE PEGGY A. LEEN,
            UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19  APPEARANCES:        See Next Page

20  DIGITALLY RECORDED: Liberty Court Recorder
                        3:58:52 p.m.
21

22  TRANSCRIBED BY:     PATRICIA L. GANCI
                        (702) 385-0670
23

24  Proceedings recorded by electronic sound recording, transcript
    produced by mechanical stenography and computer.
25

────2:16-cr-00100-GMN-CWH────

1  APPEARANCES:

2  For the Plaintiff:
         **LISA CARTIER-GIROUX, AUSA**
3        UNITED STATES ATTORNEY'S OFFICE
         501 Las Vegas Boulevard South, Suite 1100
4        Las Vegas, Nevada 89101
         (702) 388-6336
5
   For the Defendant:
6        **JESS R. MARCHESE, ESQ.**
         LAW OFFICE OF JESS R. MARCHESE
7        601 South Las Vegas Boulevard
         Las Vegas, Nevada 89101
8        (702) 385-5377

9  ALSO PRESENT:

10 Pretrial Services Officer:   Zack Bowen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

―――――2:16-cr-00100-GMN-CWH―――――

1      LAS VEGAS, NEVADA; WEDNESDAY, MARCH 16, 2016; 3:58:52 P.M.
2                                --oOo--
3                            P R O C E E D I N G S
4          COURTROOM ADMINISTRATOR:  Your Honor, we are now
5  recalling the United States of America versus Jan Rouven
6  Fuechtener.  The Case Number is 2:16-mj-0179-PAL.
7          Counsel, please state your names for the record.
8          MS. CARTIER-GIROUX:  Lisa Cartier-Giroux for the United
9  States.  Good afternoon.
10         MR. MARCHESE:  And Jess Marchese on behalf of
11 Mr. Rouven.
12         THE COURT:  Who is present and in custody.  That's
13 actually his middle name.
14         THE DEFENDANT:  Jan Rouven Fuechtener.
15         THE COURT:  Fuechtener.
16         The Government moved for detained -- for detention in
17 support of this motion.  Mr. Marchese argued against detention
18 at the hearing yesterday.  The Government, however, raised new
19 information not available in the complaint for the first time
20 during the detention hearing.  I, therefore, ordered the
21 Government to turn over the information it had that supported
22 the request for detention with respect to Skype conversations
23 referred to in the Government's proffer.
24         Have you now had an opportunity to review the
25 information the Government was relying upon in making its

2:16-cr-00100-GMN-CWH

1 proffer to the court, Mr. Marchese?

2 MR. MARCHESE: I have, Your Honor.

3 THE COURT: And let me hear from you concerning
4 whatever additional arguments you can make as a result of
5 obtaining access to that additional discovery.

6 MR. MARCHESE: Thank you, Your Honor.

7 The Government was nice enough to send it over late
8 last night, and I have reviewed that with both my client and
9 myself very closely. I'd like to point out a few things on it.
10 First off, the name in which is used, this larsusa22, is not the
11 typical name that my client uses when he Skypes. He does
12 regularly Skype. As Your Honor is well aware and the Government
13 brought up to the court yesterday, he is of German descent. His
14 father is currently residing in Germany and he will Skype back
15 and forth with his father. However, he did not use that
16 particular address.

17 Now, obviously the Government can make the argument
18 that he has an alternative Skype address, but I would also argue
19 that when we look at the nature and the content of these
20 particular conversations, this is heterosexual sex allegations,
21 whatever you want to say. That is not my client's sexual
22 preference.

23 Now, the most telling and compelling information,
24 though, that I have is when we go back and we look at each and
25 every item, the times and the dates of these particular items.

1  As the court is aware, my client is an entertainer.  He is a
2  magician on the Strip.  He works every day of the week there is
3  a show.  At this particular time frame it would start at 6 p.m.
4  The show runs for about an hour and 15 minutes, and then after
5  that there is a meet-and-greet in which he is meeting and
6  signing autographs, meeting fans, et cetera.  That --
7          THE DEFENDANT:  I have one off day which is --
8          MR. MARCHESE:  I'm getting there.
9          And there is one day in which he is dark.  That
10 particular day is Tuesday, and that is important because I've
11 gone through each and every one of these.  Now, there are --
12         THE COURT:  And by "each and every one of these," are
13 you referring for the record to the Skype conversation?
14         MR. MARCHESE:  To the Skype chats, yes, that the
15 Government gave me copies of.
16         For example, Numbers 319 and 320 were on August 21st of
17 2015.  There were two particular messages that were sent at 8:21
18 and 8:22.  That is a Sunday.  At that particular time Mr. Rouven
19 would be --
20         THE COURT:  Is this a.m. or p.m.?
21         MR. MARCHESE:  This is p.m.  This is a time in which my
22 client would be in the green room; in which I've spoken with
23 several people who are in the know and there's very poor
24 reception, number one.  And, number two, he should not be having
25 these Skype chats in front of other people with this alleged

1 sexually explicit material.

2 If we look at Number 1015 on August 20 -- 31st, excuse
3 me, 2015, at 8:02 p.m., that is a Wednesday. Once again, that
4 is another time in which Mr. Rouven would have been at the show,
5 and he would have been selling merchandise.

6 There are also some other conversations in which my
7 client allegedly initiated, but clearly it goes to our point
8 that this was someone else. On August 27th, 2015, at 7:05 p.m.,
9 that is a Saturday, Mr. Rouven would have been on stage
10 performing his show in front of 500 people there. Obviously he
11 is not Skyping --

12 THE DEFENDANT: And upside down under water.

13 MR. MARCHESE: He's performing his show, performing his
14 act at that time. So it would have been impossible for him to
15 be the one who is sending these messages.

16 THE DEFENDANT: I'm a magician.

17 THE COURT: Sir, let your lawyer speak for you. Okay?
18 You wouldn't operate on yourself. So don't try to be your own
19 lawyer. Okay?

20 MR. MARCHESE: In addition, Your Honor, I have one
21 other communication, which was on a Sunday which would have been
22 the day after the last one I just referred to, August 28th,
23 2015, at 7:01 p.m. Once again, we have alleged that these
24 conversations were not made by my client. They had to be made
25 by someone else because once again he would be on stage at 7:01

1  p.m. performing his show.  I've also talked to him about the
2  days in which he would have taken off or anything along those
3  lines, and in this particular time frame, there was no dark days
4  on -- he was not on vacation or anything of that nature.
5          So we are glad that the court requested that this
6  information be turned over because it is our position that it
7  shows that someone else was in fact using the computer and
8  someone else could in fact have been the perpetrator or was in
9  fact, excuse me, the perpetrator of these alleged crimes.
10         THE COURT:  If I understand correctly, your client just
11 signed a contract with the Tropicana Hotel and Casino to perform
12 the six shows per week, correct?
13         MR. MARCHESE:  I think he re-upped.
14         How long had you been there?
15         THE DEFENDANT:  I was there -- I'm there since over a
16 year.  I started in November 2014.
17         THE COURT:  '14 is what this says.
18         THE DEFENDANT:  And it's a very successful show.  I
19 have more than 20 employees who would be all out of a job if I
20 don't continue to go on stage.
21         THE COURT:  All right.
22         MR. MARCHESE:  And I -- if the court has any questions
23 in reference to the transactional portion, I've had his
24 transactional attorney come to court, if any of those items are
25 of -- the court has questions with.

1    THE COURT: No, I was just clarifying because you have
2 made the point that at least for a couple of these Skype chats
3 you don't believe it could have been your client because he
4 would have been on stage performing. And so I was -- I knew
5 that he had had a contract with another entity, and I was just
6 double-checking. He used to work for the Riviera Hotel and
7 Casino.
8    THE DEFENDANT: That was before.
9    THE COURT: Yes, sir. I see that, and I was just
10 double-checking because these Skype chats are alleged to have
11 occurred.
12    And so, counsel for the Government, what reason do you
13 have to believe that these Skype chats -- chats that you
14 attribute to him are actually his chats as opposed to anyone
15 else's?
16    MS. CARTIER-GIROUX: Your Honor, if -- and I have a
17 copy if the court wants to see. I wrote on it. But if you look
18 at the top of the chats, the chat times are UTC times.
19    THE COURT: Which means?
20    MS. CARTIER-GIROUX: Means they're four hours -- seven
21 hours behind or ahead?
22    Ahead. Seven hours ahead. We went through all of
23 these chats, and we indicated the times when they were going on.
24 And, in fact, they happen mostly after midnight. Some occur at
25 4:29 a.m. our time, 3:56 a.m. our time. We verified that in

1  fact he was not working on those -- during those times, those
2  hours.
3        Additionally, we checked to ensure that he was in the
4  country at those times. We checked international travel. He
5  was here. Actually at the top you can see on the chats it says
6  times are in UTC.
7        THE COURT: And UTC means for the record?
8        (Prosection conferring.)
9        MS. CARTIER-GIROUX: I had somebody look it up. I
10 believe it's Universal Time -- Greenwich Mean Time.
11       (Prosecution conferring.)
12       MS. CARTIER-GIROUX: Okay. Coordinated Universal Time.
13 I guess that's what it sounds -- stands for. I've never heard
14 of it before, but I've heard of Greenwich Mean Time. But it's
15 actually on the Skype chats. It indicates that that's the time
16 frame.
17       My agent went through each of these chats, wrote down
18 the PST time, and if you go through them, they are all times
19 when he is not at the Tropicana. As I indicated, they're after
20 midnight, 4 o'clock in the morning, 3:45 in the morning our
21 time.
22       Additionally, the Government's position is that not
23 only will it have probable cause to show that he is this Lars
24 individual, but will be able to prove beyond a reasonable doubt
25 and I'll give the court a reason -- or two reasons actually why.

1  The first one being this individual -- this defendant
2  acknowledged to -- to the agent that he uses the e-mail account,
3  and I'll tell you exactly what he said.  He used the e-mail
4  account larsschmidt22@hotmail.com, and he used this e-mail
5  address for purchasing things on Craig's List and eBay and for
6  registering on adult pornography sites.  So he acknowledged that
7  he uses the name Lars Schmidt.
8         And in these chats on page 9 of the chats he actually
9  indicates -- well, it looks like he is downloading an ap, a
10 Skype ap.  It's on page 9 at the top.  And in there it shows
11 that the author -- author is Lars Schmidt.
12        Additionally, the court should be aware that there was
13 a folder found, a program -- a peer-to-peer program folder with
14 Lars45.  That's on page 5 of the complaint.  And in these chats
15 the individual who he's chatting with wants him to put on
16 GiGTRiBE his Lars45 folder.  That was -- that Lars45 folder was
17 actually located on an external hard drive found at this
18 individual's home.
19        Your Honor, these chats go on from August 16th of 2015
20 until August the 31st of 2015.  In them there are multiple
21 occasions where he is trying to set up with this other
22 individual to watch him have -- have sex with his daughter.  And
23 I know that Defense counsel claims, well, he's -- he's gay.
24 He's not straight.  Why would he watch heterosexual acts?  Well,
25 in the chats the other guy's asking him to masturbate for him.

1  They are two males communicating with one another.  You know, I
2  don't know what the defendant's into, but just because you're
3  gay doesn't mean you won't watch any other type of pornography.
4  Doesn't have to always be gay pornography that you watch.
5          But he's asking him to masturbate for him.  The other
6  user is asking this defendant to masturbate for him over Skype,
7  and this defendant is asking the other user to have sex in very
8  explicit terms, uses the F word his daughter.  And they actually
9  set up a time after 11 o'clock our time, PST time, to have this
10 happen.
11         So the Government's position is that this individual
12 poses a danger to the community.  We also believe he is a flight
13 risk because of his -- his immigration status.  However, the
14 stronger argument we believe is that he has a likelihood to
15 cause potential harm in the community.
16         THE COURT:  Sir, I am going to order you detained as a
17 risk of reoffending finding that there are no conditions or
18 combination of conditions that would reasonably assure that you
19 would not reoffend if I ordered you released.  I believe that
20 there are conditions that could be fashioned to reasonably
21 assure that you would appear in court where required.  You have
22 substantial ties to this community.  You are in the process of
23 obtaining permanent legal status, and you have loved ones in
24 this community.  You have a documented work history.
25         And so I believe that although there are some reasons

1  to believe you might flee because of your ties to Germany and
2  other communities that there are conditions that could be
3  reasonably fashioned, but you're charged with an offense for
4  which the law authorizes detention in this case.  The amount of
5  the pornography that was found on your computers in your home is
6  substantial.  The weight of the evidence is substantial given --
7         THE DEFENDANT:  It wasn't in the home.  It was on the
8  ground.
9         THE COURT:  It was in and -- in and around your home.
10 And, yes, the one hard drive the complaint does say was on the
11 ground outside the pool house.
12        THE DEFENDANT:  And the other one was in the --
13        THE COURT:  Sir, I'm not going to argue with you.  You
14 don't get to argue with me.  I appreciate that you don't agree
15 with me, but the -- the graphic images depicting child
16 pornography in this case involving very young children, the fact
17 that the Government's proffer indicates that you have been
18 engaged in Skype conversations with another adult male about
19 having -- him having sex with someone he represented was his
20 daughter while the two of you engaged in conduct, the weight of
21 the evidence being supported by statements made by your husband
22 that you watch internet porn all of the time, 24/7, and you are
23 the only person who had access to the computer in the pool house
24 as far as your husband know --
25        THE DEFENDANT:  That wasn't true, and he can --

1  THE COURT: Sir.

2  THE DEFENDANT: Okay.

3  THE COURT: He said what he said to the investigator,
4  and that's evidence that I have to consider.

5  He also told the investigator that you were the only
6  one who knows the passwords to the computers on which the
7  pornography was found and that he relies upon you to set up all
8  of the computers and the routers throughout the house outside
9  and in the pool house.

10  THE DEFENDANT: He's here. You can ask him again.

11  THE COURT: You're ordered detained pending further
12  proceedings. You have the right to appeal my order to the
13  district judge. You're remanded to the custody of the United
14  States Marshal Service.

15  If there are no other matters, we are adjourned.

16  (Whereupon the proceedings concluded at 4:14:04 p.m.)

17  --oOo--

18  I, Patricia L. Ganci, court-approved transcriber, certify
19  that the foregoing is a correct transcript transcribed from the
20  official electronic sound recording of the proceedings in the
21  above-entitled matter.

22

23  /s/ PATRICIA L. GANCI          MAY 5, 2019
       Patricia L. Ganci                 Date
24

25