```
 1                    UNITED STATES DISTRICT COURT

 2                          DISTRICT OF NEVADA

 3

 4  UNITED STATES OF AMERICA,    )
                                 )
 5             Plaintiff,        ) Case No. 2:16-cr-00100-GMN-CWH
                                 )
 6      vs.                      ) Las Vegas, Nevada
                                 ) October 6, 2016
 7  JAN ROUVEN FUECHTENER,       )
                                 )
 8             Defendant.        ) MOTION HEARING
    _____)

 9

10

11

12

13                     TRANSCRIPT OF PROCEEDINGS

14              THE HONORABLE GLORIA M. NAVARRO,
                  UNITED STATES DISTRICT JUDGE
15

16

17

18

19  APPEARANCES:         See Next Page

20  DIGITALLY RECORDED:  Liberty Court Recorder
                         11:19 a.m.
21

22  TRANSCRIBED BY:      PATRICIA L. GANCI
                         (702) 385-0670
23

24  Proceedings recorded by electronic sound recording, transcript
    produced by mechanical stenography and computer.
25
```

2:16-cr-00100-GMN-CWH

```
1  APPEARANCES:

2  For the Plaintiff:
          ELHAM ROOHANI, AUSA
3         LISA CARTIER-GIROUX, AUSA
          UNITED STATES ATTORNEY'S OFFICE
4         501 Las Vegas Boulevard South, Suite 1100
          Las Vegas, Nevada 89101
5         (702) 388-6336

6  For the Defendant:
          JESS R. MARCHESE, ESQ.
7         LAW OFFICE OF JESS R. MARCHESE
          601 South Las Vegas Boulevard
8         Las Vegas, Nevada 89101
          (702) 385-5377
9
          BENJAMIN C. DURHAM, ESQ.
10        BENJAMIN DURHAM LAW FIRM
          601 South 10th Street
11        Las Vegas, Nevada 89101
          (702) 631-6111
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

─────2:16-cr-00100-GMN-CWH─────

1       LAS VEGAS, NEVADA; THURSDAY, OCTOBER 6, 2016; 11:19 A.M.
2                              --oOo--
3                          P R O C E E D I N G S
4           COURTROOM ADMINISTRATOR:  This is the time set for the
5  hearing regarding waiver of jury trial in Case Number
6  2:16-cr-100-GMN-CWH, United States of America versus Jan Rouven
7  Fuechtener.
8           Counsel, please make your appearances for the record.
9           MS. ROOHANI:  Good morning, Your Honor.  Eli Roohani
10 and Lisa Cartier-Giroux for the United States.
11          THE COURT:  Good morning, Ms. Cartier-Giroux.  Good
12 morning, Ms. Roohani.
13          MR. MARCHESE:  Good morning, Your Honor.  Jess Marchese
14 and Benjamin Durham on behalf of the defendant.  He is present
15 and in custody.
16          THE COURT:  And good morning, Mr. Marchese.  Good
17 morning, Mr. Durham.  And good morning, Mr. Fuechtener.
18          THE DEFENDANT:  Good morning.
19          THE COURT:  All right.  So what I wanted to do today is
20 we have a canvass, which is essentially a series of questions
21 that I want to ask you, sir, in order to make sure that you
22 understand what waiving a jury trial really means, that you've
23 had enough time to consider it, and so forth.  So first we're
24 going to go ahead and have you sworn in, then I'll ask you the
25 questions, and then make my decision about whether or not to

1  accept your waiver of jury trial.
2          COURTROOM ADMINISTRATOR: Please raise your right hand.
3          JAN ROUVEN FUECHTENER, having duly been sworn, was
4  examined and testified as follows:
5          COURTROOM ADMINISTRATOR: Thank you. You may be
6  seated.
7          THE COURT: All right. Now, just to make sure, do you
8  understand, sir, that because you have just been sworn to tell
9  the truth your answers to my questions will be subject to the
10 penalties of perjury?
11         THE DEFENDANT: Yes.
12         THE COURT: All right. So this is a request by --
13 filed by your counsel. I'm assuming that you had time to speak
14 to him about the request to have the judge render a verdict --
15         THE DEFENDANT: Yes.
16         THE COURT: -- in the case and not have a jury. Is
17 that right?
18         THE DEFENDANT: Yes.
19         THE COURT: All right. And I did receive the -- the --
20 actually, the written waiver of jury trial, do you have that,
21 Aaron?
22         COURTROOM ADMINISTRATOR: I do. It's currently
23 receiving.
24         THE COURT: Oh. Okay. It's printing out. So we'll
25 skip that part.

1         So I just want to make sure that it's knowing and
2 voluntary.  So do you read, write, and understand the English
3 language?
4         THE DEFENDANT:  For the most part, yeah.
5         THE COURT:  Okay.
6         THE DEFENDANT:  There might be things where I have to
7 ask for words or two, but in general I understand it, and if
8 not, I am going to say it.
9         THE COURT:  All right.  Did you review the waiver of
10 jury trial form before you signed it?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Okay.  And did you need to ask anybody any
13 questions about it?
14         THE DEFENDANT:  No.
15         THE COURT:  All right.  And have -- well, let's go back
16 to, how old are you, sir?
17         THE DEFENDANT:  I'm 39.
18         THE COURT:  All right.  And how far did you go in
19 school?
20         THE DEFENDANT:  I finished -- in Germany it's -- I
21 would have been able to study, to go to university.  So what's
22 it called here?  Like ... high school.  I finished high school.
23         THE COURT:  It's the equivalent of a high school
24 degree --
25         THE DEFENDANT:  I didn't go to university, but I have

1  the degree.
2          THE COURT: All right. And have you taken any drugs,
3  medicines, pills, alcohol of any kind in the last 24 hours?
4          THE DEFENDANT: No.
5          THE COURT: Are you being treated for any illness?
6          THE DEFENDANT: No.
7          THE COURT: Is there any medication you think you
8  should be taking that for whatever reason you're not taking?
9          THE DEFENDANT: I'm, like, in segregation since nearly
10 seven months and I'm a little bit depressed in the morning, but
11 then I have a coffee and it's getting better.
12         THE COURT: Okay.
13         THE DEFENDANT: So I think the trial's going to be in
14 two weeks, yeah?
15         THE COURT: What?
16         THE DEFENDANT: I think I'm good right now without.
17         THE COURT: Okay. So I want to make sure you're not
18 rushing into anything or anxious or so depressed that you're
19 just signing anything they put in front of you.
20         THE DEFENDANT: No, no.
21         THE COURT: I want to make sure you understand --
22         THE DEFENDANT: No.
23         THE COURT: -- what's going on.
24         THE DEFENDANT: No, no.
25         THE COURT: All right. And -- okay. So I do have now

1 here a copy of the waiver of jury trial that you signed on the
2 second page.  Is that your signature, sir?
3             THE DEFENDANT:  Yes.
4             THE COURT:  With the big R, the squiggle, and big X?
5             THE DEFENDANT:  The big R, yeah, that's my signature.
6             THE COURT:  Okay.
7             All right.  Now, the U.S. Attorney's Office hasn't
8 signed off on it.  Ms. Roohani, do you have any objection?
9             MS. ROOHANI:  We have no objection and I will sign it,
10 Your Honor.
11            THE COURT:  Okay.  So you do plan to sign that as well.
12            And, Mr. Marchese, is there any reason that you believe
13 that the defendant should not be waiving his right to a jury
14 trial?
15            MR. MARCHESE:  None, Your Honor.  We spoke about the
16 issue at length.
17            THE COURT:  Okay.  And, Mr. Fuechtener, did you have
18 sufficient time to meet with your attorneys, Mr. Durham and
19 Mr. Marchese, to speak about the difference between having a
20 jury trial and a bench trial?
21            THE DEFENDANT:  Yes.
22            THE COURT:  Do you feel that you understand the
23 difference between a jury trial and a bench trial?
24            THE DEFENDANT:  Yeah, I think Germany we don't have a
25 jury.  In Germany we -- it's -- you go in front of the judge,

1  and the judge is a legal expert and makes the decision.  And
2  that's how I know it.  So I never attended a jury trial and I
3  never attended a bench trial, but from my feeling it's a -- it's
4  a very -- the case has very technical parts to it and I think
5  that's all we need, a legal and a fair -- I need a fair trial
6  and with a legal expert --
7           THE COURT:  All right.
8           THE DEFENDANT:  -- who makes the decision.
9           THE COURT:  Well, in the United States the judge still
10 is the legal expert as to the laws.  However, we permit the jury
11 to make the determination as to the facts.  So they are the
12 judge of the facts.  And as fair as I try to be, I'm only one
13 person with one set of experiences in my life.  And I'm limited
14 by those experiences, but when we have a jury that is
15 compromised of your peers -- we have different people from
16 different walks of life, different ages, different professions,
17 different genders.  And they cumulatively together bring
18 together their experiences in determining the credibility of
19 witnesses.  They use their common sense to determine which facts
20 are true and which facts are not true.
21          And so in that way the jury determines the facts and
22 then applies them to the law, and I'm the legal expert that says
23 what the law is that they will be using.  So I will determine
24 what the jury instructions are that are given to the jury, but
25 ultimately the jury determines which facts are true that are

1 provided at trial and then applies them to the jury instructions
2 which are the law.  And that's how they reach their verdict of
3 either guilty or not guilty, and then I'm the judge that
4 sentences the person if they are guilty.
5 　　　　　So that's -- and that's a very abbreviated way of
6 explaining of how it works in the United States, but I think
7 it's important that you understand that; that I would still be
8 the judge of the law and the legal expert in that sense, but the
9 difference is that with a jury trial you have the jury making
10 decisions about the facts and the case and what seems reasonable
11 or not reasonable.
12 　　　　　THE DEFENDANT:  Yes.  They tell me it's a jury of my
13 peers, but there won't be a German.  I mean, this is not my ...
14 my native country.  I'm ...
15 　　　　　THE COURT:  I'm not German either, though.  So you have
16 a better chance of getting one of those 12 people being German.
17 You know I'm not German.  So if you're looking --
18 　　　　　THE DEFENDANT:  Yeah, I know.
19 　　　　　THE COURT:  -- for someone like that, then you're
20 probably better off going with a jury trial.  So I just wanted
21 to make sure -- I don't have -- I don't have a, what do you say,
22 a horse in this race.  I don't have a preference one way or the
23 other whether you have a bench or jury trial.  I just want to
24 make sure that you understand, fully understand, the
25 consequences of waiving and giving up forever your right to a

1  jury trial because it's a very important thing that we provide
2  in this country and we're very proud of that opportunity that we
3  give folks to have a jury trial.  So I just wanted to make sure
4  you understand what you're giving up.
5          And if you want to give it up, that's fine so long --
6          THE DEFENDANT:  You made me thinking now.
7          THE COURT:  It's so long as it's an intelligent
8  decision.  That's all.  Do you want to have a little more
9  time --
10         THE DEFENDANT:  Yeah.
11         THE COURT:  -- to talk about it with your attorneys?
12         THE DEFENDANT:  Yeah.
13         THE COURT:  That's fine.  We can do that.
14         Now, we do have a calendar call coming up and we do
15 have -- uhm.  I'm looking --
16         THE DEFENDANT:  No, I think you -- I don't need to --
17         THE COURT:  That's enough. That's enough.  We're good.
18 We're good.  I'm going to now address the attorneys here because
19 there was a motion that was filed under seal and responded to
20 under seal.  So I want to address that.
21         Do you need me to seal the courtroom in order to
22 address it?  I didn't see anything in there that we couldn't
23 address on the record.  There's just a request for me to make a
24 visit.
25         MS. ROOHANI:  Right, and I think that Your Honor can

1  address it on the record.  I think that the only reason that you
2  asked for it to be sealed is because of the inclusion of the
3  address.  It's my understanding that that address has actually
4  already been posted in the media.
5          So I defer to whatever the Defense would like to do,
6  but I have no problem one way or the other.
7          THE COURT:  All right.  Mr. Marchese?
8          MR. MARCHESE:  I am ready to argue if Your Honor would
9  like to address it today.
10         THE COURT:  Okay.
11         MR. MARCHESE:  I was going to hold back on filing a
12 response to their opposition pending the outcome of the hearing
13 because I do think that -- whether it's a bench trial or a jury
14 trial, I do think it does change the argument a little bit, but
15 either way, Your Honor --
16         THE COURT:  Okay.
17         MR. MARCHESE:  -- I would do my best.
18         THE COURT:  Well, here's my position.  It's not -- it's
19 not a terrible idea.  However, it's a little bit short-sighted
20 and here's why.  I think that what might be better is if -- if
21 you don't have -- if you don't have the funds to do this, you
22 can always petition the court for the funds, but I think that it
23 would be more appropriate if you want me to see what the house
24 looked like from the outside, the inside, the rooms, their
25 proximity or their lack of proximity of this and that, and where

1  things are found if you created either a video, photos, screen
2  shots, diagram, some other thing like that.  Because if
3  worst-case scenario he is convicted, you're going to want the
4  appellate court to look at it, too.  And they're not going to
5  come to Las Vegas to visit.
6            So that would be my suggestion.  And I realize that
7  might be a little more expensive than what you had in mind, but
8  we do have in the CJA plan that even if a person retains an
9  attorney, if they only thought they needed to retain an attorney
10 and all the money is gone and they don't have the funds and have
11 become indigent and now can't hire experts or other folks that
12 they need to help prepare for the defense, that could be made
13 available to you, with a showing that would be an in camera
14 without the Government here.  But you would have to make a
15 showing of that indigency need.
16            But either way it just seems to me, you know, it could
17 be something very simple.  It could be something very elaborate.
18 The technology is out there.  If you're looking at the Modern
19 Homes and such, they do that, right, and a lot of the folks on
20 TV do that all the time, too.  So I think maybe there would be a
21 better way to do it just so that you would preserve all of this
22 information for the future worst-case scenario, right.  You're
23 preparing for the best, for a win at trial.
24            MR. MARCHESE:  Sure.  And that's not a problem, and I
25 had actually thought about that as plan B.  I just didn't want

1  to put that in there because that might give the court a little
2  bit more of a reason to rule against me and then go with that.
3  The only thing --
4          THE COURT:  Yeah.
5          MR. MARCHESE:  -- I would add is today our exhibits are
6  due.  I am not obviously --
7          THE COURT:  Right.
8          MR. MARCHESE:  -- going to be able to get that done by
9  today.
10         THE COURT:  That's fine.
11         MR. MARCHESE:  So if the court is going that way, I
12 would just ask for a little bit of latitude --
13         THE COURT:  Yes.
14         MR. MARCHESE:  -- so we can get that done.
15         THE COURT:  Definitely.  Yeah.
16         All right.  Ms. Roohani, do you have any objection to
17 that idea?
18         MS. ROOHANI:  No, Your Honor.  As we noted in our
19 opposition, we don't actually know what the state of the house
20 is.  We haven't been there since the execution of the search
21 warrant.  So of course we'd like to review them and speak to our
22 agents who did execute the search warrant and see what the
23 differences are, but that's all things that we can address at
24 trial if need be.
25         THE COURT:  All right.

1            MS. ROOHANI:  Or at calendar call if the court is
2    amenable to that.
3            THE COURT:  Okay.
4            So do you want me to set a new deadline or should we
5    just say before calendar call have this information provided if
6    possible?  If not, you know, we'll take it up at the time of
7    calendar call if it turns out that it's just not possible to
8    find someone who is available to do this.
9            MR. MARCHESE:  Uhm.  I will -- as soon as I get out of
10   court today, I'll get on it, so to speak.  We have calendar call
11   on Tuesday, but, you know, if I need to meet a video crew there
12   over the weekend or whatever, I'll make sure I have it done.  If
13   not, I'll contact the Government.  I'll contact chambers.  I
14   mean, I think we can figure something out.
15           THE COURT:  Okay.
16           Do we -- do we -- while you're here, do you want to
17   look at the calendar to see if we can push this off for another
18   two weeks?  If that would be -- make it easier for everyone to
19   get done what they need to get done.
20           MS. ROOHANI:  Push trial off, Your Honor, is that what
21   you're suggesting, or push calendar call?
22           THE COURT:  Continue the calendar call and prospective
23   trial date if we already know that we might be having a problem
24   getting everything ready.
25           MS. ROOHANI:  Your Honor, the only potential problem

1  that I see is I have another trial scheduled in front of Judge
2  Gordon on October the 31st.  I'll find out on Tuesday whether
3  that will be continued or not, but it won't be until Tuesday
4  afternoon.
5          THE COURT:  Okay.
6          MS. ROOHANI:  So hypothetically, yes, we'd have no
7  objection assuming that gets moved, but that case is older.  And
8  I assume that Judge Gordon, if the defendant insists on going
9  forward on that, that he will make me appear and go forward on
10 that date.
11         THE COURT:  Okay.  And the only other case ...
12         Yeah.  Actually, that's -- I think that's the problem
13 that we have here is we have older cases as well.  I can't tell
14 off of that if they're in or out of custody either.  All right.
15 So I guess we could just play it by ear.  The parties are free
16 to call Aaron, my courtroom deputy, if you do decide that you
17 want to explore the option of what would be the next available
18 date that would be likely being given the call.  And he's got my
19 calendar with the case numbers so we know which ones are older
20 and he can tell you which ones are in or out of custody.  So it
21 makes it easier to try to guess who is going to be ready or not
22 ready or would be available for a continuance.
23         MS. ROOHANI:  Your Honor, just to be clear, are we
24 still -- are the document deadlines still today?  Are we still
25 meeting for calendar call on Tuesday?

1  THE COURT: Yeah, but the document deadline is still
2 today except for any material that the Defense wants to provide
3 regarding the layout of the residence, and that will be due by
4 calendar call.
5  MR. MARCHESE: We'll get it done, Your Honor.
6  THE COURT: Like I said, if you don't get it done by
7 calendar call, we'll address it at that time and see what we
8 should do about that.
9  MS. ROOHANI: And, Your Honor, I may have missed it,
10 but I don't actually know. Did we decide that it was going to
11 be a jury trial or if it was going to be before Your Honor?
12  THE COURT: He said he wants more time. So we don't
13 know yet.
14  MS. ROOHANI: Okay. That's fine.
15  THE COURT: So I did not accept his current waiver of
16 jury trial, but he's going to have some time to discuss it with
17 his attorneys a little bit more. And so --
18  THE DEFENDANT: I don't need more time. That was --
19  THE COURT: No, no, no. I want you to take the time.
20 We'll talk about it at calendar call. It doesn't mean you
21 can't.
22  THE DEFENDANT: Okay.
23  THE COURT: I'm not -- I'm not denying it. We're just
24 going to let you have a little bit more time to discuss it with
25 your attorneys. When we come back here at calendar call, I'll

1  canvass you again.
2           THE DEFENDANT:  Can I ask you a question?
3           THE COURT:  Ask -- ask your attorney the question first
4  and then ...
5           (Defendant conferring with defense counsel.)
6           MR. MARCHESE:  I believe Your Honor has given him the
7  option to just wait until calendar call and we can address it
8  further at that time?
9           THE COURT:  Right, you may request --
10          MR. MARCHESE:  I'll visit him.
11          THE COURT:  -- for a bench trial.  I'm not ruling on it
12 right now because I'm not comfortable that you've had enough
13 time to discuss it with your attorneys.  So I want to make sure
14 that you have enough time.  So I'm not denying it or granting
15 it.  I'm going to consider it at calendar call.
16          I did deny the motion to inspect the scene, but I'm
17 giving you the alternative of more time or funding in order to
18 get that done in another way, alternative way.
19          All right.  Did we address everything?  I think we're
20 good, right?  All right.  Thank you.
21          MR. DURHAM:  Thank you.
22          THE COURT:  Thank you, counsel. We'll see you back
23 here at calendar call.
24          COURTROOM ADMINISTRATOR:  Off record.
25          (Whereupon the proceedings concluded at 11:35 a.m.)

2:16-cr-00100-GMN-CWH

--oOo--

I, Patricia L. Ganci, court-approved transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

　　/s/ PATRICIA L. GANCI　　　　MAY 5, 2019
　　　Patricia L. Ganci　　　　　　　　Date