—2:16-cr-00100-GMN-CWH—

1                    UNITED STATES DISTRICT COURT

2                         DISTRICT OF NEVADA

3

4   UNITED STATES OF AMERICA,      )
                                   )
5                 Plaintiff,       )  Case No. 2:16-cr-00100-GMN-CWH
                                   )
6        vs.                       )  Las Vegas, Nevada
                                   )  October 11, 2016
7   JAN ROUVEN FUECHTENER,         )
                                   )
8                 Defendant.       )  CALENDAR CALL
    _____    )
9

10

11

12

13                     TRANSCRIPT OF PROCEEDINGS

14               THE HONORABLE GLORIA M. NAVARRO,
                    UNITED STATES DISTRICT JUDGE
15

16

17

18

19  APPEARANCES:            See Next Page

20  DIGITALLY RECORDED:     Liberty Court Recorder
                            9:15 a.m.
21

22  TRANSCRIBED BY:         PATRICIA L. GANCI
                            (702) 385-0670
23

24  Proceedings recorded by electronic sound recording, transcript
    produced by mechanical stenography and computer.
25

—2:16-cr-00100-GMN-CWH—

1 | APPEARANCES:

2 | For the Plaintiff:
   **ELHAM ROOHANI, AUSA**
3 | **LISA CARTIER-GIROUX, AUSA**
   UNITED STATES ATTORNEY'S OFFICE
4 | 501 Las Vegas Boulevard South, Suite 1100
   Las Vegas, Nevada 89101
5 | (702) 388-6336

6 | For the Defendant:
   **JESS R. MARCHESE, ESQ.**
7 | LAW OFFICE OF JESS R. MARCHESE
   601 South Las Vegas Boulevard
8 | Las Vegas, Nevada 89101
   (702) 385-5377

9 |
   **BENJAMIN C. DURHAM, ESQ.**
10 | BENJAMIN DURHAM LAW FIRM
   601 South 10th Street
11 | Las Vegas, Nevada 89101
   (702) 631-6111

12 |
   ALSO PRESENT:
13 | Special Agent Mari Panovich

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

—2:16-cr-00100-GMN-CWH—

1        LAS VEGAS, NEVADA; TUESDAY, OCTOBER 11, 2016; 9:15 A.M.

2                              --oOo--

3                     P R O C E E D I N G S

4        COURTROOM ADMINISTRATOR:  Next matter on calendar call

5  is Case Number 2:16-cr-100-GMN-CWH, United States of America

6  versus John Rouven Fuechtener.

7        Counsel, please state your name for the record.

8        MS. ROOHANI:  Good morning, Your Honor.  Eli Roohani

9  and Lisa Cartier-Giroux for the United States.  We're joined at

10  counsel table by Special Agent Mari Panovich of the FBI who is

11  our case agent.

12        THE COURT:  Could you please spell her last name.

13        MS. ROOHANI:  Sure, P-A-N-O-V-I-C-H.

14        THE COURT:  All right.  Well, good morning, Special

15  Agent Panovich and Ms. Cartier-Giroux, as well as Ms. Roohani.

16        MS. ROOHANI:  Thank you, Your Honor.

17        MR. MARCHESE:  And good morning, Your Honor.  Jess

18  Marchese on behalf of Mr. Fuechtener and Benjamin Durham as

19  well.  And Mr. Fuechtener is in custody.

20        THE COURT:  All right.  Well, good morning,

21  Mr. Marchese.  Good morning, Mr. Durham, Mr. Fuechtener.

22        THE DEFENDANT:  Good morning.

23        THE COURT:  We did receive a pro hac vice petition from

24  another counsel.  However, there's no certificate of good

25  standing attached to it.  And there's a signature by

—2:16-cr-00100-GMN-CWH—

1   Mr. Marchese where it should be the signature of Mr. Fuechtener.

2   I -- I don't know if the order has been entered yet.  What I do

3   in these cases is I give everybody notice of what's missing or

4   wrong with the petition so it can be corrected within a certain

5   amount of time, usually 21 days, without having to pay again to

6   file a new pro hac vice.  So that -- looking, I don't think that

7   minute order has been entered yet.

8           But after that minute order is entered that will help

9   guide you so that you can refile that within the specified time.

10   Otherwise, you have to file it all over again and pay the fee

11   all over again.  So I'm not granting that today, but just so you

12   know I have received it and it's been reviewed.

13           MS. ROOHANI:  Your Honor, may I be heard on the pro hac

14   application just briefly?

15           THE COURT:  Yes.

16           MS. ROOHANI:  I'm sorry.  As you know, Amber Craig was

17   a former prosecutor with our office and recently departed our

18   office two months ago.  I've spoken with Mr. Marchese and

19   Mr. Durham about this.  I don't know whether their intention is

20   to not file an amended application, but if that is the

21   intention, I wanted to put the court on notice that Ms. Craig

22   does have a conflict.  Both Ms. Cartier-Giroux and myself have

23   spoken to her about this case, including the merits of it,

24   potential defenses, and also how the Government would respond to

25   those defenses which constitutes trial strategy which means that

————2:16-cr-00100-GMN-CWH————

1  she was personally and substantially involved both under the

2  Rules of Professional Responsibility.  In the State of Nevada

3  under Rule 1.11(a) she is disqualified.

4       I'm going to ask Your Honor per our general counsel in

5  D.C. as well as the Professional Responsibility Administrative

6  Office that you inquire either in our presence or not to Defense

7  counsel about what Ms. Craig may have communicated to them

8  because under the rule also there is an imputed conflict.  And

9  unfortunately, or fortunately, the burden is on them to prove

10 that there was not information conveyed that would violate that

11 conflict.

12      So I wanted to put the court on notice of that.  I

13 don't know if that's something that you want to do today, if you

14 want to do later.  Even if Ms. Craig ultimately does not end up

15 submitting an application, the Government would still request

16 that Your Honor conduct an inquiry based upon the information

17 that's now been brought to our attention.

18      THE COURT:  All right.  Well, I prefer you file -- and

19 I'm on notice and I appreciate you providing me the notice, but

20 I would prefer that you file a written request for that so --

21      MS. ROOHANI:  Certainly.

22      THE COURT:  -- that way then everybody can address it

23 more easily.

24      All right.  Well, as I said, I'm not ruling on it

25 today, but essentially what the minute order -- and it's a

---2:16-cr-00100-GMN-CWH---

1  standard minute order.  It happens all the time.  It just points

2  out the deficiencies, gives a certain amount of time to correct

3  it to be filed as an amended PHV.  Otherwise, if you miss the

4  deadline, then you need to pay the fee again.

5        And if you decide not to file it, that's okay, too.

6  You don't have to, but this other issue that's been raised

7  regarding the imputed conflict and what we should or shouldn't

8  do about that will need to be addressed after the motion is

9  filed so that the Defense has an opportunity to respond in

10  writing as well.

11        All right.  So the other thing that we had scheduled --

12  well, originally we had scheduled for today was the issue of

13  whether or not Mr. Fuechtener understood his right to a jury

14  trial and whether or not he still wanted to waive his right to a

15  jury trial.

16        So, Mr. Marchese, did you have sufficient time to

17  review and speak to your client and advise him accordingly?

18  Should we go forward with the canvass?

19        MR. MARCHESE:  I think we're ready to go forward today,

20  Your Honor.  Thank you.

21        THE COURT:  Okay.

22        All right.  Nick, if you don't mind, please, swearing

23  in Mr. Fuechtener.

24        COURTROOM ADMINISTRATOR:  Please stand and raise your

25  right hand.

—2:16-cr-00100-GMN-CWH—

1          JAN ROUVEN FUECHTENER, having duly been sworn, was

2    examined and testified as follows:

3          COURTROOM ADMINISTRATOR:  Thank you.

4          THE COURT:  You can go ahead and be seated.  This is

5    sort of a lengthy canvass here.

6          So, first of all, Mr. Fuechtener, do you understand

7    that because you have just sworn to tell the truth your answers

8    to my questions will be subject to the penalties of perjury?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  All right.  And I am in receipt of your

11   waiver of jury trial.  So I want to make sure that before I

12   accept your waiver of jury trial that you understand, you know,

13   what you're waiving and that it is being done voluntarily.  So

14   there's a number of questions I need to ask you.  And if at any

15   time you don't understand one of my questions, you want me to

16   rephrase it, clarify it, speak louder, or for any reason you

17   want to pause and stop and speak to either one of your

18   attorneys, I do encourage you to do so.  It is essential that

19   you understand everything that we're talking about today.  Okay?

20         THE DEFENDANT:  Yes.

21         THE COURT:  So how old are you, sir?

22         THE DEFENDANT:  39 years.

23         THE COURT:  And how far did you go in school?

24         THE DEFENDANT:  I finished high school.

25         THE COURT:  And have you taken any drugs, medicine,

─2:16-cr-00100-GMN-CWH─

1 | alcohol of any kind in the last 24 hours?

2 |    THE DEFENDANT:  No.

3 |    THE COURT:  Are you being treated for any illness or

4 | taking any medication?

5 |    THE DEFENDANT:  No.

6 |    THE COURT:  And is there any medication you think you

7 | should be taking, but that for whatever reason they're not

8 | providing to you at the jail yet?

9 |    THE DEFENDANT:  No.

10 |    THE COURT:  And have ...

11 |    And, Mr. Marchese and Ms. Roohani or Ms. Cartier-Giroux

12 | or Mr. Durham, is there anything that causes you any concern or

13 | reluctance as to whether Mr. Fuechtener is competent to

14 | understand the proceedings today and make a decision about

15 | whether or not he should be waiving his jury trial?

16 |    MS. ROOHANI:  No concerns on behalf of the Government,

17 | Your Honor.

18 |    MR. MARCHESE:  No, Your Honor.

19 |    THE COURT:  Thank you.

20 |    All right.  So, Mr. Fuechtener, I did have the waiver

21 | of jury trial at the last hearing, but I'm not sure if we have

22 | it today.

23 |    Nick, do we have a new one or ...

24 |    COURTROOM ADMINISTRATOR:  The last one I see was filed

25 | on September 28th, 2016.

—2:16-cr-00100-GMN-CWH—

1          THE COURT:  All right.  And so did you have enough

2  time, Mr. Fuechtener, to review that document before you signed

3  it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And did you have sufficient time to discuss

6  with your attorneys the charges against you?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And do you understand that these are felony

9  offenses?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And do you feel that you understand the

12  charge?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And did you speak to your attorneys about

15  the consequences of waiving the right to your jury trial?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And did your attorney answer all of your

18  questions?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you satisfied with the representation

21  that your attorneys have provided to you in respect to your

22  right to a jury trial and what it means to waive and give up

23  that right?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Okay.  So do you understand, then, that

———2:16-cr-00100-GMN-CWH———

1  under the laws and Constitution of the United States you are

2  entitled to a trial by a jury, and that in order to be convicted

3  all of the jurors, all 12 of them, would have to agree

4  unanimously that you are guilty?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you understand that at a bench trial

7  instead of a jury of your peers I alone as the judge would

8  decide your guilt or innocence?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And do you still wish to waive your right

11  to a jury trial?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  So the court has heard from the

14  Defense and the Defense counsel and the Government.  And based

15  on the statements and the observations of the court, it is the

16  finding of this court that in the case of the United States

17  versus Jan Rouven Fuechtener that the defendant is fully

18  competent and capable of waiving his right to a jury trial.  The

19  defendant's waiver of a right to jury trial is knowing,

20  intelligent, and voluntary.  There seems to be no evidence that

21  the defendant's mental or emotional state is at issue, let alone

22  any other substance issue.  So I am going to accept the

23  defendant's waiver of jury trial.

24          Any other issues that we need to address this morning

25  besides going forward with a -- finding a trial date?

—2:16-cr-00100-GMN-CWH—

1          MS. ROOHANI:  Your Honor, two --

2          THE COURT:  I was looking through to see what -- you

3    know, obviously the proposed voir dire questions we don't need

4    anymore, but I'm looking at witness lists and notices of expert

5    witness and such.  Is there any other issue you need me to

6    address?

7          MS. ROOHANI:  Your Honor, there's two issues that we

8    briefly raised in our trial brief mostly because we hadn't seen

9    the Defense's exhibit list, but having seen it now, there's two

10   additional motions in limine that the Government intends to file

11   today.  The first is a motion to preclude any alibi witness.

12   I've discussed this with the Defense.  I'm sure that they'll

13   want to be heard on that.

14          The second is a motion to exclude for spoliation for

15   the Dropbox account.  I don't think that this is based on any

16   bad faith or ill will or anything like that on behalf of the

17   Defense, but when the Defense originally accessed the Dropbox

18   account that they had given us the password for, they did not

19   seek a preservation request.  And because of that the Government

20   has not had an opportunity to see anything in that Dropbox

21   account.

22          Both based on -- we've done a preservation request, but

23   it seems as though that account has been accessed since the

24   defendant has been detained.

25          Because we can't determine the integrity of the

─2:16-cr-00100-GMN-CWH─

1   information, that the Government certainly can't rely on that

2   information, and we would submit, Your Honor, that the Defense

3   should also not be able to rely on that information.

4           THE COURT:  All right.  So we're talking about

5   information in the Dropbox account that the Government had

6   access to at a particular date and time, but then since then has

7   been changed?  I'm not sure.

8           MS. ROOHANI:  No.  I'll give the brief background, Your

9   Honor.  It's originally when the search warrant was executed

10  there was a file on the defendant -- one of the defendant's

11  computers that showed that there was a Dropbox folder.  Based

12  upon that, the FBI -- or the Government did subpoena Dropbox to

13  determine what the Dropbox account was so we could do a search

14  warrant for it.  That subpoena was returned saying that there

15  was no information about that.  So based upon that we assumed

16  that there was no Dropbox account.

17          Later on and I believe it was in --

18          THE COURT:  That there was no account or no information

19  in the account?

20          MS. ROOHANI:  There was no information linked to the

21  defendant.

22          THE COURT:  Okay.

23          MS. ROOHANI:  So we ran the defendant's first name and

24  last name as well as all known aliases as well as all e-mails

25  associated that we knew were associated with him.  And Dropbox

2:16-cr-00100-GMN-CWH

1   came back and told us there's nothing on these particular

2   accounts or associated with the defendant.

3            So at that point it was as far as the Government was

4   concerned a dead end.  In July of this year we received an

5   e-mail from Mr. Marchese as part of what we believed was

6   reciprocal discovery.  In it he gave us a Dropbox account,

7   e-mail, and as well as a password.  Unfortunately he also told

8   us that there was illicit files in there.  Based upon that under

9   18 U.S.C. 3908(m), we needed to do a preservation request and

10  seek a search warrant for that.  And we couldn't disable the

11  account without his consent.  And based upon the information

12  that we received from other U.S. Attorney's offices, they

13  informed us that the correct course of action would be to get

14  the search warrant -- do the preservation request and get

15  search warrant.

16           We also did a subpoena request to Dropbox to determine

17  what IP addresses had access to the Dropbox account in the

18  interim from the time of the execution of the search warrant to

19  that date.  That subpoena request came back, and it informed us

20  that members of the Defense team, including Defense counsel,

21  their investigator, and also Mr. Larry Smith who at that time

22  was noticed as their expert, had access to the Dropbox account

23  both from their homes and also work addresses, over 20 times,

24  and it was -- and of course, Your Honor, we're happy to submit

25  this.

1           So based upon that, we did a preservation request and

2      there's a sealed search warrant which I've already discussed

3      with the Defense, but at that time it was sealed.  We still

4      haven't gotten the return back from Dropbox on it because

5      Dropbox has indicated that it's exceptionally voluminous and

6      it's taking them quite an amount of time to bring us -- bring

7      back the information.

8           In any event, they informed us that there was no

9      preservation request set by the Defense.  And I spoke with the

10     Defense and they also informed that there was no preservation

11     request.  That preservation request would have essentially

12     frozen in time that Dropbox account, and I'm sure Your Honor

13     knows how Dropbox works.  Every time you login, it shows that

14     whoever's account it is that that person is logging in

15     regardless of whether it is that person or not.

16          Additionally, if things were moved around, there would

17     be no facial indication of that.  There would have to be

18     metadata pulled off of that, but because there was no

19     preservation request done by the Defense, our preservation

20     request essentially came too late and now we can't even

21     determine what has been moved around because there wasn't a

22     preservation request done.

23          So if there had been a preservation request done by the

24     Defense and we had done our search warrant seeking the metadata,

25     we could very easily say, "Okay.  We know that Defense counsel

1    moved this or didn't move this," or whatever it was.  But we

2    don't have that information, and because we don't have that

3    information, the authenticity of that Dropbox account cannot be

4    determined at this time.

5         And at this point, as we're informed by Dropbox, it can

6    almost never be determined because that preservation request

7    wasn't initially done.

8         We are hoping to get the Dropbox return this week.

9    We've been informed by Dropbox that they should be able to do

10   that, but again that information -- I can't represent to the

11   court that that is what it looked like before the defendant went

12   into custody.  And I don't want to make the Defense team have to

13   testify to the court to explain that either.  And so for that

14   reason we are asking that Your Honor exclude any information

15   that came from that Dropbox account.

16        Does that make sense?

17        THE COURT:  Any information or any information -- so

18   nobody would be using the Dropbox account information at all,

19   not the Government, not the Defense, nobody?

20        MS. ROOHANI:  Right.  Exactly.

21        The other problem is this, and is that under 3908(m) --

22        THE COURT:  So you're saying that the Defense couldn't

23   use the fact that there was no link between the Dropbox account

24   and Mr. Fuechtener at the time of the search warrant?

25        MS. ROOHANI:  Well --

—2:16-cr-00100-GMN-CWH—

1          THE COURT:  Because it sounds like that part is okay.

2     It's after the search warrant was issued by the Government that

3     there was --

4          MS. ROOHANI:  Your Honor, but that would not be

5     relevant for two reasons.  At this point the Government doesn't

6     have any information about any Dropbox account related to the

7     defendant.  So if they had said it wasn't related to defendant,

8     the answer would be, "Okay.  Great.  We already know that

9     because the Government's investigation didn't reveal anything

10    related to the defendant on Dropbox."  And the Government is not

11    relying on anything from Dropbox because we did not get a return

12    from Dropbox on that.

13          So my understanding based upon -- and of course I --

14          THE COURT:  Isn't it relevant to show that someone else

15    had access to the computer and had illicit information in the

16    Dropbox account that was not linked to Mr. Fuechtener?  It

17    sounds like it's exculpatory.

18          MS. ROOHANI:  Well, that's assuming that it's, one,

19    Mr. Fuechtener's account, which we can't verify.  That's also

20    assuming that the Defense team got the password from

21    Mr. Fuechtener.

22          THE COURT:  Well, you're telling me the Dropbox account

23    was on Mr. Fuechtener's computer or laptop --

24          MS. ROOHANI:  There was a --

25          THE COURT:  -- somewhere in his house.

—2:16-cr-00100-GMN-CWH—

1          MS. ROOHANI:  -- Dropbox -- you know how Dropbox makes

2     a folder when you download it?

3          THE COURT:  Right, the shortcut.

4          MS. ROOHANI:  Right.

5          THE COURT:  The folder.

6          MS. ROOHANI:  But the shortcut doesn't identify the

7     e-mail address which is why we weren't able to determine what

8     the e-mail address was.  So unless Mr. Fuechtener gets up there

9     and testifies and says that this account is his account and that

10    that was the account --

11         THE COURT:  But the shortcut was on a computer that was

12    in his home?

13         MS. ROOHANI:  Correct.  But that means that the program

14    was there --

15         THE COURT:  So someone's accessing that shortcut to the

16    Dropbox that doesn't seem to have a connection to

17    Mr. Fuechtener.  They're accessing it from that computer because

18    that's where the ...

19         MS. ROOHANI:  Certainly, but then the question becomes

20    where does --

21         THE COURT:  So it sounds like it would be somewhat

22    exculpatory.  The weight of it is going to be up in the air as

23    far as how -- how helpful that information is.  I don't know

24    about excluding it.

25         MS. ROOHANI:  Your Honor, the issue becomes is that at

PATRICIA L. GANCI - (702) 385-0670

—2:16-cr-00100-GMN-CWH—

1  that point the Defense team becomes witnesses to this case where

2  they have to indicate where they got that password from and then

3  what potentially has been moved around or not moved around in

4  that account.  And we're trying to avoid that without having to

5  put their investigators or whoever it is on the stand.  And,

6  more importantly, they can't -- even -- even if, even if --

7       THE COURT:  So is the concern that they got the

8  password from some third person --

9       MS. ROOHANI:  Or the defendant.

10       THE COURT:  -- and then put pornography in that account

11  so that it would look like someone else is -- who's actually

12  using this computer to look for pornography?

13       MS. ROOHANI:  I don't know the answer to that, Your

14  Honor.  And I'm not suggesting that they did and I'm not

15  suggesting that they didn't.  I'm saying that there's no way for

16  the court to know and there's no way for us to know.  And, quite

17  frankly, there's no way for us to impeach that because we don't

18  know.  And Dropbox can't tell us that at this point either.

19       So that's why -- and, Your Honor, there's also going to

20  be issues with -- and I realize that this can be done at a trial

21  before Your Honor, but there's also issues of authentication and

22  under 901, under 1001, 1002, 1003, they can't authenticate that

23  which they did not create and put on there.

24       And so if it is the defendant's account, the only way

25  that that would come in is through the defendant, or whoever is

—2:16-cr-00100-GMN-CWH—

1  the owner of that -- I don't even know if the defendant is the

2  owner of that account because I can't determine that at this

3  point.

4         THE COURT:  But didn't you say you already provided to

5  them in discovery the information that you received which was

6  that there was no connection between Mr. Fuechtener and that

7  Dropbox account?

8         MS. ROOHANI:  No.  That wasn't the indication.  The way

9  that we -- because there was no e-mail address associated with

10 the Dropbox account in -- on that computer, we didn't know what

11 e-mails, if any, were associated with that.  So what -- the

12 subpoena request was originally for Mr. Fuechtener's name, for

13 his husband's name, and also for the e-mail addresses that we

14 knew were associated with the defendant.  This is another

15 e-mail.  So I don't know whose -- it's woolworks@aol.com

16 (phonetic).  I don't know who that's associated with.

17        I realize that that is an e-mail that could

18 hypothetically be associated with a company that the defendant

19 and his husband jointly own, but I don't know who had access to

20 that account.  I don't know who had the password to that

21 account.  And I, quite frankly, don't know who even accessed the

22 account prior to the date of the search warrant.

23        So the IP information that we have at this point is

24 from the date of the execution of the search warrant to July --

25 the end of July/beginning of August when we received the notice

1  from the Defense team.  So in that regard the -- the information

2  is limited, but even that information is subject to taint

3  because there wasn't a preservation request put into place

4  before the Defense team started accessing the account.

5       And, Your Honor, I will note that even -- even if the

6  Defense team inadvertently copied a file, it would look like

7  Mr. Fuechtener copied the file, but I can't even determine who

8  that was.  I can't determine if it was their Defense

9  investigator or another person who's sitting next to the Defense

10  investigator when that was happening.  So based upon that, Your

11  Honor, we -- there's no reliability to the information.

12       And to the extent that it does come in -- I realize

13  this is a bench trial so it's a little bit different.  Your

14  Honor can weigh that differently -- we would submit that it

15  should be very little weight because we are not able to impeach

16  it in any way and we are also not able to identify its veracity

17  in any way and neither is the court short of putting the Defense

18  team on the stand, which I would assume is going to be

19  problematic.

20       THE COURT:  All right.  Well, in -- inasmuch as there

21  might be evidence provided at trial that there was a Dropbox

22  account on a computer device in Mr. Fuechtener's home that could

23  not be connected to him by the Government and, therefore, it

24  would permit the inference that someone else had access, that --

25  inasmuch if there is evidence to that, I think that will be

————2:16-cr-00100-GMN-CWH————

1  relevant, but more than that I would need to have a proffer from

2  the Defense --

3          MS. ROOHANI:  Your Honor, if I --

4          THE COURT:  -- as to what else that could possibly be

5  of relevance.

6          MS. ROOHANI:  I'm sorry, Your Honor.  I forgot one more

7  point.  One of the things that we also received from the Defense

8  team was actually an input child pornography and I don't

9  actually know if that came off of the Dropbox account, but at

10 the bottom of that it said last modified or last created by

11 Mr. Fuechtener.  And I don't know what the date of that was

12 because it was a PDF format.

13         Additionally, that e-mail is -- the e-mail now that we

14 have determined is potentially related both to Mr. Fuechtener

15 and his husband.  So it wouldn't be exculpatory in any way.  It

16 should probably be more inculpatory.  So on that basis as well

17 we would -- we would submit that.

18         THE COURT:  So you do have a link to the address that

19 was used by that Dropbox to Mr. Fuechtener now, but you didn't

20 at the time?

21         MS. ROOHANI:  We now do.  So the -- they have a

22 company, a joint company, Mr. Fuechtener and Alfter called

23 WonderWorks.  And so woolworks could hypothetically be

24 associated with that, and that AOL address could be associated

25 with the Dropbox account.  Although, at that time we did not

—2:16-cr-00100-GMN-CWH—

1  know that so that's why the Dropbox was not included in our

2  original subpoena to Dropbox.

3          THE COURT:  All right.  So, Mr. Marchese, does the

4  Defense intend to introduce any evidence related to this

5  Dropbox?  And if so, which evidence and for what purpose?

6          MR. MARCHESE:  That is correct.  First off, we will

7  have our investigator testify who is the main individual that

8  accessed this account.  It's two fold.  First, one of the main

9  things is that on May 6th, a period of time after Mr. Fuechtener

10 was obviously in custody because you presided over our appeal of

11 the detention hearing, someone accessed that Dropbox and put an

12 elicit file on there.

13         Now, I understand the Government's concern, but at the

14 end of the day it really goes to weight; not admissibility.

15 Your Honor can listen and they can cross-examine Mr. Tobiasson.

16 He can talk about what steps he took, how he accessed the

17 Dropbox.  We gave them the e-mail.  We gave them the password.

18 We gave them all the information.  Had they just asked us, we

19 would have given them a consent to search.  Wouldn't have been a

20 problem.

21         But apparently back in July it wasn't a problem, but

22 now here we are in October and suddenly this is becoming an

23 issue.

24         In addition, the files on the Dropbox are many of the

25 files, if not all of the files, that were found on some of these

2:16-cr-00100-GMN-CWH

1    devices.  So Your Honor obviously has an understanding as to how

2    Dropbox works.  So that is part of our defense here.

3            So it's very simple.  We're making this way more

4    difficult than it is.  Nobody put files in there or whatever

5    this allegation is.

6            So the bottom line is it's not relevant what happened

7    after we accessed it.  It's before, and that's what our issue

8    is.

9            THE COURT:  All right.  So what you're going to be

10   seeking to introduce is evidence that someone else had access to

11   this Dropbox while Mr. Fuechtener was in custody?

12           MR. MARCHESE:  Correct.  We're going to have our

13   investigator get on the stand say, "Hey, I accessed the Dropbox.

14   I looked at it and here's what I saw."  That's it, simple as

15   that.  We're making this way larger than it needs to be.  It

16   would be no different than if the Government --

17           THE COURT:  So essentially it would go to show he

18   didn't have exclusive possession of this Dropbox.  Other people

19   had possession of it, too, and also had possession of the

20   pornography.

21           MR. MARCHESE:  Correct.  It would be no different than

22   when a Government agent or a police officer testifies about

23   taking a defendant's cell phone.  The defendant doesn't have to

24   testify what was on the cell phone.  The officer, the agent, the

25   forensic analyst, whoever looked at it is the one that testifies

—2:16-cr-00100-GMN-CWH—

1   the contents.  That's it.

2          THE COURT:  Ms. Cartier-Giroux?

3          MS. CARTIER-GIROUX:  Judge, just first of all, we

4   didn't know that they intended on using this until we got the

5   exhibit list.  So it hasn't been months that we've had this.

6   The problem is is that the IP addresses that we were able to see

7   were connecting with this account, there are over 20 different

8   times that this is accessed.  This has not been preserved.  We

9   don't know what this account looked like from the time that he

10  was incarcerated.  We don't know ...

11          He's saying that somebody's added pornography.  We

12  can't -- if we get the return from Dropbox, we can't

13  authenticate that that actually happened.  So they're making

14  themselves witnesses to what has been added or not added to this

15  account.  And, in fact, at least one time the IP address comes

16  back to Defense counsel's home.  So if they're going to make

17  this the defense, it would be the Government's intention to call

18  every person that was present at that time to testify, and

19  they're putting themselves as witnesses in this case.  And

20  that's the major problem because we can't -- we don't have an

21  outside objective picture of what this account looked like at

22  the time that Mr. Fuechtener no longer had access to it.  We

23  don't.  It's their testimony.

24          And just putting on his -- his person, whoever the

25  expert he intends on calling, is insufficient because it was

—2:16-cr-00100-GMN-CWH—

1   accessed at least 20 different times.

2          THE COURT:  I don't think it's an expert.  It sounds

3   like it's just the investigator, and I'm not sure that that

4   person would lay a proper foundation for the contents of the

5   Dropbox.

6          MR. MARCHESE:  Well, all he's going to say is he

7   accessed this and this is what he saw, I mean, and was it a true

8   and accurate depiction.  "Yes, this is what I saw on this day

9   when I accessed it."  That's it.  And that's to me all the

10  foundation that needs to be laid in reference to that.

11         MS. ROOHANI:  Your Honor, we have --

12         THE COURT:  I don't think he could give any opinions,

13  though, if he's not an expert.  He's just saying he went into

14  the Dropbox, here's what it looked like on this date and time,

15  and that's all.

16         MR. MARCHESE:  And this is what I saw, yeah.

17         MS. ROOHANI:  Your Honor, the other -- the other issue

18  that we have is that even if his investigator testified that he

19  saw something on a particular day, unless his investigator was

20  the first person and the only person who ultimately accessed

21  that, then at that point it still is ultimately possibly subject

22  to taint.

23         The other -- the other issue --

24         THE COURT:  And that would go to the weight.  That's

25  clearly an argument that you would make that would go to the

—2:16-cr-00100-GMN-CWH—

1  weight of the evidence and why it shouldn't be worthy of any

2  weight or consideration.

3          MS. ROOHANI:  Sure, Your Honor.  And then the other

4  issue we have is even if the -- and I hesitate to say this

5  because at this time nobody's under investigation based upon

6  the -- giving us the password, but the giving us of a password

7  knowing that there's elicit files in the account is technically

8  distribution of child pornography, first of all.

9          Second of all, under 18 United States Code 3908(m)

10 they're not even allowed to access this from anywhere other than

11 a government facility or have the court access it.  So by the

12 nature of the investigator testifying that he did access it

13 knowing that there was child pornography on it, that by itself

14 is a violation of federal law.  And so they're not under

15 investigation at this time, but ultimately his investigator's

16 going to have to get up there and testify that he violated

17 federal law.

18         MR. MARCHESE:  Well, that's absurd, Your Honor.  I

19 spoke to several attorneys because I was curious as to whether,

20 you know, are we in possession of this?  Do we need to turn it

21 over?  What's the ethical and moral and legal obligation here?

22 I spoke to Tom Pitaro.  I spoke to several other attorneys who

23 said, "You're not in possession of it.  All you need to do is

24 just give them the access and that's it."  It's not as if anyone

25 has access to it.  Access and possession are two separate

─────2:16-cr-00100-GMN-CWH─────

1   things.

2          So I would completely disagree with that.  And to say

3   that we are -- we are breaking laws, I mean, all we're doing is

4   we're advocating for this man right here because that's what

5   this is all about.  I have no interest in child pornography or

6   any of this nonsense, the allegations that they're making, and

7   it's completely baseless and ridiculous.  And any good attorney

8   would have done what Mr. Durham and I did.

9          THE COURT:  And wouldn't the argument be the other way

10  around, then, if they didn't provide reciprocal discovery and

11  didn't tell you about this?  I don't know how they're supposed

12  to comply with their requirement to provide you with the

13  information that they plan to use at trial.

14         MS. ROOHANI:  Your Honor, the correct path would have

15  been to do a preservation request, to not access the account, to

16  do a Rule 17 subpoena, or give us the information and we would

17  have sought a search warrant, or they could have sought this

18  information directly from Dropbox.  Dropbox would have taken a

19  snapshot of the account and then equally provided it both to the

20  Defense and the Government.

21         I am not -- and I want to make exceptionally clear,

22  we're not accusing anybody on the Defense team of having an

23  interest in child pornography.  That's not the issue, but to

24  suggest that access with intent to view is not a crime, that is

25  absolutely incorrect under 2252A.  Under the possession statute

——2:16-cr-00100-GMN-CWH——

1  it says possession or access --

2          THE COURT:  But you're saying they're not allowed to

3  investigate their case without giving you access to it before

4  they even see what's in there?

5          MS. ROOHANI:  Not for a child pornography case under

6  federal law, no.  Because under 3908 nobody, nobody, not even --

7  not even me.  I can't in my own office go and access child

8  pornography as part of my investigation.  It has to be done at a

9  government facility that's been designated, such as the FBI

10 office, on a specified computer.  And that's why these cases are

11 so difficult, Your Honor, is because I can't even have child

12 pornography in my office.  And I prosecute these cases.

13         So under 3908(m) there's only two places that this

14 child pornography can be viewed, and that is at the FBI and in

15 open court or in a court-designated facility.  So the Defense

16 doesn't -- federal -- it's not me.  It's Congress.  Congress

17 says the Defense doesn't get to do this.

18         And that's problematic for one of these particular

19 reasons is that in doing this investigation -- or they could

20 have sought a 17(c) subpoena from Your Honor and gone and gotten

21 this under seal.  And ultimately if it came up to be nothing,

22 then they wouldn't have disclosed it to us under reciprocal

23 discovery.  There is a way for them to do it without having to

24 disclose it to us.

25         THE COURT:  All right.  Well, you can put that in

—2:16-cr-00100-GMN-CWH—

1  writing and I'll receive a response in writing --

2          MS. ROOHANI:  Certainly.

3          THE COURT:  -- and try to enter a written order as soon

4  as possible.

5          What date are we planning to start trial?  I know

6  Aaron's not here and he was trying to coordinate this.  Was it

7  the 24th?  Monday, the 24th?

8          MS. ROOHANI:  Your Honor, we're prepared to proceed on

9  Monday, the 24th, but of course that's subject to the alibi

10 notice.  I imagine the Defense wants to be heard on that.

11         MR. MARCHESE:  Well, yeah, there's two other issues

12 that the Government raised.  First off, Ms. Craig's

13 representation, I mean, I'll make a written response once the

14 Government writes their motion in limine or opposition to

15 Ms. Craig's application, but I'll just represent right now, I

16 mean, I asked her.  She told me nothing about the case.  She

17 knew nothing about the case.  I had to bring her up to speed on

18 the case.  It would be no different than me talking to a

19 complete stranger on the street, but that's neither here nor

20 there.  I guess at this point I'll wait for them to object to

21 her application once we file the amended paperwork.

22         And then as to the alibi defense, they're saying that

23 pursuant to the rule they need to give a written demand.  I

24 didn't see any written demand.  They're saying that there was an

25 e-mail sent.  I've searched my e-mail.  I didn't find anything.

1    Their e-mails don't go that far back so they're going to have to

2    go back to their office and forward it.  So there might be some

3    issues in reference to that.

4         I don't know what the court's pleasure is and the

5    Government's pleasure in reference to this, but I would ask if

6    maybe we could continue this a day or two so that, A, we can get

7    Ms. Craig here and, B, we can research the alibi issue a little

8    bit more in depth.

9         THE COURT:  All right.  So when you say "continue this

10   a day or two," do you mean continue the trial date a day or two

11   or come back between now and the trial date?

12        MR. MARCHESE:  For the calendar call because --

13        THE COURT:  Okay.

14        MR. MARCHESE:  -- if in fact there was a written demand

15   given that satisfies the rule, we would need to respond to that,

16   and based upon that, that might have to continue the trial date.

17        THE COURT:  Without having Aaron here, I'm not really

18   sure.

19        Nick, do you know any reason why we couldn't continue

20   this until Friday morning?

21        COURTROOM ADMINISTRATOR:  I'll check your calendar,

22   Your Honor.

23        (Court conferring with courtroom administrator.)

24        THE COURT:  Okay.  Well, I'm told I have a thing at --

25   I have a meeting at 10 and a meeting at 1 and there's

—2:16-cr-00100-GMN-CWH—

1  out-of-state folks coming in so it can't be moved.  So I have to

2  figure out what's -- trying to wait for my computer to refresh

3  here with the calendar, but ...

4         I'll tell you what, let's go ahead and have you file

5  your motion in limine.  How much time do you think that you

6  need, Ms. Roohani?

7         MS. ROOHANI:  Your Honor, I've already drafted the

8  alibi and the spoliation issue.  So it's just a matter of having

9  it approved through our upper management.  And then --

10         THE COURT:  What about the conflict issue, though?

11         MS. ROOHANI:  The conflict issue, Your Honor, I was on

12  the phone with D.C. up until the time I walked in here.  So

13  that's going to probably take me another day or two to actually

14  brief that for you.

15         THE COURT:  Okay.  So let's say that your -- okay.  So

16  do you think you could have it done by when?  Thursday at noon

17  or should I give you Friday at noon?

18         MS. ROOHANI:  I would appreciate until Friday if it's

19  possible.

20         THE COURT:  Okay.  So we'll give the Government until

21  Friday at noon.  So that's Friday, October 14th, at noon to file

22  all of the motions in limine that they possibly want to.  We'll

23  give the Defense until Thursday, the 20th, at noon to file all

24  of your responses and information.  The Defense -- I'm sorry.

25  The Government can file -- well, no, no replies in motions in

 1   limine.  So then that gives me the 21st to get out a quick

 2   order.

 3          And then it looks like -- I have court on the 24th in

 4   the morning anyway.  So it doesn't look like we would be

 5   starting until the afternoon.

 6          Was there a start time, Nick?  Did Aaron already do

 7   that?

 8          There's nothing you can see.  All right.  So how about

 9   then we can plan to start on Monday, the 24th, looking at my

10   calendar here, 1 p.m.?

11          (Counsel conferring.)

12          MS. ROOHANI:  Your Honor?

13          THE COURT:  Yes.

14          MS. ROOHANI:  I'm going to forward the e-mails

15   regarding the alibi to Mr. Marchese and Mr. Durham.  At which

16   point they will decide whether they're going to ultimately

17   oppose our motion in limine.

18          If for any reason -- it's my understanding that they

19   want to go forward with the alibi defense and a continuance

20   would allow them to do that under the rule.  So if that's the

21   case, we will file a stipulation for Your Honor and include new

22   deadlines if that would be okay.

23          THE COURT:  All right.

24          MS. ROOHANI:  But we should be able to do that this

25   afternoon.  I'll be able to forward it to them.  So if it's

————2:16-cr-00100-GMN-CWH————

1  ultimately going to be stipulated off, we will do that as soon

2  as possible.

3          THE COURT:  Okay.

4          MS. ROOHANI:  In any event, for the other two I will

5  file the motions in limine by the deadlines that Your Honor has

6  set.

7          THE COURT:  Okay.

8          MR. MARCHESE:  Good.

9          THE COURT:  So October 14th will be the Government's

10  deadline to file motions in limine by 12 noon.  The Defense will

11  have until October the 20th by 12 noon.  And then the trial will

12  currently be set for October 24th to begin at 1 p.m., unless you

13  file a stipulation for a different date and time, and then of

14  course it will be moved to that new date and time.

15          All right?

16          MR. MARCHESE:  Thank you.

17          THE COURT:  And the waiver of jury trial is accepted.

18          MR. MARCHESE:  Thank you.

19          MR. DURHAM:  Thank you.

20          THE COURT:  All right.  Thank you, counsel.

21          MS. ROOHANI:  Thank you, Your Honor.

22          COURTROOM ADMINISTRATOR:  All rise.

23          (Whereupon the proceedings concluded at 9:52 a.m.)

24

25

2:16-cr-00100-GMN-CWH

1                              --oOo--

2          I, Patricia L. Ganci, court-approved transcriber, certify

3    that the foregoing is a correct transcript transcribed from the

4    official electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7          /s/ PATRICIA L. GANCI          MAY 5, 2019
               Patricia L. Ganci                  Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25