UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LILY, *et al*, <br><br> Plaintiff, <br><br> v. <br><br> JAN ROUVEN FUECHTENER, <br><br> Defendants. | Case No. 2:19-cv-00352-RFB-EJY <br><br> **ORDER** |

Before the Court is Plaintiffs' Motion for Prejudgment Writ of Attachment (ECF No. 5). The Court has considered Plaintiffs' Motion, the Defendant's Response in Opposition (ECF No. 31), and Plaintiffs' Reply (ECF No. 36). The Court finds as follows.

**I.   BACKGROUND**

This civil case commenced on February 28, 2019, with a Complaint filed by Plaintiffs seeking personal injury or liquidated damages arising from Defendant's criminal acts that are summarized in Defendant's Plea Agreement (ECF No. 146, Case No. 16-cr-00100-GMN-CHW (the "Criminal Case")). The Court will not repeat the facts of the Criminal Case here as they are unnecessary and well known to the parties.

The Plea Agreement, entered into on November 17, 2016, includes, in pertinent part, that "[u]nder USSG § 3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he … fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea . . . ." Criminal Case, ECF No. 146 at 8. The Plea Agreement further states that "defendant acknowledges that the conduct to which he is entering a plea … gives rise to mandatory restitution to the victims(s) under 18 U.S.C. § 2259" and that the images disseminated by Defendant, and therefore possessed by others, "caused certain victims to be re-victimized and has resulted in harm that is distinct from that suffered from the actual contact physical sexual abuse, thus such victims are harmed by the actions of the defendant." *Id*. at 11. Defendant agreed that, based on these admissions, he would "pay restitution

1

1  in the amount of $5,000 per victim, for any victim who may be identified through the Child Victim
2  Identification Program" or other similar programs. *Id*. There is no dispute that each Plaintiff in this
3  matter submitted a restitution request in the Criminal Case. According to Plaintiffs, and not
4  responded to by Defendant in his Opposition to the Motion for Prejudgment Writ (EFC No. 31), at
5  the time of the Plea Agreement, Defendant further agreed to forfeit "any property real or personal
6  constituting or traceable to gross profits or other proceeds obtained from violations of Title 18,
7  United States Code, Section[s] 2252A(a)(2) and 2252A(a)5(b), and any property traceable to such
8  property, pursuant to Title 18, United States Code, Section[s] 2253(a)1), 2253(a)(2) and 2253(a)(3)."
9  ECF No. 5 at 2.

10  After two attempts to withdraw his plea (one denied and one withdrawn), the Honorable
11 Gloria M. Navarro sentenced Defendant on February 28, 2019 ordering, *inter alia*, "all assessments,
12 fines, and restitution … be taken from the funds being held in the registry of the Court." Criminal
13 Case, ECF No. 341. As stated by Judge Navarro, these amounts include: $70,000 in restitution,
14 $300,000 in special assessments, an assessment pursuant to the Justice for Victims of Trafficking
15 Act of 2015, Pub. L. No. 114-22, of $15,000.00, and a fine of $500,000.00. *Id*.

16  The registry of the Court holds the proceeds from the sale of Defendant's former primary
17 residence located at 7080 Donald Nelson Avenue, Las Vegas, Nevada 89131. Criminal Case, ECF
18 No. 290 at 1. At the time of deposit, this amount was $975,300. *Id*. Moreover, the parties to the
19 Criminal Case did not dispute that the real property, and the proceeds from the sale, were owned by
20 the F.A.J.R. Magic Trust (the "Trust"), dated October 4, 2012, or that Defendant and his husband
21 Frank Alfter are the Grantors, co-Trustees, and Primary Beneficiaries of the Trust. Several efforts
22 were made by Defendant and Interested Party, Mr. Alfter, to release funds in the Court registry, but
23 these efforts were denied by the Court. Specifically, the Court overruled objections raised to
24 withholding distribution of funds, as requested by Defendant and Mr. Alfter, stating "that Defendant
25 may distribute trust funds to the beneficiaries, *i.e.*, to himself under the terms of the Trust, and thus,
26 the trust funds are under his control in his current capacity as a trustee and can be used to pay any
27 fine, forfeiture, or restitution ordered by the Court as stated in the [P]lea [A]greement." Criminal
28 Case, ECF No. 290 at 7 (internal citation and quote marks omitted). As of March 14, 2019,

"[f]ollowing payment of the assessments, fines, and restitution from the funds held in the registry of the Court, the Court . . . [held] a remainder of $307,500.00, alongside $24,648.41 in interest, which accrues daily." Criminal Case, ECF No. 347. This remainder is still in the Court registry after Plaintiffs, in this matter, filed an objection to distribution based upon the pendency of the instant Motion for Prejudgment Writ. Criminal Case, ECF No. 381.

Plaintiffs' Motion for Prejudgment Writ argues that the writ is proper because Defendant entered a guilty plea admitting violations of 18 U.S.C. § 2255A(a)(2), and agreed to forfeiture of property. Plaintiffs state that the forfeited funds must remain deposited with the Court because, absent attachment, Defendant will likely transfer the funds to Germany where Defendant's husband has apparently moved thereby placing the funds "beyond Plaintiffs' reach for satisfaction of any judgment." ECF No. 5. at 4-5. Plaintiffs cite the government's sentencing memorandum filed in the Criminal Case in support of these assertions. *Id*. Plaintiffs state that their instant civil action against Defendant "allows victims of child pornography to recover damages of no less than $150,000 each," in addition to the cost of the litigation, pursuant to 18 U.S.C. § 2255(a). *Id*. at 5. Plaintiffs further argue they have proven probable validity of their claims and that one or more statutory grounds supports issuance of the writ they request. *Id*.

Defendant argues that Plaintiffs' Motion must be denied because Plaintiffs filed a procedurally deficient motion and, in any event, the funds in the Court's registry belong to the Trust and are exempt from execution of attachment under applicable Nevada law. ECF No. 31. Defendant further argues that if the Court does not deny Plaintiffs' Motion "outright" he is entitled to an evidentiary hearing. *Id*.

## II. <u>ANALYSIS</u>

Section 2255(a) of Title 18 of the United States Code makes clear the intent of the federal government to ensure victims of certain crimes, such as Plaintiffs, receive compensation for personal injuries for which they may sue in the United States District Court. This code section says such victims "*shall* recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred. The court may also award punitive damages and such other preliminary and

3

equitable relief as the court determines to be appropriate." *Id*. (Emphasis added.) However, Federal Rule of Civil Procedure 64(a) states, in pertinent part that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies." Remedies under Rule 64(a) include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies. Fed. R. Civ. P. 64(b). The U.S. Supreme Court has stated that "long-settled federal law provid[es] that in all cases in federal court, whether or not removed from state court, state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 436 n. 10 (1974). Base on the forgoing, the Court looks to Nevada law in order to determine the availability of the prejudgment remedy Plaintiffs seeks.

### A. Defendant's Argument Regarding Insufficient Notice Fails.

Nevada law, at NRS 31.013, states that the Court may order the Clerk of Court to issue a writ of attachment after notice and a hearing. NRS 31.045, upon which Defendant relies to argue Plaintiffs' notice was insufficient, pertains to requirements that must be met to give notice of *execution* on a writ. Here, Plaintiffs are not executing on a writ, but rather seeking a prejudgment writ and, as such, NRS 31.045 does not apply. Moreover, there is no doubt that Plaintiffs provided Defendant notice of their intent to seek a prejudgment writ of attachment. ECF No. 26. For these reasons, Defendant's argument regarding failure to comply with Nevada's statutory notice requirement fails.

### B. Defendant's Argument Regarding Insufficient Affidavits Fails.

Plaintiffs submit a declaration executed by their counsel Carol L. Hepburn, who represents specifically identified plaintiffs in this matter. In her declaration, Ms. Hepburn states she is designated to receive notices from the Department of Justice regarding criminal prosecutions of sexual abuse and that she has received notices on behalf of each plaintiff she represents that such plaintiff is "a victim in the criminal prosecution of" Defendant. Ms. Hepburn also provides

4

exemplars of such notices, confirms Defendant's guilty plea to violation of child pornography laws, and provides the Court with the Government's Sentencing Memorandum in Defendant's Criminal Case. ECF No. 5 at 11-15; Exs. 1, 3, and 4.

Plaintiffs also submit a declaration of Deborah A. Bianco, co-counsel to Carol Hepburn. *Id*. at 101. Ms. Bianco represents "Pia of the Sweet Sugar victim[s] of child pornography." *Id*. Ms. Bianco states that she has received more than 30 notices concerning Defendant all of which indicate that Pia is a victim of Defendant's criminal conduct to which he pled guilty. *Id*. at 102. Ms. Bianco attaches a copy of the most recent notice she received as Exhibit 1 to her declaration.

Finally, Plaintiffs submit the declaration of John A. Kawai who is also their counsel. ECF No. 36 at 4-6. Mr. Kawai states, among other things, that to "the best of his information and belief, the money sought to be attached is not exempt from execution." *Id*. at 4.

Irrespective of Defendant's hearsay argument (ECF No. 31 at 7), Ms. Hepburn and Ms. Bianco's declarations establish personal knowledge of their respective clients' cases and notices received from the Department of Justice identifying their clients as victims of Defendant's child pornography conduct. The Government's sentencing memo details Defendant's conduct.[1] Moreover, and Defendant's contrary argument notwithstanding, the Plea Agreement (ECF No. 146 of the Criminal Case), attached to Ms. Hepburn's declaration, provides detailed facts of the underlying case that the Court has read. The declarations, notices, sentencing memorandum, and the Plea Agreement, together with the provision of 18 U.S.C. § 2255(a) allowing for the award of $150,000 in liquidated damages to each victim of crimes to which Defendant has pled guilty,

---

[1] Fed. R. Evid. 201 generally empowers a court to take judicial notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Rule 201 of the Federal Rules of Evidence allows the court to take judicial notice of any fact "not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is properly taken of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *See, e.g., Bennett v. Medtronic, Inc.,* 285 F3d 801, 803 n.2 (9th Cir. 2002); *Cook v. Ryan,* 688 F.3d 598, 606 (9th Cir. 2012) (taking judicial notice of state judicial opinion regarding petitioner's criminal conviction for purposes of his habeas proceeding). Here, the Court finds it appropriate to take judicial notice of the criminal proceedings involving Defendant because it has a direct relation to the matters at issue in this case.

5

establish a clear and extraordinary basis for attachment.[2] In fact, Defendant does not deny that Plaintiffs were victims of his conduct. Indeed, Defendant says nothing at all about these factual allegations.[3] Further, as stated above, several motions were filed regarding release of funds to Defendant, all of which were ultimately denied by the Court. *See* Criminal Case, ECF Nos. 180, 207, 290, 305, and 381.[4] In ECF No. 381 of the Criminal Case, the Court expressly stated:

> **IT IS HEREBY ORDERED** that the Clerk of Court shall retain Defendant's funds that were previously authorized for release to Defendant, (ECF No. 347), until further ordered by the Court after disposition of the pending Motion for Prejudgment Writ of Attachment in Case No. 2:19-cv-00352-RFB-GWF, (ECF No. 5).

In sum, the Court finds that Plaintiffs have established extraordinary circumstances for a writ of attachment, pursuant to NRS 31.013, based on the filings in the instant matter (*see* EFC Nos. 5 and 36 at 5-6), together with the filings in the Criminal Case reviewed and judicially noticed.

    C.    <u>Are The Funds Remaining In The Court's Registry Exempt From Execution</u>?

Defendant claims that the fund in the Court Registry are not transmuted, are the property of a revocable trust that grants the Trustees "sole discretion" to make distributions, gives Defendant no "enforceable right to distributions," and that the Trust has a "spendthrift provision" all of which exempt the Trust from attachment.

---

[2] 18 U.S.C. § 2255 is titled "Civil Remedies for Personal Injuries" and states, in pertinent part, that "[a]ny person who, while a minor, was a victim of a violation of section . . . 2252 . . . [or] 2252A . . . of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred."

[3] Defendant claims this case does not fall into the limited class of cases he claims exist that are proper for attachment, but Defendant provides no support for this conclusory statement. *Id*. at 8.

[4] As explained by the United States, in its prosecution of Defendant that included the collection of substantial fines, assessments, and restitution, the Government stated: "In May 2017, Fuechtener sold his home and attempted to conceal his share of the proceeds by hiding them in Germany with his co-conspirator, Frank Alfter. But the government sought and the Court granted restraint of the funds to preserve them for restitution and any possible court-ordered fine." Criminal Case, ECF No. 325 at 2:16-19. Noteworthy is that Defendant did not deny or object to this statement at any time in his filings pertaining to holding funds in the Court's registry. *See*, for example, Criminal Case, ECF Nos. 185 and 210, and Defendant's failure to respond in any way to Plaintiffs' filing seeking to restrain the release of fund, Criminal Case, ECF No. 349.

6

The Court begins with pertinent language of the Trust, in which the real property resided at the time of sale resulting in $975,300 being deposited in the Court's registry. The Trust is in writing (ECF No. 31-2) and states the following:

- Defendant and Frank Alfter are the Trust Grantors (*id*. at 3);

- Defendant and Frank Alfter are the Trustees of the Trust (also "Original Trustees") (*id*.);

- Defendant and Frank Alfter are the beneficiaries of the Trust (¶ 4.1);

- Property listed in Schedule "A" be "assigned, transferred, and conveyed to the Trustees for purposes of establishing a Revocable Living Trust (¶ 1.2);

- The Trustees "shall have the unrestricted rights as defined" in the Trust "to act with the Trust property in any manner deemed in the Trustees' sole discretion to be in the best interest of the Trust or Beneficiaries for so long as said Trustees are living (*id*.);

- The Trustees "shall have full and absolute discretion to act with the Trust property and to make or not make disbursements to beneficiaries [and that] [t]here is no requirement that … consent be obtained from any person, entity or court prior to making a final decision as to any matter relating to the Trust (¶ 2.1(C));

- "The Trustees may act in ... a manner … to benefit another … individual that might have concurring interests in the decisions being made by the Trustees … as long as the decision does not breach a Trustee's [singular] fiduciary duty owed to the Trust and Beneficiaries" (*id*.);

- In the "Trustee's Enumerated Powers," the Trust states that "[*a*] Trustee is authorized and empowered to manage, care for, improve, protect, control, deal with, sell and otherwise dispose of the trust estate or any part of it, *in his or her absolute discretion, in any way and every way* in which any responsible and prudent owner could manage, care for, improve, protect, control, deal with, sell and otherwise dispose of the same" (¶ 3.2) (emphasis added);

- Among the enumerated powers of each Trustee is the ability "[t]o make payments … to any beneficiary under disability . . ., [or] to *any other person deemed suitable by the Trustee . . .*" (¶ 3.2(L)) (emphasis added);

- The enumerated powers of each Trustee does not limit "his or her general powers ... having all the rights, powers, and privileges which an absolute owner of the same property would have" (¶ 3.2 (S));

- Regarding distribution of assets to its beneficiaries, the trust provides that "the net income and principal from the Trust shall be distributed to the Primary Beneficiaries as is necessary, in the sole discretion of the Trustee or Trustees, for the support, happiness and health needs of the Primary Beneficiaries" (¶ 5.1.);

- The "No Contest Provision" of the Trust states that "if any beneficiary or any person on behalf of a beneficiary seek to … oppose or seek to set aside … any distribution of this Trust, ... such beneficiary … shall receive, free of trust, one dollar ($1.00) and no more [in] lieu of any claimed interest in this Trust or its assets" (¶ 5.5); and,

7

- "This trust is absolutely revocable with the consent of both Grantors . . ." (¶ 9.1); *see also* ECF No. 31 at 9 (Defendant states the "Trust is a revocable trust").

In addition to these provision, there is a Spendthrift Provision at Paragraph 12.5 of the Trust. This provision states:

> Each and every beneficiary under this Trust is hereby restrained from and shall be without right, power or authority to sell, transfer assign, pledge, mortgage, hypothecate, alienate, anticipate, bequeath or devise or in any manner affect or impair his, or her, or their beneficial right, title, interest, claim and Estate in and to either the income or principal of any Trust created hereunder, or to any part thereof, during the entire term of said Trust; nor shall the right, title, interest, or estate of any beneficiary be subject to any right, claim, demand, lien or judgment of any creditor of any such beneficiary, nor be subject nor liable to any process of law or equity, but all of the income and principal, except as otherwise provided in this Trust Agreement shall be payable and deliverable to or for the benefit of only the before named and designated beneficiaries, at the time hereinbefore set out, and receipt by such beneficiaries shall relieve the Trustee from responsibility for such good faith distributions.

        *1.*       *Transmutation of Trust Property.*

Plaintiffs state, without any authoritative support, that the funds deposited with the Court registry is not Trust property. ECF No. 36. Defendant contends the opposite, incorrectly citing ECF No. 207 in the Criminal Case as standing for this proposition. ECF No. 31 at 4. The Report and Recommendation, that is ECF No. 207 in the Criminal Case, states only that "the [real] property was owned by the . . . Trust" not that the amount deposited with the Court's registry remains property of the Trust. Nevertheless, there is no Nevada case law that guides this Court when considering whether the deposit of sale proceeds from real property held in a Trust, and promised in a plea agreement by a defendant who is both a trustee and beneficiary of the Trust to be used to pay fines, assessments, and restitution, transmutes the property from trust property into non-trust property. Indeed, the Court's thorough search of Nevada law resulted in nothing that answers this questions.

In the bankruptcy context, the Court found case law stating that the simple fact that interpleaded funds were placed into a court's registry does not imply that the funds are not property of a debtor's estates. *See In re Armstrong,* 56 B.R. 781 (W.D.Tenn.1986), *citing, NLT Computer Services v. Capital Computer Systems*, 755 F.2d 1253, 1263 (6th Cir.1985). And, in one Ninth Circuit case, also in the bankruptcy context, the Court found one case discussing this issue, but which facts cannot be likened to the case at hand. *In re Pettit*, 217 F.3d 1072 (9th Cir. 2000) (Discussing whether registry funds being held as judgment security were property of a bankruptcy estate and

8

finding they were not because the debtor held a contingent interest in the funds based on the outcome of a jury trial. When the jury ruled against the debtor, the debtor's contingent interest was extinguished).

Here, Defendant argues that he has a contingent interest in the funds on deposit with the Court, but not because of a specific claim for those funds as might arise in bankruptcy, but rather because, based on the terms of the Trust, the property—money—at issue constitutes an undistributed interest in trust property. The Court therefore considers whether Defendant's interest in the money deposited with the Court's registry is, in fact, contingent. If it is, and the contingency has not occurred, Defendant's interest in the funds remain contingent and, under Nevada law, exempt from execution.

### 2. *Defendant's Discretionary Interest In This Revocable Trust*

Defendant cites to NRS 163.004(2) for the proposition that a revocable trust gives a beneficiary "only a contingent interest …while the settlor is still alive." The Court adopted this proposition in the Criminal Case, ECF No. 207 at 5-6, stating, in addition to the above, that a beneficiary's interests in a revocable living trust are "subject to complete divestment while the settlor [is] alive." *Id*. at 6. The Court also noted that the terms "settlor" is equivalent to the term "grantor" used by Defendant in the Trust document. *Id*. at n.8. This Court agrees.

Looking to NRS 163.419, titled "Discretionary interest: Beneficiary does not have enforceable right to distribution; court review; trustee's powers and duties," this statute states, in pertinent part, that:

> 1. A beneficiary who has a discretionary interest in a trust does not have an enforceable right to a distribution from the trust, and a court may review a trustee's exercise of discretion concerning a discretionary interest only if the trustee acts dishonestly, with bad faith or willful misconduct.
> 2. A trustee given discretion in a trust instrument that is described as sole, absolute, uncontrolled, unrestricted or unfettered discretion, or with similar words, has no duty to act reasonably in the exercise of that discretion.
> 3. Absent express language in a trust to the contrary, if a discretionary interest permits unequal distributions between beneficiaries or to the exclusion of other beneficiaries, the trustee may distribute all of the undistributed income and principal to one beneficiary in the trustee's discretion.
> 4. Regardless of whether a beneficiary has an outstanding creditor, a trustee of a discretionary interest may directly pay any expense on the beneficiary's behalf and may exhaust the income and principal of the trust for the benefit of such beneficiary.

9

1  Defendant quotes on Section 1 of NRS 163.419, while sections 2 through 4 are also relevant to this
2  analysis.

3  Paragraph 5.1 of the Trust, cited by Defendant on Page 10 of his Opposition to Plaintiffs'
4  Motion for Prejudgment Writ (ECF No. 31), is the only Trust paragraph upon which Defendant
5  relies to argue that it is "the *trustees*"—as distinct from "a trustee"—who retain "sole discretion'
6  to make … distributions." *See* ECF No. 31 in its entirety. While this paragraph of the Trust does
7  establish a discretionary right to distribution of net income and principal from the Trust, the clear
8  language of Paragraph 5.1 grants the discretionary right to either the "Trustee *or* Trustees."

9  Moreover, when Paragraph 5.1 is read in conjunction with Paragraphs 3.2 and 3.2(L), it is
10 clear that each "Trustee" has enumerated powers, "in his or her absolute discretion, in any way and
11 every way" a responsible and prudent person would dispose of property, including to "*any other*
12 *person deemed suitable by the Trustee*." (Emphasis added.) And, these enumerated powers
13 belonging to *each Trustee* do not limit "his *or* her general powers . . . having all the rights, powers,
14 and privileges which an absolute owner of the same property would have." Paragraph 3.2(S)
15 (Emphasis added.). Finally, the Trust document makes clear that in the event that a beneficiary
16 (including Defendant) "or any person on behalf of a beneficiary seek[s] to … oppose or seek to set
17 aside … any distribution of this Trust, . . . such beneficiary … shall receive, free of trust, one dollar
18 ($1.00) and no more [in] lieu of any claimed interest in this Trust or its assets" ECF No. 31-2 ¶ 5.5.

19 Based on all of the above, the question is not whether Defendant, a trustee and beneficiary
20 of the Trust, is empowered to distribute property of the Trust for the benefit of Plaintiffs, he is.[5]
21 Rather, the questions are whether Defendant previously agreed to do so or the Court can compel
22 Defendant to do so. The latter question is easy to answer as Nevada statutes preclude the Court
23 from requiring a trustee to distribute money from a discretionary trust. Nevada Revised Statute,
24 163.417(1)(c)(1) and (3), state that a court may not order a trustee to distribute funds when that
25 trustee has discretion to do so or "[t]ake any other authorized action in a specific way." NRS

---

[5] In Defendant's Sentencing Memorandum, seeking a downward departure from sentencing guidelines, it states Defendant "has many personal challenges at the moment, but nevertheless, he is ready to accept responsibility for his actions and move forward with his life. This is evidenced by both his guilty plea and his willingness to pay restitution in full." Criminal Case, ECF No. 329 at 24. Defendant, however, goes no further and does not commit to paying damages to Plaintiffs.

10

163.417(1)(d) states that "a court may not order the exercise of . . . [a] power to distribute a beneficial interest of a trustee solely because the beneficiary is a trustee." Unfortunately, Nevada law makes no equitable exception to these rules even for cases such as this one. *See Klabacka v. Nelson*, 394 P.3d 940, 949-50 (Nev. 2017), NRS 163, generally.

The only question then is whether Defendant, as a trustee and beneficiary of the Trust, agreed to exercise his discretionary powers to use Trust funds for the benefit of his victims. Plaintiffs avers that Defendant agreed to such a distribution through his Plea Agreement, which state "defendant also agrees to the forfeiture of the property and the imposition of the forfeiture of the property as set forth in . . . the Forfeiture Allegations of the Criminal Indictment." Criminal Case, ECF No. 146 at 2:10-12. In turn, the Criminal Indictment states "defendant herein, shall forfeit to the United States of America, any property, real or personal, used or intended to be used to commit or to promote the commission of Title 18, United States Code, Sections 2251(d)(1)(A), 2252A(a)(2), and 2252A(a)(5)(B) or any property traceable to such property…" Criminal Case, ECF No. 12 at 4. Unfortunately, this provision, by its terms, does not include forfeiture of property to pay Plaintiffs' liquidated damages arising from a private civil action to which the United States is not a party. In fact, and despite the Plaintiffs' suffering, the Plea Agreement expressly states that "[i]t does not control . . . any other civil or administrative remedy directly or indirectly against the defendant." Criminal Case, ECF No. 146 at 2. Nevada made a choice when it adopted statutes expressly prohibiting the Court from providing relief to Plaintiffs, and Defendant made a clear choice to ensure that undistributed property in the Trust could not be used for any purpose not specifically authorized by a Trustee.

### 3. *The Spendthrift Provision*

Defendant argues the above establishes the Trust as a Spendthrift Trust, despite all other provisions of the Trust Agreement, and this basis alone established that the amount in the Court's registry is exempt from execution. NRS 21.090(dd) (property exempt from execution includes "[i]f a trust contains a spendthrift provision"). Defendant is wrong. The Nevada Supreme Court in *Klabacka*, 394 P.3d at 947, states that to create a valid self-settled spendthrift trust (which, NRS 166.015, as adopted by the Nevada Supreme Court, is a trust in which "the settlor is a beneficiary

11

of the trust"), the trust be irrevocable. Here, there is no doubt that the trust "is absolutely revocable" in accordance with Section 9.1 of the Trust document. Thus, a valid spendthrift trust was not created here. The spendthrift provision, even though containing the language typical of such a provision, is insufficient under Nevada law to prevent attachment of Defendant's property.[6]

### III. CONCLUSION

Plaintiff's Motion for Prejudgment Writ, while seeking equity for Plaintiffs, is not enforceable under Nevada law.

Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Prejudgment Writ of Attachment (ECF No. 5) is DENIED.

DATED this 3rd day of February, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiffs also point out that money transferred into a self-settled spendthrift trust does not acquire exemption from execution by creditors for a two year period. ECF No. 36 at 3. Because the trust at issue is not a spendthrift trust, the Court does not discuss this issue.

12